Original Filing Date: December 21, 2020
Redacted Filing Date: January 5, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | **REDACTED –** |
| | ) | **PUBLIC VERSION** |
| Defendant. | | |

## [PROPOSED] JOINT PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure. A three-day bench trial in this matter is scheduled to begin on April 26, 2021. In advance of the Pretrial Conference scheduled for March 25, 2021, counsel for Plaintiff HIP, Inc. ("HIP" or "Plaintiff") and Defendant Hormel Foods Corporation ("Hormel" or "Defendant") submit this Joint Pretrial Order governing trial of this action pursuant to Fed. R. Civ. P. 16(e) and D. Del. LR 16.3.

**Counsel for Plaintiff HIP, Inc.:**

Karen Jacobs
Michael J. Flynn
Sarah Simonetti
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Jerry R. Selinger
Susan Powley
Kyrie Cameron
PATTERSON + SHERIDAN,  LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX 75201

B. Todd Patterson
PATTERSON + SHERIDAN, LLP
24 Greenway Plaza, Suite 1600
Houston, TX 77045

Dennis E. Brown
BROWN PATENT LAW
2700 N.  Hemlock, Suite 111 E
Broken Arrow, OK 74012

**Counsel for Defendant Hormel Foods Corporation:**

David E. Moore
Bindu A. Palapura
Stephanie E. O'Byrne
POTTER ANDERSON & CORROON, LLP
1313 N. Market Street, Hercules Plaza, 6th Floor
Wilmington, DE 19801

Kurt J. Niederluecke
Timothy M. O'Shea
Barbara Marchevsky
Laura L. Myers
FREDRIKSON & BYRON, P.A.
200 S. Sixth Street, Suite 4000
Minneapolis, MN 55402

## I.   Nature of the Case

### A.   The Parties

1.   Plaintiff HIP is an Oklahoma corporation with its principal place of business in Dallas, Texas. HIP was formerly known as Unitherm Food Systems, Inc.

2.   Defendant Hormel is a Delaware corporation with its principal place of business in Austin, Minnesota.

### B.   Nature of the Action and Claims to Be Asserted at Trial

3.   As set forth in HIP's First Amended Complaint (D.I. 21), HIP brings this action under 35 U.S.C. § 256 for an Order directing the Commissioner of Patents to issue a certificate of correction to substitute David Howard as the sole inventor on United States Patent No. 9,980,498 ("the '498 Patent") in place of Brian J. Srsen, Richard M. Herreid, James E. Mino and Brian E. Hendrickson, and compelling Hormel to assign the '498 Patent to HIP.  Alternatively, to the extent the Court finds Mr. Howard is not the sole inventor, HIP seeks an Order directing the Commissioner of Patents to issue a certificate of correction to add David Howard as a co-inventor on the '498 Patent.

4.   As set forth in Hormel's Amended Answer to HIP's First Amended Complaint (D.I. 33), Hormel denies that the named inventors identified in the '498 Patent are incorrect or listed in error.  Hormel also denies that David Howard made any inventive contribution to the '498 Patent.

## II.    JURISDICTION AND VENUE

5.       This is a civil action for correction of inventorship arising under the patent laws of the United States, Title 35, United States Code; 35 U.S.C. § 256.  The Court has [**HIP Position**: subject matter] [**Hormel Position:** original] jurisdiction over the pending claims under 28 U.S.C. §§1331, 1338(a). [**HIP Position**: No party contests personal or subject matter jurisdiction for purposes of this action.] [**Hormel's Position:**  No party contests personal jurisdiction, but Hormel contests this Court's subject matter jurisdiction based on HIP's lack of Article III standing.]

**HIP statement on standing:**   In its Answer, Hormel failed to deny the allegation that HIP has standing, and, in response to HIP's allegation in paragraph 8 that the Court has exclusive subject matter jurisdiction, Hormel represented it "does not contest that the Court has subject matter jurisdiction" over the pending claims. HIP thus is deemed to have standing.  Hormel seeks to conflate its denial that HIP's claims have merit into a denial as to standing.  HIP's execution of the Joint Pretrial Order does not constitute agreement to Hormel's recitation of the pleadings or that Hormel can now assert that HIP lacks interest or rights in the '498 Patent based on standing.  But even if Hormel were permitted to contest standing, the relevant contracts give HIP sufficient interests and rights in the '498 Patent to have standing to bring this ownership action based on correction of inventorship.  The 2017 Unit

Purchase Agreement with Marlen shows there was no conveyance to Marlen of these rights and fails to support Hormel's fluid arguments about the contracts.

**Hormel statement on standing:** Hormel denied in its Answer that HIP has any interest or rights in the '498 Patent and denied that HIP is entitled to correction of inventorship, and HIP therefore lacks standing to assert its correction of inventorship claims.  HIP's assertion of statutory subject matter jurisdiction over its inventorship claims under 28 U.S.C. §§ 1331 and 1338(a) does not end this Court's subject matter jurisdiction inquiry.  Rather, the standing requirement of Article III of the Constitution, including the requirement that the plaintiff suffer an injury in fact, further limits the subject matter of the federal courts to Cases and Controversies.  During discovery, Hormel learned that, in direct contradiction to HIP's allegations of standing in its Amended Complaint, Howard and HIP sold and transferred to Marlen International in 2017 any purported inventorship rights to the '498 Patent. Accordingly, HIP cannot show an injury in fact and the Court lacks subject matter jurisdiction under Article III standing.  Standing cannot be waived or agreed to, and lack of standing may be raised at any time.

6.      Venue is proper under 28 U.S.C. §§1391(b) and (c).  No party contests venue for purposes of this action.

## III.   STATEMENTS

The following statements are submitted and attached to and made a part of this Order.

### A.   Joint Statement of Uncontested Facts

7.     Attached as **Exhibit 1** are facts that are not disputed or have been agreed to or stipulated by the parties and require no proof at trial.  The facts set forth in **Exhibit 1** will become part of the evidentiary record in the case, and may be considered by the Court to be established.  Either party, with prior notice to the other party, may read any or all of the uncontested facts to the Court, and will be charged for the time used to do so.

### B.   Parties' Statements of Contested Issues of Fact and Law to be Litigated at Trial

8.     HIP's statement of contested issues of fact is attached as **Exhibit 2.**

9.     Hormel's statement of contested issues of fact is attached as **Exhibit 3**.

10.     HIP's statement of contested issues of law is attached as **Exhibit 4.**

11.     Hormel's statement of contested issues of law is attached as **Exhibit 5.**

12.     If the Court determines that any issue identified in the statements of contested issues of fact is more properly considered an issue of law, it should be so considered.  Similarly, if any issue identified in the statement of contested issues of law is more properly considered an issue of fact, it should be so considered.

13.     The parties reserve the right to modify or supplement their statements of facts and law only to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## IV.   Exhibits

### A.   Trial Exhibits

14.     The parties will offer at trial one or more of the exhibits set forth on their respective exhibit lists.  These lists include the exhibit number to be used at trial and a description sufficient to identify the exhibit, *i.e.,* by production number or citation.  Each party reserves the right to offer rebuttal exhibits that are not set forth on its exhibit list for purposes of impeachment only.  The parties may not add additional exhibits to their exhibit lists after the filing of the Pretrial Order unless good cause is shown. The parties also may offer demonstrative exhibits at trial.  The parties will later exchange copies of demonstratives in accordance with agreed-upon procedures set forth more fully below.

15.     Except as set forth in paragraph 14 above, absent good cause shown, a party may only offer an exhibit present on its own or on the other party's exhibit list, subject to objections, or on the joint exhibit list. Any exhibit, once admitted at trial, may be used equally by each party for any proper purpose in accordance with the Federal Rules of Evidence. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the

opposing side for the purpose that the opposing side wishes to admit the document, and each party reserves the right to object to the relevancy and admissibility of any evidence on its list when offered by the other party, in view of the specific context in which such evidence is offered.

16.     Plaintiff's list of pre-marked trial exhibits, and Defendant's objections thereto, are attached as **Exhibit 6**. Plaintiff's trial exhibits will be marked as PTX-1, *et seq.*

17.     Defendant's list of pre-marked exhibits, and Plaintiff's objections thereto, are attached as **Exhibit 7**. Defendant's trial exhibits will be marked as DTX-1, *et seq.*

18.     Prior to trial, the parties shall compile and file a joint exhibit list to be used at trial to the extent the parties' exhibits overlap and neither party maintains any objections to that exhibit, including when used by the opposing party. Inclusion of an exhibit on the joint exhibit list is a waiver of either party's right to object to the admissibility of the listed joint exhibit by the offering party at trial. The parties' joint exhibit list shall be **Exhibit 8** to this order, and joint exhibits shall be marked as JTX-1, *et seq.*

19.     The parties have agreed that although the pretrial order will be filed on December 21, 2020, each party shall provide to the other party copies of its final exhibits with final exhibit labels by no later than December 23, 2020, with the

specific agreement and understanding the exhibits provided will be only the specific exhibits on the exhibit lists.

20.    The dates and descriptions of documents in **Exhibits 6-8** are for convenience of the parties and the Court only, and do not constitute evidence or admissions about the content or admissibility of the documents described, or other aspects of the documents.

21.    Legible photocopies of documents may be offered and received into evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals, and subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

22.    Legible copies of United States patents and the contents of USPTO file histories may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of uncertified copies, and the Court shall take judicial notice of same.

23.    Except as to documents for which the Court may take judicial notice, no exhibit will be admitted unless offered into evidence during the trial through a witness [**HIP position**: competent to establish the admissibility of the exhibit]. At some point during trial, any party that has used an exhibit with a witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into

evidence by exhibit number.  Each party reserves its right to make objections provided in paragraphs 15-17 at the time such exhibit is offered.

24.    The parties agree that they need not pre-exchange or identify exhibits or demonstratives to be used with any witness on cross examination.

25.    On or before the first day of trial, counsel for each party will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list.

**B.    Demonstrative Exhibits**

26.    The parties shall exchange complete color representations of demonstrative exhibits in PDF form by no later than 7 p.m. on the day before the demonstrative is to be used.[1]  For video or animations, the party seeking to use the demonstrative will provide it to the other side via e-mail or FTP site.  For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5" x 11" copies of the exhibits, as well as make the demonstrative exhibit available for inspection.

27.    The parties' objections to the demonstrative exhibits, if any, shall be exchanged no later than 9 p.m. on the day before the demonstrative is to be used. The parties shall then meet and confer no later than 10:00 pm in a good faith effort to resolve the objections.

---

[1]    For avoidance of doubt, all times herein are Eastern Standard Time.

28.     If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention at the start of the next trial day.

29.     This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross examination, neither of which need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony that are not prepared in advance are not required to be provided to the other side before their use with a witness.

30.     Plaintiff's demonstrative exhibits will be identified by numbers prefixed with "PDX."  Defendant's demonstrative exhibits will be identified by numbers prefixed with "DDX."

### C.     Opening Statements

31.     The parties will exchange demonstratives to be used in opening statements by 7:00 p.m. two nights before opening statements.  The parties will provide any objections to such demonstratives by 12:00 noon on the day before opening statements.  The parties shall meet and confer on any objections no later than 3:00 p.m. the day before opening statements.  If any of the demonstratives change after the deadline or after the parties confer, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).  If good faith

efforts to resolve the objections fail, the party objecting shall bring its objections to the Court's attention prior to the start of the trial day.

32.     By way of example, if opening statements are to be held on April 26, 2021, the parties shall exchange any demonstrative exhibits they intend to use during opening statements no later than 7:00 p.m. on Saturday, April 24, 2021, and the other party may provide objections by 12:00 noon on Sunday, April 25, 2021, and the parties shall meet and confer on objections by 3:00 p.m. that day.

## V.   Witnesses

### A.   Witnesses Expected to Be Called At Trial

33.     HIP's list of the names and state of residence of the fact and expert witnesses that HIP intends to call, including Hormel's objections thereto, is attached as **Exhibit 9**.

34.     Hormel's list of the names and state of residence of the fact and expert witnesses that it intends to call at trial, including HIP's objections thereto, is attached as **Exhibit 10**.

35.     The witness lists indicate which witnesses the party intends to call and whether the party intends to call that witness live or by deposition.  If a witness on a party's list is within the control of the opposing party and is designated by the party to be called live, the opposing party will within three business days inform the party if that witness will not be available to be called live.

12

**[HIP's position:**   A party may call by deposition any witness on that party's list who has been identified as to be called by deposition and who is within the control of the opposing party to the extent allowed under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any law of the United States.  To the extent the Court concludes that a witness who has been identified as to be called by deposition must be offered live, the party insisting on having the witness called live must make that witness available during the designating party's case-in-chief.

For any witness who is called live, the non-calling party may separately introduce deposition designations during the non-calling party's case-in-chief, if otherwise admissible, in addition to cross-examining the witness on issues within the scope of the witness' direct testimony.]

**[Hormel's position:** Except in the case of identified 30(b)(6) corporate testimony, if a witness on a party's list is designated by the party to be called by deposition and is within the control of the opposing party, the opposing party may with fourteen days' notice offer the witness live in lieu of the deposition designations in which case the deposition designations may not be introduced into evidence but may be used for impeachment purposes.]

36.    A party shall not be permitted to call a witness unless identified in this Order, or unless the Court determines that in the interests of justice such witness should be called for good cause shown.

**B.     Deposition Designations**

37.     HIP's list of deposition designations that it may offer at trial is attached as **Exhibit 11.**  Also included in Exhibit 11 are Defendant's objections and counter designations to the testimony offered by Plaintiff and Plaintiff's objections to Defendant's counter designations and Plaintiff's counter counter designations.

38.     Hormel's list of deposition designations that they may offer at trial is attached as **Exhibit 12**.  Also included in Exhibit 12 are Plaintiff's objections and counter designations to the testimony offered by Defendant and Defendant's objections to Plaintiff's counter designations and Defendant's counter counter designations.

39.     For those depositions that have been videotaped, a party may introduce the deposition excerpt by videotape instead of or in addition to by transcript.  If a party opts to introduce deposition testimony by videotape, any counter-designations of that same witness's deposition testimony shall also be submitted by videotape.  All opening deposition designations and counter designations shall be played or read together in the order they appear in the deposition transcript, regardless of the type of designation.  Each party shall be charged with the time necessary to read or play its designations, based on the time taken to play or read the parties' designations.

40.     The parties agree that all irrelevant and redundant material, such as objections, colloquy between counsel, long pauses, and requests to have the court

reporter read back a question, may be eliminated when the deposition video is played or the transcript read at trial.

41.     If one party drops any portion of a deposition that it previously designated or counter-designated, the opposing party shall be allowed to use that testimony, even if it was not originally designated or counter-designated by that party, with time to read or play the designation charged to that opposing party and subject to any objections by the originally designating party.  In addition, each party shall have the right to offer any testimony that party designated as either an affirmative designation or a counter designation, regardless of how that testimony was originally designated.  Absent good cause shown, the parties may only introduce the deposition testimony designated in this Pretrial Order, except for deposition testimony offered solely for purposes of impeachment.

## C.     Disclosure of Witnesses for Trial

42.     Each party shall disclose by email the witnesses it intends to call at trial, whether live or by deposition, by 7:00 p.m. two days before the witness is expected to be called, in the order in which the witnesses shall be presented.  For each witness, the party must identify in the e-mail any exhibits  it intends to use with that witness. The opposing party shall provide any objections to the exhibits by 7:00 p.m. the day before the witness is expected to be called, and the parties shall meet and confer in an effort to resolve any objections.  Any objections that are not resolved shall be

brought to the Court no later than the morning before the witness is expected to testify.

43.     The parties agree that they need not pre-exchange or identify exhibits or demonstratives to be used with any witness on cross examination.

44.     The parties will disclose the specific portions of previously designated deposition testimony that they intend to use at trial by 7:00 p.m. two days before such designations are to be offered at trial.  Any objections and counter-designations will be made by the other party by 7:00 p.m. the day before the expected use, and the parties shall meet and confer in an effort to resolve any objections.  Any objections that are not resolved shall be brought to the Court no later than the morning before the testimony is expected to be introduced.

## VI.     Motions *in Limine*

45.     HIP's first motion in limine, together with Hormel's response and HIP's reply, is attached as **Exhibit 13**.

46.     HIP's second motion in limine, together with Hormel's response and HIP's reply, is attached as **Exhibit 14**.

47.     HIP's third motion in limine, together with Hormel's response and HIP's reply, is attached as **Exhibit 15**.

48.     Hormel's first motion in limine, together with HIP's response and Hormel's reply, is attached as **Exhibit 16**.

49.    Hormel's second motion in limine, together with HIP's response and Hormel's reply, is attached as **Exhibit 17**.

50.    Hormel's third motion in limine, together with HIP's response and Hormel's reply, is attached as **Exhibit 18**.

## VII.  Length and Conduct of Trial

51.    This case will be tried before the Court and not a jury.

52.    The Court has set this case for three trial days, beginning at 8:30 a.m. on April 26, 2021.  Subsequent trial days shall begin at 9:00 a.m.

53.    The trial will be timed.  The parties propose **10** hours for each side's presentation of its case, including opening and closing statements.

54.    Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, testimony by deposition that it has designated, and closing argument.  The Courtroom Deputy will keep a running total of trial time used by counsel.

55.    The order of the trial shall be:

    i.  Opening statements (Plaintiff first, followed by Defendant);

    ii.  Plaintiff's presentation of evidence for issues for which Plaintiff bears the burden of proof;

    iii.  Defendant's presentation of evidence rebutting Plaintiff's presentation;

    iv.  [**HIP's Position:** Plaintiff's reply presentation; and]

    v.  Closing arguments (Plaintiff first, followed by Defendant [**HIP's position:** , and reply by Plaintiff)].

## VIII.  Amendment of Pleadings

56.    No party has moved to amend its pleadings.

## IX.  Settlement Negotiations

57.    The parties certify they have made a good-faith effort to resolve the dispute, but were not successful.

## X.  Additional Matters

The parties respectfully submit the following matters for the Court's consideration:

### A.  Confidential Information at Trial

58.    The parties do not request that the Courtroom be sealed during any portion of the trial.

59.    The parties agree to follow the provisions in the Protective Order (D.I. 43) regarding the confidentiality of exhibits used at trial, including specifically Section 7.4.

[**HIP's position:** Insofar as the Protective Order restricts the dissemination and use of "Confidential Information," including documents marked "Confidential"

or "Highly Confidential" during production, to comport with Third Circuit requirements, (1) prior to the day when any documents previously so marked are to be introduced as evidence or a party expects to elicit testimony about information that has been designated as "Confidential Information", the parties shall meet and confer in good faith about whether such information needs to remain confidential and, if so, what manner can be used to present the information at trial while minimizing the need to seal the record and the courtroom; and (2) requests by a party to seal or otherwise protect certain information from public disclosure during trial shall be made at the beginning of the day by the party seeking to preserve confidentiality and that party must demonstrate that the information sought to be protected is of such a sensitive nature that its disclosure creates a risk of harm that outweighs the strong presumption in favor of public access to judicial proceedings.]

[**Hormel's position:** Any party that moves to seal an exhibit shall make such request preferably at the beginning of the day in which the exhibit is expected to be introduced, and in any event before the close of evidence. A motion to seal any document will not, unless otherwise requested, require the Court to seal the Courtroom or the transcript.]

### B. Sequestration of Witnesses

60. Pursuant to Federal Rule of Evidence 615, the parties request that the Court prevent fact witnesses, other than witnesses who have already testified, been

excused, and will not testify again, from hearing the testimony of other witnesses. The parties further request that in accordance with Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative, [**Hormel's position:** a person whose presence a party shows to be essential to presenting the party's claim or defense,] the expert witnesses of either party. [**HIP's position:** HIP does not agree any of the Hormel inventors are essential to presenting Hormel's defense and HIP does not agree that any of those individuals should be exempt from the general sequestration rule.]

## XI.   Order to Control Course of Action

61.     This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.


DATED: _____          _____

                                        United States District Judge

Approved as to form and substance:

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

POTTER ANDERSON & CORROON LLP

*/s/ Karen Jacobs*

*/s/ Stephanie E. O'Byrne*

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
Sarah E. Simonetti (#6698)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
ssimonetti@mnat.com

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff HIP, Inc.*

*Attorneys for Defendant*
*Hormel Foods Corporation*

December 21, 2020

# EXHIBIT 1

**Exhibit 1**

**Joint Statement of Uncontested Facts**

  The following facts are not disputed and/or have been stipulated to by the Parties, and thus require no proof at trial.  Either party may read any or all of these uncontested facts into the record at trial and will be charged for the time used to do so.

**I.  The Parties**

  1.  Plaintiff HIP, Inc. ("HIP") is an Oklahoma corporation with its principal place of business in Dallas, Texas. HIP was formerly known as Unitherm Food Systems, Inc. ("Unitherm").

  2.  David Howard is the president and sole employee of HIP.

  3.  Defendant Hormel Foods Corporation ("Hormel") is a Delaware corporation with its principal place of business in Austin, Minnesota.

**II.  The '498 Patent**

  4.  According to the records of the USPTO, Hormel is the owner of U.S. Patent No. 9,980,498 for a "Hybrid Bacon Cooking System" (the "'498 Patent").

  5.  The '498 Patent issued on May 29, 2018.

# EXHIBIT 2

**Exhibit 2**

**Plaintiff's Statement of Contested Issues of Fact**

Pursuant to Local Rule 16.3(c)(4), Plaintiff HIP, Inc. ("HIP") submits the following issues of fact that remain to be litigated. In doing so, HIP does not intend to assume any additional burden of proof of any fact which is not necessary to it in this case, nor does HIP assert that the list of contested facts are all necessary for it to prevail on its claims.  The following statements are not exhaustive, and HIP reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports. HIP reserves the right to modify or amend this Statement to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this Statement to fairly respond to any new issues that Defendant may raise. To the extent HIP's statement of the issues of law that remain to be litigated, which is submitted as Exhibit 4 hereto, contains issues of fact, those issues are incorporated here by reference. Moreover, if any issue of fact identified below should properly be considered an issue of law, then such statement should be considered to be part of HIP's statement of issues of law that remain to be litigated.

1.     Whether clear and convincing evidence establishes that David Howard ("Mr. Howard") is the true and sole inventor of the inventions claimed in claims 1-16 of U.S. Patent No. 9,980,498 (the "'498 Patent").

2.     Whether clear and convincing evidence establishes that Mr. Howard alone conceived of the inventions claimed in claims 1-16 of the '498 Patent prior to Hormel's admitted earliest date of conception by any of the individuals currently listed as co-inventors on the '498 Patent.

3.     In the event the Court finds Mr. Howard is not the sole inventor, whether clear and convincing evidence establishes that Mr. Howard made an inventive contribution (including any

1

necessary collaboration) to the conception of the subject matter of any of claims 1-16 of the '498 Patent.

4.     Whether clear and convincing evidence establishes that Mr. Howard disclosed his prior conception and reductions to practice of the subject matter claimed in claims 1-16 of the '498 Patent orally, in writing, and in physical demonstrations to Hormel, including directly and/or indirectly, to Messrs. Herreid, Hendrickson, Mino and Srsen, prior to Hormel's admitted earliest asserted date of conception by any of those four individuals.

5.     Whether Hormel is barred by issue preclusion from asserting that: (1) Mr. Howard did not conceive of or disclose his "Unitherm Process" to Hormel prior to September 25, 2007 or that Mr. Howard fabricated evidence of his inventive work to predate September 25, 2007, (2) Mr. Howard's disclosure of the Unitherm Process to Hormel did not induce Hormel to enter into the parties' Joint Development Agreement ("JDA") on September 25, 2007; or (3) any Hormel employee made an inventive contribution to the subject matter in U.S. Patent No. 9,510,610 (the "'610 Patent").

6.     Whether Hormel is bound by its sworn interrogatory answer that conception did not occur prior to November 17, 2009, which each of the surviving three inventors agreed was accurate, and which Hormel's 30(b)(6) witness then confirmed was accurate.

7.     Whether clear and convincing evidence establishes that Mr. Howard's reductions to practice of the inventions claimed in the '498 Patent prior to Hormel's admitted earliest date of conception by any of the four individuals constitutes corroboration of his prior conception.

8.     Whether Mr. Howard was a person of at least ordinary skill in the art at all relevant times.

9.      Whether the subsequent work at Hormel beginning on November 17, 2009, was: (a) merely routine after-the-fact activity based on Mr. Howard's established conception, (b) derivation based on what the individuals had learned from Mr. Howard's disclosures of his established conception, and/or (c) merely preliminary efforts to move the invention into a commercially satisfactory stage of development.

10.      Whether Hormel waived any challenge to HIP's standing to assert its correction of inventorship claims, and therefore admitted HIP's standing, by: (i) Hormel failing to deny an express allegation that HIP had standing in Hormel's answer to the Amended Complaint; and/or (ii) Hormel admitting in its answer to the Amended Complaint that Exhibit J of the complaint is an assignment from Mr. Howard of all rights in the '498 Patent:

> The true and sole inventor of all the subject matter claimed in above-referenced U.S. Patent No. 9,980,498 (the "'498 Patent") is Plaintiff's President, David Howard.  Plaintiff HIP, Inc. has standing to bring this action for correction of inventorship and ownership . . . by virtue of an assignment from David Howard to Plaintiff of all rights in the '498 Patent.  (See Exhibit J).  A copy of the '498 Patent is attached hereto as Exhibit A.

D.I. 21, First Amended Complaint, ¶ 1

> Hormel denies that David Howard is the true and sole inventor of all of the subject matter claimed in U.S. Patent No. 9,980,498 (the "'498 Patent").  Hormel admits that Exhibit J to the original Complaint purports to be an assignment from David Howard to Plaintiff of all rights in the '498 Patent.  Hormel denies that HIP has any interest or any rights in the '498 Patent.

D.I. 33, Defendant's Amended Answer [to Amended Complaint], ¶ 1.

11.      Whether, in all events, HIP has standing to assert its ownership/correction of inventorship claims because the 2017 Asset Purchase Agreement  between Marlen International, Inc. and HIP (then Unitherm) did not transfer those claims, or any rights Mr. Howard had in the inventions claimed in the '498 patent, to Marlen, as evidenced by the express language reserving rights in the claims and rights at issues in the Minnesota lawsuit, which included competing claims

to ownership of the subject matter now incorporated in the '498 Patent, and where Mr. Howard

transferred his ownership rights in the '498 Patent to HIP on May 29, 2018

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:18-cv-00802-CFC-SRF |
| | ) | |
| v. | ) | |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **EXHIBIT 3**

**HORMEL'S STATEMENT OF CONTESTED ISSUES OF FACT**

EXHIBIT 3
Hormel's Statement of Contested Issues of Fact

Pursuant to Local Rule 16.3(c)(4), Defendant Hormel Foods Corporation

submits this Statement of Contested Issues of Fact.  This statement is based on the

parties' pleadings, documentary and testimony evidence, and Hormel's current

understanding of HIP's claims and defenses and the Court's rulings to date.

Hormel reserves all rights with respect to these disclosures, including the right to

amend, supplement, or otherwise modify these disclosures without prejudice

according to the schedule set forth by the parties for pre-trial exchanges, the local

rules, the Federal Rules of Civil Procedure, and any other basis in fact or law,

including based upon any pretrial rulings by the Court and/or to address any

additional issues, arguments, evidence or other developments in the case, edits to

the draft pretrial order, any meet and confers or other negotiations between the

parties, pending and anticipated motions, and similar developments.

By including an issue of fact herein, Hormel does not assume the burden of

proof or production with regard to that fact.  Should the Court determine that any

issue identified in this statement is more properly considered an issue of law, it

shall be so considered and Hormel incorporates it by reference into its Statement of

Issues of Law.  Likewise, to the extent Hormel's Statement of Issues of Law

contain issues of fact, those issues are incorporated herein by reference.

EXHIBIT 3
Hormel's Statement of Contested Issues of Fact

The only claims to be litigated at trial are HIP's two correction of

inventorship counts under 35 U.S.C. § 256 for sole inventorship or, in the

alternative, joint inventorship of Hormel's U.S. Patent No. 9,980,498 (the "'498

Patent").  Hormel contends that the issues of fact (or mixed questions of fact and

law) that remain to be litigated at trial are as follows:

1.      Whether HIP can establish by clear and convincing and independently

corroborated evidence that Mr. Howard alone conceived of the inventions, i.e.,

formed a definite and permanent idea of the complete and operative inventions,

claimed in claims 1-16 of Hormel's '498 Patent.

2.      Whether HIP can establish by clear and convincing and independently

corroborated evidence that Mr. Howard disclosed his alleged prior conception of

the inventions claimed in claims 1-16 of Hormel's '498 Patent to the named

inventors on the Patent – Brian J. Srsen, Richard M. Herreid, James E. Mino, and

Brian E. Hendrickson (the "Hormel Inventors") – before Hormel's earliest date of

conception.

3.      Whether HIP can establish by clear and convincing evidence that the

named Hormel Inventors did not contribute to the inventions claimed in claims 1-

16 of Hormel's '498 Patent.

EXHIBIT 3
Hormel's Statement of Contested Issues of Fact

4.      As to HIP's alternative theory of joint inventorship, whether HIP can establish by clear and convincing and independently corroborated evidence that Mr. Howard made a significant contribution to the conception of the inventions claimed in claims 1-16 of Hormel's '498 Patent.

5.      As to HIP's alternative theory of joint inventorship, whether HIP can establish by clear and convincing and independently corroborated evidence that Mr. Howard and Hormel collaborated as to the conception of the inventions claimed in claims 1-16 of Hormel's '498 Patent.

6.      Whether Mr. Howard had any involvement with the Hormel Inventors' bacon cooking testing after November 2009.

7.      Whether Mr. Howard disclosed his alleged conception of any invention claimed in claims 1-16 of Hormel's '498 Patent to the Hormel Inventors at any meeting or testing between the parties from June 2007 to August 2009.

8.      Whether concepts related to processes for making precooked bacon were already known by Hormel and/or the Hormel Inventors before they met with Mr. Howard in June and July of 2007.

9.      Whether Mr. Howard's alleged disclosures to Hormel and/or the Hormel Inventors involved only concepts already known by them at the time or were otherwise well-known concepts or the state of the art.

3

EXHIBIT 3
Hormel's Statement of Contested Issues of Fact

10.     Whether an undated and incomplete Invention Disclosure Data Sheet relied on by HIP, which was never disclosed to Hormel, shows Mr. Howard's alleged conception of any invention claimed in claims 1-16 of Hormel's '498 Patent.

11.     Whether the undated and incomplete Invention Disclosure Data Sheet only shows concepts that were already known by Hormel or were already otherwise well-known or contained in the state of the art.

12.     Whether an undated handwritten sketch relied on by HIP, which was never disclosed to Hormel, shows Mr. Howard's alleged conception of any invention claimed in claims 1-16 of Hormel's '498 Patent.

13.     Whether the undated handwritten sketch only shows concepts that were already known by Hormel or were already otherwise well-known or contained in the state of the art.

14.     Whether a document referred to as the "Bacon Memo" relied on by HIP shows Mr. Howard's alleged conception of any invention claimed in claims 1-16 of Hormel's '498 Patent.

15.     Whether the "Bacon Memo" only shows concepts that were already known by Hormel or were already otherwise well-known or contained in the state of the art.

EXHIBIT 3
Hormel's Statement of Contested Issues of Fact

16.     Whether the "Bacon Memo" that shows a date of May 4, 2006 was actually created on September 26, 2007, the day after Hormel disclosed a bacon cooking process using superheated steam to David Howard and conducted bacon cooking tests at HIP.

17.     Whether any other evidence relied on by HIP shows Mr. Howard's alleged conception of any invention claimed in claims 1-16 of Hormel's '498 Patent.

18.     Whether any other evidence relied on by HIP to support Mr. Howard's alleged conception of any invention claimed in claims 1-16 of Hormel's '498 Patent only shows concepts that were already known by Hormel or were already otherwise well-known or contained in the state of the art.

19.     Whether Marlen International, Inc., and not HIP, owns the purported inventor rights of David Howard related to the '498 Patent necessary to confer standing to bring a correction of inventorship claim.

20.     Whether HIP retained inventorship rights to the '498 Patent because it purportedly retained the claims and rights of a 2014 "Contract Lawsuit" against Hormel even though the Contract Lawsuit ended in 2016 and the '498 Patent did not even exist until May 29, 2018.

71507597

5

# EXHIBIT 4

## <u>TABLE OF CONTENTS</u>

**Page**

**HIP's Statement of Contested Issues of Law**................................................................ 1

**Issues to be Litigated** .................................................................................................... 1

**HIP's Citation of Authorities** ....................................................................................... 2

   **I.**   **Conception** .......................................................................................................... 2

  **II.**    **Corroboration** .................................................................................................. 3

 **III.**    **Joint Inventorship** ........................................................................................... 6

 **IV.**    **Issue Preclusion** .............................................................................................. 9

 **IV. Standing** ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Auto. Ins. Co. v. Murray*,
   658 F.3d 311 (3d Cir. 2011)...................................................................................10

*BJ Services Co. v. Halliburton Energy Services*,
   338 F. 3d 1368 (Fed. Cir. 2003)................................................................................3

*Burlington N. R.R. v. Hyundai Merch. Marine Co.*,
   63 F.3d 1227 (3d Cir. 1995).......................................................................................9

*Burroughs Wellcome Co. v. Barr Labs. Inc.*,
   40 F.3d 1223 (Fed. Cir. 1994)........................................................... *passim*

*Cooper v. Goldfarb*,
   154 F. 3d 1321 (Fed. Cir. 1998)................................................................................5

*Cordance Corp. v. Amazon.com, Inc.*,
   658 F.3d 1330 (Fed. Cir. 2011)................................................................................7

*Dana-Farber Cancer Inst. v. Ono Pharm. Co.*,
   964 F.3d. 1365 (Fed. Cir. 2020)........................................................................6, 8, 9

*Diggs v. Dep't Hous. & Urb. Dev.*,
   670 F.3d 1353 (Fed. Cir. 2011)...............................................................................10

*Ethicon, Inc. v. U.S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998)........................................................................4, 5, 7

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   100 F. Supp. 3d 357 (D. Del. Apr. 15, 2015)......................................................4, 10

*Falana v. Kent St.*,
   669 F.3d 1349 (Fed. Cir. 2012)................................................................................6

*Fina Oil & Chem. Co. v. Ewen*,
   123 F.3d 1466 (Fed. Cir. 1997)......................................................................2, 3, 6, 7

*Fina Technology Inc., v. Ewen*,
   265 F.3d 1325 (Fed. Cir. 2001)................................................................................2

*Fleming v. Escort Inc.*,
   774 F.3d 1371 (Fed. Cir. 2014)................................................................................6

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966)......................................................................................................9

ii

*Gross v. Weinstein, Weinburg & Fox, LLC*,
    123 F. Supp. 3d. 5752 (D. Del. 2015) ................................................................10

*Henglein v. Colt Indus.*,
    260 F.3d 201 (3d Cir. 2001) ..............................................................................10

*Hess v. Advanced Cardiovascular Systems, Inc.*,
    106 F.3d 976 (Fed. Cir. 1997) .............................................................................8

*Hobbs v. U.S. Atomic Energy Comm'n.*,
    451 F.2d 849 (5th Cir. 1971) ..............................................................................7

*Hyatt v. Boone*,
    146 F.3d 1348 (Fed. Cir. 1998) ...........................................................................3

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986) ...........................................................................3

*In re Dardick*,
    496 F.2d 1234 (CCPA 1974) ..............................................................................7

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994) ...........................................................................10

*Kimberly-Clark Corp. v. Procter & Gamble, Inc.*,
    973 F.2d 911 (Fed. Cir. 1992) .............................................................................6

*Kridl v. McCormick*,
    105 F.3d 1446 (Fed. Cir. 1997) ...........................................................................5

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) .......................................................................4, 5

*Monsanto Co. v. Kamp*,
    269 F. Supp. 818 (D.D.C. 1967) .........................................................................6

*Northwestern Nat'l Ins. v. Esmark*,
    672 A.2d 41 (Del. 1996) ...................................................................................11

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998) ..............................................................................................3

*Pfaff v. Wells Electronics, Inc.*
    124 F.3d 1429 (Fed. Cir. 1997), *aff'd* 525 U.S. 55 (1998) ....................................7

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008) ...........................................................................4

*Price v. Symsek*,
 988 F.2d 1187 (Fed. Cir. 1993) ......................................................................... 4, 5

*Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*,
 616 A.2d 1192 (Del. 1992) ..................................................................................... 11

*Sewall v. Walters*,
 21 F.3d 411 (Fed. Cir. 1994) ............................................................................... 2, 3

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
 758 F.2d 613 (Fed. Cir. 1985) .................................................................................. 7

*Singh v. Brake*,
 222 F.3d 1362 (Fed. Cir. 2000) ............................................................................... 3

*United States v. Hays*,
 515 U.S. 737 (1995) ............................................................................................... 10

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*,
 342 F.3d 1298 (Fed. Cir. 2003) ............................................................................... 2

*Volterra Semiconductor Corp. v. Primarion, Inc.*
 796 F. Supp. 2d 1025, 1073-75 (N.D. Cal. Mar. 8, 2011) ...................................... 5

**HIP's Statement of Contested Issues of Law**

Pursuant to Local Rule 16.3(c)(5), Plaintiff HIP, Inc. ("HIP") submits the following issues of law that remain to be litigated. The following statements and authorities are not exhaustive, and HIP reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports. HIP reserves the right to modify or amend this Statement to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this Statement to fairly respond to any new issues that Defendant may raise. To the extent HIP's statement of the issues of fact that remain to be litigated, which is submitted as Exhibit 2 hereto, contains issues of law, those issues are incorporated here by reference. Moreover, if any issue of law identified below should properly be considered an issue of fact, then such statement should be considered to be part of HIP's statement of issues of fact that remain to be litigated.

## <u>Issues to be Litigated</u>

1.     Whether HIP has established by clear and convincing evidence that David Howard is the sole inventor of claims 1-16 of the '498 Patent.

2.     Alternatively, to the extent the Court finds David Howard is not the sole inventor, whether HIP has established by clear and convincing evidence that Mr. Howard is a co-inventor of one or more of claims 1-16 of the '498 Patent.

3.     Whether the Director of the United States Patent and Trademark Office should be directed to issue a certificate of correction naming Mr. Howard as the sole inventor of the '498 Patent.

4.     To the extent the Court finds Mr. Howard is not the sole inventor, whether the Director of the United States Patent and Trademark Office should be directed to issue a certificate of correction naming Mr. Howard as a co-inventor.

5.      Whether Hormel should be Ordered to assign the '498 Patent to HIP.

6.      Whether HIP has standing to bring this lawsuit to compel assignment of the '498 Patent to HIP based on correction of inventorship of the '498 Patent where the Assignment from Mr. Howard to HIP on May 29, 2018 (Exhibit J to the Complaint) establishes that HIP is the owner of the inventorship rights in dispute, HIP and Marlen so agree, Hormel failed to deny HIP has standing to bring this suit, and Hormel failed to show that the Unit Purchase Agreement between Unitherm and Marlen International (including its Disclosure Schedule) is in any way inconsistent with Mr. Howard's May 29, 2018 Assignment to HIP .

## HIP's Citation of Authorities

35 U.S.C. § 256 provides that a person may be substituted as the named inventor in place of the listed inventors. ("Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all of the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error."). "Section 256 grants district courts the power to correct the addition of a non-inventor or the omission of an inventor in an issued patent." *Fina Technology Inc., v. Ewen*, 265 F.3d 1325, 1328 (Fed. Cir. 2001); *accord Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1308-09 (Fed. Cir. 2003) (affirming damages award on second appeal after district court corrected inventorship with complete change of inventors); *see also* 35 U.S.C. § 256(b) ("The court . . . may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.").

## I.      Conception

"Determining 'inventorship' is nothing more than determining who conceived the subject matter at issue[] ...." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (*citing Sewall*). Conception "is 'the formation in

the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Burroughs Wellcome Co. v. Barr Labs. Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Conception is "the completion of the mental part" and is complete when an idea is definite enough that one of skill in the art could understand the invention. *Id.* at 1227-28. However, "an inventor need not know that an invention will work [for its intended purpose] for conception to be complete," as verification that an invention actually works is part of its reduction to practice. *Id.* at 1228 (citations omitted); *see also Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 60 (1998) ("The primary meaning of the word 'invention' in the Patent Act unquestionably refers to the inventor's conception rather than to a physical embodiment of that idea.").

Conception, and consequently inventorship, are questions of law premised on underlying facts. *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000); *Sewall*, 21 F.3d at 415. "There is a presumption that the inventors named on an issued patent are correct, so misjoinder [or non-joinder] of inventors must be proven by clear and convincing evidence." *Fina Oil*, 123 F.3d at 1472. "What is required is 'corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention.'" *BJ Services Co. v. Halliburton Energy Services*, 338 F. 3d 1368, 1373 (Fed. Cir. 2003) (quoting *Burroughs Wellcome*, 40 F.3d at 1228).

## II.    Corroboration

"There is no need for proof or corroboration of the subject matter that is included in the application unless a date earlier than the filing date is sought to be established." *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) (citation omitted) (Applicant has burden to prove the application is entitled to a date earlier than the filing date). However, an inventive contribution prior to an

application's filing date must be corroborated. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461-64 (Fed. Cir. 1998); *Burroughs Wellcome*, 40 F.3d at 1228-29 ("Thus, in awarding priority to Smith based on his constructive reduction to practice, the court relied ... on the absence of any evidence to corroborate an earlier conception for either of the parties."). "[A] patentee has a burden to come forward with evidence to prove entitlement to claim priority to a filing date that predates the filing date of the patent." *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 368 (D. Del. Apr. 15, 2015) (citing *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008)) (addressing whether a patentee could claim a priority date earlier than the filing date of the patent in suit to challenge the prior art status of another patent).

Although an inventor must provide independent corroborating evidence in addition to his own statements and documents, corroborating evidence may take many forms and is evaluated under a "rule of reason standard." *See, e.g.*, *Ethicon*, 135 F.3d at 1464 (internal citations omitted); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004). A rule of reason analysis requires that "[a]n evaluation of *all* pertinent evidence [] be made so that a sound determination of the credibility of the [alleged] inventor's story may be reached." *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993). Uncorroborated evidence may be considered as part of the whole in determining the likelihood of the inventor's story. *Id.* at 1196.

Indeed, in *Fairchild*, a case on which Hormel relies in another pleading, the court found the inventor produced sufficiently corroborating documentary evidence although the drawing "only show[ed] 'many' of the" claim elements, because the missing elements were "insubstantial." 100 F. Supp. 3d at 369. Evidence that the missing elements were "insubstantial" included that two of them "were dictated by government standards" and others would have been understood by a person of ordinary skill in the art at the relevant time. *Id.* "[T]here is no final single formula that must be

followed in proving corroboration." *Kridl v. McCormick*, 105 F.3d 1446, 1450 (Fed. Cir. 1997) (citation omitted). No single piece of evidence must completely corroborate the inventor's claims, but the sum of all of the evidence must make the inventor's assertion of conception highly probable. *Price*, 988 F.2d at 1196. Indeed, "evidence **need not** always expressly show possession of the invention to corroborate conception." *Burroughs Wellcome*, 40 F.3d at 1231 (emphasis added).

"[A] tribunal must make a reasonable analysis of all of the pertinent evidence to determine whether the inventor's testimony is credible." *Kridl*, 105 F.3d at 1450. Physical records that were made contemporaneously with the invention are reliable evidence of corroboration. *Trovan*, 299 F.3d at 1302. Sketches made by a co-inventor at the date of conception may corroborate an alleged co-inventor's testimony that he or she was a joint inventor. *Ethicon*, 135 F.3d at 1464. "[C]ircumstantial evidence of an independent nature can satisfy the corroboration rule." *Cooper v. Goldfarb*, 154 F. 3d 1321, 1330 (Fed. Cir. 1998). Oral testimony of someone other than the alleged inventor may corroborate. *Linear Tech.*, 379 F.3d at 1327 ("Additionally, oral testimony from someone other than the alleged inventor may corroborate."). In *Volterra Semiconductor Corp. v. Primarion, Inc.*, the court rejected defendant's argument that the inventor's testimony was not sufficiently corroborated when, in addition to inventor testimony and notebooks, the evidence included "testimony of coworkers who observed the alleged reduction to practice, as well as pictures of the prototype that was tested." 796 F. Supp. 2d 1025, 1073-75 (N.D. Cal. Mar. 8, 2011) (citing *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998)).

"Importantly, '[t]he law does not impose an impossible standard of independence on corroborative evidence by requiring that every point of a reduction to practice be corroborated by evidence having a source totally independent of the inventor; indeed, such a standard is the

antithesis of the rule of reason.'" *Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014) (citation omitted) (discussing prior invention in the context of an invalidity challenge). In *Fleming*, "none of the corroborating evidence constituted definitive proof of [the inventor's] account or discloses each claim limitation as written ... [b]ut the corroboration requirement has never been so demanding." *Id*. That requirement is a "flexible, rule-of-reason demand for independent evidence that, as a whole, makes credible the testimony of the purported prior inventor with regard to conception and reduction to practice of the invention as claimed." *Id*. (citation omitted).

## III.    Joint Inventorship

A joint invention is the product of a collaboration between two or more persons working together to solve the problem addressed. *Falana v. Kent St.*, 669 F.3d 1349, 1357 (Fed. Cir. 2012); 35 U.S.C. § 116. To constitute a joint invention, it is necessary that each of the inventors works on the same subject matter and makes some contribution to the inventive thought and to the final result. There is, however, "no explicit lower limit on the quantum or quality of inventive contribution required for a person to establish joint inventorship." *See Fina Oil*, 123 F.3d at 1473. Each needs to perform only a part of the task if an invention emerges from all of the steps taken together. It is not necessary that the entire inventive concept should occur to each of the joint inventors, or that they should all physically work on the project together. One may take a step at one time, the other an approach at different times. One may do more of the experimental work while the other makes suggestions from time to time. The fact that each of the inventors plays a different role and that the contribution of one may not be as great as that of another does not detract from the fact that the invention is joint if each makes some original contribution, though partial, to the final solution of the problem. *Kimberly-Clark Corp. v. Procter & Gamble, Inc.*, 973 F.2d 911, 916-17 (Fed. Cir. 1992) (citing *Monsanto Co. v. Kamp*, 269 F. Supp. 818, 824 (D.D.C. 1967)); *accord Dana-Farber Cancer*

*Inst. v. Ono Pharm. Co*., 964 F.3d. 1365, 1371-72 (Fed. Cir. 2020). Corroborating evidence also is required for claims of co-inventorship. *Fina Oil*, 123 F.3d at 1474.

Because each claim in a patent presumably sets forth a separate invention and a co-inventor is not required to make a contribution to every claim in the patent, "inventorship is determined on a claim-by-claim basis." *Trovan,* 299 F.3d at 1302. "Because conception is the touchstone of inventorship, each joint inventor must generally contribute to the conception of the invention." *Ethicon*, 135 F.3d at 1460 (internal quotations omitted). The contribution to conception must be of subject matter that appears in the claim, but the contribution need not be of an entire claim. *Id*. at 1462-63 (contributing two features of claim 33, "part of the invention recited in claim 33," made Choi a co-inventor).

The putative Hormel inventors do "not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Id*. at 1460 (citations omitted); *accord Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624 (Fed. Cir. 1985)* ("An inventor 'may use the services, ideas and aid of others in the process of perfecting his invention without losing his right to a patent.'" (quoting *Hobbs v. U.S. Atomic Energy Comm'n., 451 F.2d 849, 864 (5th Cir. 1971))*. Efforts to move an invention into "a commercially satisfactory stage of development" are after-the-fact activities and do not constitute relevant contributions to conception or reduction to practice. *Pfaff v. Wells Electronics, Inc*. 124 F.3d 1429, 1435 (Fed. Cir. 1997), *aff'd* 525 U.S. 55 (1998) (quoting *In re Dardick*, 496 F.2d 1234, 1238 (CCPA 1974)). Running additional tests after learning of another's conception is derivation, not invention. 35 U.S.C. § 102(f) (2006); *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1333 (Fed. Cir. 2011).

Although one does not qualify as a co-inventor by making suggestions prior to conception that do not rise to the level of an inventive contribution, what prior art patents allegedly suggest to

a skilled artisan is not "well-known principles" or mere "state of the art" and does not negate an inventorship dispute. *See, e.g.*, *Dana-Farber*, 964 F.3d at 1371-72 (explaining inventorship does not turn on whether a putative inventor's contribution is nonobvious, or even novel); *Burroughs Wellcome*, 40 F.3d at 1232 (obviousness of method claims is "irrelevant to the question" of when conception occurred). Information published in textbooks is of the type qualifying as mere "state of the art." *Hess v. Advanced Cardiovascular Systems, Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997) ("The principles ... were well known and found in textbooks.")

In *Dana-Farber*, Ono Pharmaceutical asked the Federal Circuit to adopt a categorical rule that research made public before the date of conception of a total invention cannot qualify as a significant contribution, presumably because it had become the current state of the art. The court rejected that argument, explaining that "publication of a portion of a complex invention does not necessarily defeat joint inventorship of that invention, and it does not here." *Id*. at 1373. *Dana-Farber* also held that the fact the putative co-inventors' patent application had previously published and the claimed invention issued over it did not preclude an inventorship dispute. *Id*. at 1371-72.

*Dana-Farber* is also relevant in its rejection of the argument that novelty or non-obviousness must be established for there to be an inventive contribution. There, a provisional application had been filed by the two individuals who asserted they were co-inventors of Ono's patents. Ono argued that the contributions of the two individuals in the provisional application could not be significant contributions to conception because the Ono patents had issued over the provisional application. The Federal Circuit first noted that it was unclear whether the two individuals' contributions to the inventions in the Ono patents were "co-extensive with the disclosure of their provisional application." *Id*. at 1372. "Regardless, joint inventorship does not

8

depend on whether a claimed invention is novel or nonobvious over a particular researcher's contribution." *Id.*; *accord Burroughs Wellcome*, 40 F.3d at 1231-32 ("For conception, we look not to whether one skilled in the art could have thought of the invention, but whether the alleged inventors actually had in their minds the required definite and permanent idea.").

Obviousness invalidity is about the claims of the patent, not the subject matter disclosed in the written description. *See, e.g., Graham v. John Deere Co.,* 383 U.S. 1, 15-18 (1966). Mr. Howard's disclosures to Hormel were not limited to the claims of the '610 Patent, but included everything disclosed in the entirety of the written description.

## IV.    Issue Preclusion

Issue preclusion prevents Hormel from offering "evidence" or opinions inconsistent with the following previously-adjudicated facts against Hormel: (1) Mr. Howard conceived of and disclosed his "Unitherm Process"[1] to Hormel prior to September 25, 2007 (which also precludes Hormel from offering evidence or opinions or that Mr. Howard fabricated evidence of his inventive work to predate September 25, 2007), (2) Mr. Howard's disclosure of the Unitherm Process to Hormel induced Hormel to enter into the parties Joint Development Agreement ("JDA") on September 25, 2007; and (3) no Hormel employee made an inventive contribution to U.S. Patent No. 9,510,610 (the "'610 Patent"). *See Burlington N. R.R. v. Hyundai Merch. Marine Co*., 63 F.3d 1227, 1232 (3d Cir. 1995).

There are four requirements for issue preclusion: (1) the issue must be identical to an issue previously adjudicated; (2) the issue must have been actually litigated; (3) the determination of the

---

[1] The Minnesota district court defined "Unitherm Process" as the process Mr. Howard invented for cooking sliced bacon in a spiral oven, explaining that "Unitherm "filed a patent application for the Unitherm Process on January 11, 2008." *Unitherm Food Sys., Inc. v. Hormel Foods Corp.*, C,A. No. 14-4034 (JNE/BRT), 2016 WL 4005649, at **1-2 (D. Minn. July 25, 2016), *aff'd sub nom. HIP, Inc. v. Hormel Foods Corp*., 888 F.3d 334 (8th Cir. 2018). The '610 Patent claims priority to that January 11, 2008 application.

issue must have been necessary to the prior judgment; and (4) the party against whom preclusion is now asserted must have had a full and fair opportunity to litigate the issue. *See, e.g., Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001); *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). All four factors are present here.

Application of issue preclusion is appropriate even though neither the '610 Patent nor the '498 Patent issued until after the district court entered final judgment in the Minnesota litigation. This is because of the difference between claim preclusion and issue preclusion. "Issue preclusion, also known as collateral estoppel, bars the re-litigation **of an issue of fact or law** that was previously litigated and decided." *Henglein*, 260 F.3d at 209 (emphasis added); *see also Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d. 357, 364 (D. Del. 2015) (applying issue preclusion against new claims). These factual issues recited above that were finally decided in the Minnesota litigation are also subsidiary factual issues relevant to this correction of inventorship action that cannot be challenged or relitigated here.

## IV. Standing

As a matter of law, Hormel has waived any challenge to standing because HIP pled it had "standing," and Hormel's answer not only did not deny HIP's specific allegation, but also admitted that Complaint Exhibit J "purports to be an assignment" from Mr. Howard to HIP "of all rights in the '498 Patent." D.I. 21, ¶ 1; D.I. 33, ¶ 1. Fed. R. Civ. P. 8(b)(6) (an allegation other than one relating to the amount of damages "is admitted if a responsive pleading is required and the allegation is not denied); *Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d. 575, 58182 (D. Del. 2015)(quoting rule but allowing party to amend its answer because the case was in its early stage). While a court may *sua sponte* consider standing, *see United States v. Hays*, 515 U.S. 737, 742 (1995); *American Auto. Ins. Co. v. Murray*, 658 F.3d 311, 319 n.5 (3d Cir. 2011); *Diggs v. Dep't Hous. &*

10

*Urb. Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011) (cases cited by Hormel, all of which provide examples of courts reviewing standing *sua sponte*), Hormel cannot do so because of its admission by failure to deny.

There is no reason for the Court *sua sponte* to do so. Even if the issue of standing were not already decided in HIP's favor based on Hormel's Answer, Mr. Howard's May 29, 2018 Assignment, which Hormel admits "appears to be genuine," bears the same date as the issue date of the '498 Patent and establishes HIP has standing. The Unit Purchase Agreement ("Agreement") between HIP (then Unitherm) and Marlen International ("Marlen") did not convey to Marlen in 2017 the ownership/inventorship rights that HIP is pursuing in this action. As Hormel itself explained to this Court, under the Agreement "HIP retained two assets," one of which was "[a]ll claims and rights of the Hormel lawsuit in the District of Minnesota." D.I. 75 at 1. Those "claims and rights" included disputes over ownership of patent applications that became the '610 and '498 Patents. The claims in both lawsuits were and are about ownership of intellectual property rights. Hormel has failed to identify any document that conveyed to Unitherm prior to August 18, 2017 the rights Mr. Howard conveyed to HIP in the 2018 Assignment. Under Delaware law, which governs the Agreement, a contract is construed as a whole, giving effect to the parties' intentions. *See, e.g., Northwestern Nat'l Ins. v. Esmark*, 672 A.2d 41, 43 (Del. 1996). Further, contract construction is purely a question of law. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). The Assignment is clear on its face and the Agreement is consistent with the Assignment.

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HIP, INC.,                                    )
                                              )
            Plaintiff,                        )
                                              )   C.A. No. 1:18-cv-00802-CFC-SRF
      v.                                      )
                                              )
HORMEL FOODS CORPORATION,                     )
                                              )
            Defendant.                        )
                                              )

## EXHIBIT 5

## HORMEL'S STATEMENT OF CONTESTED ISSUES OF LAW

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

# **TABLE OF CONTENTS**

ISSUES OF LAW TO BE LITIGATED ................................................................2

I.  ISSUES OF SOLE INVENTORSHIP TO BE LITIGATED........................2

II.  ISSUES OF JOINT INVENTORSHIP TO BE LITIGATED......................3

III.  STANDING ISSUE................................................................................4

LEGAL AUTHORITY ....................................................................................4

I.  CORRECTION OF INVENTORSHIP .......................................................4

II.  CONCEPTION ........................................................................................6

III.  SOLE INVENTORSHIP .........................................................................8

IV.  CORROBORATION................................................................................9

V.  JOINT INVENTORSHIP ........................................................................11

VI.  STANDING.............................................................................................15

i

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*American Auto. Ins. Co. v. Murray*,
  658 F.3d 311 (3d. Cir. 2011)................................................................15

*Amgen, Inc. v. Chugari Pharm. Co.*,
  927 F.2d 1200 (Fed. Cir. 1991) ...........................................................7

*Beriont v. GTE Labs. Inc.*,
  601 F. App'x 937 (Fed. Cir. 2015) .....................................................10

*Bd. of Educ. v. Am. BioSci., Inc.*,
  333 F.3d 1330 (Fed. Cir. 2003) ...........................................................5

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
  563 U.S. 776 (2011)............................................................................15

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
  40 F.3d 1223 (Fed. Cir. 1994)...................................................... passim

*CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*,
  57 F. Supp. 3d 118 (D. Mass. 2014) .....................................................8

*CODA Dev. s.r.o. v. Goodyear Tire & Rubber Co.*,
  916 F.3d 1350 (Fed. Cir. 2019) .................................................. 4, 5, 8

*Cordance Corp. v. Amazon.com, Inc.*,
  658 F.3d 1330 (Fed. Cir. 2011) ...........................................................8

*Dana-Farber Cancer Institute, Inc. v. Ono Pharm. Co., Ltd.*,
  964 F.3d 1365 (Fed. Cir. 2020) .........................................................12

*Diggs v. Dep't Hous. & Urb. Dev.*,
  670 F.3d 1353 (Fed. Cir. 2011) .........................................................15

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) .........................................................12

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

*Ethicon, Inc. v. U.S. Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998) ....................................................................8, 12

*Falana v. Kent State Univ.*,
  669 F.3d 1349 (Fed. Cir. 2012) .................................................... 13, 14

*Fina Oil & Chem. Co. v. Ewen*,
  123 F.3d 1466 (Fed. Cir. 1997) ............................................... 9, 12, 14

*Future Fibre Techs., Pty. Ltd. v. Optellios, Inc.*,
  C.A. No. 09-346, 2011 WL 3563341 (D. Del. Aug. 15, 2011) ............................5

*Hess v. Adv. Cardiovascular Sys., Inc.*,
  106 F.3d 976 (Fed. Cir. 1997).....................................................................5, 13

*HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*,
  600 F.3d 1347 (Fed. Cir. 2010) ............................................................5

*Hyatt v. Boone*,
  146 F.3d 1348 (Fed. Cir. 1998) .........................................................10

*Kimberly-Clark Corp. v. Proctor & Gamble Distrib. Co., Inc.*,
  973 F.2d 911 (Fed. Cir. 1992)..............................................................14

*Kridl v. McCormick*,
  105 F.3d 1446 (Fed. Cir. 1997) .........................................................11

*Larson v. Correct Craft, Inc.*,
  569 F.3d 1319 (Fed. Cir. 2009) .........................................................16

*Linear Tech. Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004) ................................................. 10, 14

*Maxtech Consumer Prod., Ltd. v. Robert Bosch Tool Corp.*,
  255 F. Supp. 3d 833 (N.D. Ill. 2017)..................................................13

*Price v. Symsek*,
  988 F.2d 1187 (Fed. Cir. 1993) .........................................................10

*Red Carpet Studios v. Midwest Trading Group, Inc.*,
  Case No. 1:12cv501, 2016 WL 5661681 (S.D. Ohio Sept. 30, 2016) ...............16

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
  264 F.3d 1344 (Fed. Cir. 2001) ...................................................................10

*Sewall v. Walters*,
  21 F.3d 411 (Fed Cir. 1994)............................................................... 6, 9, 13

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
  758 F.2d 613 (Fed. Cir. 1985)....................................................................14

*Singh v. Brake*,
  222 F.3d 1362 (Fed. Cir. 2000) ................................................................8, 9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...............................................................................15

*Trireme Med., LLC v. Angioscore, Inc.*,
  812 F.3d 1050 (Fed. Cir. 2016) ............................................................ 15, 16

*Trovan, Ltd. v. Sokymat SA, Irori*,
  299 F.3d 1292 (Fed. Cir. 2002) ...................................................................6

*United States v. Hays*,
  515 U.S. 737 (1995)....................................................................................15

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*,
  573 F.3d 1290 (Fed. Cir. 2009) ....................................................................9

*Woodland Trust v. Flowertree Nursery, Inc.*,
  148 F.3d 1368 (Fed. Cir. 1998) ..................................................................11

**Statutes**

35 U.S.C. § 256............................................................................... 4, 5, 15

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

## <u>HORMEL'S STATEMENT OF CONTESTED ISSUES OF LAW</u>

Pursuant to Local Rule 16.3(c)(5), Defendant Hormel Foods Corporation respectfully submits the following issues of law that remain to be litigated and a citation of representative authorities relied upon.  Hormel's submission is based, in part, on its current understanding of the positions of Plaintiff HIP, Inc. and the proceedings in this action to date.  The following statements are not exhaustive, and Hormel reserves the right to argue any matters identified in its pleadings, interrogatory responses, and/or expert reports.  Hormel also reserves the right to amend, modify, or supplement this Statement to the extent necessary to fairly reflect the Court's rulings on any pending motions, the Court's resolution of any evidentiary issues, various other subsequent orders of the Court, agreements of the parties, after consideration of HIP's submissions and any amendments or supplementation, and/or other developments in the case.  In addition, to the extent that HIP intends or attempts to introduce different or additional legal arguments to those identified below, Hormel reserves the right to contest those legal arguments and to present rebuttal evidence in response to those arguments without being bound by this Statement.

To the extent Exhibit 3 contains issues of law, those issues are incorporated herein by reference.  Likewise, to the extent any issue identified in this Statement

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

is more appropriately considered an issue of fact, Hormel incorporates such issue

by reference into Exhibit 3.  By including an issue herein, Hormel does not assume

the burden of proof or production on that issue.  HIP bears the burden of proof with

respect to correction of inventorship.

<u>ISSUES OF LAW TO BE LITIGATED</u>

**I.      ISSUES OF SOLE INVENTORSHIP TO BE LITIGATED**

a.      Whether HIP has established by clear and convincing evidence that

David Howard alone conceived of every element of claims 1-16 of Hormel's '498

Patent.

b.      Whether David Howard's testimony regarding his alleged conception

of every element of claims 1-16 of Hormel's '498 Patent is sufficiently

corroborated by independent evidence of a contemporaneous disclosure that would

have enabled one skilled in the art to make the inventions claimed in Hormel's

'498 Patent without extensive research or experimentation.

c.      Whether HIP has established by clear and convincing evidence that

the named inventors on Hormel's '498 Patent did not contribute to the conception

of any element of any claim of Hormel's '498 Patent.

d.      Whether HIP has established by clear and convincing evidence that

David Howard disclosed his alleged conception of every element of claims 1-16 of

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

Hormel's '498 Patent to Hormel prior to the named inventors' conception of the inventions claimed in Hormel's '498 Patent.

e.       Whether David Howard's testimony regarding his alleged disclosure to Hormel of his alleged conception of every element of claims 1-16 of Hormel's '498 Patent is sufficiently corroborated by independent contemporaneous evidence.

## II.     ISSUES OF JOINT INVENTORSHIP TO BE LITIGATED

a.       Whether HIP has established by clear and convincing evidence that David Howard contributed in some significant manner to the conception of the inventions claimed in Hormel's '498 Patent.

b.       Whether HIP has established by clear and convincing evidence that David Howard's alleged contribution to the conception of the inventions claimed in Hormel's '498 Patent was not already known by Hormel and was not a well-known concept or part of the state of the art.

c.       Whether HIP has established by clear and convincing evidence that David Howard collaborated with the named inventors on Hormel's '498 Patent in the conception of the inventions claimed in Hormel's '498 Patent.

d.       Whether David Howard's testimony regarding his alleged contribution to the conception of the inventions claimed in Hormel's '498 Patent is sufficiently corroborated by independent contemporaneous evidence.

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

## III.   STANDING ISSUE

Whether HIP has standing to bring a correction of inventorship claim where it does not own David Howard's purported inventorship rights related to the '498 Patent, which were previously assigned and sold to Marlen International, Inc.

## LEGAL AUTHORITY

## I.   CORRECTION OF INVENTORSHIP

35 U.S.C. § 256 provides that "[w]henever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error."[1]  "Section 256 addresses two types of inventorship errors—misjoinder and nonjoinder."  *CODA Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019).  "Misjoinder is the error of naming a person as an inventor who is not an inventor; nonjoinder is the error of omitting an inventor."  *Id.*  "Through claims of misjoinder and nonjoinder together,

---

[1] HIP identifies three "issues to be litigated" regarding what will occur with respect to Hormel's '498 Patent if HIP is successful on its sole or joint inventorship claims.  These are not, however, issues that need to be litigated at trial.  35 U.S.C. § 256 is clear that if HIP succeeds on either one of its claims, the Director will issue the appropriate certificate of correction.  Under either circumstance, Hormel will not be ordered to assign the '498 Patent to HIP.  HIP cites no authority to support any contrary position.

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

§ 256 allows complete substitution of inventors." *Id*.

"[A] claim seeking correction of inventorship under 35 U.S.C. § 256 cannot exist until the issuance of the patent." *Future Fibre Techs., Pty. Ltd. v. Optellios, Inc.*, C.A. No. 09-346, 2011 WL 3563341, at *5 (D. Del. Aug. 15, 2011) (citing *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1353-54 (Fed. Cir. 2010)).[2] "Because the issuance of a patent creates a presumption that the named inventors are the true and only inventors, the burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence." *Bd. of Educ. v. Am. BioSci., Inc.*, 333 F.3d 1330, 1337 (Fed. Cir. 2003) (citations omitted). "[T]he temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what their state of mind may have been years earlier, is simply too great to permit a lower standard." *Hess v. Adv. Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (quotations and citation omitted).

"An inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each [ ] claim to determine the subject matter

---

[2] HIP does not identify any legal issue pertaining to issue preclusion that remains to be litigated, but it includes a section on issue preclusion in its citation of authorities.  Issue preclusion cannot apply in this case because the '498 Patent did not exist during the previous litigations between the parties, and therefore, inventorship could not have been decided.

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

encompassed thereby." *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302

(Fed. Cir. 2002) (citation omitted).  The second step is to compare the alleged

conception "with the subject matter of the properly construed claim to then

determine whether the correct inventors were named."  *Id.* (citation omitted).

## II.   CONCEPTION

"Conception is the touchstone of inventorship, the completion of the mental

part of invention." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223,

1227-28 (Fed. Cir. 1994) (citation omitted).  "Conception exists when a definite

and permanent idea of an operative invention, including every feature of the

subject matter sought to be patented, is known." *Sewall v. Walters*, 21 F.3d 411,

415 (Fed Cir. 1994) (citation omitted); *see also Burroughs*, 40 F.3d at 1228

("[Conception] is the formation in the mind of the inventor, of a definite and

permanent idea of the complete and operative invention, as it is hereafter to be

applied in practice." (quotations and citation omitted)).  "An idea is definite and

permanent when the inventor has a specific, settled idea, a particular solution to the

problem at hand, not just a general goal or research plan he hopes to pursue."

*Burroughs*, 40 F.3d at 1228 (citations omitted).  "Conception is complete only

when the idea is so clearly defined in the inventor's mind that only ordinary skill

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

would be necessary to reduce the invention to practice, without extensive research or experimentation." *Id.* (citations omitted).

"The conception analysis necessarily turns on the inventor's ability to describe his invention with particularity." *Id.* "Until he can do so, he cannot prove possession of the complete mental picture of the invention." *Id.* "These rules ensure that patent rights attach only when an idea is so far developed that the inventor can point to a definite, particular invention." *Id.* at 1228.

For these reasons, "an inventor can never conceive of an invention in an unpredictable or experimental field until reduction to practice." *Id.* at 1229; *see also Amgen, Inc. v. Chugari Pharm. Co.*, 927 F.2d 1200, 1206 (Fed. Cir. 1991) ("In some instances, an inventor is unable to establish a conception until he has reduced the invention to practice through a successful experiment."). "Under these circumstances, the reduction to practice can be the most definitive corroboration of conception, for where the idea is in constant flux, it is not definite and permanent." *Burroughs*, 40 F.3d at 1229. "A conception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice."

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

*Id.* (citations omitted). "It is this factual uncertainty, not the general uncertainty surrounding experimental sciences, that bears on the problem of conception." *Id.*

Finally, "[c]onception must be proven by evidence showing what the inventor has disclosed to others and what that disclosure means to one of ordinary skill in the art." *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334 (Fed. Cir. 2011) (finding failure to prove conception because "Cordance failed to link any disclosure contained within the 1993 conception document to any limitations in the asserted claims of the '710 Patent as construed by the district court").

## III.   SOLE INVENTORSHIP

To succeed on a claim for sole inventorship and obtain complete substitution of inventors, the alleged sole inventor must prove both nonjoinder and misjoinder by clear and convincing evidence. *See CODA*, 916 F.3d at 1358.

A purported sole inventor must prove that his or her alleged conception "encompass[ed] all limitations of the claimed invention." *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000); *see also CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 122 (D. Mass. 2014) (explaining that an alleged sole inventor "must ultimately prove that [he or she] conceived every element of every claim in the patent") (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (explaining that "[t]he conceived invention must include every feature

8

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

of the subject matter claimed in the patent")); *Sewall*, 21 F.3d at 415 (quoted above at page 6).

With respect to nonjoinder, an alleged sole inventor "must also show that the persons to be removed did not contribute to the invention of any of the allowed claims." *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009). Under these circumstances, "[c]onception and reduction to practice of the entire claimed invention may be relevant to establish that a first person conceived of an invention before another person entered the scene, and that the first person is therefore the sole inventor." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1474 (Fed. Cir. 1997).

## IV. CORROBORATION

"It is well-established that when a party seeks to prove conception via the oral testimony of a putative inventor, that party must proffer evidence corroborating that testimony." *Singh*, 222 F.3d at 1367 (citations omitted). "This rule addresses the concern that a party claiming inventorship may be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent . . . ." *Id*. (citations omitted). Thus, "without some type of corroborating evidence, an alleged inventor's testimony cannot satisfy the 'clear and convincing

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

evidence' standard." [3]  *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).  The

corroboration requirement applies both to Mr. Howard's alleged conception and

his alleged disclosure of his conception to Hormel.  *Id.* at 1196 ("As with the

conception element of Price's case, corroboration is required to support his

testimony regarding communication" of "his conception to Symsek."); *see also*

*Beriont v. GTE Labs. Inc.*, 601 F. App'x 937, 940 (Fed. Cir. 2015) (finding that

alleged sole inventor's testimony that he disclosed the invention to the named

inventor was insufficient because it was not corroborated).

"[C]ourts require corroborating evidence of a contemporaneous disclosure

that would enable one skilled in the art to make the invention." *Burroughs*, 40

F.3d at 1228 (citation omitted).  "Reliable evidence of corroboration preferably

comes in the form of records made contemporaneously with the inventive

process." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed.

Cir. 2004); *see also Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d

1344, 1350-51 (Fed. Cir. 2001) ("Documentary or physical evidence that is made

---

[3] In its Statement of Contested Issues of Law, HIP misleadingly cites to *Hyatt v. Boone*, 146 F.3d 1348 (Fed. Cir. 1998) to imply that corroboration of Mr. Howard's testimony is not required in this case.  *Hyatt*, however, explains that "[t]he filing of a patent application serves as conception and constructive reduction to practice" with respect to the *applicant*.  *Id.* at 1352.  Because Mr. Howard did not apply for the '498 Patent, the cited portion of *Hyatt* has no relevance here.

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

contemporaneously with the inventive process provides the most reliable proof that

the inventor's testimony has been corroborated.").  While the oral testimony of

someone other than the inventor can serve as corroborating evidence, "there is a

very heavy burden to be met . . . when the only evidence is the oral testimony of

interested persons and their friends, particularly as to long-past events." *Woodland*

*Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998)

(identifying an eight-factor test for assessing corroborating testimony, including

the relationship between the corroborating witness and alleged inventor, the time

period between the event and the testimony, contradiction of the witness'

testimony, and the extent and details of the corroborating testimony).

The Court "must make a reasonable analysis of all of the pertinent evidence

to determine whether the inventor's story is credible." *Kridl v. McCormick*, 105

F.3d 1446, 1450 (Fed. Cir. 1997) (citation omitted).  The Court "must also bear in

mind the purpose of corroboration, which is to prevent fraud, by providing

independent confirmation of the inventor's testimony." *Id*. (citations omitted).

## V.   JOINT INVENTORSHIP

"A joint invention is the product of a collaboration between two or more

persons working together to solve the problem addressed." *Burroughs*, 40 F.3d at

1227 (citations omitted).  "[T]he qualitative contribution of each collaborator is the

11

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

key—each inventor must contribute to the joint arrival at a definite and permanent

idea of the invention as it will be used in practice." *Id*. at 1229. "The case law

thus indicates that to be a joint inventor, an individual must make a contribution to

the conception of the claimed invention that is not insignificant in quality, when

that contribution is measured against the dimension of the full invention." *Fina*

*Oil*, 123 F.3d at 1473.

    "One who simply provides the inventor with well-known principles or

explains the state of the art without ever having a 'firm and definite idea' of the

claimed combination as a whole does not qualify as a joint inventor." *Ethicon,* 135

F.3d at 1460 (citation omitted); *see also Eli Lilly & Co. v. Aradigm Corp.*, 376

F.3d 1352, 1362 (Fed. Cir. 2004) ("A contribution of information in the prior art

cannot give rise to joint inventorship because it is not a contribution to

conception." (citation omitted)); *Dana-Farber Cancer Institute, Inc. v. Ono*

*Pharm. Co., Ltd.*, 964 F.3d 1365, 1372 (Fed. Cir. 2020) ("It is certainly true that

simply informing another about the state of the prior art does not make one a joint

inventor.").[4]  One also cannot be a joint inventor by contributing information that

"added nothing to an idea the named inventors already had or was, at best,

---

[4] Hormel disagrees with HIP's characterization of the *Dana-Farber* case, which is
factually distinguishable from this case.

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

marginally helpful in realizing its benefits." *Maxtech Consumer Prod., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 848 (N.D. Ill. 2017) (citing cases and explaining that a purported co-inventor's contribution must not be "insignificant in quality").

Thus, one does not become a joint inventor simply by "showing [the inventors] available product, telling [the inventors] its properties, telling [the inventors] how it could be used, and how it might be used," which is "no more than a skilled salesman would do in explaining how his employer's product could be used to meet a customer's requirements." *Hess*, 106 F.3d at 981; *see also Falana v. Kent State Univ.*, 669 F.3d 1349, 1358 (Fed. Cir. 2012) ("Once the method of making the novel genus of compounds becomes public knowledge, it is then assimilated into the storehouse of knowledge that comprises ordinary skill in the art.").[5]

"Joint inventorship arises only when collaboration or concerted effort occurs—that is, when the inventors have some open line of communication during

---

[5] HIP cites *Hess* to imply that information must be published in textbooks in order to be the "state of the art." This is not what *Hess* says and is not the standard. *See* 106 F.3d at 981. HIP also represents that prior art patents do not qualify as "well-known principles" or "state of the art." This is incorrect. *See, e.g.*, *Falana*, 669 F.3d at 1358 (quoted above); *Sewall*, 21 F.3d at 416 (no joint inventorship where named inventor built off method already disclosed by would-be joint inventor in prior art patent).

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

or in temporal proximity to their inventive efforts." *Falana*, 669 F.3d at 1358 (internal quotations and citation omitted); *see also Fina Oil*, 123 F.3d at 1472 ("One need not alone conceive of the entire invention, for this would obviate the concept of joint inventorship."); *Kimberly-Clark Corp. v. Proctor & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992) ("Individuals cannot be joint inventors if they are completely ignorant of what each other has done until years after their individual independent efforts.  They cannot be totally independent of each other and be joint inventors.").  However, "an inventor may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent." *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) (internal quotations and citation omitted).

"Of course, every putative inventor must [] provide corroborating evidence of any asserted contributions to the conception of the invention." *Fina Oil*, 123 F.3d at 1274.  "Like conception of the entire invention, a contribution to the conception is a mental act which cannot be accurately verified without corroboration." *Id*. (citations omitted).  Thus, "[t]o meet the clear and convincing evidentiary burden, the alleged co-inventors must prove their contribution to the conception with more than their own testimony concerning the relevant facts." *Linear Tech.*, 379 F.3d at 1327 (citations omitted).

14

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

## VI.   STANDING

To have Article III standing, HIP has the burden to establish that it has

"(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct

of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May

24, 2016).  Standing in an inventorship dispute under 35 U.S.C. § 256 is a question

of law.  *See Trireme Med., LLC v. Angioscore, Inc.*, 812 F.3d 1050, 1052 (Fed. Cir.

2016).   A defect in standing may be raised at any time, and neither waiver,

estoppel, nor the parties' consent may overcome it.  *United States v. Hays*, 515

U.S. 737, 742 (1995); *American Auto. Ins. Co. v. Murray*, 658 F.3d 311, 319 n.5

(3d. Cir. 2011); *Diggs v. Dep't Hous. & Urb. Dev.*, 670 F.3d 1353, 1355 (Fed. Cir.

2011).

At the outset, "an inventor owns the rights to his invention."  *Bd. of Trustees

of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 790

(2011).  However, once an inventor assigns away his rights to a patent, he no

longer has a "concrete financial interest in the patent" that would support standing

in a correction of inventorship action.  *Trireme Med.*, 812 F.3d at 1053.  Moreover,

once an inventor assigns his rights to one company, his later attempt to assign

those rights to a second company does not give the second company standing to

EXHIBIT 5
Hormel's Statement of Contested Issues of Law

correct inventorship.  *Id.*; *see also Larson v. Correct Craft, Inc.*, 569 F.3d 1319,

1327 (Fed. Cir. 2009); *Red Carpet Studios v. Midwest Trading Group, Inc.*, Case

No. 1:12cv501, 2016 WL 5661681, at *3 (S.D. Ohio Sept. 30, 2016).

71526168

16

# EXHIBIT 6

*HIP, Inc. v. Hormel Foods Corporation* , C.A. No. 18-802 (CFC) (SRF)

## HIP, Inc.'s Trial Exhibit List

| PTX | Description | Date | Bates Nos. | Deposition Exhibit No. | Objections |
|---|---|---|---|---|---|
| 1 | Moved to JTX | | | | |
| 2 | Assignment from David Howard to HIP, Inc. of all rights in the '498 Patent | 05/29/18 | | Complaint Ex. J; HIP 30(b)(6) Dep. Ex. 2 | FRE 801-802; 602; 901(a) |
| 3 | Selected pages from Unit Purchase Agreement and Schedule 1.1(b) (Retained Assets and Retained Liabilities) | 08/18/17 | HIP2796-800, HIP2857-62, HIP2871, HIP2895-96 | N/A | FRE 106; 602; 801-802; 901(a) |
| 4 | Transmittal of just-filed patent application that lead to the '610 patent Herreid and Marco (Hormel in-house counsel) | 01/14/08 | Unitherm.242-270 | Dep. Ex. No. 47 (12/4/19)(Hendrickson); Herreid Ex. 82 | FRE 401-403; 602 |
| 5 | Marco transmittal just-filed patent application Michael Mau (outside patent counsel for Hormel) | 1/14/08-1/15/08 | HFC7161 | Hormel 30(b)(6) Dep. ex. 117 | FRE 401-403; 602 |
| 6 | U.S. Patent No. 6,622,513 | 09/23/03 | IPR Ex. 2012F | N/A | FRE 401-403 |
| 7 | U.S. Patent No. 6,675,589 | 01/13/04 | IPR Ex. 2012G | N/A | FRE 401-403 |
| 8 | "Invention Disclosure Data Sheet" | 1993/94 | Unitherm.1563-73 | Howard Ex. 4 (5/10/19); HIP 30(b)(6) Dep. Ex. 7; HIP 30(b)(6) Dep. Ex. 38 | FRE 801-802; 805; 901 |
| 9 | Howard 2004 Handwritten Sketch showing and describing components of invention | 2004 | Unitherm.1184-85 | Howard Ex. 7 (5/10/19); HIP 30(b)(6) Dep. Ex. 8 | FRE 801-802; 805; 901(a) |
| 10 | drawing SA_0741 (referenced in Ex. 9) | 9/20/04 (revision date) | Unitherm.1591 | N/A | FRE 401-403; 602 |
| 11 | video of Unitherm of Unitherm spiral oven cooking sliced bacon | 2006 | HIP3007 | Bernheimer Dep. Ex. 6 | FRE 401-403; 602; 801-802; 805; 901(a); 1002 |
| 12 | video of Unitherm spiral oven cooking sliced bacon | 04/28/06 | Unitherm.86 | Bernheimer Dep. Ex. 7; HIP 30(b)(6) Dep Ex. 9 | FRE 401-403; 602; 801-802; 805; 901(a); 1002 |
| 13 | video of Unitherm spiral oven cooking sliced bacon | 2006 or 2007 | HIP3006 | Bernheimer Dep. Ex. 8; | FRE 401-403; 602; 801-802; 805; 901(a); 1002 |
| 14 | email to Joe Rosa (Mohawk) describing Unitherm plan to cook bacon that Friday and asking about shipping of cooked product | 04/20/06 | Unitherm.56598 | N/A | FRE 401-403 |
| 15 | UPS shipment detail report shipping cooked sliced bacon to Mohawk from Unitherm | 04/24/06 | Unitherm.56590 | N/A | FRE 401-403 |
| 16 | Confidentiality Agreement between Unitherm and Mohawk Packing Co. | 05/04/06 | Unitherm.1560-62 | N/A | FRE 401-403 |
| 17 | Howard handwritten "bacon memo" documenting cooking results | 05/04/06 | Unitherm.750-57 | Dep. Ex. 130 | FRE 801-802; 805; 901(a) |
| 18 | typed bacon memo (black and white dated photos) | 05/04/06 | Unitherm.742-749 | Dep. Ex. 4 (Van Doorn) | FRE 801-802; 805; 901(a) |
| 19 | typed bacon memo (color dated photos) | 05/04/06 | Unitherm.6-13 | N/A and Dep. Ex. 27 (Van Doorn) | FRE 801-802; 805; 901(a) |
| 20 | color dated photos and accompanying metadata regarding sliced bacon cooked at Unitherm on 5/4/06 | 05/04/06 | Unitherm.37954-58 | Bernheimer Dep. Ex. 103 | FRE 801-802; 805; 901(a); 602; 1002 |
| 21 | Howard sliced bacon test data | 05/08/06 | Unitherm.056695-96 | N/A | FRE 401-403; 602; 801-802; 805; 901(a) |
| 22 | 5/5/04 proposal from (Bernheimer to Mohawk regarding spiral oven as follow-up to demonstration at Unitherm on 5/4/06 | 05/05/06 | Unitherm.1558-59 | Bernheimer Dep. Ex. 104 | FRE 401-403 |
| 23 | Unitherm Cooking Trial Data Sheet | 05/19/93 | Unitherm.3286 | Dep. Ex. 123 (Howard) | FRE 401-403; 602 |
| 24 | Unitherm "proposal" with data for turkey pieces on RapidFlow oven and microwave and RF preheating options to Swift-Eckrich | 10/16/93 | HIP7446 | Dep. Ex. 124 (Howard) | FRE 401-403; 602; 801-802; 805 |
| 25 | fax cover sheet and Unitherm RapidFlow oven test regarding turkey pieces cooked on a RapidFlow oven to Swift-Eckrich | 10/14/93 | HIP7459-60 | Dep. Ex. 125 (Howard) | FRE 401-403; 602; 801-802; 805 |
| 26 | communication from Unitherm to Swift Eckrich regarding tests of turkey pieces on RapidFlow oven | 10/19/93 | HIP7453 | Dep. Ex. 126 (Howard) | FRE 401-403; 602; 801-802; 805 |
| 27 | AMI - Unitherm/Proctor booth list of live demonstrations | 1993-94 | HIP7445 | Dep. Ex. 127 (Howard) | FRE 401-403; 602; 801-802; 805 |
| 28 | Unitherm letter to Delta Dailyfood Texas, Inc. including reference to IR grill as common to several different methods for cooking rib products | 11/16/98 | Unitherm.36312-4 | Dep. Ex. 128 (Howard) | FRE 401-403 |
| 29 | email letter from Howard to Herreid mentioning successful cooking at Unitherm during each Hormel visit and repeating concern about Hormel disclosure to JBT ("F.M.C.") | 03/12/08 | HFC7273 | N/A | |
| 30 | letter from Howard to Christensen and Herreid including goal to overfill oven space with SHV and extending infeed for pre-temperaing chamber because bacon is sliced at temp to aid slicing | 03/19/08 | Hormel001288 | Dep. Ex. 132 (Howard); Herreid Ex. 87 | |

*HIP, Inc. v. Hormel Foods Corporation* , C.A. No. 18-802 (CFC) (SRF)

HIP, Inc.'s Trial Exhibit List

| PTX | Description | Date | Bates Nos. | Deposition Exhibit No. | Objections |
|---|---|---|---|---|---|
| 31 | Repair Request describing good testing results by Unitherm under JDA and need to keep the technology from Kraft and Cargill by moving forward with Unitherm | 06/23/08 | HFC2144 | Hormel 30(b)(6) Dep. Ex. 119 | |
| 32 | email exchange between Howard and Muller with colored photos of IR test unit being lent to Hormel attached to Howard response | 03/05/09 | Unitherm.4511-16 | Dep. Ex. 133 (Howard) | |
| 33 | Srsen handwritten notes of 7/21/09 meeting at Hormel with Howard and Turner | 07/21/09 | HFC4760 | Dep. Ex. 97 (Srsen) | FRE 401-403 |
| 34 | letter from Howard to Herreid and Muller with color photos and process data for meat pieces preheated in flame griller and cooked in spiral oven and reflecting preheating temperature | 08/18/09 | Unitherm.4429-34 | Dep. Ex. 134 (Howard) | FRE 401-403 |
| 35 | letter from Howard to Mino with colored photos and process data for meat pieces preheated in flame griller and cooked in spiral oven and reflecting preheating temperature | 08/18/09 | Unitherm.500-505; MNLit233 | Dep. Ex. 69 (Mino) | FRE 401-403 |
| 36 | email from Mino to Unitherm re Hormel proposal request for new sausage line | 08/18/09 | Unitherm.4220 and HFC6782 | Dep. Ex. 135 (Howard) and Dep Ex. 70 (Mino) | FRE 401-403 |
| 37 | letter from Howard to Mino responding to 8/18/09 email | 08/21/09 | Unitherm.4222-4235 | Dep. Ex. 136 (Howard) | FRE 401-403 |
| 38 | letter from Howard to John Fischer (Double D Foods) | 11/11/09 | Unitherm.19337-8 | Dep. Ex. 137 (Howard) | FRE 401-403 |
| 39 | Christensen internal email re call with Howard, including Howard's suggestion for using a spiral oven to cook sliced bacon | 7/10/2007 | Hormel009170 | Dep. Ex. 288 (Christensen); Dep. Ex. 258 (Pfeil); Dep. Ex. 50 (Mino) | FRE 801-802 |
| 40 | email transmitting Hormel Mutual Nondisclosure Agreement to Howard | 07/16/07 | Unitherm.3137-40 | Dep. Ex. 292 (Christensen) | FRE 103, 104, 401-403, 602, 611, 801-802, 805 regarding handwritten notes |
| 41 | Moved to JTX | | | | |
| 42 | Moved to JTX | | | | |
| 43 | Hormel internal notes regarding 9/25/07 meeting at Unitherm after signing JDA. | 06/29/05 | Unitherm.142-43; MNLit559-60 | Dep. Ex. 315 (Christensen) | FRE 106 |
| 44 | Notes from conference call to TNO | 04/15/05 | Hormel002478; MNLit797 | Dep. Ex. 148 (Rao) | FRE 401-403; 801-802; 805; 901(a) |
| 45 | Moved to JTX | | | | |
| 46 | Moved to JTX | | | | |
| 47 | Moved to JTX | | | | |
| 48 | email re approval of appropriation request | 07/19/06 | HOrmel002535; MNLit 649 | Dep. Ex. 71 (Herreid) | FRE 401-403 and 602 regarding handwritten notes |
| 49 | letter from Pfeil to Carlstrom and Rao with attached Unitherm brochure he obtained during meeting with Howard and Van Doorn at MPX in Utah | 06/19/07 | HOrmel006676-7 | Dep. Ex. 255 (Pfeil) | |
| 50 | email from Srsen regarding Unitherm Oven Start-up at Hormel | 10/31/08 | Hormel009323-4 | Dep. Ex. 272 (Pfeil) | FRE 401-403 |
| 51 | Defendant's Answers to Plaintiff's First set of Interrogatories | 07/19/19 | | Dep Ex. 30 | FRE 801-802; 805 |
| 52 | internal Hormel email re review of Next Generation Pre-Cooked Bacon, including consensus to go forward working with Unitherm | 10/02/07 | Hormel009152-53 | Dep. Ex. 32(Hendrickson); Dep. Ex. 267 (10/12/15) | |
| 53 | email re Osceola Hybrid Preliminary Energy Costs with criticism of analysis by Srsen | 01/31/12 | Hormel002919 | Dep. Ex. 42 (Hendrickson) | FRE 401-403 |
| 54 | "Invention Disclosure Form" | 06/18/10 | Hormel006153-60 | Dep. Ex. 43 (Hendrickson); Srsen 49 | |
| 55 | Moved to JTX | | | | |
| 56 | email re superheated steam for cooking bacon | 03/09/05 | HFC1750 | Dep. Ex. 59 (Mino) | |
| 57 | email from Herreid with attachment in follow-up to Hormel visit to Unitherm | 09/29/07 | Unitherm.141-43 | Dep. Ex. 15 (Vsn Doorn) (Mino) Srsen); Dep. Ex. 34 (2015); Dep. Ex. 24 (Howard); HIP. 30(b)(6) Dep. E x. 24 (Howard) | |
| 58 | capital request to complete purchase of Unitherm spiral oven | 07/28/09 | Hormel004629-31, MNLit684 | Dep. Ex. 53 (Hendrickson); Herreid Ex. 106 | FRE 401-403 |
| 59 | Pfeil letter attaching Unitherm brochure and describing what he learned during meeting with Howard and Van Doorn | 06/19/07 | HFC2455 | Dep Ex. 49 (Hendrickson)(Mino) | |
| 60 | handwritten notes regarding Unitherm/microwave test | 12/29/09 | HFC2341 | Dep. Ex. 33 (Hendricson)(Mino)(Srsen) | |

*HIP, Inc. v. Hormel Foods Corporation* , C.A. No. 18-802 (CFC) (SRF)

HIP, Inc.'s Trial Exhibit List

| PTX | Description | Date | Bates Nos. | Deposition Exhibit No. | Objections |
|---|---|---|---|---|---|
| 61 | handwritten notes about Amtek | 02/17/10 | HFC2339 | Dep. Ex. 34 (Hendrickson)(Mino)(Srsen) | |
| 62 | power point used by Unitherm for discussion | 1/18/07 [Unitherm.38] | Unitherm.31-68 | Dep. Ex. 18 (Howard); HIP 30(b)(6) Dep Ex. 17 | |
| 63 | pages of Van Doorn handwritten notes selected by Hormel | 07/20/07 | Unitherm.055921-22, 55948, 056008 | Dep Ex. 14 (Van Doorn) | |
| 64 | Rao's handwritten notes of 7/20/07 meeting with Unitherm | 07/20/07 | HFC2454 | Dep. Ex. 67 (Mino) | FRE 801-802; 805; 602; 901(a) |
| 65 | Hormel MXP 2007 Profile (company "K") | 06/29/05 | HFC4262 | Dep. Ex. 20 (Van Doorn) | |
| 66 | Hormel MXP June 2007 profile | 06/01/07 | Unitherm.975-981 | Dep. Ex. 21 (Van Doorn) | |
| 67 | email from Christensen to Van Doorn and Howard re July 20 visit | 07/23/07 | Unitherm.73-76 | Dep.Ex. 22 (Van Doorn) | FRE 801-802 |
| 68 | Hormel rescheduling August 2007 visit to Unitherm to have its key personnel be present | 7/25-7/30/07 | Unitherm.3162-64 | Dep Ex 23 (Van Doorn) | |
| 69 | handwritten Howard sketch regarding inventive process | 2005 | Unitherm.055861 | Dep. Ex. 25 (Van Doorn) | FRE 401-403; 602; 801-802; 805; 901(a) |
| 70 | Van Doorn letter to Mike Yeager, Armour Eckrich proposing use of spiral oven for sausage link product, plus optional equipment including Unitherm IR browning unit. | 05/09/07 | Unitherm.27116-24 | Dep Ex. 26 (Van Doorn) | FRE 401-403 |
| 71 | typed Bacon Memo | 05/04/06 | Unitherm.6-13 | Dep. Ex. 27 (Van Doorn) | FRE 801-802; 805; 901(a) |
| 72 | Moved to JTX | | | | |
| 73 | email transmitting draft Joint Development Agreement from Herreid to Howard | 9/18/1997 | Unitherm.5216-19 | HIP 30(b)(6) dep. Ex. 18; Dep Ex. 19 (Howard) | |
| 74 | email string with Herreid request to cook at 425F | 9/18/2007-9/21/07 | Unitherm. 121-124 | HIP 30(b)(6) Dep. Ex. 20; Dep. Ex. 22 (Howard) | |
| 75 | signed JDA | 09/25/07 | HFC1286 | HIP Dep. Ex. 21; Dep. Ex. 23 (Howard) | |
| 76 | Herreid handwritten notes of Unitherm meeting | 09/25/07 | HFC1017 | Dep. Ex. 82 (Srsen) | |
| 77 | notes by Hormel of demonstrations of Howard bacon cooking process by Howard | 09/25/07 | HFC4522 | HIP 30(b)(6) Dep. Ex. 24 | |
| 78 | data recorded by Hormel of demonstrations of Howard bacon cooking process by Howard | 12/05/07 | HFC4781 | Dep. Ex. 26 (Howard) | |
| 79 | transmittal of notes and data recorded by Hormel of demonstrations of Howard cooking process by Howard | 01/03/08 | Unitherm.4920-39 | Dep. Ex. 17 (Van Doorn); HIP 30(b)(6) Dep. 29 | |
| 80 | notes and data recorded by Hormel of demonstrations of Howard cooking process by Howard | 04/18/07 | HFC1589-90 | HIP 30(b)(6) Dep. Ex. 37 | |
| 81 | letter from Howard to Armour Swift Eckrich regarding a combination oven using convected and microwave, including preheating bacon to 180F and then cooking | 07/03/95 | Unitherm.3304-8 | N/A | FRE 401-403; 801-802; 805 |
| 82 | Unitherm product offerings | 1995-2000 | Marlen_4859-61 | N/A | FRE 401-403; 602 |
| 83 | drawing of Unitherm two-zone RapidFlow for Jennie-O | 08/01/97 | Marlen_5016 | N/A | FRE 401-403; 602 |
| 84 | drawing of Unitherm liquid smoke applicator for Jennie-O | 08/01/97 | Marlen_5017 | N/A | FRE 401-403; 602 |
| 85 | Unitherm drawing of general layout of RapidFlow at Jennie-O | 08/01/97 | Marlen_5018 | N/A | FRE 401-403; 602 |
| 86 | email from Herreid to Rao expressing interest in RapidFlow oven after reviewing Unitherm brochure | 06/21/07 | HFC891 | Hormel 30(b)(6) Dep. ex. 120 | |
| 87 | precooked bacon process specifications, including 0.92 water activity level limit for precooked sliced bacon | | HFC1 | Hormel 30(b)(6) Dep. Ex. 114 | FRE 401-403 |
| 88 | visits log summary | 1997-2009 | Unitherm.1789-1812 | N/A | |
| 89 | Herreid handwritten notes of Unitherm meeting | 01/02/08 | HFC995 | N/A | FRE 801-802; 602 |
| 90 | Unitherm videos showing fire extinguished as it enters spiral oven | | HIP3010 | Dep. Ex. 115 (Minn.) | FRE 401-403; 602; 801-802; 805; 901(a); 1002 |
| 91 | Inside AMI - background regarding industry food safety | 12/04/00 | Marlen5101-02 | N/A | FRE 401-403; 602; 801-802; 805 |
| 92 | Jennie-O In House Newsletter about Unitherm oven and IR Preheater | 12/01/99 | Marlen5096-7 | N/A | FRE 401-403; 602; 801-802; 805 |
| 93 | Unitherm RF heater brochure | 1990s | Marlen4891-2 | N/A | FRE 401-403; 602; 901(a) |
| 94 | Quote from Unitherm (Howard) to Henry Tellford for RapidFlowII Oven for cooking sliced bacon | 05/01/96 | Unitherm.1202-11 | N/A | FRE 401-403 |
| 95 | Letter from Unitherm (Howard) to Kraft re cruster | 09/29/03 | Marlen4262-3 | N/A | FRE 401-403 |

*HIP, Inc. v. Hormel Foods Corporation* , C.A. No. 18-802 (CFC) (SRF)

**HIP, Inc.'s Trial Exhibit List**

| PTX | Description | Date | Bates Nos. | Deposition Exhibit No. | Objections |
|---|---|---|---|---|---|
| 96 | Letter from Unitherm (Howard) to Armour Swift about combination microwave/hot air oven system | 10/23/95 | Unitherm.1194-6 | N/A | FRE 401-403 |
| 97 | responsive quote from Unitherm (Howard) to Hormel (Herreid) for spiral oven | 01/08/09 | MNLit679; Unitherm.470-474 | Dep. Ex. 101 (Herreid) | |
| 98 | Herreid email regarding Unitherm quote for spiral oven and quote for related spiral chiller coming shortly | 01/08/09 | HFC1627 | N/A | |
| 99 | responsive quote from Unitherm (Howard) to Hormel (Herreid) for related spiral chiller | 01/13/09 | MNLit681; Unitherm.475-480 | Dep. Ex. 103 (Herreid) | |
| 100 | letter from Howard to Christensen and Herreid regarding Unitherm spiral oven | 03/19/08 | MNLit00558 | Dep. Ex. 314 (Christensen) | |
| 101 | quote from Unitherm (Howard) to Hormel (Herreid) regarding Unitherm Mini Spiral oven | 05/02/08 | MNLit671; Unitherm.358-61 | Dep. Ex. 93 (Herreid) | |
| 102 | RapidFlow II picture brochure | 1990s | Marlen4862-63 | N/A | FRE 401-403; 901(a) |
| 103 | agenda for meeting with Olymel | 02/04/09 | Unitherm.17029-30 | N/A | FRE 401-403 |
| 104 | photo of boiler plate of steam generator installed at Unitherm prior to April 2008. | 06/30/05 | HIP7495 | N/A | FRE 401-403; 602; 901(a) |
| 105 | letter from Unitherm (Howard) to Kraft re cruster | 09/29/03 | Marlen4262-3 | N/A | FRE 401-403 |
| 106 | USDA Accepted Meat and Poultry Equipment (including | 09/27/95 | HIP825-7 | N/A | FRE 401-403; 602; 801-802 |
| 107 | letter from Unitherm (Howard) to Hormel (Herreid) responding to request for spiral oven proposal | 01/08/09 | HFC1572 | N/A | |
| 108 | letter from Howard to Herreid re possible site visit | 01/28/09 | HFC1624 | N/A | |
| 109 | Memo from Howard to Van Doorn regarding Hormel project | 10/17/07 | Unitherm.146 | N/A | |
| 110 | internal Hormel email regarding Unitherm's offer to lend IR oven | 03/05/09 | HFC363 | N/A | |
| 111 | email chain with Pfeil reminder that Howard offered to provide test cabinet at cost | 09/28/07 | HFC1612 | Dep. Ex. 83 (Srsen) | FRE 106 (missing attachment) |
| 112 | letter from Turner to Jennie-O recommending Spiral Oven with Flame Griller to preheat | 03/05/09 | Unitherm.3246-8 | N/A | FRE 401-403 |
| 113 | email from Herreid reporting purchase approval for Unitherm oven is with senior management group | 08/17/09 | Unitherm.4442 | N/A | |
| 114 | email asking Unitherm for recommended CIP chemical | 10/06/08 | Unitherm.4636 | N/A | FRE 401-403 |
| 115 | email asking Unitherm service spiral oven because Hormel lacks the knowledge and staff to do so | 04/21/11 | Unitherm.3715 | N/A | FRE 401-403 |
| 116 | calendar invite to Unitherm to Review Unitherm Equipment | 07/21/09 | HFC1747 | N/A | FRE 401-403; 602 |
| 117 | email from Mino to Howard responding to inquiry regarding Hormel's conduct under the JDA | 04/18/14 | Unitherm.004045-46; MNLIT000576 | Dep. Ex. 325 (Minn.) | FRE 401-403; 602 |
| 118 | Hormel email summarizing internal discussion of two options with Unitherm | 07/30/07 | MNLit650 | Dep. Ex. 72 (Herreid); Dep. Ex. 54 (Hendrickson); DTX30 | |
| 119 | letter from Howard to Brown regarding additional information for patent application | 01/02/08 | FS-00580; HIP-PRIV279 | N/A | FRE 106 (missing email); 602; 801-802; 805; 901(a) |
| 120 | email communications between Hormel and Marlen listing acquired assets and Marlen's claims to privilege | email string from 2/6/20 to 2/28/20 | N/A | N/A | FRE 401-403; 602; 801-802; 805 |
| 121 | Hormel April 1, 2010 Joint Development Agreement termination letter | 04/01/10 | | Dep Ex. 33 (Marco) | |
| | **HIP conditionally designates PTX130-PTX144 contingent on the Court's ruling on HIP's pending *Daubert* motions and Motions *in Limine*** | | | | |
| 130 | fax from Howard to Brown of a typed version of the May 4, 2006 Bacon Memo | 12/07/07 | FS000590; HIP-PRIV289 | N/A | FRE 801-802; 805; 901(a) |
| 131 | fax from Brown to Howard with questions and requests regarding the patent application for Howard's bacon cooking process | 12/08/07 | Unitherm.001494; HIP-Priv241 | N/A | |
| 132 | response from Howard to Brown with responses to questions and requests | 12/10/07 | FS-000584; HIP-PRIV283 | N/A | FRE 106 (missing fax); 602; 801-802; 805; 901(a) |

*HIP, Inc. v. Hormel Foods Corporation*, C.A. No. 18-802 (CFC) (SRF)

**HIP, Inc.'s Trial Exhibit List**

| PTX | Description | Date | Bates Nos. | Deposition Exhibit No. | Objections |
|---|---|---|---|---|---|
| 133 | copy of questions and 21/13/07 fax response to qeustions and requests | 12/8-12/13/07 | FS-000604; HIP-PRIV292 | N/A | FRE 106; 602; 801-802; 805 901(a) |
| 134 | response from Howard to Brown with responses to questions and requests | 12/13/07 | Unitherm.001544; HIP-PRIV255 | N/A | FRE 602; 801-802; 805; 901(a) |
| 135 | pdf of draft patent application with handwritten notes | 12/13-12/19/07 | Unitherm.001470; HIPPRIV219 | N/A | FRE 602; 801-802; 805; 901(a) |
| 136 | communication from Howard to Brown answering additional questions and commenting on pdf draft application | 12/20/07 | Unitherm.001430; HIP-PRIV201 | N/A | FRE 106 (missing email); 602; 801-802; 805; 901(a) |
| 137 | communications from Howard to Brown with additional informationrelating to the draft patent application | 01/09/08 | Unitherm.001455; HIP-PRIV204 | N/A | FRE 106 (missing email); FRE 602; 801-802; 805; 901(a) |
| 138 | fax from Howard to Brown with copy of Hormel letter to JBT (then FMC) | 01/14/08 | FS-000570; HIP-PRIV271 | N/A | FRE 106; 602; 801-802 |
| 139 | Gunawardena '703 patent | 06/17/14 | N/A | Dep. Ex. 139 (Gunawardena) | FRE 401-403 |
| 140 | metadata for selected Hormel documents | various | N/A | Dep. Ex. 143 (Gunawardena) | FRE 401-403; 602; 801-802; 901(a) |
| 141 | JBT press release about making sliced bacon on a spiral oven | 12/05/07 | MNLit000624; Unithemr.002389 | Dep Ex. 146 (Gunawardena) | |
| 142 | JBT brochure with 85% maximum humidity MV for GCO-II spiral oven | | JBTC_000097-103 | Dep. Ex. 147 (Gunawardena) | FRE 401-403; 801-802 |
| 143 | JBT internal report of reserve engineering Unitherm spiral oven at Hormel | 03/12/12 | MNLit000615; JBTC_000566-69 | Dep. Ex. 148 (Gunawardena) | FRE 401-403; 801-802 |
| 144 | metadata for color bacon photographs dated 5/4/06 | 05/10/06 | | Jones Ex. E | FRE 401-403; 602; 901(a) |
| 145 | Unitherm Amended Complaint in 14-cv-4034 | 02/06/15 | | | FRE 401-403; 801-802; 805 |
| 146 | Hormel Answer to Amended Complaint in 14-cv-4034 | 02/20/15 | | | FRE 401-403; 801-802; 805 |
| 147 | District Court Opinion 14-cv-4034 | | | | Subject to MIL; FRE 401-403; 801-802; 805 |
| 148 | Eighth Circuit Opinion in Case No. 16-3679 (re 14-cv-4034) | | | | Subject to MIL; FRE 401-403; 801-802; 805 |

# EXHIBIT 7

**HIP, INC. v HORMEL FOODS CORPORATION**
C.A. No. 18-802-CFC-SRF
**Defendant's Trial Exhibit List**

HIP objects to Hormel's improper descriptions and argumentative characterizations of the exhibit or its substance

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 1. | 7/16/2009 | US Patent Application Publication 2009/0181138A1 | HORMEL004616 | HORMEL004623 | Ex. 1015 (MN) | |
| 2. | | Exhibit T, Memo from Howard re Bacon Test Cook [IPR2019-00469] | UNITHERM.000742 | UNITHERM.000749 | Van Doorn Exhibit_004 | |
| 3. | 12/7/2007 | Exhibit V, Email from D. Howard to L. Pfeil re Spiral Oven; dated December 7, 2007 [IPR2019-00469] | UNITHERM.005056 | UNITHERM.005059 | Van Doorn Exhibit_005 | SM, FRE402, 403 |
| 4. | | Undated video of bacon being cooked in an oven | HIP0003007 | HIP0003007 | Van Doorn Exhibit_006 | |
| 5. | | Video of bacon being cooking in an oven. | UNITHERM.000086 | UNITHERM.00086 | Van Doorn Exhibit_007 | |
| 6. | | Undated video of bacon being cooked in an oven | HIP0003006 | HIP0003006 | Van Doorn Exhibit_008 | |
| 7. | 7/16/2007 | Email from R. Christensen to Unitherm re Confidentiality Disclosure Agreement (CDA) w/ Unitherm Food Systems, with attachment | UNITHERM.003357 | UNITHERM.003360 | Van Doorn Exhibit_009 | SM, FRE402, 403, 802 |
| 8. | 7/16/2007 | Email from T. Van Doorn to R. Christensen re Unitherm Visit Friday 8:00am | UNITHERM.003142 | UNITHERM.003142 | Van Doorn Exhibit_010 | SM, FRE402, 403, 802 |
| 9. | | Unitherm presentation regarding equipment | UNITHERM.000031 | UNITHERM.000068 | Van Doorn Exhibit_012 | |

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 10. | 9/18/2007 | Email from R. Herreid to D. Howard re Meeting and JDA Proposal, with attachment | UNITHERM.005216 | UNITHERM.005219 | Van Doorn Exhibit_013 | |
| 11. | 9/29/2007 | Email from R. Herreid to L. Pfeil et al. re Notes from meeting on September 25th, with attachment | UNITHERM.000141 | UNITHERM.000143 | Van Doorn Exhibit_015 | |
| 12. | 1/3/2008 | Email from R. Herreid to Unitherm re Notes from 1-2-08 and 12/5/07 Testing, with attachment | UNITHERM.004920 | UNITHERM.004929 | Van Doorn Exhibit_017 | SM, FRE402, 403, 802 |
| 13. | | T. Van Doorn's notes. | UNITHERM.055921 | UNITHERM.056008 | Van Doorn Exhibit_018 | SM, FRE402, 403, 802 insofar is it exceeds PTX63 |
| 14. | | File Memo from D. Howard re Bacon Test Cook. | UNITHERM.000006 | UNITHERM.000013 | Van Doorn Exhibit_027 | |
| 15. | 12/29/2009 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002341_0001 | HFC002341_0005 | Hendrickson Exhibit_033 | FRE802 |
| 16. | 2/17/2010 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002339_0001 | HFC002339_0001 | Hendrickson Exhibit_034 | FRE802 |
| 17. | 2/18/2010 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002338_0001 | HFC002338_0002 | Hendrickson Exhibit_035 | SM, FRE402, 403, 802 |
| 18. | 2/19/2010 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002337_0001 | HFC002337_0001 | Hendrickson Exhibit_036 | SM, FRE402, 403, 802 |
| 19. | 2/23/2010 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002336_0001 | HFC002336_0010 | Hendrickson Exhibit_037 | SM, FRE402, 403, 802 |
| 20. | 2/26/2010 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002335_0001 | HFC002335_0001 | Hendrickson Exhibit_038 | SM, FRE402, 403, 802 |

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 21. | 3/5/2010 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002334_0001 | HFC002334_0011 | Hendrickson Exhibit_039 | SM, FRE402, 403, 802 |
| 22. | 3/9/2010 | Notes regarding testing for Hormel's hybrid bacon cooking system. | HFC002333_0001 | HFC002333_0006 | Hendrickson Exhibit_040 | SM, FRE402, 403, 802 |
| 23. | 3/17/2010 | Notes regarding testing for Hormel's hybrid process. | HFC002331_0001 | HFC002331_0001 | Hendrickson Exhibit_041 | SM, FRE402, 403, 802 |
| 24. | 6/18/2010 | Hormel Foods Invention Disclosure Form for Hybrid Bacon Cooking System | HORMEL006153 | HORMEL006160 | Hendrickson Exhibit_043 | FRE802 |
| 25. | 8/10/2011 | U.S. Patent No. 9,980,498 File History (App. No. 13207065) | HFC007630_0026 | HFC007630_0028 | Hendrickson Exhibit_045 | SM, FRE402, 403, 802, INC |
| 26. | 4/12/2012 | Petition To Correct Inventorship In Nonprovisional Application Under 37 C.F.R. 1.48(a) | HFC007630_0120 | HFC007630-0127 | Hendrickson Exhibit_046 | SM, FRE402, 403 |
| 27. | 7/30/2007 | Email from C. Rao to B. Hendrickson et al. re Meeting Notes- Project Lava-Update | HORMEL002469 | HORMEL002469 | Hendrickson Exhibit_054 | FRE802 |
| 28. | 7/20/2007 | Notes from July 20, 2007 meeting | HFC002306_0001 | HFC002306_0001 | Mino Exhibit_066 | SM, FRE402, 403, 802 |
| 29. | 1/3/2008 | Email from R. Christensen to L. Pfeil et al. re notes from January 2, 2008 testing. | HORMEL009331 | HORMEL009331 | Mino Exhibit_068 | SM, FRE402, 403, 802 |
| 30. | 9/25/2007 | Joint Development Agreement between Unitherm Food Systems, Inc. and Hormel Foods Corporate Services, LLC | HORMEL000251 | HORMEL000253 | Mino Exhibit_071 | FRE802 |
| 31. | 9/26/2007 | Email from L. Pfeil to R. Herreid et al. re notes from September 25, 2007 meeting | HFC001502_0001 | HFC001502_0002 | Srsen Exhibit_085 | SM, FRE402, 403, 802 |

**HIP, INC. v HORMEL FOODS CORPORATION**
C.A. No. 18-802-CFC-SRF
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 32. | 7/29/2011 | Hormel Foods Research Report Project Name: Hybrid Cooking System for Precooked Sliced Bacon | HFC006253_0001 | HFC006253 0003 | Srsen Exhibit_098 | SM, FRE402, 403, 802, 805 |
| 33. | 9/21/2018 | Plaintiff's First Amended Answers to Nos. 1-10 and 14-16 of Defendants' First Set of Interrogatories to Plaintiff HIP, Inc. | n/a | n/a | HIP 30(b)(6) Ex.005 | SM, FRE402, 403, 802, 805 |
| 34. | 6/12/2020 | Plaintiff HIP's Third Amended and Supplemental Responses to Defendant's First Set of Interrogatories | n/a | n/a | HIP 30(b)(6) Ex.006 | FRE402, 403, 802, 805 |
| 35. | | Undated and incomplete Invention Disclosure Data Sheet | UNITHERM.001563 | UNITHERM.001573 | HIP 30(b)(6) Ex.007 | |
| 36. | | Undated handwritten sketch | UNITHERM.001184 | UNITHERM.001185 | HIP 30(b)(6) Ex.008 | |
| 37. | | Video showing bacon being cooked in an oven | UNITHERM.000086 | UNITHERM.000086 | HIP 30(b)(6) Ex.009 | |
| 38. | | Memorandum from D. Howard re Bacon Test Cook | UNITHERM.000742 | UNITHERM.000749 | HIP 30(b)(6) Ex.012 | |
| 39. | | Unitherm presentation regarding equipment | UNITHERM.000031 | UNITHERM.000068 | HIP 30(b)(6) Ex.017 | |
| 40. | 9/19/2007 | Email from R. Herreid to T. Van Doorn re Testing Info | UNITHERM.000113 | UNITHERM.000114 | HIP 30(b)(6) Ex.019 | SM, FRE402, 403, 802 |
| 41. | 9/25/2007 | D. Howard's handwritten notes dates 9-25-07 | UNITHERM.000132 | UNITHERM.000132 | HIP 30(b)(6) Ex.023 | SM, FRE402, 403 |
| 42. | 9/25/2007 | Handwritten Hormel notes re Unitherm Bacon Test from 9-25-07 | HFC004522_0001 | HFC004522_0003 | HIP 30(b)(6) Ex.024 | |

4

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 43. | 11/29/2007 | Email from R. Herreid to T. Van Doorn re Oven Options and Tests for December 4th and 5th | UNITHERM.000165 | UNITHERM.000172 | HIP 30(b)(6) Ex.025 | SM, FRE402, 403 |
| 44. | 12/7/2007 | Email from L. Pfeil to L. Marco re Spiral Oven, with attached Memo | HFC001511_0001 | HFC001512_0003 | HIP 30(b)(6) Ex.027 | SM, FRE402, 403 |
| 45. | | Metadata fields for HFC001511 and HFC001512 | n/a | n/a | HIP 30(b)(6) Ex.028 | SM, FRE402, 403, 901 |
| 46. | 1/4/2008 | Email from D. Brown to Ella and D. Howard re incorporating new information from January 2, 2008. | UNITHERM.001512 | UNITHERM.001534 | HIP 30(b)(6) Ex.030 | SM, FRE402, 403 |
| 47. | 1/9/2008 | Email from D. Howard to D. Brown forwarding email from R. Herreid re Notes for application | HIP0006701 | HIP0006704 | HIP 30(b)(6) Ex.032 | SM, FRE402, 403 |
| 48. | 1/10/2008 | Email string between R. Herreid, D. Howard, and D. Brown regarding claims to add to patent application. | HFC001308_0001 | HFC001308_0002 | HIP 30(b)(6) Ex.035 | SM, FRE402, 403 |
| 49. | | Excerpts from Van Doorn's notes | UNITHERM.055921 | UNITHERM.055980 | HIP 30(b)(6) Ex.036 | CM |
| 50. | | Undated and incomplete Invention Disclosure Data Sheet with color photos | UNITHERM.000015 | UNITHERM.000030 | HIP 30(b)(6) Ex.038 | |
| 51. | 12/17/2009 | Email string between R. Herreid, B. Hendrickson and B. Srsen re Minutes from meeting on hybrid system | HFC006308_0001 | HFC006308_0002 | Gunawardena_142 | SM, FRE402, 403, 802 |
| 52. | 5/1/2006 | Super Heated Steam Processing - Test Unit Budget Request | HFC000898_0001 | HFC000898_0007 | Gunawardena_153 | SM, FRE104, 402, 403, 611, 901, 802 |

**HIP, INC. v HORMEL FOODS CORPORATION**
C.A. No. 18-802-CFC-SRF
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 53. | 9/14/1993 | U.S. Patent No. 5,243,962 (Hwang) | n/a | n/a | Gunawardena_154 | SM, FRE402, 403, 802 |
| 54. | 10/5/1999 | U.S. Patent No. 5,960,703 (Jara et al.) | n/a | n/a | Gunawardena_156 | SM, FRE402, 403, 802 |
| 55. | 3/11/1997 | U.S. Patent No. 5,609,095 (Lemke et al.) | n/a | n/a | Gunawardena_157 | SM, FRE402, 403, 802 |
| 56. | 7/8/2004 | U.S. Patent Publication No. 2004/0131738 A1 (Holm et al.) | n/a | n/a | Gunawardena_158 | SM, FRE402, 403, 802 |
| 57. | 6/14/2007 | U.S. Patent Publication No. 2007/0131215 A1 (McVeagh et al.) | n/a | n/a | Gunawardena_159 | SM, FRE402, 403, 802 |
| 58. | 12/7/2007 | Email from Unitherm to L. Pfeil re Spiral Oven, with attachment | UNITHERM.000193 | UNITHERM.000196 | | SM, FRE402, 403, CM (6) |
| 59. | 1/7/1992 | U.S. Patent No. 5,078,120 (Hwang) | HFC000036_0001 | HFC000036_0016 | | SM, FRE402, 403, 802 |
| 60. | 8/16/2010 | Hormel Purchase Order No. 1716075 re purchase of mini spiral test oven | HFC000959_0001 | HFC000959_0002 | | SM, FRE402, 403 |
| 61. | 8/10/2010 | Documents from USPTO re Patent Application No. 61/372,560 | HFC001287_0001 | HFC001287_0003 | | SM, FRE402, 403 |
| 62. | 8/11/2010 | Provisional Application Materials Filed with USPTO | HFC001288_0001 | HFC001288_0003 | | |
| 63. | | Spreadsheet, Hybrid Cook Ratio data | HFC001359_0001 | HFC001359_0001 | | SM, FRE104, 402, 403, 602, 802, 901, 1005 |
| 64. | | Spreadsheet, Bacon texture graph | HFC001394_0001 | HFC001394_0001 | | SM, FRE104, 402, 403, 602, 802, 901, 1005 |

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 65. | 5/15/2013 | Presentation Hybrid Bacon Update | HFC001399_0001 | HFC001399_0012 | | SM, FRE104, 402, 403, 602, 802, 901, 1005 |
| 66. | 7/13/2007 | Email from C. Rao to B. Schweitzer re Super Heated Steam bacon process | HFC001467_0001 | HFC001467_0001 | | SM, FRE402, 403, 802 |
| 67. | 7/21/2006 | Email from C. Rao to P. Minerich re update on Project Lava | HFC001468_0001 | HFC001468_0001 | | SM, FRE402, 403, 802, INC |
| 68. | 7/12/2007 | Email from R. Christensen to J. Butler re NDA for Unitherm | HFC001510_0001 | HFC001510_0001 | | SM, FRE402, 403, 802 |
| 69. | 3/9/2007 | Email from C. Rao to M. Carlstrom et al. re Recap of Project Lava meeting on 03/09 | HFC001695_0001 | HFC001695_0001 | | SM, FRE402, 403, 802 |
| 70. | 11/16/2005 | Email from C. Rao to B. Srsen et al. re Superheated Steam Processing | HFC001745_0001 | HFC001745_0001 | | SM, FRE402, 403, 802, INC |
| 71. | 11/16/2005 | Version#1 Diagram re superheated steam processing | HFC001746_0001 | HFC001746_0001 | | SM, FRE104, 402, 403, 802, 901 |
| 72. | 3/15/2010 | Hormel Foods Research Report - R&D Project # MP541.00, Project Name: Superheated Steam Processing - HORMEL® Kirkland Signature™ | HFC002132_0001 | HFC002132_0008 | | SM, FRE104, 402, 403, 611, 802. 901 |
| 73. | 2/4/2009 | Notes re Unitherm - Bacon Low Temp cooks | HFC002380_0001 | HFC002380_0033 | | SM, FRE104, 402, 403, 611, 901, 802 |
| 74. | 3/31/2010 | Email from R. Herreid to T. Day et al. re update on development of hybrid cooking process | HFC002544_0001 | HFC002544_0001 | | SM, FRE402, 403, 802 |

### HIP, INC. v HORMEL FOODS CORPORATION
### C.A. No. 18-802-CFC-SRF
### Defendant's Trial Exhibit List

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 75. | | U.S. Patent Application No. 12/013,337 File History | HFC004207_0001 | HFC004207_0317 | | SM, FRE402, 403 |
| 76. | 4/18/2011 | Meeting minutes regarding progress on hybrid oven system | HFC004324_0001 | HFC004324_0001 | | SM, FRE402, 403, 802 |
| 77. | 11/8/2010 | Meeting minutes regarding hybrid system | HFC004341_0001 | HFC004341_0001 | | SM, FRE402, 403, 802 |
| 78. | 11/5/2010 | Meeting minutes regarding bacon cooking testing | HFC004346_0001 | HFC004346_0002 | | SM, FRE402, 403, 802 |
| 79. | | Spreadsheet regarding bacon cooking testing | HFC004482_0001 | HFC004482_0002 | | SM, FRE104, 402, 403, 611, 901, 802 |
| 80. | 3/23/2006 | Hormel Capital Request for super heated steam processing oven | HFC004554_0001 | HFC004554_0001 | | SM, FRE402, 403, 802 |
| 81. | | Spreadsheet, Precooked Bacon Test Dates and Descriptions | HFC004642_0001 | HFC004642_0001 | | SM, FRE104, 402, 403, 602, 802, 901, 1005 |
| 82. | 5/3/2011 | Hybrid Bacon - R&D Cook-Test Data; Job: Hybrid Bacon | HFC005027_0001 | HFC005027_0001 | | SM, FRE402, 403, 802 |
| 83. | 2/25/2011 | Hybrid Bacon - R&D Cook-Test Data; Job: Hybrid Patent Data | HFC005080_0001 | HFC005080_0002 | | SM, FRE402, 403, 802 |
| 84. | 2/23/2011 | Hybrid Bacon - R&D Cook-Test Data; Job: Hybrid Patent Data | HFC005081_0001 | HFC005081_0001 | | SM, FRE402, 403, 802 |
| 85. | 4/17/2006 | Memo re Super Heated Steam Processing | HFC005425_0001 | HFC005425_0007 | | SM, FRE104, 402, 403, 611, 901, 802 |

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 86. | | Hybrid Bacon Cooking System process description written by B. Srsen | HFC006255_0001 | HFC006255_0002 | | SM, FRE104, 402, 403, 602, 802, 901, |
| 87. | 1/27/2010 | Proposed AMTek Microwave work schedule 1-27-10 for hybrid testing | HFC006283_0001 | HFC006283_0001 | | SM, FRE104, 402, 403, 602, 802, 901, |
| 88. | 3/11/2010 | Email from W. Dion to R. Herreid et al. re Next generation of fully cooked bacon | HFC006298_0001 | HFC006298_0003 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 89. | 3/7/2011 | Email re meeting minutes on hybrid pilot system | HFC006340_0001 | HFC006340_0003 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 90. | 11/17/2009 | Email from B. Hendrickson to B. Srsen re Precooked Bacon Verification Mtg. 11/19/09 | HFC006876_0001 | HFC006876_0001 | | SM, FRE104, 402, 403, 802, 901 |
| 91. | 9/23/2009 | Email from B. Hendrickson to K. Myers re Precooked Bacon Cooked Verification Project | HFC007000_0001 | HFC007000_0002 | | SM, FRE104, 402, 403, 802, 901 |
| 92. | 2/4/2010 | Email between Hormel and Amtek regarding CDA | HFC007482_0001 | HFC007482_0005 | | SM, FRE104, 402, 403, 802, 901 |
| 93. | 2/9/2010 | Mutual Confidential Disclosure Agreement Between Hormel Foods Corporation and Amtek | HFC007484_0001 | HFC007484_0003 | | SM, FRE104, 402, 403, 802, 901 |
| 94. | 3/5/2012 | Email from Hormel R&D lab to B. Srsen re test results for hybrid process | HFC007489_0001 | HFC007489_0001 | | SM, FRE104, 402, 403, 602, 802, 901 |

9

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 95. | 3/5/2010 | Email from Hormel R&D lab to B. Srsen regarding test results for hybrid process | HFC007490_0001 | HFC007490_0001 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 96. | 3/5/2010 | Email from Hormel R&D lab to B. Srsen regarding test results for hybrid process | HFC007491_0001 | HFC007491_0001 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 97. | 3/5/2010 | Email/calendar invite from J. Mino to B. Srsen et al. to further discuss hybrid system | HFC007497_0001 | HFC007497_0001 | | SM, FRE402, 403, 802 |
| 98. | 1/5/2010 | Email from J. Mino to R. Herreid re potential suppliers | HFC007503_0001 | HFC007503_0001 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 99. | 4/7/2010 | Email from B. Hendrickson to B. Srsen re Target water activities | HFC007518_0001 | HFC007518_0001 | | FRE802 |
| 100. | 3/23/2011 | Notes re Bacon Test Data, Job: Hybrid Patent Work | HFC007522_0001 | HFC007522_0001 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 101. | 4/7/2011 | Notes re Bacon Test Data, Job: Hybrid Patent Work | HFC007523_0001 | HFC007523_0002 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 102. | 3/23/2011 | Notes re Bacon Test Data, Job: Hybrid Patent Work - Costco Bellies | HFC007524_0001 | HFC007524_0001 | | SM, FRE104, 402, 403, 602, 802, 901 |
| 103. | 1/7/2010 | Calendar Entry Meeting: Review Microwave/Unitherm Bacon test results, discuss Amtek test unit | HFC007530_0001 | HFC007530_0001 | | SM, FRE402, 403, 802 |
| 104. | 1/7/2010 | Calendar Entry Meeting: Review hybrid bacon test results, discuss Amtek test unit | HFC007563_0001 | HFC007563_0001 | | SM, FRE402, 403, 802 |

## HIP, INC. v HORMEL FOODS CORPORATION
### C.A. No. 18-802-CFC-SRF
### Defendant's Trial Exhibit List

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 105. | 2/26/2010 | Calendar Entry Meeting: Review Precooked Bacon with MW- SHS Hybrid Process | HFC007578_0001 | HFC007578_0001 | | SM, FRE402, 403, 802 |
| 106. | 6/9/2011 | Email from B. Srsen to B. Hendrickson re hybrid bacon cooking testing | HFC007602_0001 | HFC007602_0001 | | SM, FRE402, 403, 802 |
| 107. | 6/9/2011 | Hormel Foods Research Report - Descriptive Evaluation for Fully Cooked Bacon re hybrid process | HFC007603_0001 | HFC007603_0023 | | SM, FRE104, 402, 403, 802, 901 |
| 108. | 2/26/2010 | Email from B. Srsen to R. Herreid re bacon samples and hybrid system | HFC007616_0001 | HFC007616_0004 | | SM, FRE402, 403, 802 |
| 109. | 2/24/2010 | Email from B. Srsen to N. Bentley regarding bacon cooking | HFC007618_0001 | HFC007618_0002 | | SM, FRE402, 403, 802 |
| 110. | 4/14/2010 | Email from B. Srsen to R. Christensen re hybrid system | HFC007619_0001 | HFC007619_0002 | | SM, FRE402, 403, 802 |
| 111. | 5/27/2010 | Email from B. Srsen to B. Hendrickson et al. re hybrid bacon system | HFC007627_0001 | HFC007627_0001 | | SM, FRE402, 403, 802 |
| 112. | 5/28/2010 | Presentation, Retail Precooked Bacon Update | HFC007628_0001 | HFC007628_0011 | | SM, FRE104, 402, 403, 802, 901 |
| 113. | 8/10/2011 | U.S. Patent No. 9,980,498 File History (App. No. 13207065) | HFC007630_0001 | HFC007630_0679 | | SM, FRE402, 403, 802 |
| 114. | | EXCERPT from U.S. Patent No. 9,980,498 File History (App. No. 13207065) | HFC007630_0001 | HFC007630_0034 | | SM, FRE402, 403, 802, CM |
| 115. | | EXCERPT from U.S. Patent No. 9,980,498 File History (App. No. 13207065) | HFC007630_0119 | HFC007630_0129 | | SM, FRE402, 403, 802,CM |

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| 116. | | EXCERPT from U.S. Patent No. 9,980,498 File History (App. No. 13207065) | HFC007630_0416 | HFC007630_0426 | | SM, FRE402, 403, 802, CM |
| 117. | | Provisional Patent Application re Hybrid Bacon Cooking System | UNITHERM.000565 | UNITHERM.000571 | | SM, FRE402, 403, 802, CM |
| 118. | 7/20/2010 | Presentation: Precooked Bacon Proposal | HFC006266_0001 | HFC006266_0019 | | SM, FRE402, 403, 802 |
| 119. | 1/17/2010 | AMTek Microwaves Lease Agreement with Hormel | HFC007481_0001 | HFC007481_0002 | | SM, FRE402, 403, 802, INC |
| 120. | 7/14/2006 | Email from C. Rao to F. Fryer re superheated steam project | HFC001342_0001 | HFC001342_0001 | | SM, FRE402, 403, 802 |
| 121. | | Excerpt of Van Doorn's Notes | UNITHERM.055921-22; UNITHERM.055948 | UNITHERM.055921-22; UNITHERM.055948 | Van Doorn IPR Dep. Exhibit 1025 | |
| 122. | | File Memo from D. Howard re Bacon Test Cook (IPR2019-00469, Exhibit 2012T) | UNITHERM.000742 | UNITHERM.000749 | Van Doorn IPR Dep. Exhibit 1031 | |
| 123. | 7/21/2006 | Email dated July 21, 2006 from Chet Rao to Phillip Minerich regarding update on superheated steam project | HORMEL007076 | HORMEL007076 | Herreid Exhibit 61 (MN) | SM, FRE402, 403, 802 |
| 124. | 9/26/2007 | Email dated September 26, 2007 from Larry Pfeil to Richard Herreid re notes from September 25, 2007 meeting | HORMEL009147 | HORMEL009148 | Herreid Exhibit 75 (MN) | SM, FRE402, 403, 802 |
| 125. | 1/3/2008 | Email from R. Herreid to D. Howard regarding Notes from 1-2-08 and 12/5/07 testing | HORMEL002197 | HORMEL002198 | Herreid Exhibit 80 (MN) | SM, FRE402, 403, 802, INC |

**HIP, INC. v HORMEL FOODS CORPORATION**
**C.A. No. 18-802-CFC-SRF**
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| **126.** | 6/18/2010 | Hormel Invention Disclosure Form for Hybrid Bacon Cooking System | HORMEL006153 | HORMEL006160 | Herreid Exhibit 109 (MN) | FRE802 |
| **127.** | 12/21/2005 | Superheated Steam Processing: Chamber Design Meeting Minutes and attaching figures depicting the processing chambers discussed at meeting | LOURICH000215 | LOURICH00218 | Rao Exhibit 156 (MN) | SM, FRE104, 402, 403, 602, 802, 901 |
| **128.** | 4/17/2006 | Super Heated Steam Processing R&D test unit background info | HORMEL006918 | HORMEL006924 | Rao Exhibit 163 (MN) | SM, FRE104, 402, 403, 802, 901 |
| **129.** | 7/14/2006 | Email from C. Rao to F. Fryer, Greg Westland and Mark Carlstrom regarding updated on superheated steam project | HORMEL002472 | HORMEL002472 | Rao Exhibit 165 (MN) | SM, FRE402, 403, 802, CM |
| **130.** | 2014 | 2014 Bacon1 Presentation | HFC003192_0001 | HFC003192_0030 | | SM, FRE402, 403, 802 |
| **131.** | 1/2/2008 | Letter from D. Howard to D. Brown. (HIP-PRIV000279) | FS-000580 | FS-000580 | | SM, FRE 402, 403 |
| **132.** | 12/9/1997 | United States Patent No. 5,694,835 (Humidity Measurement Arrangement and Cooking Oven Provided Therewith)(HIP-PRIV000332-340) | GABLE 000035 | GABLE 000043 | | SM, FRE402, 403 |
| **133.** | 4/4/2000 | United States Patent No. 6,045,841(Method of pre-cooking sliced bacon) . (HIP-PRIV000341-350) | GABLE 000044 | GABLE 000053 | | SM, FRE402, 403 |

**HIP, INC. v HORMEL FOODS CORPORATION**
C.A. No. 18-802-CFC-SRF
**Defendant's Trial Exhibit List**

| DTX Ex. # | Doc Date | Description | BEG Bates | End Bates | Depo Ex. # | Objections |
|---|---|---|---|---|---|---|
| **134.** | 12/7/1999 | United States Patent No. 5,997,925 (Continuous Manufacturing Process and Apparatus for Preparing Pre-Cooked Bacon)<br><br>(HIP-PRIV000351-364) | GABLE 000054 | GABLE 000067 | | SM, FRE402, 403 |
| **135.** | 9/21/2006 | United States Patent Application No. 20060207436 (Integrated Compact Food Process Line and Process) (HIP-PRIV000365-367) | GABLE 000068 | GABLE 000079 | | SM, FRE402, 403 |
| **136.** | 9/19/2006 | United States Patent No. 7,107,899 (Spiral Oven, Heat Delivery, Enclosure, and Drive)<br><br>(HIP-PRIV000377-390) | GABLE 000080 | GABLE 000093 | | SM, FRE402, 403 |
| **137.** | 9/18/2014 | Invention Assignment | UNITHERM.001186-1189 | UNITHERM.001186-1189 | | SM, FRE402, 403 |
| **138.** | 8/18/2017 | Unit Purchase Agreement | HIP0002796 | HIP0002876 | | SM, FRE402, 403, CM, privacy |
| **139.** | 8/18/2017 | Schedules to Unit Purchase Agreement | HIP0002895 | HIP0002999 | | SM, FRE402, 403, CM |
| **140.** | 8/18/2017 | Contribution and Distribution Agreement | HIP0007378 | HIP0007399 | | SM, FRE402, 403 |
| **141.** | 3/7/2019 | Amendment to Contribution and Distribution Agreement | HIP0007400 | HIP0007402 | | SM, FRE402, 403 |

# EXHIBIT 8

*HIP, Inc. v. Hormel Foods Corporation*, C.A. No. 18-802 (CFC) (SRF)

**Joint Trial Exhibit (JTX) List**

| JTX | Description | Date | Bates Nos. | Deposition Exhibit No. |
|---|---|---|---|---|
| 1 | U.S. Patent No. 9,980,498 (Srsen et al.) | 05/29/18 | | Dep. Ex. No. 29 (12/4/19)(Hendrickson); HIP 30(b)(6) Dep. Ex. 3 |
| 2 | Signed Mutual Confidential Disclosure Agreement | 07/20/07 | Unitherm.4816-18 | Dep. Ex. 17 (Howard); HIP 30(b)(6) Dep Ex. 16 |
| 3 | Email string between Hormel and Unitherm during 9/18/07 and 9/19/07 | 09/19/07 | Unitherm.5149-52 | Dep. Ex. 301 (Christensen) |
| 4 | Hormel Foods Research Report dated 10/10/05 | 10/10/05 | Hormel004845-56; MNLit798 | Dep. Ex. 152 (Rao) |
| 5 | Email re Test Schedule for August 23rd at Unitherm | 08/07/07 | Hormel006669; MNLit 833 | Dep Ex 187 (Rao); Srsen Ex. 81 |
| 6 | Memorandum re Request for Appropriation of Superheated Steam Processing Equipment | 03/13/06 | Hormel006912-14; MNLit638 | Dep. Ex. 60 (Herreid); Dep Ex. 63 (Mino) |
| 7 | U.S. Patent Publication No. 2012/0040062 A1 (Srsen et al.) | 02/16/12 | HFC6936 | Dep. Ex. 44 |
| 8 | U.S. Patent No. 9,510,610 (Howard) | 12/06/16 | N/A | HIP 30(b)(6) Dep. Ex. 4; Dep. Ex. 48 (Hendrickson); Amended Complaint Ex A |
| 9 | HIP First Amended Complaint | 08/06/18 | | |
| 10 | Hormel Amended Answer to First Amended Complaint | 04/29/19 | | |

# EXHIBIT 9

**Exhibit 9**

**HIP's Witness List**

Pursuant to Local Rule 16.3(c), HIP intends to call the following witnesses to testify live or by deposition at trial. HIP reserves the right to revise or supplement this list consistent with the Pretrial Order or as otherwise permitted by the Court. If any witness HIP intends to call to testify live is unavailable, HIP reserves the right to offer deposition testimony from such witness. HIP also reserves the right to call live or by deposition anyone appearing on Hormel's witness list. HIP further reserves the right to call live or by deposition any witness to provide foundational testimony should Hormel contest the authenticity or admissibility of any material proffered at trial. HIP reserves the right to call any witness for impeachment purposes. HIP is not required to present testimony from any witness on its list of witnesses.

**Expert Witnesses**

HIP will call the following as expert witnesses:

1. David Howard (Live) (Texas).   Mr. Howard is the President of HIP, Inc., and will testify regarding the matters disclosed in "Plaintiff's Rule 26(a)(2)(C) Disclosure Of Expert Testimony," served July 13, 2020, and "Plaintiff's Rule 26(a)(2)(C) Reply Disclosure," served September 9, 2020.

2. Kelly Jones (Live) (Texas).  Mr. Jones is a computer forensic expert and will testify on the issues discussed in the "Rebuttal Expert Report of Kelly Jones" served September 9, 2020.  Mr. Jones's CV is attached as Exhibit A.

**Fact Witnesses**

HIP intends to call the following as witnesses, by the means designated below:

| | WITNESS | MEANS |
|---|---|---|
| 1. | David Howard; Texas | Live |
| 2. | Darreld Ray Turner; Colorado | Live |
| 3. | Dick Woodford; Missouri | Live |
| 4. | Craig Bernheimer; Oklahoma | By Deposition |
| 5. | Ronald L. Christensen; Minnesota | By Deposition |
| 6. | Brian E. Hendrickson; Minnesota | By Deposition |
| 7. | Richard M. Herreid; Deceased | By Deposition |
| 8. | James E. Mino; Minnesota | By Deposition |
| 9. | Larry J. Pfeil; Minnesota | By Deposition |
| 10. | Chet Rao, Ph.D.; Minnesota | By Deposition |
| 11. | Brian J. Srsen; Minnesota | By Deposition |
| 12. | Thomas Van Doorn; Georgia | By Deposition |

HIP may call other witnesses by deposition through its counter-designations to Hormel's affirmative deposition designations.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

HIP, INC.,                                  )
                                            )
         Plaintiff,                       )
                                            )   C.A. No. 1:18-cv-00802-CFC-SRF
    v.                                   )
                                            )
HORMEL FOODS CORPORATION,                   )
                                            )
         Defendant.                       )
                                            )

## **EXHIBIT 9**

## **HORMEL'S OBJECTIONS TO HIP'S WITNESS LIST**

Defendant Hormel Foods Corporation objects to HIP's witness list with respect to Brian J. Srsen, James E. Mino, and Brian E. Hendrickson.  HIP has indicated that it intends to offer in its case-in-chief the personal deposition testimony of Mr. Srsen, Mr. Mino, and Mr. Hendrickson.  These witnesses will be available to testify live at trial and therefore it is improper under Fed. R. Civ. P. 32 for HIP to use the deposition testimony for these witnesses other than for impeachment purposes.  These objections are also the subject to Hormel's First Motion in Limine set forth in Exhibit 16.

# EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:18-cv-00802-CFC-SRF |
| v. | ) | |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXHIBIT 10

## HORMEL'S WITNESS LIST

EXHIBIT 10
Hormel's Witness List

Defendant Hormel Foods Corporation sets forth below the names of the witnesses whom it intends to call or may call to testify at trial.  If any witness listed as a person Hormel intends to call to testify in person is unavailable, Hormel reserves the right to offer deposition testimony from such witness.  Hormel also may call any witness listed by Plaintiff HIP, Inc., and reserves the right to call additional witnesses in rebuttal or as impeachment witnesses to those witnesses called by HIP.  Hormel reserves the right to call additional witnesses to resolve evidentiary issues, including to testify regarding the authenticity of or foundation for exhibits to the extent the parties cannot agree on such issues.

Hormel submits these witnesses based on the status of the claims and defenses currently asserted in the action and reserves its right to modify, supplement, or amend these witnesses as a result of, for example reductions in claims and defenses by the parties to streamline the case for trial, any meet and confers or other negotiations between the parties, or a decision on any motion by the Court.  Hormel specifically reserves the right to modify, amend, or supplement this witness list depending on the substance of the 18 privilege log documents ordered produced in Magistrate Judge Sherry R. Fallon's November 23, 2020 Order that HIP waived attorney-client privilege (D.I. 124).

EXHIBIT 10
Hormel's Witness List

Subject to and without waiving the foregoing reservations, Hormel intends to present the following witnesses at trial.

**Expert Witnesses**

Hormel will call the following expert witnesses:

1. Ramesh Gunawardena (Live) (Ohio). Mr. Gunawardena is a retained technical expert and will testify on the issues discussed in the "Expert Report of Ramesh Gunawardena" served August 11, 2020.

2. John S. Montegudo (Live) (Texas). Mr. Montegudo is a digital forensic expert and will testify on the issues discussed in the "Expert Report of John S. Montegudo" served August 11, 2020.

**Fact Witnesses**

Hormel intends to call the following as witnesses, by the means designated below:

| Witness | Means |
|---------|-------|
| Brian J. Srsen; Minnesota | Live |
| Brian E. Hendrickson; Minnesota | Live |
| James E. Mino; Minnesota | Live |
| Richard M. Herreid; Deceased | By Deposition |
| Chet Rao, Ph.D.; Minnesota | By Deposition |
| Ronald L. Christensen; Minnesota | By Deposition |

EXHIBIT 10
Hormel's Witness List

| Witness | Means |
|---------|-------|
| HIP, Inc.; Texas | By Deposition |
| Thomas Van Doorn; Georgia | By Deposition |
| Witnesses if needed to authenticate documents, to the extent disputed | Live or by Deposition |

Hormel may call other witnesses by deposition through its counter-designations to HIP's affirmative designations.

71497451

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HIP, INC., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 18-802-CFC-SRF |
| | ) |
| HORMEL FOODS CORPORATION, | ) |
| | ) |
|       Defendant. | |

**EXHIBIT 10**

**HIP, INC.'S OBJECTIONS TO HORMEL'S WITNESS LIST**

HIP objects to the testimony of Hormel's designated experts, Mr. Gunawardena and Mr. Montegudo, to the extent and as set forth in HIP's pending *Daubert* motions (D.I. 110, 117) and MILs 1 (Ex. 13) and 2 (Ex. 14).

# EXHIBIT 11

Exhibit 11

### HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP's COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| colspan="9" | Craig Bernheimer Deposition – 01/16/2020 |
| Craig Bernheimer | 01/16/2020 | | 4:21-5:3 | | | | | |
| Craig Bernheimer | | | 7:18-20 | | | | | |
| Craig Bernheimer | | | 8:12-15, 19-20 | | | | | |
| Craig Bernheimer | | | 8:24 - 9:16 | | 9:21-23 | | | |
| Craig Bernheimer | | | 10:7-11 | | 10:12-24 13:17-25 | OS, CM, FRE402, 403 | | |
| Craig Bernheimer | | | 16:1-2, 6-11 | | 16:23-17:6 | | 17:7-13, 24-25 18:1-3 | |
| Craig Bernheimer | | | 17:18-23 | | 13:23-14:22 14:24-15:5 17:1-6; 18:1-7 | OS, CM, AA, FRE402, 403, INC | 15:6-16 17:24-25 | |
| Craig Bernheimer | | | 19:14-19 | | 19:2-13 | FRE402, 403, CM | | |
| Craig Bernheimer | | | 24:2-4 | | 26:21-25, 27:3 | OS, SM, FRE103, 104, 403, 403 | | |
| Craig Bernheimer | | | 28:20-22 | | | | | |
| Craig Bernheimer | | | 29:17-19 | FRE 401-403 602 | 29:14-16 | SM, FRE402, 403 | | |
| Craig Bernheimer | | | 29:22 -30:9 | FRE 401-403 602 | 30:12-14, 30:17 30:23-25 | SM, FRE103, 104, 602, OS, argumentative | 30:18-22 | |
| Craig Bernheimer | | | 33:6-9 | FRE 401-403 | | | | |

Exhibit 11

## HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP's COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Craig Bernheimer | | | 33:20 - 34:4 | | 34:5-15 35:2-7, 9-15 | SM, OS, FRE103, 104, 402, 403, 602, V | | |
| Craig Bernheimer | | | 35:21-36:2 | | 36:3-9 36:22-25 | OS, FRE104, 402, 403, 602 | | |
| Craig Bernheimer | | | 37:1-6 | | 37:13-18, 21-24 38:2; 38:11-16 38:18-21 43:16-18, 21-24 44:2; 44:14-19 44:21-23 | SM, FRE103, 402, 403, 602, CM, V, AA, argumentative | 38:3-10 | |
| Craig Bernheimer | | | 39:3-6 | | 39:21-25 | | 40:1-2, 6-7, 17-18, 21-22 | |
| Craig Bernheimer | | | 40:13-16 | | | | | |
| Craig Bernheimer | | | 41:8-19 | | 41:20-22 | SM, FRE602 | | |
| Craig Bernheimer | | | 42:9-12 | | | | | |
| Craig Bernheimer | | 103 | 45:10-13 | | 45:14-23 | FRE602 | 106:7-10 | |
| Craig Bernheimer | | | 45:24-46:1 | | | | | |
| Craig Bernheimer | | | 48:23-25 | | 48:17-19; 49:4-8 49: 11-15 | SM, FRE103, 104, 402, 403, 602, AA, OS | | |
| Craig Bernheimer | | 104 | 50:11-51:2 | | | | | |
| Craig Bernheimer | | | 54:17-24 | | 76:17-19, 22 | SM, OS, AA, FRE103, 104, 602 | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP's COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Craig Bernheimer | | | 61:20-25 | | 61:17-19 62:1-3 62:13-14 62:16-23, 25 | SM, OS, V, FRE402, 403, 602 | | |
| Craig Bernheimer | | | 62:4-6 | | | | | |
| Craig Bernheimer | | | 67:13-16 | | 63:1-4, 7-14 63:18-21 67:24-68:1 | SM,AA, FRE103, 104, 402, 602 | 67:5-6, 9-12 | |
| Craig Bernheimer | | | 68:9-13 | | 68:4-8 68:14-20 128:11-14 128:16-18 | SM, OS, FRE104, 402, 403, 602 | | |
| Craig Bernheimer | | | 69:18-25 | | 69:4-6, 9-17 70:1-71:2, 71:4 | SM, OS, FRE104, 402, 403,404, 602 | | |
| Craig Bernheimer | | | 97:21-98:4 | | 98:5-10 102:15-17 102: 19-21, 24 | SM, FRE104, AA, 402, 403, 602, V | | |
| Craig Bernheimer | | | 104:12-17 | | 104:7-9, 11 | FRE602 | 9/24/15 Tr. 108:18-19, 22-25; 109:1-8; 110:12-16, 23-25; 111:1-2, 15-16, 19 | |
| Craig Bernheimer | | | 104:21-105:4 | | 105:11-14 105:18-20 105:24-25 106:1-3, 6 | SM, FRE103, 104, 402, 403, 602, AA | | |
| Craig Bernheimer | | | 113:20-114:3 | | 109:9-11, 14 110:11-12 110:15-17 | SM, FRE103, 104 402, 403, 602 | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP's COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Craig Bernheimer | | 6 | 114:7-14 | | 114:15-115:9 | SM, OS, FRE402, 403 | | |
| Craig Bernheimer | | | 115:10-12 | | 116:10-11 116:13-16 116: 18-22 | SM, FRE402, 403, 602 | | |
| Craig Bernheimer | | 7 | 117:9-118:9 | | 118:17-21 118:24-25 119:3-6, 9 | SM, V, FRE402, 403 | | |
| Craig Bernheimer | | | 119:20-120:13 | | 120:14-121:2 121:5-7, 10-12 121:15, 22-23 121:25-122:9 122:12-19 122: 22-24 | SM, OS,FRE103, 104, 402, 403, OS, argumentative | | |
| Craig Bernheimer | | | 129:4-11 | FRE 401-403 | | | | |
| Craig Bernheimer | | | 129:22:130:2 | | | | | |
| Craig Bernheimer | | | 130:22-131:10 | | 131:11 | waived | | |
| Craig Bernheimer | | 7 | 131:14-132:6 | | 119:4-6, 9 120: 14-22 121:1-2, 5 121: 6-7, 10 121: 11-12, 15 | SM, OS, FRE103, 104, FRE402, 403, AA, CM, Argumentative | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | Ronald L. Christensen Deposition  - 10/27/2015 | | | | | |
| Ronald Christensen | 10/27/2015 | | 7:10-18, 21-23 | | | | | |
| Ronald Christensen | | | 8:25-9:6 | | | | | |
| Ronald Christensen | | | 9:24-10:4 | | 10:5-9 | | | |
| Ronald Christensen | | | 12:21-13:4 | | 13:13-17 | | | |
| Ronald Christensen | | | 22:22-23:6 | | 23:9-12 | | | |
| Ronald Christensen | | | 32:9-15 | | 32:16-20 41:3-10 | | | |
| Ronald Christensen | | | 34:16-20 | FRE 401-403 | 34:25-35:14 | | | |
| Ronald Christensen | | | 36:5-11 | | 36:12-18 | | | |
| Ronald Christensen | | | 38:20-39:1 | FRE 401-403 | 39:2-8 | | | |
| Ronald Christensen | | | 40:2-3, 6 | FRE 401-403 602 | 40:8-9 | | | |
| Ronald Christensen | | 288 | 68:1-13 | FRE 801-802 805 | | | | |
| Ronald Christensen | | | 68:23-69:11 | | | | | |
| Ronald Christensen | | | 69:16-17 | | | | | |
| Ronald Christensen | | | 71:24-72:8 | FRE 801-802 | 71:19-23 73:21-74:3 | OS | 74:4-10 | |

5

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | | 75:12-15 75:25-76:5 | | | |
| Ronald Christensen | | | 92:7-15 | FRE 401-403 | | | | |
| Ronald Christensen | | 292 | 119:2-7 | | 123:9-15, 21-24 | | | |
| Ronald Christensen | | | 123:25-124:2 | | 124:3-8 | | | |
| Ronald Christensen | | | 125:2-9 | | 117:16-24 118:3-4, 9-13 172:16-173:5 | OS, SM, FRE402, 403, 602 | | |
| Ronald Christensen | | | 150:2-16 | FRE 602 as to 150:2-4 | | | | |
| Ronald Christensen | | | 165:19-24 | FRE 401-403 | | | | |
| Ronald Christensen | | 301 | 183:5-15 | | | | | |
| Ronald Christensen | | | 184:7-13 | FRE 602 | 184:15-16 172:16-173:5 | As to 172-3: OS, SM, FRE402, 403, 602 | | |
| Ronald Christensen | | | 185:3-10 | | | | | |
| Ronald Christensen | | | 188:12-14, 16-17 | FRE 401-403 | | | | |
| Ronald Christensen | | 315 | 238:2-9 | | 238:10-13 25:13-26:1 | 25-26 OS | 26:2-3 | |
| Ronald Christensen | | | 238:24-239:15 | FRE 602 | 239:16-240:5 | ATTY | | |

6

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATION | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Brian E. Hendrickson Deposition - 12/04/2019 | | | | |
| Brian Hendrickson | 12/04/2019 | | 10:23-25 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 11:11-12 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 11:21-12:9 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 18:6-7, 23-25 | FRE 801 FRE 401-403 (18:6-7 only) Subject to MIL | 18:18-22 | | | |
| Brian Hendrickson | | | 23:1-4 | FRE 801 Subject to MIL | 22:24-25 23:5-9 | | | |
| Brian Hendrickson | | | 24:11-19 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 24:23-25:6 | FRE 801 Subject to MIL | 25:17-26:2 26:14-15 26:17-27:8 | OS | | |
| Brian Hendrickson | | | 29:7-22 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 30:8-15 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 31:8-10 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | 30 | 33:1-20, 22-23 | FRE 801 FRE 602 (33:9-17 only) FRE 401-403 (33:22-23 only) | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATION | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Subject to MIL | | | | |
| Brian Hendrickson | | 30 | 34:4-5, 11-13 | FRE 401-403, 602, 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 38:25-39:16 | FRE 401-403, 801 Subject to MIL | 39:23-40:1 | | | |
| Brian Hendrickson | | | 40:2-6 | FRE 401-403, 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 40:13-41:13 | FRE 801 Subject to MIL | 41:25-42:11 43:22-44:7 44:11-15 | FRE601; Motion to strike, not responsive (after "correct") | | |
| Brian Hendrickson | | | 44:21-24 | FRE 801 Subject to MIL | 44:25-45:7 | | | |
| Brian Hendrickson | | | 45:8-9 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 57:22-58:4 | FRE 801 Subject to MIL | 57:18-21 58:11-16 | | | |
| Brian Hendrickson | | | 59:19-20, 23-25 | FRE 602, 801 Subject to MIL | 59:7-13 | | | |
| Brian Hendrickson | | 32 | 62:20-63:2 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | 32 | 63:15-22, 25 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 64:6-11 | FRE 401-403, 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 70:11-15 | FRE 401-403, 801 Subject to MIL | | | | |
| Brian Hendrickson | | 42 | 80: 5-6, 15-20 | FRE 401-403, 801 Subject to MIL | 80:10-12 | | | |

8

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATION | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Brian Hendrickson | | 43 [Srsen 49] | 81:11-18 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | Srsen 49 | 85:14-23 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | Srsen 49 | 86:4-14 | FRE 801 Subject to MIL | 86:15-17 86:19-87:3 | OS, FRE602, 801 | 87:4-5, 7-15, 17-19, 21-24 | |
| Brian Hendrickson | | 49 | 89:2-5 | FRE 801 Subject to MIL | 87:25-88:13 | OS | 88:14-89:1 | |
| Brian Hendrickson | | 44 | 90:3-13 | FRE 801 Subject to MIL | 90:14-17 90:21-24 | FRE602, OS | 90:18-20 | |
| Brian Hendrickson | | 44 | 91:10-23 | FRE 602, 801 Subject to MIL | | | | |
| Brian Hendrickson | | 44 | 94:5-95:1 | FRE 602, 801 Subject to MIL | 95:2-6 | FRE402, 403, 602 | | |
| Brian Hendrickson | | 44 | 95:7-9 | FRE 602, 801 Subject to MIL | | | | |
| Brian Hendrickson | | 44 | 103:18-19 | FRE 801 Subject to MIL | 103:16-17 | | | |
| Brian Hendrickson | | 44 | 104:14-17, 20-25 | FRE 602, 801 Subject to MIL | 104:3-13 | FRE104, 602 | | |
| Brian Hendrickson | | 44 | 108:16-20 | FRE 401-403, 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 118:20-21, 23-25 | FRE 801 Subject to MIL | | | | |
| Brian Hendrickson | | | 137:6-8, 15-17 | FRE 801, Incomplete question/answer pair Subject to MIL | 134:21-135:3 137:9-12 137:19-20 | SM, OS, FRE402 403 | 135:4-12 | |
| Brian Hendrickson | | | 140:14-16 | FRE 801 Subject to MIL | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATION | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Brian Hendrickson | | | 154:15-21 | FRE 801 FRE 602 (154:19-21 only) Subject to MIL | | | | |

10

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| colspan="9" | **Richard M. Herreid - 07/21/2015** |
| Richard M. Herreid | 07/21/2015 | | 9:2-23 | | 9:24-10:1 | | | |
| Richard M. Herreid | | | 12:22-25 | | 11:23-12:15 12:22-13:1 | | | |
| Richard M. Herreid | | 60 | 15:2-4, 15-20 | | 15:2-16:19 | | | |
| Richard M. Herreid | | | 62:6-9 | | 62:10-63:7 | OS, SM | 169:1-3; 170:1-22 | |
| Richard M. Herreid | | | 98:10-18 | | 98:19-99:8 99:19-21 | SM, INC, V | | |
| Richard M. Herreid | | | 100:2-10 | | 99:25-100:1 | SM, INC, V | 100:3-17 | |
| Richard M. Herreid | | | 101:20-22 | | | | | |
| Richard M. Herreid | | | 101:25-102:1 | | 102:2-12 | | | |
| Richard M. Herreid | | | 102:13-15 | | 102:17-18 | | | |
| Richard M. Herreid | | 71 | 103:5-19 | FRE 401-403 and 602 regarding 103:11-13 | | | | |
| Richard M. Herreid | | 82 | 160:4-9, 13-15 | | 125:25-129:4 160:10-12 160:16-161:1 | OS, SM, FRE402, 403, 602, 801, INC | 129:5-6, 19-25 | |
| Richard M. Herreid | | | 210:24-211:14 | FRE 401-403 | | | | |

11

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | **James E. Mino – 12/11/2019** | | | | |
| James E. Mino | | | 7:22-25 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | | 8:11-20 | FRE 801 Subject to MIL | 8:21-9:3 20:9-16 21:20-22:6 22:14-18 | OS, SM, FRE 402, 403, 602 | 22:7-13; 22:19-23 | |
| James E. Mino | | | 12:5-6 | FRE 401-403, 801 Subject to MIL | | | | |
| James E. Mino | | | 21:10-17 | FRE 401-403, 801 Subject to MIL | | | | |
| James E. Mino | | | 23:10-14 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 59 | 24:13-25 | FRE 801 Subject to MIL | 25:3-16 26:3-22 | OS, SM, FRE104, 402, 403, 602 | | |
| James E. Mino | | 63 (Herreid 60) | 41:2-4 | FRE 801 Subject to MIL | 41:10-18 | | | |
| James E. Mino | | 63 | 42:1-6, 18-25 | FRE 801 Subject to MIL | 42:7-17 | | | |
| James E. Mino | | 50 (Minn 288) | 54:20-55:9 | FRE 801 FRE 401-403 (54:20-22 only) Subject to MIL | | | | |
| James E. Mino | | 50 | 55:23-56:1 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 50 | 56:4-6, 19-23 | FRE 801 Subject to MIL | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| James E. Mino | | 50 | 57:7-11 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 50 | 61:6-17 | FRE 401-403, 801 Subject to MIL | 60:8-15 | FRE602 | | |
| James E. Mino | | 15 | 90:17-19 | FRE 401-403, 602, 801 Subject to MIL | 91:7-14 91:16-23 | | 91:24-92:1 | |
| James E. Mino | | 15 | 90:21-91:6 | FRE 401-403, 602, 801 Subject to MIL | | | | |
| James E. Mino | | 15 | 92:2-6, 8-10 | FRE 401-403,602, 801 Subject to MIL | | | | |
| James E. Mino | | | 94:4-7 | FRE 801 Subject to MIL | 94:8-11 | OS | | |
| James E. Mino | | 53 | 95:14-96:15 | FRE 801 Subject to MIL | 96:16-23 97:5-9 | SM, OS, Move to strike 96:16-23 after "That is correct." | | |
| James E. Mino | | 69 | 102:14-16, 21-25 | FRE 801 Subject to MIL | 103:1-4 | FRE602 | | |
| James E. Mino | | 69 | 104:7-14 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 69 | 104:20-105:6 | FRE 602, 801 Subject to MIL | | | | |
| James E. Mino | | 69 | 105:22-24 | FRE 602, 801 Subject to MIL | | | | |
| James E. Mino | | 49 | 108:5-23 | FRE 602, 801 Subject to MIL | 108:24-25 | | | |
| James E. Mino | | 49 | 109:1-6 | FRE 602, 801 Subject to MIL | | | | |

13

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| James E. Mino | | 29, 30 | 112:4-8, 11-19 | FRE 801 Subject to MIL | 112:2-3 112:9-10 | | | |
| James E. Mino | | 30 | 114:14-115:8 | FRE 801 Subject to MIL | 117:9-118:7 | OS | | |
| James E. Mino | | | 118:24-119:6 | FRE 801 Subject to MIL | 119:7-10 | OS, FRE402, 403, 602 | 119:11-16, 18-19 | |
| James E. Mino | | 33 | 132:23-133:5 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 30 | 134:2-9 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 70 | 135:2-6 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | | 136:20-23 | FRE 801 Subject to MIL | 136:16-19 136:24-137:2 137:4-5 | FRE104, 602 | | |
| James E. Mino | | 43 | 146:6-8 | FRE 401-403, 801 Subject to MIL | | | | |
| James E. Mino | | 44 | 149:17-20 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 44 | 150:11-14 | FRE 801 Subject to MIL | 150:15-16 150:19-21 | | | |
| James E. Mino | | 44 | 151:10-152:10 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 44 | 152:18-23 | FRE 801 Subject to MIL | 152:24-153:7 | OS | 154:23-25, 155: 6-11, 13-14; 156:4-8 | |
| James E. Mino | | 29 | 160:6-19 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | | 160:24-161:2 | FRE 801 Subject to MIL | 160:20-23 | | | |
| James E. | | | 161:4-22 | FRE 801 | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Mino | | | | Subject to MIL | | | | |
| James E. Mino | | | 162:7-15 | FRE 801 Subject to MIL | 161:23-162:6 | | | |
| James E. Mino | | | 163:6-12 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 29 | 164:13-18 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | | 165:1-4, 15-18, 21-24 | FRE 801 Subject to MIL | 164:19-25 165:5-7 165:10-13 | | | |
| James E. Mino | | | 166:13-167:1 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 34 | 168:18-20 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 34 | 169:2-11 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 29 | 171:2-20 | FRE 801 Subject to MIL | 171:20-172:1 | | 172:2-4 | |
| James E. Mino | | 29 | 172:5-16, 19-24 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 29 | 173:20-25 | FRE 801 Subject to MIL | | | | |
| James E. Mino | | 29 | 174:3-4 | FRE 801 Subject to MIL | 174:5-7 | | | |
| James E. Mino | | 29 | 176:5-14, 16-17 | FRE 801 Subject to MIL | 176:19-21 176:23-177:3 | | | |

15

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Larry J. Pfeil – 10/12/2015 | | | | |
| Larry J. Pfeil | 10/12/2015 | | 8:9-9:10 | | | | | |
| Larry J. Pfeil | | | 9:19-10:17 | | | | | |
| Larry J. Pfeil | | | 59:19-25 | FRE 401-403 | | | | |
| Larry J. Pfeil | | 255 | 118:11-18, 23-25 | | | | | |
| Larry J. Pfeil | | 255 | 119:15-19 | | 119:20-25 | | | |
| Larry J. Pfeil | | 255 | 120:8-12 | | 120:1-7 120:13-16 | | | |
| Larry J. Pfeil | | | 122:22-123:2 | | 120:19-122:13 | | 122:14-17, 20-21 | |
| Larry J. Pfeil | | | 123:5-7 | FRE 602 | 123:3-4 | | | |
| Larry J. Pfeil | | 258 | 129:10-20 | | | | | |
| Larry J. Pfeil | | 258 | 130:6-16 | | 130:17-22 | | | |
| Larry J. Pfeil | | 258 | 132:8-22 | | 132:2-7 | | | |
| Larry J. Pfeil | | 258 | 135:6-12 | | | | | |
| Larry J. Pfeil | | 258 | 136:12-16 | | 136:17-23 | | | |
| Larry J. Pfeil | | | 248:23-249:7 | | | | | |
| Larry J. Pfeil | | 272 | 249:19-250:4 | FRE 401-403, 602 | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Chet Rao, Ph.D. – 10/09/2015 | | | | |
| Chet Rao | 10/09/2015 | | 8:8-13 | | | | | |
| Chet Rao | | | 9:24-25 | | | | | |
| Chet Rao | | 148 | 23:17-24:1 | FRE 401-403 | 24:5-12 | OS, | | |
| Chet Rao | | 148 | 24:13-17 | FRE 401-403 | 24:18-25:1 | OS, FRE104, 602 | | |
| Chet Rao | | 148 | 41:2-13, 17-23 | FRE 401-403 | 34:8-35:21 36:10-38:12 41:14-16 41:24-25 | | | |
| Chet Rao | | 152 | 44:6-11, 15-19 | | 44:22-25 | | | |
| Chet Rao | | 152 | 53:16-19 | | 53:20-23 | | | |
| Chet Rao | | 152 | 53:24-54:4 | | 54:5-10 | | | |
| Chet Rao | | 152 | 54:11-14 | | 54:15-55:3 58:6-16 | FRE402, 403 | | |
| Chet Rao | | 152 | 71:6-12 | | 71:13-73:1 | FRE602, 802 | | |
| Chet Rao | | | 95:19-24 | FRE 401-403 | | | | |
| Chet Rao | | | 96:20-23 | FRE 401-403 | 96:10-19 | | | |
| Chet Rao | | | 113:7-10 | FRE 401-403 | 113:11-15 | | | |
| Chet Rao | | | 151:25-152:3 | FRE 401-403 | 150:18-151:24 152:19-23 | | | |
| Chet Rao | | 187 | 234:22-23 | FRE 401-403 | | | | |
| Chet Rao | | 187 | 235:5-15 | FRE 401-403 | 235:16-19 | | | |

17

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Brian J. Srsen – 07/16/2015 & 01/10/2020 | | | | |
| Brian J. Srsen | 07/15/2015 | | 7:10-13, 22-25 | FRE 801 Subject to MIL | 7:14-21 | | | |
| Brian J. Srsen | | | 66:14-18 | FRE 401-403, 801 Subject to MIL | 63:23-64:4 65:13-16 66:12-13 66:19-67:9 | 67:1-9 OS, FRE602 | | |
| Brian J. Srsen | 01/10/2020 | | 47:3-8 | FRE 401-403, 602, 801 Subject to MIL | 15:20-16:5 20:25-21:3 29:7-15 29:19-30:4 30:14-31:1 33:10-34:6 43:20-22 44:3-7 46:22-47:2 47:9-11 49:18-23 50:1-10 50:19-22 | OS, SM, AA, CM, FRE103, 104, 601, 611, 802, | 31:2-3; 33:3-7; 44:8-18; 45:6-8, 10-15 | |
| Brian J. Srsen | | | 51:13-15, 18-19 | FRE 401-403, 602, 801 Subject to MIL | 51:10-12 51:21-23 | OS | | |
| Brian J. Srsen | | 76 | 58:22-24 | FRE 801 Subject to MIL | 54:12-23 55:25-56:11 56:14-23 57:6-14 57:21-25 58:12-21 58:25-59:7 | OS | 54:24-55:3; 58:1-5 | |

18

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Brian J. Srsen | | | 59:8-12 | FRE 801 Subject to MIL | | | | |
| Brian J. Srsen | | 78 | 63:6-25 | FRE 801 Subject to MIL | 62:13-19 63:4-5 | FRE104, 602, 802 | | |
| Brian J. Srsen | | | 64:12-14, 16-20 | FRE 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 66:19-25 | FRE 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 67:1-3 | FRE 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 68:1-6 | FRE 801 Subject to MIL | 68:7-13 | FRE104, 602 | 68:14-16 | |
| Brian J. Srsen | | | 87:8-10 | FRE 401-403, 602, 801 Subject to MIL | 69:4-7 69:15-70:11 87:11-21 | 69-70:OS, FRE802  87: FRE402, 403 | 2020 30b6 Tr. 128:12-19 | |
| Brian J. Srsen | | | 87:22-88:11 | FRE 401-403, 602, 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 94:11-13, 20-21, 24-25 | FRE 401-403, 602, 801 Subject to MIL | 93:20-94:10 94:14-19 | | | |
| Brian J. Srsen | | | 98:24-99:24 | FRE 801 Subject to MIL | 99:25-100:13 | 100:5-13: OS, FRE103, 104, 602, 802 | | |
| Brian J. Srsen | | | 101:4-16, 19-21 | FRE 801 Subject to MIL | 101:23-102:1 104:5-10 | OS, FRE103, 104, 601, 802 | | |
| Brian J. Srsen | | | 104:11-13, 18-21 | FRE 801 Subject to MIL | 104:22-105:2 | FRE103, 104, 802 | | |
| Brian J. Srsen | | | 110:1-111:15 | FRE 401-403, 602, 801 | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Subject to MIL | | | | |
| Brian J. Srsen | | | 114:24-115:3 | FRE 801 Subject to MIL | 113:3-9 113:16-114:3 114:13-23 118:15-21 119:5-15 121::3-4 121:6-15 121:22-122:8 123:1-3 123:6-9 | OS, SM; FRE103, 104, 602, 802, "move to strike", | 114:4-7; 122:18-20, 22-24; 123:17-23 | |
| Brian J. Srsen | | | 116:12-16 | FRE 801 Subject to MIL | 113:3-9 113:16-114:3 114:13-23 118:15-21 119:5-15 121::3-4 121:6-15 121:22-122:8 123:1-3 123:6-9 | OS, SM; FRE103, 104, 602, 802, "move to strike", | 114:4-7; 122:18-20, 22-24; 123:17-23 | |
| Brian J. Srsen | | | 124:5-8, 16-17, 19-22 | FRE 401-403, 602, 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 124:24-125:2 | FRE 401-403, 602, 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 125:5-7, 9-14, 17-23 | FRE 401-403, 602, 801 Subject to MIL | | | | |
| Brian J. | | | 127:4-8, 11-13 | FRE 401-403, | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Srsen | | | | 602, 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 128:10-13, 15-18 | FRE 801, Incomplete question/answer pair Subject to MIL | 128:19-129:1 129:3-7 129:10-18 | OS, FRE701, 802 | | |
| Brian J. Srsen | | | 129:20-25 | FRE 801 Subject to MIL | 130:1-3 | | | |
| Brian J. Srsen | | | 130:4-22 | FRE 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 131:6-11 | FRE 801 Subject to MIL | 131:21-22 131:24-132:4 | OS, FRE104, 402, 403, 602, 802 | | |
| Brian J. Srsen | | | 132:14-15 | FRE 801 Subject to MIL | 132:16-19 | | | |
| Brian J. Srsen | | | 133:25-134:9 | FRE 801 Subject to MIL | | | | |
| Brian J. Srsen | | | 140:15-17, 19-24 | FRE 801 Subject to MIL | 136:11-137:12 138:19-139:17 139:20-24 141:1-9 | OS, SM, FRE602, 611,802, motion to strike | | |
| Brian J. Srsen | | | 147:4-9 | FRE 801 Subject to MIL | 146:9-10 146:12-19 146:21-147:2 147:10-148:8 148:11-19 | OS, SM, FRE602, 611,802, motion to strike | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| colspan="9" | | | | | | | | |


| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| colspan | | | | | | | | |

**Thomas Van Doorn – 11/26/2019 & 09/22/2015**

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Thomas Van Doorn | 11/26/2019 | | 8:6-13 | | | | | |
| Thomas Van Doorn | | | 10:15-19 | | | | | |
| Thomas Van Doorn | | | 11:8-10 | | | | | |
| Thomas Van Doorn | | | 37:20-21 | | | | | |
| Thomas Van Doorn | | | 52:22-24 | FRE 401-403 | | | | |
| Thomas Van Doorn | | | 53:3-9 | FRE 401-403 | | | | |
| Thomas Van Doorn | | | 98:19-22 | | | | | |
| Thomas Van Doorn | | | 110:19-111:7 | | 243:19-244:3 | OS | 244:12-245:20; 284:8-285:9; 285:14-20 | |
| Thomas Van Doorn | | | 121:25-122:8 | | 122:9-20 | | | |
| Thomas Van Doorn | | | 125:16-126:5 | FRE 801-802 | 125:8-15 | | | |
| Thomas Van Doorn | | | 138:5-8 | FRE 801-802 | 134:13-135:4 136:17-24 139:20-140:1 145:13-16 | OS, | 135:12-23 | |
| Thomas Van Doorn | | | 142:1-6 | | 142:7-13 | | | |
| Thomas Van Doorn | | | 193:21-23 | | | | | |

22

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Thomas Van Doorn | | | 193:25-194:1 | | 194:2-10 197:20-23 216:11-13 | | 215:18-22 | |
| Thomas Van Doorn | | 4 | 198:13-17 | | | | | |
| Thomas Van Doorn | | 4 | 199:17-25 | | 196:6-19 207:16-25 | OS | | |
| Thomas Van Doorn | | 4 | 203:18-23 | FRE 602 | 203:10-17 203:24-25 204:3-4 | CM, argumentative | | |
| Thomas Van Doorn | | 4 | 204:15-25 | FRE 602 | 205:25-206:6 | | | |
| Thomas Van Doorn | | | 240:6-18 | | 240:19-21 240:23-241:5 | | | |
| Thomas Van Doorn | | 14 | 255:19-256:10 | | 129:12-15 | OS, FRE602 | | |
| Thomas Van Doorn | | 14 | 256:13-17 | | 256:18-257:5 | | 251:9-24 | |
| Thomas Van Doorn | | | 268:10-19 | | | | | |
| Thomas Van Doorn | | | 272:2-15, 17, 19-20 | FRE 602 as to 272:12-15, 17, 19-20 | 196:10-12 272:16, 18 | | | |
| Thomas Van Doorn | | 20, 21 | 278:7-25 | | | | | |
| Thomas Van Doorn | | 21 | 279:20-22 | | 279:7-19 | | | |
| Thomas Van Doorn | | 22 | 292:22-29 | | | | | |
| Thomas Van Doorn | | 22 | 292:25-293:5 | | | | | |

23

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Thomas Van Doorn | | 22 | 293:16-294:7 | | | | | |
| Thomas Van Doorn | | | 301:21-23 | | 188:4-7 301:24 | | | |
| Thomas Van Doorn | | | 301:25-302:7 | FRE 401-403 | | | | |
| Thomas Van Doorn | | | 302:13-15, 18 | | 302:16-17 | | | |
| Thomas Van Doorn | | | 303:22-23 | FRE 801-802 | 303:24 | | | |
| Thomas Van Doorn | | | 303:25-304:4 | FRE 801-802 | 304:5 | | | |
| Thomas Van Doorn | | | 304:6-14 | FRE 801-802 | | | | |
| Thomas Van Doorn | | | 306:24-307:1 | FRE 801-802 | 307:2 | | | |
| Thomas Van Doorn | | | 307:3-9 | FRE 801-802 | 145:13-16 147:13-18 251:13-17 | OS, FRE402, 403 | 251:18-24 | |
| Thomas Van Doorn | | | 310:18-311:5 | | 311:6 | | | |
| Thomas Van Doorn | | | 311:7-20 | FRE 801-802 | | | | |
| Thomas Van Doorn | | | 312:5-8, 16-19, 21-22 | | 312:9, 20, 23 | | | |
| Thomas Van Doorn | | | 312:24-313:6 | FRE 801-802 | | | | |
| Thomas Van Doorn | | 23 | 317:14-318:7 | | | | | |
| Thomas | | 25 | 326:18-327:9 | FRE 602 | | | | |

Exhibit 11

HIP, INC.'S TESTIMONY AND DEPOSITION DESIGNATIONS

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HIP'S INITIAL DESIGNATIONS | HORMEL'S OBJECTIONS | HORMEL'S COUNTER-DESIGNATIONS | HIP'S OBJECTIONS TO HORMEL'S COUNTER-DESIGNATIONS | HIP'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Van Doorn | | | | | | | | |
| Thomas Van Doorn | | 26 | 329:19-24 | | | | | |
| Thomas Van Doorn | | 27 | 334:23-335:7 | FRE 602 | 196:6-19 | | 203:18-23 | |
| Thomas Van Doorn | | | 338:19-25 | | | | | |
| Thomas Van Doorn | | | 339:3-11 | | 339:12-19 | | | |
| Thomas Van Doorn | | | 339:20-340:2 | | 341:2-7 | | | |
| Thomas Van Doorn | 09/22/2015 | | 161:16-162:8 | FRE 801-802 as to 161:20-162:3; FRE 602 as to 161:20-162:3 | 67:3-5, 8 73:5-8, 11-13 | OS, SM, | 65:19-22, 25; 66:2-5, 7-20; 66:23-67:2 | |
| Thomas Van Doorn | | | 172:17-24 | FRE 602; Leading | | | | |
| Thomas Van Doorn | | 34 (Minn); Ex. 15 | 173:4-16 | FRE 602; Leading | 26:1-9 87:7-11 98:3-6, 9-11 98:24-99:2 | OS, Leading waived; | 99:3-5, 8-13 | |
| Thomas Van Doorn | | 34 (Minn) Ex. 15 | 173:21-175:7 | FRE 801-802 as to 173:4-11; 175:2-7 | 175:7-9 59:25-60:20 98:3-6, 9-10 | OS, SM | 60:21-23; 61:1-4 | |

EXHIBIT 12

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:18-cv-00802-CFC-SRF |
| | ) | |
| v. | ) | |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXHIBIT 12

## HORMEL'S DEPOSITION DESIGNATIONS

EXHIBIT 12
Hormel's Testimony and Deposition Designations

Pursuant to Local Rule 16.3(c)(7), Defendant Hormel Foods Corporation sets forth below its deposition designations and its objections to HIP's counter designations.  Hormel reserves the right to amend or supplement its pretrial disclosures, including these designations and objections, as part of the disclosure and meet-and-confer process leading up to trial, in response to HIP's disclosures and objections, and in response to any pretrial rulings or orders from the Court.  Hormel also reserves the right to designate deposition testimony from witnesses HIP indicated would be available to testify live at trial if those witnesses become unavailable.  Disclosure of any designation does not imply or establish that Hormel will use such designation and does not waive any objections that Hormel may have should HIP seek to introduce it.  Hormel's objection to any HIP deposition designation does not imply or establish that Hormel cannot use such designations and does not waive Hormel's ability to introduce it.

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Richard M. Herreid Deposition – 07/21/2015 | | | | |
| Richard M. Herreid | 07/21/2015 | | 9:8-20 | | 9:21-23 | | 9:24-10:1 | |
| Richard M. Herreid | | | 10:5-20 | | | | | |
| Richard M. Herreid | | | 11:23-12:15 | | 12:15-13:1 | | 13:2-3 | |
| Richard M. Herreid | | Exhibit 60 (MN) | 15:2-16:19 | | | | | |
| Richard M. Herreid | | | 21:13-24 | ATTY; FRE602, V | | | | |
| Richard M. Herreid | | Exhibit 61 (MN) | 22:8-23:1 | SM; FRE802 | 103:5-10, 20-24 | FRE 401-403 611 | | |
| Richard M. Herreid | | | 25:2-6; 8-22 | SM; FRE802, FRE104, 602 | 62:6-9 | FRE 401-403 | | |
| Richard M. Herreid | | | 26:24-27:3 | FRE402, 403 | | | | |
| Richard M. Herreid | | | 98:10-99:8 | FRE104, 602; | | | | |

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Richard M. Herreid | | | 99:10-21 | V; FRE104, 602 | | | | |
| Richard M. Herreid | | | 99:25-100:3 | V, AA FRE104, 602 | 100:4-10; 101:4-7, 20-22, 101:25-102:1 | FRE 611 re 101:20-22 | | |
| Richard M. Herreid | | | 102:2-12 | | 102:13-15 | FRE 611 | | |
| Richard M. Herreid | | Exhibit 75 (MN) | 123:19-23 | FRE802 | | | | |
| Richard M. Herreid | | Exhibit 75 (MN) | 125:25-129:4 | SM; FRE802 | 129:5-10; 139:16-22; 140:15-141:8 | FRE 611 | | |
| Richard M. Herreid | | Exhibit 80 (MN) | 148:15-149:22 | FRE802 | | | | |
| Richard M. Herreid | | Exhibit 80 (MN) | 149:24-153:10 | SM; | 160:4-9, 13-15; | | 160:10-12 160:16-161:2 | |

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | FRE104,602 | Dep. Ex. 82 | | | |
| Richard M. Herreid | | | 223:8-10, 12-23 | SM; FRE402; 403 | | | | |
| Richard M. Herreid | | | 224:2-224:18 | SM; FRE402; 403 | | | | |
| Richard M. Herreid | | Exhibit 109 (MN | 229:25-230:21 | SM; FRE402; 403 | | | | |

4

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | Chet Rao, Ph.D. – 10/09/2015 | | | | | |
| Chet Rao, Ph.D | 10/09/2015 | | 8:8-11 | | | | | |
| Chet Rao, Ph.D | | | 9:24-25 | | | | | |
| Chet Rao, Ph.D | | Exhibit 152 (MN | 44:6-14, 22-25 | | | | | |
| Chet Rao, Ph.D | | Exhibit 152 (MN | 58:6-16 | | 58:15-19, 25-59:5 | FRE 602 | | |
| Chet Rao, Ph.D | | Exhibit 156 (MN | 83:15-84:3 | SM; FRE104, 402, 403 602, 802 | | | | |
| Chet Rao, Ph.D | | Exhibit 156 (MN | 84:20-24 | SM; FRE104, 402, 403 602, 802 | 84:25-85:6 | | | |
| Chet Rao, Ph.D | | Exhibit 156 (MN | 85:18-86:1 | SM; FRE104, 402, 403 | 86:2-5 | | | |

5

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | 602, 802 | | | | |
| Chet Rao, Ph.D | | Exhibit 163 (MN | 111:12-16 | SM; FRE104, 402, 403 602, 802 | | | | |
| Chet Rao, Ph.D | | Exhibit 165 (MN | 120:13-14; 121:2-6, 20-23 | SM, FRE402, 403 | | | | |

6

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | **HIP, INC. – 6/24/20 and 6/25/20** | | | | | |
| HIP, Inc. (David Howard) | 6/24/20 | | 11:6-8 | | | | | |
| HIP, Inc. (David Howard) | | | 11:13-16 | | | | | |
| HIP, Inc. (David Howard) | | | 169:23-170:19 | SM; V; FRE402; 403 | 170:20-24; 171:2-5, 7-14 | | 171:15-20 | |
| HIP, Inc. (David Howard) | | | 189: 3-8 | SM; FRE402; 403 | 189:11-27; | NR INC Unclear as to designation of lines 26-27 FRE 106 | 190:8-12 | |
| HIP, Inc. (David Howard) | | HIP 30(b)(6) Ex. 17 | 197:2-18 | | | | | |
| HIP, Inc. (David Howard) | | HIP 30(b)(6) Ex. 17 | 201:1-10 | | | | | |
| HIP, Inc. (David Howard) | | | 205:11-20 | | | | | |

7

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| HIP, Inc. (David Howard) | | | 205:24-206:14 | FRE402; 403 | | | | |
| HIP, Inc. (David Howard) | 6/25/20 | | 356:22-357:5 | FRE402, 403 | | | | |

8

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Ronald L. Christensen – 10/27/15 | | | | |
| Ronald L. Christensen | 10/27/15 | | 7:21-23 | | | | | |
| Ronald L. Christensen | | | 13:13-14 | | | | | |
| Ronald L. Christensen | | | 9:24-25 | | | | | |
| Ronald L. Christensen | | | 25:13-26:1 | FRE104, 402; 403; CL | 26:2-3; | | | |
| Ronald L. Christensen | | | 117:16-118:4 | | 124:3-21 | | | |
| Ronald L. Christensen | | | 118:9-13 | | | | | |
| Ronald L. Christensen | | | 172:5-10 | SM; FRE104, 402, 403, 602 | 172:11-15 | | | |
| Ronald L. Christensen | | | 172:16-173:5 | SM; FRE104, 402, 403, 602 | 174:1-7, 15-17, 20-25 | Vague FRE 401-403 FRE 104 FRE 602 | | |

9

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | | | FRE 611 | | |

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | | Thomas Van Doorn – 11/26/2019 | | | |
| Thomas Van Doorn | 11/26/2019 | | 8:8-9 | | | | | |
| Thomas Van Doorn | | | 11:8-10 | | 10:15-19;  37:20-21 | | | |
| Thomas Van Doorn | | | 41:2-8 | | 41:9-14 | | | |
| Thomas Van Doorn | | | 41:15-16 | | 41:17-21 | | | |
| Thomas Van Doorn | | | 154:18-23 | SM, FRE103, 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 158:19-159:10 | SM, FRE103, 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 159:23-160:4 | SM, FRE103, | 160:8-18 | | 160:22-25 | |

11

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 161:12-23 | SM, FRE103, 104, 402, 403, 802 | 163:16-17, 19-24; 164:1-5 | OS | 164:6-7, 9-11 | |
| Thomas Van Doorn | | | 164:12-15 | | | | | |
| Thomas Van Doorn | | | 173:7-13 | SM, FRE103, 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 174:16-21 | SM, FRE103, 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 175:12-18 | SM, FRE103, | | | | |

12

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 176:7-16 | SM, FRE103, 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 188:24-189:4 | SM, FRE103, 104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 196:6-19 | | | | | |
| Thomas Van Doorn | | Ex. 13 | 248:2-16 | SM, FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | Ex. 13 | 249:8-20 | SM, FRE402, 403, 802 | | | | |

13

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Thomas Van Doorn | | Ex. 13 | 250:2-6 | SM, FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | Ex. 13 | 250:8-17, 20 | SM, FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | Ex. 13 | 250: 21-23; 251:1 | SM, FRE402, 403, 802 | 251:9-25; 252:1-2, 5-13 | OS, NR | | |
| Thomas Van Doorn | | Ex. 13 | 253:23-254:20; 254:22 | SM, FRE402, 403, 802 | 253: 3, 6-10 | INC (254:14 – 253:1) CM, NR | | |
| Thomas Van Doorn | | Ex. 14 | 255:19-256:2 | | | | | |
| Thomas Van Doorn | | Ex. 14 | 256:22-257:5 | | | | | |
| Thomas Van Doorn | | | 341:2-7 | SM | | | | |

14

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Thomas Van Doorn – 11/26/2019 (IPR) | | | | |
| Thomas Van Doorn | 11/26/2019 | | 6:18-22 | CM; AA | | | | |
| Thomas Van Doorn | | | 10:5-7 | CM; AA | | | | |
| Thomas Van Doorn | | | 11:10-15 | CM; INC; AA | | | | |
| Thomas Van Doorn | | | 12:9-20 | CM; AA; SM | 12:21-13:7; 9/2215 dep 4:17-24 | OS | | |
| Thomas Van Doorn | | | 13:22-14:5 | CM; AA; SM | 11/16 Del. dep, 46:6-14, 17-21; | OS | | |

15

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | | 163:23-24; 164:1-5 | | | |
| Thomas Van Doorn | | | 14:10-12 | CM; AA; SM | | | | |
| Thomas Van Doorn | | | 25:1-5 | CM; AA; SM; FRE402, 403, 802 | 16:18-20; 17:8-11, 20-22 18:1-5, 14-15, 19-22; 20:17-21 | OS | 17:12-19 18:6-13 19:10-15 20:22-21:5 22:6-9 | |
| Thomas Van Doorn | | | 27:15-17 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 28:3-28:12 | CM; AA; SM; FRE402, 403, 802 | 28:18-20 | | | |
| Thomas Van Doorn | | | 28:21-29:2 | CM; AA; SM; | | | | |

16

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 29:6-9 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 31:10-18 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 32:18-21 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 33:3-11; 34:5-8 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 34:12-15 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 35:13-21 | CM; AA; SM; | | | | |

17

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 36:7-9 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | | 36:16-21 | CM; AA; SM; FRE402, 403, 802 | | | | |
| Thomas Van Doorn | | Ex. 1025 (IPR) | 44:8-45:4 | CM; AA; SM; FRE402, 403, 802 | 45:9-13 | | | |
| Thomas Van Doorn | | Ex. 1025 (IPR) | 46:2-10; 46:13-1 | CM; AA; SM; FRE402, 403, 802 OS | 47:2-7 | OS | | |
| Thomas Van Doorn | | Ex. 2012T(IPR) | 75:18-76:1 | CM; AA; SM; FRE402, 403, 802 | | | | |

18

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Thomas Van Doorn | | | 78:16-79:1 | CM; AA; SM; FRE402, 403, 802 | 89:1-13; 90:4-11 | OS FRE611c | | |

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| | | | | Thomas Van Doorn – 9/22/15 | | | | |
| Thomas Van Doorn | 9/22/2015 | | 4:9-12 | CM; AA; SM; | | | | |
| Thomas Van Doorn | | | 9:21-10:1 | CM; AA; SM; | | | | |
| Thomas Van Doorn | | | 49:5-11 | CM; AA; SM; FRE104, 402, 403, 802 | | | | |
| Thomas Van Doorn | | | 55:4-6, 8-12 | CM; AA; SM; FRE402, 403, 802 | 55:13-16 | | | |
| Thomas Van Doorn | | | 143:25-145:4 | CM; AA; SM; FRE402, 403, 802 | 145:13-19; 147:3-12, 15-18; 151:24-152:2; | FRE 611c OS (p. 147 and 151-152) | | |

EXHIBIT 12
Hormel's Testimony and Deposition Designations

| DEPONENT NAME | DEPO DATE | REFERENCED EXHIBIT | HORMEL'S INITIAL DESIGNATIONS | HIP'S OBJECTIONS | HIP'S COUNTER-DESIGNATIONS | HORMEL'S OBJECTIONS TO HIP'S COUNTER-DESIGNATIONS | HORMEL'S COUNTER-COUNTER DESIGNATIONS | COURT RULING |
|---|---|---|---|---|---|---|---|---|
| Thomas Van Doorn | | | 178:11-13, 23-24 | CM; AA; SM; FRE402, 403, 802 AA | 178:4-10 | | | |
| Thomas Van Doorn | | | 178:25-179:4 | CM; AA; SM; FRE402, 403, 802 | | | | |

EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | CONFIDENTIAL |
| | ) | FILED UNDER SEAL |
| Defendant. | | |

**HIP'S MOTION IN LIMINE #1**
**TO PRECLUDE HORMEL, BASED ON ISSUE PRECLUSION, FROM REARGUING**
**<u>POSITIONS IT PREVIOUSLY LOST IN THE PRIOR MINNESOTA LITIGATION</u>**

In its defense to HIP's claims that Mr. Howard is the inventor of '498 Patent claims, Hormel seeks to reargue issues concerning ownership of Mr. Howard's invention Hormel previously raised and lost in the parties' prior litigation in Minnesota. Specifically, Hormel should be barred from asserting that: (1) Mr. Howard did not conceive of or disclose his "Unitherm Process"[1] to Hormel prior to September 25, 2007, or that Mr. Howard fabricated evidence of his inventive work to predate September 25, 2007; (2) Mr. Howard's disclosure of the Unitherm Process to Hormel did not induce Hormel to enter into the parties Joint Development Agreement ("JDA") on September 25, 2007; or (3) any Hormel employee made an inventive contribution to U.S. Patent No. 9,510,610 (the "'610 Patent"). The details of the Unitherm Process, *e.g.*, including those disclosed in the '610 Patent, reappear as the claims of the '498 Patent.

## I.      STATEMENT OF PREVIOUSLY ADJUDICATED FACTS

In 2014, HIP's predecessor, Unitherm, sued Hormel in the District of Minnesota for breach of the JDA. Hormel counterclaimed, alleging the JDA required Unitherm to assign it ownership of the "Unitherm Process" and seeking a declaration that "Hormel owns the patented 'Unitherm Process.'"  *HIP, Inc. v. Hormel Foods Corp.*, 888 F.3d 334, 337 (8th Cir. 2018), *aff'g Unitherm Food Sys. v. Hormel Foods Corp.*, 2016 WL 4005649, at *14-15 (D. Minn. 2016). The district court granted summary judgment against Hormel and in favor of HIP on these counterclaims. *Unitherm Food Sys.*, 2016 WL 4005649, at *14-15. The district court first looked at the JDA, which provided Hormel would own all "inventions," a term defined as "all discoveries, improvements, know-how and ideas … developed after" the JDA's effective date of September

[1] The Minnesota district court defined "Unitherm Process" as the process Mr. Howard invented for cooking sliced bacon in a spiral oven, explaining that "Unitherm "filed a patent application for the Unitherm Process on January 11, 2008." *Unitherm Food Sys.*, 2016 WL 4005649, at **1-2. The district court opinion is Exhibit A.  The '610 Patent claims priority to that January 11, 2008 application.

25, 2007. *Id*. at *14. It then entered summary judgment for HIP, holding the undisputed factual record established that "Howard conceived of the Unitherm Process before the JDA's effective date," and Hormel had failed to prove it made "any specific improvement in the process" in Unitherm's patent application. *Id*., *15. It further held that Hormel had failed to show the Unitherm Process constituted a "Joint Invention" *Id*., *15 n.4.

The Eighth Circuit affirmed. *HIP*, 888 F.3d at 343. It ruled that "the Unitherm Process, as patented [*i.e*., the '610 Patent], was conceived by Unitherm and sufficiently reduced to practice to induce Hormel to enter into the JDA . . . ." *Id*. In addition, the Eighth Circuit agreed that Hormel had "presented no evidence that any improvements in the Process as patented [*i.e*., the '610 Patent] were developed" under the JDA. *Id*.

Nevertheless, Hormel seeks to offer fact and/or expert testimony inconsistent with the issues it lost in prior litigation. Hormel, and its expert, wrongly accuse Mr. Howard of falsifying documents to claim a conception date before September 25, 2007, even though both the district court and the Eighth Circuit held that Mr. Howard, *inter alia*, conceived of his invention prior to that date. Ex. B, ¶¶ 70, 73 (Gunawardena Rpt.); Ex. C, ¶¶ 11-25, §§ VI-VII (all paragraphs) (Montegudo Rpt.). Contrary to the adverse rulings in the Minnesota litigation, Hormel's expert erroneously opines "Hormel" made inventive contributions to the '610 Patent, (Ex. C¶¶ 90, 92) and/or already knew it (Ex. B, ¶¶ 97-113). Hormel's expert also opines about "flaws" in evidence corroborating Mr. Howard's conception of the '610 (and '498) Patents – evidence  the district court and Eighth Circuit found sufficient to establish that Mr.  Howard conceived the Unitherm Process [e.g, the '610 Patent] prior to entering into the JDA on September 25, 2007. Ex. B, ¶¶ 54-60, 62-69, 75, 80-86.

## II.   ISSUE PRECLUSION BARS THESE ARGUMENTS

Hormel confuses claim preclusion with issue preclusion in arguing that the legal issue of inventorship could not have been decided because the '610 Patent had not yet issued until the pendency of the Eighth Circuit appeal and the '498 Patent did not issue until after the appellate decision. "Issue preclusion, also known as collateral estoppel, bars the re-litigation of an issue of fact or law that was previously litigated and decided." *Evonik Degussa GmbH v. Materia Inc.*, 53 F. Supp. 3d 778, 787 (D. Del. 2014) (citing *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995)); *see also Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d. 357, 364 (D. Del. 2015) (applying issue preclusion). There are four requirements for issue preclusion: (1) the issue must be identical to an issue previously adjudicated; (2) the issue must have been actually litigated; (3) the determination of the issue must have been necessary to the prior judgment; and (4) the party against whom preclusion is now asserted must have had a full and fair opportunity to litigate the issue. *Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001). All four are present here.

As to the first and second factors, the same issues that Hormel presses here – whether Mr. Howard conceived of his inventions prior to September 25, 2007; whether he disclosed them to Hormel to induce Hormel to enter into the JDA on September 25, 2007; and whether anyone from Hormel made an inventive contribution to Mr. Howard's inventions – were actually litigated and decided adversely to Hormel in the Minnesota litigation. As to the third factor, these findings were necessary predicates to the district court's grant of summary judgment, rejecting Hormel's breach of contract and ownership counterclaims, and the affirmance by the Eighth Circuit of these rulings. Finally, Hormel cannot deny it had a full and fair opportunity to litigate all issues in the Minnesota lawsuit through summary judgment in the district court and on appeal.

3

# EXHIBIT A

Unitherm Food Systems, Inc. v. Hormel Foods Corporation, Not Reported in Fed. Supp....

2016 WL 4005649

2016 WL 4005649
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

UNITHERM FOOD SYSTEMS, INC., Plaintiff,

v.

HORMEL FOODS CORPORATION and Hormel Foods Corporate Services, LLC, Defendants.

Case No. 14-cv-4034 (JNE/BRT)

|

Signed 07/25/2016

**Attorneys and Law Firms**

Dennis D. Brown, Brown Patent Law, PLLC, Broken Arrow, OK, Edward F. Fox, Jeffrey R. Mulder, Mark R. Bradford, Bassford Remele, PA, Minneapolis, MN, J. Christopher Davis, Paul D. Kingsolver, Jonathan D. Cartledge, Johnson & Jones, P.C., Tulsa, OK, for Plaintiff.

Kurt J. Niederluecke, Ted C. Koshiol, Timothy M. O'Shea, Fredrikson & Byron, PA, Minneapolis, MN, for Defendants.

ORDER

JOAN N. ERICKSEN, United States District Judge

**\*1** This matter is a contract dispute between Plaintiff Unitherm Food Systems, Inc. (Unitherm) and Defendants Hormel Foods Corporation and Hormel Foods Corporate Services, LLC (Hormel). It is before the Court on Unitherm's motion for partial summary judgment and Hormel's motion for summary judgment. [1]

## BACKGROUND

Unitherm is in the business of developing processes and equipment for cooking meat. Hormel is a manufacturer and marketer of brand-name food and meat products. Unitherm's owner, David Howard, invented a process for cooking sliced bacon in a spiral oven (the Unitherm Process). On July 20, 2007, Howard gave a presentation to Hormel. Before the presentation, the parties signed a Mutual Confidential Disclosure Agreement (MCDA), agreeing to hold certain information in confidence.

On September 25, 2007, the parties entered into a Joint Development Agreement (JDA). The purpose of the JDA was "to develop commercial ovens using high steam levels which would be exclusive to Hormel ('The Project')." Unitherm and Hormel agreed that, "[f]ollowing completion of a commercially viable application of the Project, the parties will negotiate an agreement by which Unitherm will be the exclusive supplier to Hormel of equipment related to the Project for an initial period of five (5) years," with the possibility of an extension. The parties further agreed that all information shared relating to the Project would be considered confidential in accordance with the terms of the MCDA.

Unitherm filed a patent application for the Unitherm Process on January 11, 2008. That same year, Hormel agreed to lease a mini spiral test oven from Unitherm, which it later moved to a Hormel research and development facility. Hormel used the oven

Unitherm Food Systems, Inc. v. Hormel Foods Corporation, Not Reported in Fed. Supp....

2016 WL 4005649

to test a process in which bacon is preheated with a microwave and then cooked in a spiral oven (the Hybrid Process). On April 1, 2010, Hormel sent a letter to Unitherm terminating the JDA. On August 16, 2010, Hormel purchased from Unitherm the spiral test oven it had been leasing. Approximately one year later, Hormel filed a patent application for the Hybrid Process.

In March 2012, representatives of JBT, a Unitherm competitor that also makes spiral ovens, visited the Hormel facility housing the Unitherm oven. A JBT report of the trip states that they "observed and measured the current spiral oven cooking process" with the Unitherm oven, that "JBT must now duplicate the oven conditions" in its own oven, and that Hormel would soon visit JBT "to determine if we can accurately duplicate the conditions to give them the same flavor and texture." In 2013, Hormel began to procure commercial oven equipment from JBT. In 2014, Hormel released a bacon product, Bacon1, made using the Hybrid Process.

Unitherm filed this suit in September 2014, bringing claims for breach of contract, unjust enrichment, trade secrets misappropriation, accounting, and declaratory relief. The Honorable Paul A. Magnuson dismissed the trade secrets and accounting claims on January 27, 2015. Hormel answered and filed breach of contract and declaratory judgment counterclaims. Each remaining claim and counterclaim is covered by one or both of the summary judgment motions.

## STANDARD OF REVIEW

**\*2** Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### A. Unitherm's Breach of Contract Claim

Both parties move for summary judgment on Unitherm's breach of contract claim. To prevail, Unitherm must show: the formation of a contract, performance of any conditions precedent, a breach, and damages. *See Parkhill v. Minnesota Mut. Life. Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000). Unitherm identifies several alleged breaches.

#### 1. Termination of the JDA

The JDA allows either party to terminate the agreement "if, after reasonably adequate development work and testing has been done, a commercially viable Project has not resulted, upon providing at least thirty (30) days prior written notice." On April 1, 2010, Hormel informed Unitherm it was terminating the JDA because "no commercially viable results have been achieved." Unitherm argues Hormel had no basis for terminating the agreement because the parties had in fact achieved a commercially viable Project.

Unitherm points to evidence showing the Unitherm Process had produced quality bacon. This evidence, though, is irrelevant because the JDA Project concerned the development of a commercial oven, not a cooking process. The JDA defines "The Project" in its second paragraph, which states in full:

> Hormel and Unitherm would like to work together to develop an oven that uses very high (approaching 100%) steam levels for cooking. This oven process would initially be focused on producing bacon. Hormel has developed a prototype high steam level oven that produces such bacon and would like to work with Unitherm to develop commercial ovens using high steam levels which would be exclusive to Hormel ("The Project").

Unitherm argues that "The Project" is defined by the whole paragraph. However, the term falls within the period of the last sentence, indicating it refers only to that sentence. The sentence discusses developing commercial ovens, not oven processes. There is no evidence the parties developed ovens, let alone commercially viable ones. Thus, there is no evidence to undermine Hormel's stated basis for terminating the JDA.

Even if Unitherm could establish a breach, Unitherm cannot satisfy the damages element. Unitherm bases its damages theory on the JDA's exclusivity provision, which states:

> Following completion of a commercially viable application of the Project, the parties will negotiate an agreement by which Unitherm will be the exclusive supplier to Hormel of equipment related to the Project for an initial period of five (5) years. Such agreement will include provisions to govern performance and pricing of the equipment.... Following the initial five (5) year period of exclusivity, the parties will attempt, in good faith, to negotiate an agreement by which the exclusivity period is extended.

Unitherm argues the parties were obligated by these terms to negotiate an exclusive supplier agreement. However, "[u]nder Minnesota law, agreements to negotiate in good faith in the future are unenforceable as a matter of law." *C&S Acquisitions Corp. v. Northwest Aircraft, Inc.*, 153 F.3d 622, 626 (8th Cir. 1998). "[A]n agreement to negotiate in good faith in the future is not enforceable because it does not constitute the parties' complete and final agreement." *Mohrenweiser v. Blomer*, 573 N.W.2d 704, 706 (Minn. App. 1998). Under this case law, the parties' agreement to negotiate a supplier agreement is unenforceable.

 **\*3**  Unitherm offers a few unavailing counterarguments. First, Unitherm argues it can reserve the issue of damages for trial. While the exact amount of damages may be reserved, Unitherm's breach of contract claim fails as a matter of law if Unitherm cannot establish that it suffered some cognizable damages. *See Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578–79 (Minn. App. 2004). While Unitherm insists it can show lost profits damages through witness and expert testimony, this evidence does not affect the legal conclusion that the JDA's exclusivity provision is unenforceable. Unitherm also argues its damages are not based solely on the JDA but also come from the MCDA's remedies provision. However, that provision concerns damages from the disclosure or misappropriation of confidential information. It is not implicated by Hormel's decision to terminate the JDA.

### 2. Failure to Provide Notice
Unitherm also maintains Hormel breached the JDA by failing to give the required thirty days' notice. This argument fails because Unitherm cannot show damages. Unitherm was not owed any performance or obligation during the relevant thirty-day period.

### 3. Failure to Share Information

The JDA provides that "Hormel and Unitherm shall share information and ideas to assist in the development of the Project," and that they "agree to promptly communicate to each other the status of developments arising from the work." Unitherm argues Hormel breached this obligation to share information when it did not inform Unitherm about: (1) the use of Unitherm's oven to test microwave preheating; (2) the results of Hormel's taste panel testing of bacon produced by the Unitherm Process; (3) Hormel's work and talks with JBT; (4) Hormel's use of Unitherm's oven for a demonstration to Costco; (5) Hormel's preparations for a patent application; and (6) Hormel's use of the oven after terminating the JDA.

Two of these items, the post-termination use of the oven and the patent application preparations, took place after the JDA was terminated, at which point there was no obligation to share information. Similarly, for the demonstration to Costco, Unitherm points to no evidence that it took place while the JDA was in effect. Unitherm cites to an exhibit consisting of a printout of slides discussing Costco's plans to tour Hormel's facility. These slides are dated "12.2011," which was more than one year after Hormel terminated the JDA. Regarding Hormel's talks with JBT, the JDA did not obligate Hormel to share with Unitherm the status of its work with other companies. As for the Hybrid Process and the testing of the Unitherm Process, Hormel was only obligated to share information regarding the JDA Project, which, as discussed above, concerned the development of ovens. Hormel did not have to share information regarding the development or comparison of cooking processes. Even assuming Hormel was obligated to share information about any of the above items, Unitherm has not adequately explained how any failure to share caused cognizable and non-speculative damages. Accordingly, this aspect of the breach of contract claim fails too.

### 4. Disclosure and Reverse Engineering of Confidential Information

The MCDA restricts the disclosure of confidential information and prohibits the reverse engineering of confidential prototypes or other materials. Unitherm alleges Hormel breached these restrictions when, in 2012, it allowed JBT to examine the Unitherm oven and Unitherm Process, gave JBT data on conditions in the oven, and directed JBT to duplicate the oven conditions. [2] Whether this conduct breached the confidentiality agreement depends on whether the Unitherm Process and the Unitherm oven were protected confidential information, because the MCDA only restricts the disclosure and reverse engineering of confidential information.

**\*4** The Unitherm Process became public when Unitherm's patent application was published on July 16, 2009. The MCDA specifically does not apply to information that "is or becomes public knowledge through no breach of this Agreement." Thus, the Unitherm Process was not protected confidential information at the time of the alleged breaches. [3]

With respect to the oven, the MCDA requires the parties to identify their confidential information, though "[t]he failure of either Party to mark any tangible or intangible information as Confidential Information shall not give the other Party the right to treat such information as free from the restrictions imposed by this Agreement if the circumstances would lead a reasonable person to believe that such information may be Confidential Information." In this case, there is no evidence the oven was marked as confidential. Whether it should be treated as confidential thus depends on the circumstances. It is undisputed that, by the time of the alleged breaches, Unitherm had marketed the oven and displayed the exact oven at issue at a trade show. It is also undisputed that Hormel owned the oven, a factor strongly indicating the oven was not Unitherm's confidential information. Indeed, the position that the oven could remain Unitherm's confidential information after Unitherm sold it to Hormel is at odds with the MCDA. The MCDA states: "The Parties acknowledge the Confidential Information each receives from the other is the property of the Discloser and the Recipient has no claim of ownership to the Discloser's Confidential Information." Thus, if the oven was Unitherm's confidential information, Hormel, as the recipient of that information, would have had no claim of ownership. However, it is undisputed that, after August 2010, Hormel owned the oven outright. On these circumstances, the Court finds that the oven was not Unitherm's confidential information at the time of the alleged breaches. The conditions in the oven at that time were likewise not protected confidential information. Accordingly, the breach of contract claim fails.

Unitherm Food Systems, Inc. v. Hormel Foods Corporation, Not Reported in Fed. Supp....

2016 WL 4005649

### B. Unitherm's Unjust Enrichment Claim

Unitherm brings an unjust enrichment claim in the alternative to its breach of contract claim. "Unjust enrichment is an equitable theory which cannot be asserted where the rights of the parties are governed by a valid contract." *Holiday Hosp. Franchising, Inc. v. H-5, Inc.*, 165 F. Supp. 2d 937, 941 (D. Minn. 2001). Thus, to the extent Unitherm's claim is based on conduct governed by the JDA, the claim fails. To the extent the claim is based on Hormel's disclosure of confidential information and reverse engineering of the oven, which occurred after the JDA's termination, the claim fails because the parties' conduct was still governed by the MCDA. Finally, to the extent Unitherm's unjust enrichment claim is based on the allegations that Hormel stole the Unitherm Process, the claim fails because it is based on the same operative facts, and is therefore preempted by, Unitherm's dismissed claim under Minnesota's Uniform Trade Secrets Act. *See* Minn. Stat. § 325C.07(a) (stating that the Act "displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret"); *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 205 (D. Minn. 1988) ("To the extent a cause of action exists in the commercial area *not* dependent on trade secrets, that cause continues to exist.").

**\*5** Unitherm repeatedly points out that its unjust enrichment claim was allowed to survive Hormel's motion to dismiss. However, the Court must now examine the claim in light of the record at summary judgment. To survive summary judgment, Unitherm must show the unjust enrichment claim is based on conduct that was not governed by an agreement between the parties and not based on the same facts as its dismissed trade secrets claim. Unitherm has not done so.

### C. Hormel's Breach of Contract Counterclaim

Unitherm moves for summary judgment on Hormel's counterclaim alleging Unitherm breached the JDA by failing to assign ownership of the Unitherm Process to Hormel. Hormel insists it owns the Unitherm Process because the JDA provides that Hormel will own all "Inventions," a term defined as "all discoveries, improvements, know-how, and ideas ... relating to the Project developed after the effective date of this Agreement." Hormel has not shown that the Unitherm Process meets this definition. Hormel has not explained how the Unitherm Process relates to the Project, which Hormel correctly points out was about the development of a commercial oven and not a process. Moreover, it is undisputed Howard conceived of the Unitherm Process before the JDA's effective date. While Hormel has evidence showing it provided insights to support Unitherm's patent application for the process, Hormel does not point the Court to any specific improvement in the process that was developed as part of the Project. [4] Accordingly, Hormel has not shown it owns the Unitherm Process, and its breach of contract counterclaim fails.

### D. The Unitherm Process

Hormel seeks a declaratory judgment that it owns the Unitherm Process. Both parties move for summary judgment on Hormel's claim to own the Unitherm Process. The claim fails for the same reasons Hormel's breach of contract counterclaim fails.

### E. The Hybrid Process

Both parties have declaratory judgment claims asserting ownership rights over the Hybrid Process. Hormel seeks summary judgment on both parties' ownership claims. The Hybrid Process consists of preheating bacon with a microwave before cooking it in a spiral oven. Neither party has shown that the process was covered by the JDA, which concerned the development of a commercial oven and not a cooking process. Each party, though, insists that it developed, and thus owns, the process. Hormel asserts it developed the process without input or involvement from Unitherm. Unitherm disputes this assertion and points to Howard's deposition testimony that, during the July 2007 presentation to Hormel, Howard presented the idea of preheating bacon with a microwave before cooking it in a spiral oven. Because of this factual dispute, summary judgment on the issue of which party owns the Hybrid Process is inappropriate.

Unitherm Food Systems, Inc. v. Hormel Foods Corporation, Not Reported in Fed. Supp....

2016 WL 4005649

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Unitherm's Motion for Partial Summary Judgment [Docket No. 200] and Hormel's Motion for Summary Judgment [Docket No. 215] are GRANTED IN PART and DENIED IN PART consistent with this Order and with the following result:

    a. Unitherm's breach of contract and unjust enrichment claims are DISMISSED WITH PREJUDICE.

    **\*6**  b. Hormel's breach of contract counterclaim is DISMISSED WITH PREJUDICE.

    c. Hormel's declaratory judgment counterclaim is DISMISSED WITH PREJUDICE to the extent it claims ownership of the Unitherm Process. The claim remains unresolved to the extent it claims ownership of the Hybrid Process.

    d. Unitherm's claim for declaratory relief remains unresolved.

2. Unitherm's and Hormel's *Daubert* Motions [Docket Nos. 206, 210, 218, 223, and 227] are DENIED WITHOUT PREJUDICE.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4005649

## Footnotes

1    The parties have also filed several *Daubert* motions. The Court need not decide these motions to resolve the summary judgment motions. The Court will therefore deny the *Daubert* motions without prejudice.

2    Although these alleged breaches occurred after the JDA was terminated, the MCDA protects confidential information for five years from the date of disclosure. Hormel's conduct occurred within five years of Unitherm's July 2007 presentation to Hormel.

3    Unitherm argues the "public knowledge" exception to the MCDA does not apply because it was forced to file the patent application after Hormel breached the MCDA by disclosing confidential information to JBT. The evidence does not support this assertion. Unitherm relies on a letter discussing a July 11, 2007 disclosure of information from Hormel to JBT. Hormel and Unitherm had not yet entered into their confidentiality agreement on July 11, 2007, and thus this disclosure to JBT could not have breached that agreement.

4    The JDA also assigns to Hormel ownership of "Joint Inventions" and "Project Inventions," which are particular types of "Inventions" defined in the JDA. Hormel likewise has not shown that the Unitherm Process meets the definition of these terms.

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

## FULLY REDACTED

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HIP, INC.,                                  )
                                            )
                   Plaintiff,               )
                                            )   C.A. No. 18-802-CFC-SRF
            v.                              )
                                            )
HORMEL FOODS CORPORATION,                   )
                                            )
                   Defendant.               )


## **EXPERT REPORT OF JOHN S. MONTEGUDO**

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...........................................................................1

II.   PROFESSIONAL BACKGROUND AND QUALIFICATIONS .................2

III.  MATERIALS CONSIDERED ..........................................................4

IV.   BACKGROUND FOR THE ANALYSIS.............................................4
      A.    Factual Background.............................................................4
      B.    HIP's Disclosure of Expert Testimony .................................8
      C.    The "Bacon Memo"..............................................................9

V.    DIGITAL FORENSICS OVERVIEW ..............................................12

VI.   SUMMARY OF OPINIONS ...........................................................13

VII.  DETAILED ANALYSIS................................................................14
      A.    The Available Metadata Shows the Bacon Memo Was Created
            September 26, 2007 ...........................................................14
      B.    The Flags Raised by the Metadata ......................................20

VII.  CONCLUSION............................................................................20

## I.    INTRODUCTION

1.    I have been retained by Fredrikson & Byron, P.A., counsel for

Defendant Hormel Foods Corporation ("Hormel"), to provide an independent and

objective opinion regarding certain data related to the matter of *HIP, Inc. v.*

*Hormel Foods Corporation*, Case No. 18-802-CFC-SRF (D. Del.).  Specifically, I

have been retained to examine the content and metadata of certain electronic files

produced by the parties in this case related to what I understand the parties refer to

as the "Bacon Memo."  I have also been asked to respond to Plaintiff HIP, Inc.'s

("HIP") Rule 26(a)(2)(C) Disclosure of Expert Testimony from David Howard,

dated July 13, 2020 (the "Howard Disclosure"), as it relates to the Bacon Memo.

The Howard Disclosure discusses and incorporates by reference discussions of the

Bacon Memo.  I make the following report to set forth my opinions and findings

based on my investigation.

2.    If this case proceeds to trial, I expect to testify regarding the

information and opinions provided in this Report.  To the extent additional

information becomes available to me that affects any of the analyses or

conclusions herein, I may supplement or amend this Report as appropriate.  I

expect at trial to use as exhibits certain information, documents, and things

referenced or cited in this Report or accompanying this Report.  I also anticipate

using other demonstrative exhibits and things to further highlight my expected testimony.

3.     My employer, Lighthouse Global, is being compensated at the rate of $450/hour for my work on this engagement.  Lighthouse's compensation is not affected by the outcome of this matter, and I have no financial interest in this case.

## II.     PROFESSIONAL BACKGROUND AND QUALIFICATIONS

4.     My qualifications and professional experience are described in Exhibit A, which is a copy of my curriculum vitae.  The following is a brief summary of my relevant qualifications and professional experience.

5.     I am a Director of Digital Forensics at Lighthouse Global.  Lighthouse Global is an electronic discovery and digital forensics company based in Seattle, Washington that specializes in assisting law firm and corporate clients with electronic discovery and digital forensic examination services.  In my role in the Digital Forensics practice at Lighthouse, I routinely perform forensic analyses of electronic data and electronic data sources and I oversee the forensic analysis work that is performed by other members of the Digital Forensics practice.

6.     I have been continuously involved in the field of Digital Forensics since 1999, while serving in both law enforcement and private sector roles.  Prior to joining Lighthouse, I was a manager with Huron Consulting Group's Digital Forensic practice.  Prior to that, I was a manager with Deloitte in their Forensic and

Electronic Discovery practice.  Before entering the private sector with Deloitte in 2008, I worked for fourteen years in law enforcement with the Irving, Texas police department.  While with the police department I spent ten years as a detective working in both the Forgery Unit and the Digital Forensic Unit, with eight of those years focused on the forensic examination of computers and other digital media and devices.  I attained the rank of Detective Sergeant and supervised the Digital Forensic Unit.

7.      I am a graduate of Bellevue University with a Bachelor of Science degree in Criminal Justice Administration.  I have received specialized training and education in the forensic examination of digital evidence and computer media from government and commercial entities including Guidance Software (EnCase), Access Data, Magnet Forensics, the International Association of Computer Investigative Specialists (IACIS), National White Collar Crime Center (NW3C), the Federal Bureau of Investigation, and the U.S. Secret Service.  I also hold the Magnet Certified Forensic Examiner (MCFE) certification from Magnet Forensics.

8.      I have extensive experience in the forensic collection and examination of digital evidence and electronic media.  I have also created computer forensic training materials for law enforcement personnel, college digital forensic programs, and corporate forensic teams.  I have performed hundreds of computer forensic examinations in connection with both civil and criminal matters, and I

have given court testimony as to my investigations and examinations on countless occasions.  A list of the matters on which I have provided expert testimony in the past five years is attached as Exhibit B.

## III.   MATERIALS CONSIDERED

9.     In forming my opinions and reaching my conclusions, I have considered and relied on documents produced by both parties related to the "Bacon Memo" and file metadata associated with those documents, along with the Howard Disclosure and the materials cited therein.  Exhibit C is a list of the documents and other information that I have considered in forming my opinions.

10.     I reserve the right to supplement this Report if HIP serves another disclosure or an expert report.  I also reserve the right to supplement this Report if HIP produces additional documents that affect any of the analyses or conclusions herein after this Report is served.

## IV.   BACKGROUND FOR THE ANALYSIS

### A.   Factual Background

11.   I have been informed and understand that the present lawsuit was brought by Plaintiff HIP, Inc., alleging that its president, David Howard, should be named as an inventor on U.S. Patent No. 9,980,498 ("the '498 Patent").[1]  It is my

---

[1] *See* D.I. No. 21 (Plaintiff's First Amended Complaint for Correction of Patent Inventorship).

understanding that the '498 Patent lists as its inventors past and present Hormel employees Brian J. Srsen, Richard M. Herreid, James E. Mino, and Brian E. Hendrickson, and that the patent is assigned to Hormel Foods Corporation.[2]  I also understand that HIP's First Amended Complaint discusses, as evidence in support of HIP's claims, the Bacon Memo, which it refers to as "a May 4, 2006 file memo entitled 'Bacon Test Cook' which was prepared by Mr. Howard."[3]

12.     I understand that the "Bacon Memo" is a "File Memo" from David Howard with the date May 4, 2006, the subject "Bacon Test Cook," and the title "Process for Cooking Bacon," as depicted below[4]:

FILE MEMO

FROM:     David Howard

DATE:     May 04, 2006

RE:       Bacon Test Cook

PROCESS FOR COOKING BACON

13.     I understand that HIP claims that through May 2006, Mr. Howard invented a process for cooking bacon slices with a spiral oven.[5]  It is my understanding that Mr. Howard has testified that he wrote the Bacon Memo

_____

[2] *See* D.I. 1-1 (Ex. A to Plaintiff's Complaint).

[3] D.I. No. 21, ¶¶ 60-62.

[4] *See, e.g.*, UNITHERM.000006.

[5] *See* Howard Disclosure at 3.

following bacon cooking testing on May 4, 2006.[6]  Mr. Howard testified that he

could not recall if there was any documentation for the bacon cooking tests he

states happened on May 4, 2006.[7]  Mr. Howard testified that he did not recall if

anyone witnessed him draft the Bacon Memo.[8]  In what I have been informed was

a previous related litigation between the parties, Mr. Howard has also testified that

he does not know what happened to the bacon memo after he finished writing it.[9]

Mr. Howard also testified that he did not send the Bacon Memo to anyone until, as

described below, he later sent it to Hormel on December 7, 2007.[10]

14.    I understand that in the summer of 2007, HIP (then called Unitherm)

began discussions with Hormel about Unitherm's equipment.  I understand that

Hormel asked Unitherm to sign a non-disclosure agreement on July 16, 2007

before a meeting between the two parties on July 20, which Unitherm agreed to

sign.[11]

15.    I understand that the parties also scheduled a meeting for September

25, 2007.[12]  Before that meeting, an email dated September 18, 2007 from Mr.

---

[6] Transcript of D. Howard as HIP 30(b)(6) Designee (June 24, 2020) ("HIP 30(b)(6) Dep. Tr."), at 138:13-25.

[7] *Id.* at 143:13-23.

[8] *Id.* at 127:18-20.

[9] Transcript of D. Howard (May 10, 2019) ("Howard 2019 Dep. Tr."), at 150:9-15.

[10] HIP 30(b)(6) Dep. Tr. at 274:18-21.

[11] *See* HIP 30(b)(6) Deposition Exhibits 13-14.

[12] *See* HIP 30(b)(6) Deposition Exhibit 18.

Herreid of Hormel to Unitherm proposed a Joint Development Agreement.[13]   Mr. Herreid's email states that "[a]s you will note in the JDA, we have been working on a bacon cooking process using a very high steam environment and feel this has significant potential.  We want to discuss working with Unitherm on developing a pilot scale oven initially[.]"[14]

16.      The parties met and signed the Joint Development Agreement on September 25, 2007.[15]  The parties also did bacon testing on that date.[16]  An email dated September 29, 2007 from Mr. Herreid to Unitherm reports on the September 25 meeting and attaches "notes from our group."[17]  The attached notes reflect that on September 25, the parties discussed testing Hormel has done on a process for making pre-cooked bacon and key testing variables used – such as cooking bacon with superheated steam in an environment with "essentially no air or oxygen."[18]  The notes reflect that the parties then discussed "Unitherm suggestions for oven design."[19]  The notes also reflect that Mr. Howard "recommend[ed] that Hormel file a preliminary patent application on the process."[20]

---

[13] *Id.*
[14] *Id.*
[15] *See* HIP 30(b)(6) Deposition Exhibit 21.
[16] *See* HIP 30(b)(6) Deposition Exhibit 24.
[17] *See* HIP 30(b)(6) Deposition Exhibit 22.
[18] *Id.* at 2.
[19] *Id.* at 2.
[20] *Id.* at 3.

**B.    HIP's Disclosure of Expert Testimony**

17.    On July 13, 2020, HIP submitted a disclosure of expert testimony from Mr. Howard.  It is my understanding that the Howard Disclosure is a summary of opinions and facts on which Mr. Howard expects to testify.  The Howard Disclosure includes in its summary Mr. Howard's alleged bacon cooking in May 2006.[21]

18.    In addition, the Howard Disclosure states that "Mr. Howard also is expected to testify on the subject and substance of his deposition testimony taken by Hormel on July 29, 2015, December 18, 2015, May 10, 2019, and June 24-25, 2020."[22]  I have been informed and understand that during Mr. Howard's June 24-25, 2020 testimony as corporate representative for HIP, Mr. Howard testified regarding the Bacon Memo.[23]  I understand that Deposition Exhibits 12, 27, and 28 introduced during that deposition relate to the Bacon Memo.  I also understand that Mr. Howard testified about the Bacon Memo during his May 10, 2019 deposition, in a prior related case.[24]

19.    Further, the Howard Disclosure notes that "relevant facts… and opinions are summarized in the responses to Interrogatory Nos. 2-10 and 12-19 of

---

[21] *See* Howard Disclosure at 3.
[22] *Id.* at 2.
[23] HIP 30(b)(6) Dep. Tr. at 125:12-150:13, 260:8-274:21.
[24] Howard 2019 Dep. Tr. at 147:11-150:23, 190:8-192:6, 196:13-198:21, 225:5-237:10.

Plaintiff HIP's Third Amended and Supplemental Responses to Defendant's First Set of Interrogatories, which are incorporated herein by reference."[25]  HIP's response to Interrogatory No. 2 discusses testing performed by Mr. Howard on May 4, 2006.[26]  It is my understanding that Mr. Howard testified that the May 4, 2006 testing is documented by the Bacon Memo.[27]  Accordingly, it is my understanding that the Howard Disclosure discloses that Mr. Howard is expected to testify about the Bacon Memo.

**C.    The "Bacon Memo"**

20.    As explained above, I was retained to examine the content and metadata of specific electronic files related to the Bacon Memo.  I have been informed and understand that the parties have produced various versions of the Bacon Memo in this litigation.  The following files were used to conduct my analysis and to inform my understanding of the content of the metadata related to the Bacon Memo:

21.    First, in the course of my analysis, I have reviewed the following documents produced by Hormel related to the Bacon Memo:

---

[25] Howard Disclosure at 2.
[26] HIP 30(b)(6) Deposition Exhibit 6 ("Plaintiff HIP's Third Amended and Supplemental Responses to Defendant's First Set of Interrogatories") at 13.
[27] HIP 30(b)(6) Dep. Tr. at 125:2-24, 154:20-24.

- o **HFC001511**[28]: An HTM file, produced in PDF, that shows an email from Mr. Howard to Larry Pfeil, subsequently forwarded from Mr. Pfeil to various other Hormel recipients, dated December 7, 2007, with the subject "Spiral Oven." The file indicates the existence of an attachment titled "BaconMemo.doc." I understand that HFC001511 comprises the first two pages of HIP 30(b)(6) Deposition Exhibit 27.

- o **HFC001512**[29]: A three-page Microsoft Word document. This file does not contain a written signature on page three. I understand that HFC001512 comprises pages 3-5 of HIP 30(b)(6) Deposition Exhibit 27.

In addition, I have reviewed a Microsoft Excel spreadsheet titled "_ExtractedMetadata.xslx," of metadata fields associated with files HFC001511 and HFC001512, attached to this Report as Exhibit D.[30]

22.     I received the documents and Excel spreadsheet described in paragraph 21 from Hormel's counsel, Fredrikson & Byron, P.A. I have been informed that Fredrikson & Byron collected files HFC001511 and HFC001512 from Hormel as they were kept in the ordinary course of business. Fredrikson stored these documents, along with the others it collected, in the e-Discovery

---

[28] I have been informed and understand that the designation "HFC001511" is the Bates number of this file as produced by Hormel. I understand that the internal designation for this file is X010513.

[29] I have been informed and understand that the designation "HFC001512" is the Bates number of this file as produced by Hormel. I understand that the internal designation for this file is X010515.

[30] Exhibit D identifies files HFC001511 and HFC001512 by their internal designation numbers, X010513 and X010515, respectively, as explained in footnotes 27 and 28 above.

-10-

software tool Ringtail.  I have been informed and understand that Fredrikson generated the Excel spreadsheet titled "_ExtractedMetadata.xlsx" as to these files from the Ringtail platform.

23.     Second, during my investigation, I also reviewed the following documents related to the Bacon Memo that I understand were produced by HIP: UNITHERM.000006; UNITHERM.000193; UNITHERM.000742; UNITHERM.000750; and UNITHERM.005056.  I understand that file UNITHERM.000742 was introduced as HIP 30(b)(6) Deposition Exhibit 12.  In addition, I reviewed a Microsoft Excel spreadsheet titled "_ProducedMetadata.xlsx," of metadata fields associated with these five files, attached to this Report as Exhibit E.

24.     I received the documents and Excel spreadsheet described in paragraph 23 from Hormel's counsel, Fredrikson & Byron, P.A.  I have been informed that HIP produced the documents beginning with Bates-prefix "UNITHERM" to Fredrikson & Byron.  I have been informed that Fredrikson stored these documents, among others produced by HIP, in Ringtail.  I have been informed and understand that Fredrikson generated the Excel spreadsheet titled "_ProducedMetadata.xlsx" associated with these files from the Ringtail platform.

25.     My analysis assumes these files to be true and accurate.

## V.    DIGITAL FORENSICS OVERVIEW

26.    A digital forensic investigation often involves the analysis of file metadata.  In short, metadata is data which provides information about the file or data to which it is associated.  File metadata is data that is automatically created and provides information about the file with which it is associated.  The analysis of file metadata is important because it can inform when a file was created, modified, accessed, printed, or who authored the file, among other things.

27.    There are two common types of metadata that are typically associated with files such as Microsoft Office files, Adobe PDF files, and many other file types.  File System metadata is metadata that is generated by a computer's operating system and typically informs when a file was created, modified, or accessed on a computer, and in some cases, when a file was copied to or from another device such as a USB hard drive.  File System metadata is subject to being updated or changed when a file is moved or copied from one device or source to another.  Application metadata is metadata which is generated by the application associated with the file.  For example, in addition to the File System metadata associated with a Microsoft Office file, the Microsoft Office application also used to create or manipulate the file will imbed metadata within the file that can inform when that document was created, modified, printed, the author of the document, and the document's title, among other things.  Application metadata typically

remains intact with the file when the file is copied or moved to another device and is only updated or changed when the file's associated application is used to open or otherwise manipulate the file. Both File System and Application metadata dates and times are derived from the system clock of the computer on which the file is created or otherwise manipulated. As such, the accuracy of these metadata dates and times is dependent on the accuracy of the computer's system clock.

## VI.   SUMMARY OF OPINIONS

As discussed more fully below, based on the information provided to me to date, as well as my background, training and experience, it is my opinion that metadata values indicate that the typed Bacon Memo was created on September 26, 2007. September 26, 2007 is the date associated with the creation of the Bacon Memo in file HFC001512. HFC001512 is the only version of the Bacon Memo I reviewed that includes metadata as to the creation date of the file. Further, I have no reason to doubt the accuracy of the metadata associated with HFC001512, based on the information I have examined. Finally, the variations in the versions of the Bacon Memo and the factual circumstances surrounding the Memo raise questions in my mind about when the Bacon Memo was actually written.

## VII.   DETAILED ANALYSIS

### A.   The Available Metadata Shows the Bacon Memo Was Created September 26, 2007

28.     I examined the metadata associated with file HFC001511. HFC001511 appears to reflect an email message forwarded from Hormel employee Larry Pfeil to various other Hormel email recipients.  The email message indicates that it was originally received from Larry Pfeil from "unitherm@unithermfoodsystems.com" and includes the heading "From the Desk of David Howard, President."  The original sent date and time printed on the email from Mr. Howard to Mr. Pfeil shows 12/07/2007 at 02:17PM, indicates a subject of "Spiral Oven", and indicates the existence of an attachment titled "BaconMemo.doc."

29.     The file identified as HFC001511 has metadata values associated with it that typically informs when an email was created, including[31]:

- **HFC001511**
  - o  Date Sent: 12/07/2007
  - o  Date Sent Time: 16:17:36 (GMT-06:00) Central Time (US & Canada)
  - o  Email Subject: Fw: Spiral Oven
  - o  Attachment: BaconMemo.doc
  - o  From: CN=Larry J. Pfeil/OU=Corp/O=Hormel

---

[31] *See* Exhibit D to this Report.  As explained above, Exhibit D refers to the metadata associated with HFC001511 based on that file's internal designation, X010513.  The metadata described here as to file HFC001511, is consistent with the metadata shown for that file on page 1 of HIP 30(b)(6) Deposition Exhibit 28.

-14-

- o To: CN=Lori J. Marco/OU=Corp/O=Hormel@Hormel
- o Cc: CN=Ron L. Christensen/OU=Corp/O=Hormel@Hormel; CN=Richard M. Herreid/OU=Corp/O=Hormel@Hormel; CN=Chet S. Rao/OU=Corp/O=Hormel@Hormel

30.     One file produced by HIP – UNITHERM.005056 – is a PDF containing a version of this email along with the Bacon Memo.  A metadata field for UNITHERM.005056 states a "Create Date" of December 7, 2007, consistent with the date on the face of the email.[32]

31.     These metadata values indicate, as the documents show, that the email from Mr. Howard to Mr. Pfeil attaching the Bacon Memo, and the subsequent email Mr. Pfeil sent forwarding the Bacon Memo to others at Hormel, occurred on December 7, 2007.

32.     I also examined the metadata associated with file HFC001512. HFC001512 is the attachment to the email message identified here as HFC001511. HFC001512 is a three-page Microsoft Word document titled, as noted below, "BaconMemo.doc."

---

[32] *See* Exhibit E to this Report.

-15-

33.     The file identified as HFC001512 also has metadata values associated

with it that typically inform when a document was created, including[33]:

- **HFC001512:**
    o   Date Created: 09/26/2007
    o   Date Created Time: 11:27:00 (GMT-06:00) Central Time
        (US & Canada)
    o   Date Modified: 09/26/2007
    o   Date Modified Time: 16:51:00 (GMT-06:00) Central Time
        (US & Canada)
    o   Date Last Printed: 09/26/2007
    o   Last Printed Time: 16:14:00 (GMT-06:00) Central Time
        (US & Canada)
    o   File Name: BaconMemo.doc
    o   Organization: Unitherm Food Systems
    o   Author: Front-Office
    o   Last Author Saved By: ellac
    o   Title: MEMO
    o   Revision Number: 11
    o   Total editing time: 01:44:00

34.     As shown above, the metadata for file HFC001512 states, among

other things, that the file was created, modified, and last printed on September 26,

2007, even though the date on the face of the document reads May 4, 2006.  I have

not examined any information that would cause me to doubt the accuracy of the

metadata associated with HFC001512.  I also note that the metadata reflects that

the file was opened and revised 11 times.  In addition, the total editing time –

---

[33] *See* Exhibit D to this Report.  As explained above, Exhibit D refers to the
metadata associated with HFC001512 based on that file's internal designation,
X010515.  The metadata described here as to file HFC001512, is consistent with
the metadata shown for that file on pages 2 and 3 of HIP 30(b)(6) Deposition
Exhibit 28.

which I obtained from examining the file metadata – reflects that the total time the file was opened was 1 hour and 44 minutes.  This number of revisions and amount of time the file was opened seems odd given that the Bacon Memo only consists of three pages and in light of Mr. Howard's testimony that he had already written it all on May 4, 2006.[34]

36.     By contrast, the remaining documents produced by HIP – UNITHERM.000006; UNITHERM.000193; UNITHERM.000742; and UNITHERM.000750 – contain only metadata values related to the discovery production and do not inform when the original source documents were created.[35]  In other words, any metadata files associated with these files appear related to HIP's production of these PDF files and the review tool used to produce them, rather than the original documents.

36.     UNITHERM.000750, for example, appears to be another version of Bacon Memo attachment.  UNITHERM.000750 appears to be a handwritten

---

[34] HIP 30(b)(6) Dep. Tr. at 273:12-14.
[35] *See* Exhibit E to this Report.

version of the Bacon Memo.[36]  UNITHERM.000006 and UNITHERM.000742 are two additional versions of the Bacon Memo that include at the end an additional five pages of scanned photographs depicting sliced bacon, one with color and one with black and white photographs.  The five pages of photographs depicting sliced bacon have the date "05.04.2006" superimposed over the bottom right corner of each photograph.  I understand that the Bacon Memo does not specifically reference the photographs.[37]

37.     Based upon a visual comparison to the Microsoft Word version of the Bacon Memo, each of the four HIP-produced documents described in paragraph 36 above appears to be a scanned version of the printed Bacon Memo.  For each of these files, there are no metadata values associated with the files related to dates or

---

[36] In comparing HFC001512 and the handwritten notes in UNITHERM.000750, I found one notable difference.  Page 1 of UNITHERM.000750 contains an apparent placeholder for a date where it reads "…. experiments undertaken on_____," whereas the same text in HFC001512 reads "….experiments undertaken on May 04, 2006."  This placeholder in the hand-written version seems odd and unnecessary given Mr. Howard's deposition testimony that this hand-written document was created on May 4, 2006, on the same day that the testing to which the document refers was conducted, and given the fact that the hand-written document also has the date "05042006" written at the top of page 1.  *See* Howard 2019 Dep. Tr. at 143:23-25, 147:11-149:1.
[37] HIP 30(b)(6) Dep. Tr. at 137:20-138:2.

times other than metadata related to the discovery production.[38]  The metadata values produced do not inform when these files were created.  Of note, neither of the Bacon Memo versions in UNITHERM.005056 and HFC001512 has a written signature on page three.  On the other hand, UNITHERM.000006 and UNITHERM.000742 do include a written signature on that page.

38.    In sum, the Bacon Memo file from Hormel custodian James Schroeder produced by Hormel as HFC001512 is the only original electronic version of the Bacon Memo that I examined.  I have been informed that this file is the only version of the Bacon Memo that counsel for Hormel is aware of that includes metadata as to the creation date of the Bacon Memo.  As I explained above, I have no reason to doubt the accuracy of the metadata associated with file HFC001512, based on the information I have reviewed.  I therefore conclude, based on the metadata available, that the typed Bacon Memo was created on September 26, 2007.

---

[38] *See* Exhibit E to this Report.  I have been informed that the first litigation between these two parties was filed on September 29, 2014, *Unitherm Food Systems, Inc. v. Hormel Foods Corp. et al.*, Case No. 14-cv-04034, D.I. 1 (D. Minn. Sept. 29, 2014).  As a result, I understand that the two 2015 dates shown in Exhibit E associated with file UNITHERM.000006 are likely related to the discovery in that litigation.

### B.     The Flags Raised by the Metadata

39.     As explained above, there is no metadata associated with the files produced by HIP that inform when the "Bacon Memo" file was created.  With no known explanation, the presence of a written signature on some versions of the Bacon Memo and the absence of a written signature on other versions, coupled with the date placeholder observed on the hand-written version, seems suspicious. Similarly, the different versions of the Memo – some appending pictures of bacon and some not – seems odd.

40.     In addition, as noted above, I have been informed and understand that September 26, 2007 is one day after Hormel and HIP had a meeting, performed bacon testing, and signed a Joint Development Agreement.  Based on the September 25, 2007 meeting notes discussed above, the fact that the metadata shows that the file "BaconMemo.doc" was created September 26, 2007 in my mind raises questions about when the Bacon Memo was actually written.

## VII.  CONCLUSION

41.     It is my opinion that the typed Bacon Memo was created on September 26, 2007.  As explained above, September 26, 2007 is the date associated with the creation of the version of the Bacon Memo in file HFC001512. HFC001512 is the only version of the Bacon Memo I reviewed that includes metadata as to the creation date of the Memo.  I have examined no information that

would cause me to doubt the accuracy of the metadata associated with

HFC001512.  The variations in the versions of the Bacon Memo and the factual

circumstances surrounding the Bacon Memo raise questions in my mind about

when the Bacon Memo was actually written.


## DECLARATION

I, John S. Montegudo, declare under penalty of perjury that the statements in

this report are true and accurate to the best of my knowledge.

Dated this 11th day of August, 2020.


John S. Montegudo

# EXHIBIT A



## JOHN S. MONTEGUDO

250 Montgomery St, Suite 300, San Francisco, CA 94104 | (214) 238-5187 (Direct) jmontegudo@lighthouseglobal.com



John provides expert witness and consulting services to law firm and corporate clients in the areas of computer forensics, investigations, electronic discovery, and litigation support. John is licensed in Texas as a private investigator and has over 18 years of experience conducting and leading sensitive and complex digital forensic investigations in both public law enforcement and private sector client service roles.

### Professional experience

Prior to joining Lighthouse in 2016, John was a manager in the forensic practice at Deloitte from 2008 to 2014 and at Huron Legal from 2014 to 2016, where he conducted and managed digital forensic collections and investigations for several "Fortune 500" clients and a U.S. government agency. Prior to entering the private sector, John was an officer with a Texas law enforcement agency from 1995 to 2008 where he managed the Financial Crimes and Digital Forensic units, conducted digital forensic investigations, and trained personnel in the collection and examination of digital evidence.

### Professional associations
- International Association of Computer Investigative Professionals – IACIS (Certification Coach 2006-2017)
- Past President High Technology Crime Investigation Association (HTCIA), Southwest Chapter
- Past member of Richland College Faculty Advisory Committee (Digital Forensic Industry Advisor)

### Education and Training
- B.S. Criminal Justice Administration, Bellevue University
- Digital forensic training received from Guidance Software, AccessData, National White Collar Crime Center, International Association of Computer Investigative Specialists (IACIS), BlackBag Technologies, Magnet Forensics, U.S. Secret Service, the FBI and corporate in-house training.
- Magnet Technologies Certified Forensics Examiner
- Certified Electronic Evidence Collection Specialist (CEECS), IACIS - 2005

### Speaking engagements
- "Fraud Interrogation Preparation – Electronic Information" training at the Institute of Internal Auditors 2010 Fraud Summit
- "Investigative Interviewing Techniques" training at the ALPFA 2011 professional summit
- "Digital Evidence for First Responders" at a North Texas law enforcement training academy
- Has presented on topics of computer forensics, fraud, identity theft, and forgery to various organizations

### Representative examples of John's experience include:

- Lead the forensic data collection and preservation efforts at over 100 U.S. financial institutions for a U.S. federal government client.
- Conducted forensic process development, data preservation, and quality assurance for an international oil and gas company during a large-scale international forensic data preservation effort.
- Lead forensic collection and examination process development projects for clients in the pharmaceutical, healthcare, oil & gas, and financial services industries.
- Served as a Forensic Expert and delivered expert reports, declarations, and court testimony in numerous matters.

### Representative examples of John's recent testimony experience include:

- *Cognizant Technology Solutions U.S. v. Ashish Mahadwar and Julio Cesar Jelvez Serra* in the 44th Judicial District Court of Dallas County, Texas. Cause No. DC-14-12808. Neutral forensic expert. Provided testimony in court.

- *Google Inc. v. Anthony Levandowski* before JAMS (Judicial Arbitration and Mediation Services), San Francisco, California. Expert for the claimant. Provided testimony in deposition and arbitration.

- *Jennifer Kwasniewski v. Sanofi-Aventis U.S. LLC* in the U.S. District Court, District of Nevada. Case No. 2:12-cv-00515-GMN-CWH. Neutral forensic expert. Provided testimony in court.

- *Syncpoint Imaging, LLC v. Nintendo of America Inc.* in the U.S. District Court for the Eastern District of Texas. Case No. 2:15-cv-247. Forensic expert for the defendant. Provided testimony in court.

# EXHIBIT B

John Montegudo – Expert Matters 2015-2020

- 2015, Iris Technology Corporation v. Carl Kirkconnell, Superior Court of California, Orange County. Case No. 30-2015-00794484-CU-BC-CJC. Provided expert report for a departed employee/trade secrets matter.

- 2015, Virgin Galactic, LLC v. Firefly Systems, Inc., Superior Court of California, Los Angeles County. Case No. BC609407. Neutral computer forensic expert in a departed employee/trade secrets matter. Provided expert report.

- 2015, Masimo Corporation v. Sotera Wireless, Superior Court of California, Orange County. Case No. 30-2013-00649172-CU-IP-CJC. Provided court declaration.

- 2015, Dickerson, et al., v. Novartis Corp., et al., U.S. District Court for the Southern District of New York, Case No. 1:15-cv-01980. Computer forensic expert for the defense in an employment dispute case. Provided expert report.

- 2017, ALS Limited v. Gareth Ashton v. ALS Group USA, Corp. and Reservoir Group, Inc. in the 157th Judicial District Court of Harris County, Texas. Cause No. 2016-22963. Computer forensic expert for the defense in a departed employee/trade secrets matter. Provided court declaration.

- 2017, Adcor Industries Inc., Et Al., v. Beretta U.S.A. Corp. in the Circuit Court of Maryland for Baltimore County. Case No. 03C15006837. Designated company representative for the defense. Provided testimony at deposition.

- 2018, Google Inc. v. Anthony Levandowski before JAMS (Judicial Arbitration and Mediation Services), San Francisco, California. Computer forensic expert for the plaintiff in a departed employee/non-solicitation matter. Provided testimony at deposition and at arbitration.

- 2018, Jennifer Kwasniewski v. Sanofi-Aventis U.S. LLC in the U.S. District Court, District of Nevada. Case No. 2:12-cv-00515-GMN-CWH. Neutral forensic expert in a product liability matter. Provided court testimony.

- 2018, Syncpoint Imaging, LLC v. Nintendo of America Inc. in the U.S. District Court for the Eastern District of Texas. Case No. 2:15-cv-247. Computer forensic expert for the defendant in a patent infringement matter. Provided court testimony.

- 2018, MICI Corporation v. Sean Meier in the 429th Judicial District Court of Collin County, Texas. Case No. 429-03976-2018. Forensic expert for the plaintiff in departed employee/trade secrets matter. Provided court declaration.

- 2018, Sightline Search, Inc. v. Lindsey Eubanks and Yukon Recruiting Group, Inc in the 429th Judicial District Court of Collin County, Texas. Case No. 429-05611-2018. Forensic expert for the plaintiff in departed employee/trade secrets matter. Provided court declaration.

- 2020, Zitan Technologies, LLC and Gingko, LLC v. Liang Yu in the American Arbitration Association Western Case Management Center, Case No. 01-18-0003-1564. Forensic expert for the Claimants in a departed employee/trade secrets matter. Provided court testimony.

# EXHIBIT C

1.      HIP's First Amended Complaint (D.I. 21), including Exhibit A (the '498 Patent) (D.I. 1-1);

2.      HIP's Rule 26(a)(2)(C) Disclosure of Expert Testimony from D. Howard, dated July 13, 2020;

3.      Transcripts of the HIP Rule 30(b)(6) deposition on June 24-25, 2020, and the accompanying exhibits;

4.      Transcript of David Howard deposition on May 10, 2019, and the accompanying exhibits;

5.      HFC001511;

6.      HFC001512;

7.      UNITHERM.000006;

8.      UNITHERM.000193;

9.      UNITHERM.000742;

10.     UNITHERM.000750;

11.     UNITHERM.005056; and

12.     File metadata associated with the documents referenced in numbers 5-11, above.

# EXHIBIT D

| DocID | EdaID | AttachLvl | DupStatus | _DupID | Custodian | Filename | ErrorMsg | DocExt | SourceApp | Filesize | PgCount | Produce Native | TiffStatus | ImageExt | OcrStatus | TextX Status | HasPage Limit | ID | BegDoc# | EndDoc# | Volume | Path | DocOrder | Attach PID | UserID | Created | EDSession | EDSource | EDFolder | PrevErrMsg | FileType | File Description | File Accuracy | Suspect Ext |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAG004_000849 | 11453 | 0 | N | 0 | Schroeder_Ja mes | Fw: Spiral Oven.htm | | htm | Internet Explorer | 2641 | 2 | | C | TIF | N | C | N | 2668 | X010513 | X010514 | 2 | TAG004\E MAIL\TAG 004_003\ Unitherm 2 | 28 | 2668 | 0 | 05/13/15 10:32 10:28:06 AM | Session Created On 5/13/2015 | \\redlaw.firm\myfi\LS-EDA\Media_Native\044350_0014\TAG004\x - SECOND PRODUCTION\EMAILS\jschroed.nsf | Unitherm 2\ | [File Conversion] W: (lotus notes) RTF content detected in e-mail body, formatting or content may be lost | 315 | HyperText Markup Language | 3 | N |
| TAG004_000850 | 11453 | 1 | N | 0 | Schroeder_Ja mes | BaconMemo.doc | | doc | Microsoft Word | 34304 | 3 | | C | TIF | N | C | N | 2669 | X010515 | X010517 | 2 | TAG004\E MAIL\TAG 004_003\ Unitherm 2 | 29 | 2668 | 0 | 05/13/15 10:32 10:28:06 AM | Session Created On 5/13/2015 | \\redlaw.firm\myfi\LS-EDA\Media_Native\044350_0014\TAG004\x - SECOND PRODUCTION\EMAILS\jschroed.nsf | Unitherm 2\ | | 229 | MS Word 97-2003 Document (OLE) | 3 | N |

| DocID | Suspect OLE | TextPS tatus | HasExtP rops | OrigExt | EDPages | MD5Hash | Sha1Hash | NativeF ile | SourceF ile | Title | Subject | Author | LastAuthor | Keywords | Comments | Categories | Organization | Application Name | Template | Revision | Date Created | Time Created | DateLast Mod | TimeLast Mod | Date Accessed | Time Accessed | DateLastP mt | TimeLast Pnt | Conversation | Conversation Index | ThreadID | Email Client | EMail_ Subject | From | To |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAG004_000849 | N | N | N | | | 50BA446CD 8B0B0ADE1 338D393A1 E28D3 | EFC5A9426E F95AA6220F 16B7D5E9A D8360CA68 8A | | Unither m2\ | | | | | | | | | | | | | | | | | | | | Spiral Oven | | | Lotus Notes | Fw: Spiral Oven | CN=Larry J. Pfeil/OU=Corp/O=Hormel | CN=Lori J. Marco/OU=Corp/O=Hormel@Hor mel |
| TAG004_000850 | N | N | N | | | 51AAC82969 234C3CB05 D924B8648 0EEE | 874E31CF17 3D92A28D6 AB995D56F D04869A94 9B1 | | Unither m2\ | MEMO | | Front- Office | ellac | | | | Unitherm Food Systems | Microsoft Office Word | Normal.d otm | 11 | 09/26/07 | 11:27:00 | 09/26/07 | 16:51:00 | | | 09/26/07 | 16:14:00 | | | | Lotus Notes | | | |

| DocID | CC | BCC | Attach | Importance | Sensitivity | DateSent | TimeSent | DateRcvd | Time Rcvd | TimeZone Proc | Language | Hidden Text | DateApp Start | TimeApp Start | DateApp nd | TimeApp nd | EntryID | IntMsgID | InReply ToID | Unread | Read Receipt | Deliv Receipt | MsgClass | Headers | _DocCat | _Dup Method | _FTIndex | _PS_OLEX | _PS_ARCX | _PS_EMBEDX | _PS_ATTX | _PS_DIGESTX | _PS_NATIVEX | _PS_MDX | Import Station | Batch Station |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAG004_000849 | CN=Ron L. Christensen/OU=Corp/O=Hormel@Hormel; CN=Richard M. Herreid/OU=Corp/O=Hormel@Hormel; CN=Chet S. Rao/OU=Corp/O=Hormel@Hormel | | BaconMemo.doc | Normal | | | 12/07/07 | 16:17:36 | | (GMT-06:00) Central Time (US & Canada) | | 0 | | | | | 99DB21C663 D2EB338625 7D78005A58 79 | OF0A37E011.860C76A6-ON862573AA.00770916-862573AA.007A765A@LocalDomain | | N | N | N | Memo | | 10 | 1 | 1 | 0 | 0 | 0 | 1 | 1 | 1 | | EDAMPLV-01 | LAWMPL-V-08 |
| TAG004_000850 | | | | | | | | | | (GMT-06:00) Central Time (US & Canada) | | 0 | | | | | | | | | | | | | 5 | 1 | 1 | 0 | 0 | 0 | 1 | 1 | 1 | | EDAMPLV-01 | LAWMPL-V-08 |

| DocID | PrintJob Name | HasAnnot ations | DupCust Names | DupCust Paths | DupParent Name | DupParentP ath | Bookmark Name | Has Bookmarks | Ocr Accuracy | Redactions | Unredacted Natives | Manual TIF | Excluded FileTypes | Media Tag/Label | Search Result Hits | Level_2 | Level_3 | Native Export ID | Levels | Protective Declaration | Is Duplicate | Has Duplicate | Has Redaction | TextFile Path | zTemp | Keyword Hits | Production Sort Number | BEGATTACH (dii) | ENDATTACH (dii) | Unitized | HORMEL001 _BegProd | HORMEL001 _EndProd | HORMEL001 _Protective Declaration | HORMEL001 _BegProdAtt ach | HORMEL001 _EndProdAtt ach | rExclude_Pre- Unitization | Replaced Images | HORMEL002 _BegProd |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAG004_000849 | B6FD3C750D6940609 1DFEAAE1AAAFD01_ 2668.htm | N | | | | | | | | | | | | | | Email | 1 | | | | | | | N | | 0 | 1 | | | | | | | | | | | |
| TAG004_000850 | Microsoft Word - F7D2CD76A6D54506 850932E92E62D047_ 2669.doc | N | | | | | | | | | | | | | | Email | 1 | | | | | | | N | | 0 | 1 | | | | | | | | | | | |

| DocID | HORMEL002_EndProd | HORMEL002_Protective Declaration | HORMEL002_BegProdAtt ach | HORMEL002_EndProdAtt ach | cFilename | HORMEL003_BegProd | HORMEL003_EndProd | HORMEL003_BegAttach | HORMEL003_EndAttach | Export_07 282015 | cTemp2 | HORMEL004_BegProd | HORMEL004_EndProd | HORMEL004_Protective Declaration | Placeholder_Name | PDF_Export_09162015 | Export_09242015 | LOURICH001_BegProd | LOURICH001_EndProd | LOURICH001 ExportID_1 0012015 | Export_1 0132015 | HORMEL005_BegProd | HORMEL005_EndProd | HORMEL005_Protective Declaration | Export101 | Processing Issues | _Export 102 | HORMEL006_BegProd | HORMEL006_BegAttach | HORMEL006_EndProd | HORMEL006_EndAttach | Media ID | Ringtail_DocID | _GUID | cExport to 0019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAG004_000849 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| TAG004_000850 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

# EXHIBIT E

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X | Y | Z | AA | AB | AC | AD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CONTROLBEGBATES | CONTROLENDBATES | CONTROL BEGATTACH | CONTROL ENDATTACH | UNITHERM_B EGBATES | UNITHERM_ ENDBATES | Protective Declaration | CONVERSATION ID | CUSTODIAN | DUP CUSTODIAN | Email SUBJECT | TO | FROM | CC | BCC | DATESENT | TIMESENT | DATERCVD | TIMERCVD | FILENAME | AUTHOR | CREATE DATE | DATE LASTMOD | MD5Hash | FILELENGTH | FILEEXT | ATTACHMENT | PATH | OCRPATH | NATIVEPATH |
| 2 | CONTROL057623 | CONTROL057630 | | | UNITHERM.0 00006 | UNITHERM.0 00013 | | | Hip | | | | | | | | | | | UNITHERM.00 0006-000013.pdf | | 2/3/2015 | 6/17/2015 | 832C5E4B9F 6A594C85F4 C81A8C229C 56 | 12449544 | PDF | | /UNITHERM.00 0006-000013.pdf | .\UNITHERM 002\OCR\00 03\CONTROL 057623.txt | |
| 3 | CONTROL057782 | CONTROL057785 | | | UNITHERM.0 00193 | UNITHERM.0 00196 | CONFIDENTIAL | | Unspecified Custodian | | | | | | | | | | | UNITHERM.00 0193.pdf | | | | 977E3487D8 2091C4E14D BD64F1F2A7 E5 | 227846 | PDF | | /UNITHERM.00 0193.pdf | .\UNITHERM 002\OCR\00 03\CONTROL 057782.txt | |
| 4 | CONTROL058244 | CONTROL058251 | | | UNITHERM.0 00742 | UNITHERM.0 00749 | CONFIDENTIAL | | Unspecified Custodian | | | | | | | | | | | UNITHERM.00 0742.pdf | | | | 7D7E00B57E 0AE9FCFB3F C239BF5CA7 48 | 6671107 | PDF | | /UNITHERM.00 0742.pdf | .\UNITHERM 002\OCR\00 03\CONTROL 058244.txt | |
| 5 | CONTROL058252 | CONTROL058259 | | | UNITHERM.0 00750 | UNITHERM.0 00757 | CONFIDENTIAL | | Unspecified Custodian | | | | | | | | | | | UNITHERM.00 0750.pdf | | | | 5931D80471 64C2AD016 D15F25B81A F73 | 363880 | PDF | | /UNITHERM.00 0750.pdf | .\UNITHERM 002\OCR\00 03\CONTROL 058252.txt | |
| 6 | CONTROL061726 | CONTROL061729 | | | UNITHERM.0 05056 | UNITHERM.0 05059 | CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER | | Unspecified Custodian | | Spiral Oven | <'ipfeil@hor mel.com'> | Unitherm <unitherm@ unithermfoo dsystems.co m> | | | | | | | UNITHERM.00 5056.pdf | | 12/7/2007 | | 95C86A1022 6C3C13382D 459069C38E 39 | 291681 | PDF | | /UNITHERM.00 5056.pdf | .\UNITHERM 002\OCR\00 04\CONTROL 061726.txt | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|                                    |     |                           |
| ---------------------------------- | --- | ------------------------- |
| HIP, INC.,                         | )   |                           |
|                                    | )   |                           |
| Plaintiff,                         | )   |                           |
| v.                                 | )   | C.A. No. 18-802-CFC-SRF   |
|                                    | )   |                           |
| HORMEL FOODS CORPORATION,          | )   |                           |
|                                    | )   |                           |
|                                    | )   |                           |
| Defendant.                         | )   |                           |

## HORMEL'S OPPOSITION TO HIP'S MOTION IN LIMINE NO. 1

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel
Foods Corporation*

The Court should deny HIP's first motion *in limine* because issue preclusion does not apply.  In this lawsuit, HIP seeks correction of inventorship of Hormel's '498 Patent, which did not exist during the parties' previous litigation in Minnesota.  D.I. 1; D.I. 1-1 (issued May 29, 2018); *see also* D.I. 21.  The three issues raised by HIP in its motion related to a contract **ownership** dispute and are distinct from the inventorship dispute in this case.

In 2014, HIP sued Hormel for breach of contract and trade secret misappropriation.  *Unitherm Food Systems, Inc. v. Hormel Foods Corp., et al.*, Civ. No. 14-cv-04034-JNE-BRT (D. Minn.), Dkt. 30.  HIP lost the case, and Hormel was awarded its attorneys' fees and costs.  *Id.*, Dkt. 379; *Unitherm Food Systems, Inc. v. Hormel Foods Corp.*, 2016 WL 4005649 (D. Minn. July 25, 2016); *HIP, Inc. v. Hormel Foods Corp.*, 888 F.3d 334 (8th Cir. 2018).

The Minnesota court dismissed Hormel's counterclaims to the extent Hormel claimed that a Joint Development Agreement ("JDA") gave Hormel **ownership** of the "Unitherm Process," which was vaguely defined as "a process for cooking sliced bacon in a spiral oven."  *Unitherm Food Sys.*, 2016 WL 4005649, at *1-2, 5.  That decision was based on the Minnesota court's determination that the JDA only controlled ownership of commercial oven technology, not cooking processes.  *Id*. at *5.  The Minnesota Court did not and could not make any determination about conception of the inventions claimed in the '498 Patent

1

because it did not exist.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (explaining that "[t]he conceived invention must include every feature of the subject matter claimed in the patent").

Despite HIP's attempt to transform a contract dispute into a finding that Howard is the sole inventor of Hormel's '498 Patent, none of the four issue preclusion factors are present here.  *See Evonik Degussa GmbH v. Materia Inc.*, 53 F. Supp. 3d 778, 787 (D. Del. 2014).  The issue in the Minnesota litigation— whether ***ownership*** of the "Unitherm Process" (*i.e.*, cooking bacon in a spiral oven) transferred to Hormel under the JDA—is entirely different from the issue in this case—whether Howard is the sole inventor of the '498 Patent.

With respect to the first factor, an issue is not "identical" if the standard applied is different, or where different findings of fact are required.  *Id.* at 789-90. The three issues identified by HIP are not identical to the ones that will be decided in this case.  Whether Howard conceived of and disclosed the vague idea of cooking bacon in a spiral oven to Hormel is not identical to the issues here— whether Howard solely conceived and disclosed to Hormel every element of every claim of the '498 Patent.  Likewise, the Minnesota court's determination that the broad concept of cooking bacon in a spiral oven was not a "Joint Invention" under the JDA does not, as HIP contends, equate to a finding that Hormel did not make an inventive contribution to the '610 Patent.  The Minnesota court did not and

2

could not analyze who conceived of the claims in the '610 Patent because it did not exist.  *See* D.I. 1-2 (issued Dec. 6, 2016).  In any event, the relevant issue here is whether HIP can prove that the named inventors did not contribute to the conception of any claim of the '498 Patent, which was not even considered in the Minnesota litigation.

The remaining issue preclusion factors also do not apply.  The issue here—Howard's alleged sole conception of the inventions claimed in the '498 Patent—was not and could not have been litigated in the Minnesota litigation.  *See HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1353-54 (Fed. Cir. 2010) (concluding no private cause of action exists to correct inventorship on a pending patent application, as Section 256 provides a remedy only "[o]nce a patent issues").  Because the relevant issue in this case was not litigated, it was not essential to the Minnesota court's decision.  Likewise, because the '498 Patent did not exist, Hormel did not have the opportunity to fully and fairly litigate Howard's alleged conception of every element of every claim and purported disclosure to Hormel.

In short, because no "patent law issue of inventorship under § 256 was . . . decided . . . there can be no issue preclusion."  *NJ Inst. of Tech. v. Medjet, Inc.*, 47 F. App'x 921, 927 (Fed. Cir. 2002).  The Court should deny HIP's motion.

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 11, 2020

By:  */s/ Timothy M. O'Shea*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods
Corporation*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 750 words, excluding the case caption, tables and signature block. The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 11, 2020

By: /s/ Timothy M. O'Shea
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    POTTER ANDERSON &
    CORROON LLP
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

**EXHIBIT 13**

**HIP'S REPLY IN SUPPORT OF MOTION IN LIMINE #1
TO PRECLUDE HORMEL, BASED ON ISSUE PRECLUSION, FROM REARGUING
POSITIONS IT PREVIOUSLY LOST IN THE PRIOR MINNESOTA LITIGATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX 75201
(214) 272-0958

*Attorneys for HIP, Inc.*

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX 77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK 74012

Hormel should be precluded from offering evidence that contradicts factual findings necessary to the adverse judgment in Minnesota against Hormel's ownership counterclaims to the "Unitherm Process" (including the '610 Patent). Hormel's counterclaims there were based, *inter alia,* on alleged "joint inventorship" of the Unitherm Process. *Unitherm*, 2016 WL 4005649 at *5 & n.4. In HIP's view, Hormel merely repackaged Mr. Howard's disclosures of his Unitherm Process into the '498 Patent. Hormel ignores that the JDA required application of inventorship law "as defined by the Federal Circuit Court of Appeals," which the courts necessarily followed in rejecting Hormel's counterclaims. Ex. D (¶5.a(ii)) (JDA).

Hormel confuses issue preclusion, which HIP asserts, with claim preclusion, which HIP does not. Under issue preclusion, "once an **issue** is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based **on a different cause of action** involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (emphasis added). The findings about Mr. Howard's prior conception and Hormel's lack of inventive contribution to the Unitherm Process should be conclusive here. Op. Br. at 1; D.I. 118 at 10-13 & D.I. 129, at 6-7. HIP must still show, by clear and convincing evidence, that Hormel merely repackaged Mr. Howard's prior disclosures into the '498 Patent.

Hormel cannot show that the courts in the Minnesota litigation applied different standards when the JDA required application of the same legal standard for inventorship at issue here. Further, the Federal Circuit rejected this very argument in applying PTAB decisions (preponderance of evidence) as "collateral estoppel" to estop patentees in district court litigation (clear and convincing burden) from re-litigating PTAB invalidity decisions. *See, e.g., XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294-95 (Fed. Cir. 2018). Hormel has failed to contradict HIP's showing that the four factors of issue preclusion are all met here.

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

December 15, 2020

# EXHIBIT D

JOINT DEVELOPMENT AGREEMENT

This Agreement is made effective this 25th day of September, 2007, between Unitherm Food Systems, Inc., having a place of business at 502 Industrial Road, Bristow, Oklahoma 74010 (hereinafter "UNITHERM"), and Hormel Foods Corporate Services, LLC, having a place of business at 1 Hormel Place, Austin, Minnesota 55912 (hereinafter collectively "HORMEL").

HORMEL and UNITHERM would like to work together to develop an oven that uses very high (approaching 100%) steam levels for cooking. This oven process would initially be focused on producing bacon. HORMEL has developed a prototype high steam level oven that produces such bacon and would like to work with UNITHERM to develop commercial ovens using high steam levels which would be exclusive to HORMEL ("The Project").

Therefore, the parties agree as follows:

1.     **Sharing of Information.** HORMEL and UNITHERM shall share information and ideas to assist in the development of the Project. All information shared relating to the Project shall be considered confidential in accordance with the terms of the Mutual Confidential Disclosure Agreement between the parties dated the 20th day of July, 2007, which is attached hereto as Exhibit "A".

2.     **By HORMEL.** During work on the Project, HORMEL shall make available equipment, source product and technical personnel for the Project, including defining Project requirements.

3.     **By UNITHERM.** During work on the Project, UNITHERM will make its technical personnel available to work on the Project, and agrees to commit adequate resources to develop the Project to produce a commercially-viable end product with all due haste.

4.     **Project Costs.** HORMEL and UNITHERM will each cover the costs of their own employees working on the Project. Other projects costs will be discussed and agreed upon before UNITHERM initiates work on the Project.

5.     **Intellectual Property.**

       a.     **Definitions.**

              (i)     "Inventions" means all discoveries, improvements, know-how, and ideas (whether or not they can be protected by patent, copyright, trade secret, or trademark registration) relating to the Project developed after the effective date of this Agreement. All Inventions relating to the Project will be owned by HORMEL.

              (ii)    "Joint Inventions" means all Inventions involving (1) Confidential Information from UNITHERM and/or Confidential Information from HORMEL and (2) having personnel from both UNITHERM and HORMEL as inventors, as defined by the Federal Circuit Court of Appeals. Joint Inventions will be owned by Hormel.

              (iii)   "Project Invention" means all Inventions which HORMEL (or any person or organization hired by HORMEL to assist HORMEL in the performance of the Project) may conceive or first reduce to practice in connection with its work on the Project and is based at least in part on Confidential Information of UNITHERM; or Inventions which UNITHERM (or any person or organization hired by UNITHERM to assist UNITHERM in the performance of the Project) may conceive or first reduce to practice in connection with its work on the Project and is based at least in part on Confidential Information of Hormel. Project Inventions will be owned by HORMEL.

EXHIBIT 21
WIT: HIP
DATE: 6-24-20
Micheal A. Johnson, RDR, CRR

EXHIBIT
23
D. Hubbard

HFC001286_0001

Page 2
UNITHERM FOOD SYSTEMS, INC.

(iv)   HORMEL will own all Inventions, Joint Inventions, and Project Inventions, as defined herein.  UNITHERM will execute such documents as are necessary to perfect such ownership, but no such execution will be required until HORMEL executes a purchase agreement for a test oven. Should no such purchase agreement be executed, UNITHERM will retain ownership rights to "Inventions" conceived and reduced to practice solely by UNITHERM and will retain joint ownership of "Joint Inventions."  HORMEL will retain ownership rights to "Inventions" conceived and reduced to practice solely by HORMEL and will retain joint ownership of "Joint Inventions."

b.   Both parties agree to promptly communicate to each other the status of developments arising from the work.

c.   <u>Exclusivity.</u> Following completion of a commercially viable application of the Project, the parties will negotiate an agreement by which UNITHERM will be the exclusive supplier to HORMEL of equipment related to the Project for an initial period of five (5) years.  Such agreement will include provisions to govern performance and pricing of the equipment. During said period of exclusivity, UNITHERM shall not license, sell, offer to sell or otherwise provide the Project or information regarding the Project to third parties.  Nor shall UNITHERM undertake to develop a similar Project for or with a third party.  Following the initial five (5) year period of exclusivity, the parties will attempt, in good faith, to negotiate an agreement by which the exclusivity period is extended.

6.   <u>Term and Termination.</u>

a.   <u>Term.</u>  This Agreement shall continue during the work on the Project, and shall continue until all periods of exclusivity have ended or <u>five</u> (5) years from the date of this Agreement, whichever comes last.

b.   <u>Termination.</u> Either party may terminate this Agreement upon material breach by the other party which remains uncorrected for more than thirty (30) days after the non-breaching party provides written notice to the breaching party.  Such notice shall explain the breach in adequate detail and provide a reasonable amount of time in which the breaching party may remedy the breach, not to exceed thirty (30) days from the date of written notice of the breach by the non-breaching party.  Either party may terminate this Agreement if, after reasonably adequate development work and testing has been done, a commercially viable Project has not resulted, upon providing at least thirty (30) days prior written notice.

7.   <u>Miscellaneous.</u>

a.   This Agreement can be amended only by a writing signed by both parties to this Agreement.

b.   This Agreement is made in the state of Minnesota and shall be governed by the laws of the state of Minnesota.

c.   This Agreement and the terms and conditions hereof apply to and are binding on the successors and assigns of both parties.  Provided, this Agreement may not be assigned by either party without the other party's prior written consent.

d.   With the exception of Exhibit A, this Agreement supercedes any documents or agreements previously used or agreed upon by the parties hereto with respect to the subject of this Agreement.  No oral explanation or oral information will alter the meaning or interpretation of this Agreement, nor has either party relied on any representations of the other party to enter into this Agreement.

Page 1
UNITHERM FOOD SYSTEMS, INC.

e.    Any notice which is required to or may be given under this Agreement shall be deemed given if provided in writing and sent by prepaid first class registered or certified mail, return receipt requested, or by Federal Express or other private courier service and delivery is documented, addressed to the respective party at its place of business referred to in the preamble to this Agreement, or is sent by telecopy, in each case sent to the attention of the following individuals for the respective parties.

Hormel Foods Corporate Services, LLC
Attn: Richard Herreid
2 Hormel Place
Austin MN 55912
Fax: 507-437-5117

CC VIA FAX TO LAW DEPT: (507) 437-5135
Attn: Lori Marco

UNITHERM FOOD SYSTEMS, INC.
Attn: _____
502 Industrial Road
Bristow, OK 74010
Fax: _____

| HORMEL FOODS CORPORATE SERVICES, LLC | UNITHERM FOOD SYSTEMS, INC. |
|---|---|
| By: | By: |
| Print Name: | Print Name: D. HOWARD. |
| Title: VP-Engineering | Title: President |
| Date: 9/25/07 | Date: 25 ot Sept 07 |

HFC001286_0003

EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HIP, INC.,                              )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )    C.A. No. 18-802-CFC-SRF
                                        )
HORMEL FOODS CORPORATION,               )    CONFIDENTIAL
                                        )    FILED UNDER SEAL
          Defendant.

**HIP, INC.'S MOTION IN LIMINE #2
TO PRECUDE HORMEL FROM A COLLATERAL
"PRIOR ART" ATTACK AGAINST THE HOWARD '610 PATENT**

Rather than squarely addressing the issue in dispute, namely HIP's claim that Mr. Howard is the rightful inventor of Hormel's U.S. Patent No. 9,980,498 ("the '498 Patent"), Hormel and its expert, Mr. Gunawardena, launch an irrelevant collateral attack to denigrate Mr. Howard's disclosures to Hormel. Mr. Gunawardena asserts that: (1) Mr. Howard's U.S. Patent No. 9,510,610 (the "'610 Patent") "is obvious in light of" the same prior art Gunawardena used in a since-terminated IPR against the '610 Patent; (2) Mr. Howard disclosed nothing more than "well-known concepts" of which "Hormel" was already aware; and (3) the '498 Patent issued over a patent application that led to the '610 Patent. Gunawardena Rpt., ¶¶ 26-33, 154-59 (Ex. A).

First, Hormel failed to timely disclose these theories. When asked its factual bases for denying Mr. Howard was the sole inventor of the claims of the '498 Patent, Hormel disclosed only that "Mr. Howard was not the inventor of any portion of any claim of the '498 Patent," and that he was "not involved in the development of the process…." *Id.* (Ex. B, Hormel Resp. to Interrog. 2, at 7). Hormel should be precluded from asserting them now. *See, e.g., Matsushita Elec. Indus. Co. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 348, 366 (D. Del. 2004) (excluding non-infringement theory and related testimony from trial where the theory was not disclosed in response to contention interrogatories). In all events, Hormel should be barred from offering such evidence because it is irrelevant, and any potential relevance would result in wasted time and expense needed to address these irrelevant, collateral issues. Fed. R. Evid. 402 and 403.

I.    **APPLICABLE LAW**

In response to HIP's Gunawardena *Daubert* Brief, D.I. 118, at 7-8, Hormel withdrew its attempt to offer opinions on obviousness invalidity. D.I. 127, at 10; Ex. 1, ¶ 154. Nevertheless, Hormel still seeks to introduce "prior art" opinions in the guise they are the "state of the art."

1

Inventorship, however, does not turn on whether a putative inventor's contribution is nonobvious, or even novel.  D.I. 118, at 7-8 (citing *Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co*., 964 F.3d 1365, 1372 (Fed. Cir. 2020)); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1232 (Fed. Cir. 1994).  While *Dana-Farber* recognized that merely "explaining the state of the art and providing well-known information found in textbooks" was insufficient for joint inventorship, 964 F.3d at 1372, that is not the "state of the art" Hormel relies upon.  Specifically, *Dana-Farber* rejected the argument Hormel makes here that, if everything the putative inventors had disclosed was also in their published application, they had not made a contribution significant to their conception.  *Id*. (citing *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 981 (Fed. Cir. 1997)).  In *Eli Lilly and Co. v. Aridigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004), after citing *Hess*, the court placed "prior art" in context, treating Aradigm's argument as asserting a claim limitation that "merely recites a fact of nature."

## II.  <u>ARGUMENT</u>

Having surrendered non-obviousness, Hormel seeks to transform Mr. Gunawardena's report into opinions that Mr. Howard's "contributions are inventive or merely explain known concepts disclosed in the prior art, including the '610 Patent."  D.I. 127, at 10-11.  This new spin fails for several reasons.  First, Mr. Gunawardena's report does not identify any of his IPR prior art as the "state of the art" or "known concepts."  Ex. A, ¶¶ 25-33.  Mr. Gunawardena's report uses the term "state of the art" only in reference to HIP's RapidFlow ovens – but not for the creative processes Mr. Howard shared in confidence with purchasers of his oven - including a Hormel subsidiary.  Second, and relatedly, Hormel commits legal error in equating well-known public information of the type found in textbooks that reflects "state of the art" with the more encompassing prior-art knowledge of a hypothetical skilled artisan.  *Compare Dana-Farber*, 964 F.3d at 1372 (rejecting argument a published application constitutes state of the art) *with Custom*

*Accessories, Inc. v. Jeffrey-Allen Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986) (POSITA "is presumed to be aware of all the pertinent prior art."). After all, "[v]irtually all inventions are combinations and virtually all are combinations of old elements." *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 698 (Fed. Cir. 1983).

In addition to the IPR prior art, Hormel also argues that work done by "Hormel" shows "what was known in the art." This, however, is still at best secret "prior art" and not the "state of the art" as shown by Hormel's designation of the documents and the expert report citing them as "Highly Confidential – Outside Attorneys Eyes Only." Even Mr. Gunawardena first learned of these documents only this year. Ex. C, Gunawardena Tr. 171:23—172:18. Secret internal documents are not even prior art, let alone the "state of the art." *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1446 (Fed. Cir. 1984) (§ 102 "prior art" is "technology already available to the public"). Nor is what "Hormel" knew relevant to what each of the specific putative inventors knew and allegedly contributed to the claimed invention, absent any evidence linking such "knowledge" to those individuals.

HIP should not be forced to spend time and resources at trial to address the differences between the disclosure in the Howard '610 patent and the alleged teachings of the prior art, or 'Hormel' alleged prior work, when that effort can have no bearing on the issues actually in dispute. *Dana-Farber* instructs that a putative inventor may contribute to an invention even if what he or she contributed was later disclosed in a published patent application that was "part of the prior art." Consequently, Mr. Gunawardena's opinions based on Mr. Howard's published patent application are not relevant. Ex. A, ¶¶ 155-57.

3

# EXHIBIT A

## FULLY REDACTED

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HIP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 18-802-CFC |
| v. | ) |
| | ) **HIGHLY CONFIDENTIAL – OUTSIDE** |
| HORMEL FOODS CORPORATION, | ) **ATTORNEYS EYES ONLY** |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Defendant Hormel Foods Corporation ("Hormel"), for its Answers to Plaintiff's First Set

Interrogatories, states and alleges as follows:

## GENERAL RESPONSES

1.      Hormel's answers and objections are made to the best of Hormel's present

knowledge, information, and belief.  Hormel's answers and objections are limited to information

within its possession custody, or control.  Hormel reserves the right to amend, supplement, or

change any answers and objections if and when additional, different, or more accurate

information becomes available and/or facts are developed.

2.      Hormel reserves all objections or other questions as to the competency, relevance,

materiality, privilege, or admissibility as evidence in any subsequent proceeding in or trial of this

or any other action for any purpose whatsoever, of these interrogatory answers.

3.      The inclusion of any specific objection in any response to any interrogatory below

is not and shall not be deemed a waiver of any of Hormel's objections, any of its objections to

Plaintiff's definitions and guidelines, or of any other specific objections made herein or at a later

date.  The failure to include any objection to Plaintiff's definitions and guidelines, or specific

Hormel reserves the right to supplement this list with the identification of additional individuals at such time as additional individuals come to its attention.

**INTERROGATORY NO. 2:**   Describe the factual basis for Hormel's denial in its Amended Answer of the allegations in paragraph 13 of the Amended Complaint and identify by Bates No. all documents supporting Hormel's denial thereof.

**ANSWER:**   Hormel incorporates its General Responses and Objections herein.  Hormel further objects to this Interrogatory as overbroad and imposing an undue burden because it requests that Hormel identify "all documents supporting Hormel's denial."  Hormel will identify representative documents and it reserves the right to supplement its response to this Interrogatory as discovery continues.

Subject to and without waiving any objections, Hormel states that David Howard is not the sole inventor of all the subject matter claimed in the '498 Patent and therefore was not omitted as an inventor on that patent.  Mr. Howard was not the inventor of any portion of any claim in the '498 Patent.  Instead, the true inventors are those listed on the face of the '498 Patent:  Brian J. Srsen, Richard M. Herreid, James E. Mino, and Brian E. Hendrickson.  Mr. Howard was not involved in the development of the process by Hormel ultimately disclosed in the '498 Patent.  As a result, HIP is not entitled to the relief described in paragraph 13 of the Amended Complaint.  *See, e.g.*, HFC006226-6232, HFC001299, HFC001293-94.  Hormel also incorporates by reference its responses to Interrogatories No. 3, 5, 6-8, and 10-11.

Given the early stage of discovery, Hormel continues to identify facts and documents supporting its claims and denials.  As such, Hormel reserves the right to supplement its response to this Interrogatory as it discovers additional responsive information.

Dated:  July 19, 2019

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
**FREDRIKSON & BYRON, P.A.**
200 South 6th Street, Suite 4000
Minneapolis, MN  55402-1425
Tel:  (612) 492-7000

67293536

s/ *Tim O'Shea*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
**POTTER ANDERSON & CORROON LLP**
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant*
*Hormel Foods Corporation*

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____

HIP, INC.,

        Plaintiff,

    v.

HORMEL FOODS CORPORATION,

        Defendant.

_____

COPY

C.A. No. 18-802 (CFC)

Video Deposition of

RAMESH GUNAWARDENA

Tuesday, October 27, 2020

10:11 a.m.

Court Stenographer:
Patrick J. Mahon
Registered Merit Reporter
Certified Realtime Reporter



Twin West Reporting, LLC
myrina@myrina.com





## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HIP, INC.,                                    )
                                              )
            Plaintiff,                        )
     v.                                       )        C.A. No. 18-802-CFC-SRF
                                              )
HORMEL FOODS CORPORATION,                     )
                                              )
                                              )
            Defendant.                        )


## HORMEL'S OPPOSITION TO HIP'S MOTION IN LIMINE NO. 2


OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel*
*Foods Corporation*

HIP's second motion *in limine* should be denied because it misunderstands both the law on inventorship and Hormel's positions.  HIP's challenges should be addressed through cross-examination, not exclusion.

It is undisputed that "[o]ne who simply provides the inventor with well-known principles or explains the state of the art without ever having a 'firm and definite idea' of the claimed combination as a whole does not qualify as a joint inventor."  *Ethicon, Inc. v. U.S. Surgical Corp*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (citation omitted); *Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365, 1372 (Fed. Cir. 2020) ("[S]imply informing another about the state of the prior art does not make one a joint inventor.").  One also cannot be a joint inventor by contributing information that "added nothing to an idea the named inventors already had or was, at best, marginally helpful in realizing its benefits."  *Maxtech Consumer Prod., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 848 (N.D. Ill. 2017) (citing cases).  Likewise, an alleged sole inventor must show conception of "all limitations of the claimed invention," which by definition includes the invention's novelty over the prior art.  *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000).

Accordingly, what was well-known, part of the state of the art, or already known by Hormel at the time of David Howard's alleged contributions is unquestionably relevant to whether Howard is a joint inventor.  Further, the '498

1

Patent's issuance over the application that led to the '610 Patent is relevant. Howard cannot establish sole inventorship by claiming to have invented what is otherwise disclosed in the '610 Patent – the '498 Patent necessarily claims inventions beyond those disclosures.  Ramesh Gunawardena's rebuttal expert report addresses these points.  (*See, e.g.*, HIP Ex. A, ¶¶ 25-33 (summarizing what was "well known" in the art), ¶ 71 (relying on that art to explain that "cooking in a spiral oven using superheated steam in an essentially air-free environment was known in the art" by May 2006), ¶¶ 155-57 (explaining the PTAB's finding that the '498 Patent's inventions are "novel improvements" over the prior art, including the '610 Patent).)

HIP's contrary arguments fail for three reasons.  First, HIP misunderstands Hormel's positions.  Hormel will not address at trial whether the prior art itself is obvious.  As HIP acknowledges, Hormel will not provide testimony as to the '610 Patent's obviousness and HIP should have no need to "spend time and resources at trial to address the differences" between the '610 Patent and the prior art, as it complains.

Second, HIP is incorrect that what is "well-known" or in the "state of the art" is limited to information found in textbooks or "facts of nature."  None of the cases HIP cites – *Dana-Farber*, *Hess*, or *Eli Lily* – stand for that proposition. Indeed, the Federal Circuit uses prior art patents to determine what is well-known

or the state of the art.  *See, e.g.*, *Sewall v. Walters*, 21 F.3d 411, 416 (Fed. Cir. 1994) (no joint inventorship where named inventor built off method already disclosed to would-be joint inventor in prior art patent).  Further, *Dana-Farber* does not, as HIP contends, "reject[] an argument a published application constitutes state of the art," but instead only rejects a "categorial[]" rule that one cannot make a "significant contribution to conception" of a total invention where portions of that contribution are made public, finding enough for joint inventorship under that case's distinguishable facts.  964 F.3d at 1372-73.

Finally, Hormel did not fail to "timely disclose" the theories HIP seeks to exclude.  Hormel had no duty to disclose these theories prior to Gunawardena's report, as they are made in rebuttal to HIP's Rule 26(a)(2)(C) Disclosure on matters for which HIP bears the burden of proof.  Further, HIP's interrogatory is inapt because it asked only for "the factual basis for Hormel's denial in its Amended Answer" (HIP Ex. B, p. 7), which would not have included rebuttal to HIP's later developed inventorship arguments.  The black letter law on inventorship and Hormel's discovery put HIP on notice.  Hormel early on sought information about Howard's alleged "inventive" contributions and what inventions Howard claims to have conceived in the '498 Patent that were not in the '610 Patent.  (Ex. 1, pp. 5-8 (Interrogatory Nos. 2-6, 10-11).)  HIP's legal authority is distinguishable.  *See Matsushita Elec. Indus. Co. v. Cinram Int'l, Inc.*, 299 F. Supp.

2d 348, 366 (D. Del. 2004) (addressing new non-infringement theory not raised until summary judgment).

    The Court should deny HIP's motion.


| | |
|---|---|
| | By: /s/ Timothy M. O'Shea |
| OF COUNSEL: | David E. Moore (#3983) |
| | Bindu A. Palapura (#5370) |
| Kurt J. Niederluecke | Stephanie E. O'Byrne (#4446) |
| Timothy M. O'Shea | POTTER ANDERSON & |
| Laura L. Myers | CORROON LLP |
| Barbara Marchevsky | Hercules Plaza, 6th Floor |
| FREDRIKSON & BYRON P.A. | 1313 N. Market Street |
| 200 South Sixth Street, Suite 4000 | Wilmington, DE  19801 |
| Minneapolis, MN  55402 | Tel: (302) 984-6000 |
| Tel: (612) 492-7000 | dmoore@potteranderson.com |
| | bpalapura@potteranderson.com |
| Dated: December 11, 2020 | sobyrne@potteranderson.com |

*Attorneys for Defendant Hormel Foods Corporation*

71643315

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| HIP, INC., | ) | |
|  | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
|  | ) | |
| HORMEL FOODS CORPORATION, | ) | |
|  | ) | |
|  | ) | |
| Defendant. | ) | |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 746 words, excluding the case caption, tables and signature block.  The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

1

|  | By: */s/ Timothy M. O'Shea* |
|---|---|
| OF COUNSEL: | David E. Moore (#3983) |
|  | Bindu A. Palapura (#5370) |
| Kurt J. Niederluecke | Stephanie E. O'Byrne (#4446) |
| Timothy M. O'Shea | POTTER ANDERSON & |
| Laura L. Myers | CORROON LLP |
| Barbara Marchevsky | Hercules Plaza, 6th Floor |
| FREDRIKSON & BYRON P.A. | 1313 N. Market Street |
| 200 South Sixth Street, Suite 4000 | Wilmington, DE  19801 |
| Minneapolis, MN  55402 | Tel: (302) 984-6000 |
| Tel: (612) 492-7000 | dmoore@potteranderson.com |
|  | bpalapura@potteranderson.com |
| Dated: December 11, 2020 | sobyrne@potteranderson.com |

*Attorneys for Defendant Hormel Foods Corporation*

# EXHIBIT 1

*HIP, Inc. v. Hormel Foods Corporation*
D. Del. Case No. 1:18-cv-00802-CFC-SRF

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---

HIP, Inc.,

      Plaintiff,

v.

Hormel Foods Corporation,

      Defendant.

C.A. No. 18-802-CFC-SRF

---

# DEFENDANT'S FIRST SET OF
# INTERROGATORIES TO PLAINTIFF HIP, INC.
_____

To:    Plaintiff HIP, Inc. and its attorneys, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Patterson + Sheridan LLP, 1700 Pacific Ave. Suite 2650, Dallas, TX, 75201, and Brown Patent Law, P.L.L.C., 2700 N. Hemlock Ct., Suite 111 E, Broken Arrow, OK 74012.

## <u>DEFINITIONS AND INSTRUCTIONS</u>

1.      "HIP, Inc.," "you," and "your" means Plaintiff HIP, Inc., its predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any of these capacities during any relevant time period.

10.    If you cannot answer and/or respond to the following discovery requests in full after exercising due diligence to secure the information to do so, please so state and respond to the fullest extent possible, specifying your inability to answer and/or respond to the remainder, stating whatever information or knowledge you have concerning the portion to which you are unable to answer and/or respond.

11.    "Complaint" means Plaintiff's Complaint in the above entitled action, and any subsequent amendment.

12.    The "'498 Patent" refers to U.S. Patent No. 9,980,498 entitled Hybrid Bacon Cooking System.

13.    The "'610 Patent" refers to U.S. Patent No. 9,510,610 entitled Process for Producing Precooked Bacon Slices.

14.    Answers to these Interrogatories shall be made in writing and served upon the undersigned attorneys within thirty (30) days of service of these Interrogatories.

15.    Each Interrogatory is to be answered fully based on information in your possession, custody, or control, or in the possession, custody, or control of your representatives, agents, or attorneys.

16.    If you object to any Interrogatory or any portion of an Interrogatory on the ground that the answer would reveal the substance of any privileged information, provide all information required by Federal Rule of Civil Procedure 26(b)(5). If your objection is on the ground that the answer would reveal the substance of a privileged communication, include an identification of:

a. the nature of the privilege or protection claimed;

- 4 -

b. the person who made the communication, whether oral or in writing;

c. if the communication was oral, all persons present while the communication was made;

d. if the communication was written, the author, addressees, and any other recipients;

e. the date and place of the communication; and

f. the general subject matter of the communication.

17.    These Interrogatories are continuing in nature. If you receive or otherwise become aware of information responsive to any Interrogatory after you have served your responses to these Interrogatories, you must promptly supplement your responses to these Interrogatories to provide such information, as required by Federal Rule of Civil Procedure 26(e).

## **INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify by name, address, and employer, each person having knowledge concerning the facts, matters, or claims of this litigation, and describe in detail such knowledge.

**INTERROGATORY NO. 2:**   Explain in detail the factual basis for HIP's allegation in paragraph 13 of the Complaint that David Howard is the "true and sole inventor of all the subject matter claimed in the '498 Patent…." and that Howard "conceived all of the subject matter called for in each of the claims of the '498 Patent prior to the filing on August 11, 2010 of the Provisional Patent Application No.

61/372,065 from which the '498 Patent was eventually issued" as referenced in paragraph 139 of the Complaint.

**INTERROGATORY NO. 3:** Describe in detail all facts and circumstances relating to David Howard's alleged conception, development, and reduction to practice each of the invention(s) claimed in the '498 Patent, including but not limited to the dates of (1) conception and (2) reduction to practice for each claimed invention in the '498 Patent, and identify each document (by Bates number or otherwise) that corroborates or supports those facts or circumstances.

**INTERROGATORY NO. 4:** Identify each person who was involved in or has knowledge of David Howard's alleged conception, development, reduction to practice, or acts of diligence for each claimed invention in the '498 Patent, and for each person describe in detail his or her knowledge of or involvement for each of the foregoing.

**INTERROGATORY NO. 5:** With regard to the first time the invention claimed in the '498 Patent was disclosed by David Howard to another person:

(a) State the date the disclosure occurred.

(b) State the place where the disclosure occurred.

(c) Identify each communication concerning the disclosure.

(d) Identify each person to whom the disclosure was made.

(e) State the length of time it took to make the disclosure.

(f) State how the disclosure was made, and identify other aids used to explain the invention.

- 6 -

**INTERROGATORY NO. 6:**   With respect to David Howard's alleged actual reduction(s) to practice of the invention claimed in the '498 Patent, for each claim:

(a) State the date for the actual reduction(s) to practice;

(b) State the place where the actual reduction(s) to practice occurred;

(c) Identify each person who was present for the reduction(s) to practice;

(d)  Describe all acts performed, including all tests and results;

(e)  Identify all documents (*e.g.*, memoranda, letters, shop and engineering reports, laboratory notebooks, purchase orders for materials) which pertain to the reduction(s) to practice; and

(f)   Identify all persons having knowledge of the reduction(s) to practice.

**INTERROGATORY NO. 7:**   Identify separately for each claim of the '498 Patent the bates number for each document that HIP contends supports its allegation that David Howard alone conceived of and reduced to practice all the subject matter claimed in the '498 Patent.

**INTERROGATORY NO. 8:**   Identify the bates number for each and every document that HIP contends supports its contention that David Howard disclosed to Hormel the idea of preheating bacon with a microwave before cooking it in a spiral oven using superheated steam.

**INTERROGATORY NO. 9:**    Identify by bates number each and every document HIP contends supports the allegation in paragraph 69 of the Complaint.

**INTERROGATORY NO. 10:**  Identify by bates number each and every document HIP contends supports its contention that Howard "shared the full details of his

invention as called for in each of the claims of the '498 Patent with Hormel…." as set forth in paragraph 141 of the Complaint.

**INTERROGATORY NO. 11:** Identify any invention or contributions that were not disclosed and/or claimed in the '610 Patent that HIP contends is disclosed in the '498 Patent and was allegedly conceived of and reduced to practice by David Howard.

**INTERROGATORY NO. 12:** Identify the bates number for each and every document, including any photos and videos, that HIP contends corroborates the bacon cooking testing conducted in April and May of 2006, "without preheating," that is referenced in paragraphs 60-62 of HIP's Complaint.

**INTERROGATORY NO. 13:** Identify the type, brand, model number, year and size of the boiler and/or steam generator that was used for the alleged bacon cooking that was done as referenced in paragraphs 60-62, 81-82, and 84-85 of HIP's Complaint.

**INTERROGATORY NO. 14:** Identify the bates number of each and every document that shows the process parameters (*i.e.*, temperature, oxygen levels, steam, levels) in the oven for the alleged bacon cooking testing referenced in paragraphs 60-63 of HIP's Complaint.

**INTERROGATORY NO. 15:** Identify the bates number of each and every document that HIP provided to Hormel at the June 2007 Meat Processing Xchange meeting, the July 20, 2007 meeting and the September 25, 2007 meeting, and if HIP alleges that any such document (including a PowerPoint presentation or video) was shown electronically, identify the electronic device used to show such document.

**INTERROGATORY NO. 19:**   Identify the bates number of each and every document that HIP contends supports  Howard's conception and reduction to practice of the idea of preheating bacon slices with a microwave oven to a temperature of 140˚ F to 210˚ F prior to cooking the bacon in a spiral oven using superheated steam.

Dated: May 24, 2019

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel:  (612) 492-7000

POTTER ANDERSON & CORROON LLP

By:  */s/Timothy M. O'Shea*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

66792009

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

**EXHIBIT 14**

**HIP'S REPLY IN SUPPORT OF MOTION IN LIMINE #2
TO PRECLUDE HORMEL FROM A COLLATERAL
<u>"PRIOR ART" ATTACK AGAINST THE HOWARD '610 PATENT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012

Hormel fails to deny: (1) Mr. Gunawardena used the term "state of the art" only to describe HIP's RapidFlow oven; and (2) its internal documents were not public and cannot show "state of the art."  Moreover, what "Hormel" allegedly knew cannot be imputed to the putative Hormel inventors, as their actual knowledge is the only relevant state of mind.

Faced with *Dana-Farber* and *Burroughs*, Hormel ostensibly abandons its "obviousness" theme.  HIP Ex. A, ¶ 154 ("'610 Patent is obvious in light of prior art discussed above [in ¶¶25-33]").  Now, Hormel relies on "novel improvements" and what was "known in the art," although those are concepts *Dana-Farber* rejected in the context of an inventorship analysis.  *Compare Dana-Farber*, 949 F.3d at 1372 ("The novelty … of the claimed inventions over the provisional application are not probative ….") *with* HIP Ex. A, ¶ 71 ("As I discussed above [in ¶¶25-33] cooking in a spiral oven … was known in the art by this time.") & *id*., ¶157 (PTAB "concluded the inventions claimed in the '498 Patent are novel improvements over the prior art ….").

Hormel never explains or offers any support for why it should be allowed to repackage its obviousness argument or evidence into what was "well-known" or "state of the art" when its expert offered no such opinions.  As *Dana-Farber* makes clear, whether the '498 Patent issued over the '610 Patent is not relevant.  The issue here is whether Hormel merely repackaged Mr. Howard's disclosures of his Unitherm Process using only non-substantive distinctions in an attempt to disguise what it did (and did not do).  That analysis was not before the PTAB during Hormel's *ex parte* appeal from rejection over the Howard published application and is an irrelevant distraction.  *Sewell v. Walters* is inapposite.  21 F.3d 411, 415-16 (Fed. Cir. 1994).  Walters brought his prior conception to Sewell, including a sketch on an issued Walters patent.  Sewell did no more than routine additional work under guidance from Walters.  Because Hormel confirms it first disclosed its new theories in its expert report, it failed to timely disclose them.

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

*Attorneys for HIP, Inc.*

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

December 15, 2020

EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | CONFIDENTIAL |
| | ) | FILED UNDER SEAL |
| Defendant. | | |

**HIP, INC.'S MOTION IN LIMINE #3**
**<u>TO PRECLUDE HORMEL FROM CHALLENGING STANDING</u>**

Hormel should be precluded from challenging HIP's standing at trial because Hormel has waived any challenge to standing in its Answer in this action.  Further, Hormel has no legal basis on which to challenge HIP's standing because the agreement transferring assets to Marlen International, Inc. ("Marlen") is unambiguous that "Retained Assets" by Mr. Howard include the claims that are the subject of the instant lawsuit, and Marlen expressly confirmed that in communications between counsel for Marlen and Hormel.

## STATEMENT OF FACTS

HIP alleged in its Amended Complaint that HIP has standing to bring this action, which Hormel failed to deny. The relevant paragraphs of the Amended Complaint and Answer to Amended Complaint are as follows:

> The true and sole inventor of all the subject matter claimed in above-referenced U.S. Patent No. 9,980,498 (the "'498 Patent") is Plaintiff's President, David Howard.  Plaintiff HIP, Inc. has standing to bring this action for correction of inventorship and ownership . . . by virtue of an assignment from David Howard to Plaintiff of all rights in the '498 Patent.  (See Exhibit J).  A copy of the '498 Patent is attached hereto as Exhibit A.

D.I. 21, First Amended Complaint, ¶ 1;

> Hormel denies that David Howard is the true and sole inventor of all of the subject matter claimed in U.S. Patent No. 9,980,498 (the "'498 Patent").  Hormel admits that Exhibit J to the original Complaint purports to be an assignment from David Howard to Plaintiff of all rights in the '498 Patent.  Hormel denies that HIP has any interest or any rights in the '498 Patent.

D.I. 33, Defendant's Amended Answer [to Amended Complaint], ¶ 1.

In August 2017, HIP (then Unitherm) sold to Marlen certain assets of Unitherm's business in a Unit Purchase Agreement (the "Agreement").[1]  The Agreement included a provision barring Marlen from taking action that would interfere with the Minnesota lawsuit or

---

[1] Relevant pages of the Agreement are attached hereto as Exhibit A.  Exhibit J to the Complaint (the Howard assignment), D.I. 5, Ex. J, is attached hereto as Exhibit B.

1

the patent infringement case then before this Court.  Ex. A, § 7.5, pp. 42-43.  Disclosure

Schedules to the Agreement also identified assets and liabilities that Marlen was not acquiring.

These included "[a]ll claims and rights of the Hormel lawsuit, Case No. 14-CV-4034, U.S.

District Court for the District of Minnesota."  Ex. A, at HIP0002896.

Relevant paragraphs of Unitherm's Amended Complaint in the Minnesota litigation,

Exhibit C hereto, asserted:

> 60. Upon information and belief, Hormel is now claiming to be the owner of the Unitherm Process brought to the JDA by Unitherm and developed solely by Unitherm prior to the JDA, as evidenced by the Hormel patent application and the launch of Bacon 1 as a national commercial venture by Hormel.
>             . . . .
> 62. Equitable relief in the form of a judicial declaration is required to determine that the subject matter of the Hormel patent applications, including but not limited to the preferred embodiments disclosed therein, is based at least in part on the Unitherm Process.

Hormel's Answer, Exhibit D hereto, denied those allegations and presented a competing

declaratory judgment claim.  *Unitherm Food Sys. v. Hormel Foods Corp.*, 2016 WL 4005649 (D.

Minn. July 25, 2016) (factual dispute precluded summary judgment).

Hormel issued a document subpoena to Marlen in this lawsuit, to which Marlen initially

objected.   In follow-up communications between counsel for Hormel and Marlen, after

addressing Marlen's privilege log regarding the "acquired assets," turning to the subject of this

lawsuit, Hormel expressly confirmed the understanding that "Marlen agrees that for entries on its

privilege log relating to assets retained by HIP in the asset purchase agreement, the privilege

dispute is between Hormel and HIP."  Ex. E, at 3.  Marlen clarified that while it "certainly has an

interest in the retained assets as a licensee, and is preserving the privilege, the dispute as to the

retained assets is between Hormel and HIP."  *Id*. at 1.

## <u>ARGUMENT</u>

As a matter of law, Hormel has waived any challenge to standing because HIP pled it had "standing" (D.I. 21, ¶ 1) and Hormel's answer not only did not deny HIP's specific allegation, but also admitted that Exhibit J to the complaint "purports to be an assignment" from Mr. Howard to HIP "of all rights in the '498 Patent" (D.I. 33, ¶ 1).  *See* Fed. R. Civ. P. 8(b)(6) (an allegation other than one relating to the amount of damages "is admitted if a responsive pleading is required and the allegation is not denied"); *Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 581-82 (D. Del. 2015) (recognizing Rule 8 requirement to admit or deny specific allegations, but allowing amendment to answer because case was in its early stage).

To the extent Hormel has not waived its challenge to standing, the contract between HIP and Marlen did not convey the inventorship/ownership rights that HIP is pursuing in this action. Under Delaware law, which governs that contract, a contract is construed as a whole, giving effect to the parties' intentions.  *See, e.g., Northwestern Nat'l Ins. v. Esmark*, 672 A.2d 41, 43 (Del. 1996).  Further, contract construction is purely a question of law.  *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).  Where, as here, the contract is clear on its face that HIP retained the inventorship/ownership challenge to the '498 Patent and the parties to the contract agree as to its meaning, Hormel lacks standing to challenge the meaning of the HIP/Marlen agreement.

3

# EXHIBIT A

## FULLY REDACTED

# EXHIBIT B

## ASSIGNMENT

WHEREAS, DAVID HOWARD, residing at 1322 Kessler Parkway, Dallas, TX 75208 (hereinafter referred to as "ASSIGNOR") believes he is the sole inventor of the subject matter disclosed and claimed in United States Patent Application Nos. 13/207,065 and/or 61/372,560 (the "APPLICATIONS"), and from which the United States Patent and Trademark Office issued U.S. Patent No. 9,980,498 entitled "Hybrid Bacon Cooking System" (hereinafter referred to as the "'498 PATENT") on earlier in the day on Tuesday May 29, 2018; and

WHEREAS, HIP, Inc., an Oklahoma corporation, located at 1322 Kessler Parkway, Dallas, TX 75208 (hereinafter referred to as the "ASSIGNEE"), is desirous of acquiring the entire right, title and interest in and to the aforementioned APPLICATIONS and the '498 PATENT, fully aware that the '498 PATENT does not currently name Mr. Howard as the sole inventor, let alone as a co-inventor, that the '498 PATENT issued initially without naming Mr. Howard as an applicant or the assignee of record;

NOW, THEREFORE, this Assignment witnesseth that for good and valuable consideration, including, but not limited to $10 (ten dollars), the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR hereby sells, assigns, transfers and sets over to ASSIGNEE all of ASSIGNOR'S right, title, and interest in and to the APPLICATIONS, the '498 PATENT, and to any and all patent applications and patents in  the United States or any other countries which claim priority from the '498 PATENT or from either of both of the APPLICATIONS, namely U.S. Application No. 13/207,065 and/or U.S. Application No. 61/372,560 from which the PATENT was granted and/or claims priority, the same to be held and enjoyed by ASSIGNEE for its own use and benefit, and for the use and benefit of its successors, assigns or other legal representatives, to the end of the respective terms for which the '498 PATENT and any and all of said patents in other countries have been granted, as fully and entirely as the same would have been held and enjoyed by ASSIGNOR if this assignment had not been made.  This Assignment also includes the right to any past or future damages under United States or foreign laws relating to infringement of any patent claiming priority to the APPLICATIONS or the '498 Patent.

IN WITNESS WHEREOF, ASSIGNOR and ASSIGNEE have duly executed this ASSIGNMENT effective as of May 29, 2018.



EXHIBIT

J

PATENT
ASSIGNMENT

ASSIGNOR:                                    ASSIGNEE:

_____                    HIP, Inc.

David Howard                                 _____

                                             David Howard
                                             President of HIP, Inc.

29 May 2018                                  29 May 2018
_____                                 _____
Date                                         Date

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITHERM FOOD SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 14-4034 (JNE/BRT) |
| | ) | |
| HORMEL FOODS CORPORATION; | ) | |
| AND HORMEL FOOD CORPORATE | ) | Jury Trial Demanded |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Pursuant to the Court's January 30, 2015 Order (Dkt. No. 28) Plaintiff Unitherm Food Systems, Inc., submits this Amended Complaint against Defendants Hormel Foods Corporation and Hormel Food Corporate Services, LLC. In order to conform this Amended Complaint to the rulings in the Court's Order dated January 27, 2015 (Dkt. No. 24) dismissing certain of Unitherm's original causes of action, Unitherm has removed references to its misappropriation of trade secrets claim and claim for accounting. This has been done solely to conform to the Order, and is not intended in any way to waive any of Unitherm's rights on appeal, all of which are expressly reserved.

## PARTIES

1.      Unitherm Food Systems, Inc. ("Unitherm") is an Oklahoma corporation with its principal place of business in Bristow, Oklahoma. Unitherm is in the business of developing processes and equipment, including large, commercial ovens, for cooking meat and other products for sale both domestically and internationally.

Unitherm to Hormel in the context and furtherance of the JDA regarding the Unitherm Process, under the Federal Declaratory Judgment Relief Act.

60.     Upon information and belief, Hormel is now claiming to be the owner of the Unitherm Process brought to the JDA by Unitherm and developed solely by Unitherm prior to the JDA, as evidenced by the Hormel patent application and the launch of Bacon 1 as a national commercial venture by Hormel.

61.     Equitable relief in the form of a judicial declaration is required to determine that the process now being used by Hormel to make pre-cooked bacon is in whole or in large part owned by Unitherm pursuant to the MCDA and JDA.

62.     Equitable relief in the form of a judicial declaration is required to determine that the subject matter of the Hormel patent applications, including but not limited to the preferred embodiments disclosed therein, is based at least in part on the Unitherm Process.

63.     Equitable relief in the form of a judicial declaration is required to determine that the subject matter of the Hormel patent applications is therefore a "Project Invention" under the JDA, thus making Unitherm a joint owner of the Hormel patent applications.

64.     Equitable relief in the form of a judicial declaration is required to determine that the subject matter of the Hormel patent applications also constitutes a Joint Invention under the JDA, thus also making Unitherm a joint owner of the Hormel patent applications.

# REQUEST FOR RELIEF

WHEREFORE, Unitherm Food Systems, Inc. requests judgment against Hormel Foods Corporation and its wholly-owned subsidiary, Hormel Food Corporate Services, LLC, as follows:

1. Awarding Unitherm damages against Hormel in excess of $75,000, plus interest thereon;

2. Awarding Unitherm compensatory damages for all injuries suffered as a result of Hormel's wrongful conduct that are compensable in money damages and for the amount by which Hormel has profited and been unjustly enriched as a result of its actions;

3. Requiring Hormel to account for all compensation, customer solicitations, vendor solicitations, attempted vendor solicitations, referrals, referral efforts, sales, sales efforts and any other activity prohibited by Minnesota law;

4. Awarding Unitherm the costs of this action, including reasonable attorneys' fees pursuant statutory, contractual, or common law bases for fees and cost shifting;

5. Declaring the process used by Hormel to make its pre-cooked bacon, using super-heated steam and a spiral oven, is in whole or in large part owned by Unitherm, and was Unitherm's Confidential Information under the MCDA and JDA;

6. Declaring that Unitherm is the owner or a joint owner of the Hormel patent applications;

7. Any and all other relief as this Court deems just and appropriate under the circumstances.

18

**BASSFORD REMELE**
*A Professional Association*


Dated: February 6, 2015          By  s/ Edward F. Fox
                                 Edward F. Fox (MN #003132X)
                                 Mark R. Bradford (MN #335940)
                                 33 South Sixth Street, Suite 3800
                                 Minneapolis, MN  55402-3707
                                 Telephone:   (612) 333-3000
                                 Facsimile:   (612) 333-8829
                                 efox@bassford.com
                                 mbradford@bassford.com

                                 AND

                                 J. Christopher Davis, Esq. *(pro hac vice)*
                                 Paul D. Kingsolver, Esq. *(pro hac vice)*
                                 JOHNSON & JONES, P.C.
                                 2200 Bank of America Center
                                 15 West Sixth Street
                                 Tulsa, OK 74119-5416
                                 Telephone: (918) 584-6644
                                 Facsimile:  (888) 789-0940

                                 **ATTORNEYS FOR PLAINTIFF**
                                 **UNITHERM FOOD SYSTEMS, INC.**


1414970.docx

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Unitherm Food Systems, Inc.,

     Plaintiff,

v.

Hormel Foods Corporation and
Hormel Foods Corporate
Services, LLC,

     Defendants.

Court File No. 14-cv-4034 (JNE/BRT)

**(Jury Trial Demanded)**

---

### DEFENDANTS' ANSWER TO AMENDED COMPLAINT
### AND COUNTERCLAIMS
_____

Defendants Hormel Foods Corporation and Hormel Foods Corporate Services, LLC (collectively, "Hormel"), by their attorneys, hereby answer the Amended Complaint of Plaintiff Unitherm Food Systems, Inc. ("Unitherm") as follows below.  Defendants deny each allegation contained in the Amended Complaint except as hereinafter admitted, explained, or qualified.

### PARTIES

1.     Defendants admit that Unitherm is an Oklahoma corporation with its principal place of business in Bristow, Oklahoma.  Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 1, and therefore deny them.

60.     As stated in response to paragraph 48 of the Amended Complaint, Defendants admit that Hormel claims ownership of certain information, including the Unitherm Process, under the terms of the JDA.   Defendants deny the remaining allegations of paragraph 60.

61.     Defendants deny the allegations of paragraph 61.

62.     Defendants deny the allegations of paragraph 62.

63.     Defendants deny the allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

## REQUEST FOR RELIEF

Unitherm's Prayer for Relief sets forth Unitherm's requested relief and does not require a response.  However, to the extent that the Prayer for Relief may be construed to contain allegations of fact, Hormel denies them. Hormel further denies that Unitherm is entitled to any of the relief sought in its Amended Complaint.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

1.     Unitherm has failed to state a claim upon which relief may be granted.

2.     Unitherm has failed to perform under the MCDA and JDA.

3.     Unitherm has breached the MCDA and JDA.

4.     Unitherm's claims are barred in whole or in part on the applicable statute of limitations.

5.     Unitherm's unjust enrichment claim is barred by the MCDA and JDA.

6.     Unitherm's claims are barred by the doctrines of waiver, estoppel, or laches.

- 11 -

7.      Hormel is entitled to recover its costs and expenses, including attorneys'
fees, pursuant to the MCDA.

8.      Hormel reserves the right to amend its Answer to add additional affirmative
defenses under Rule 8(c) of the Federal Rules of Civil Procedure as they become known
during the course of discovery in this case.

## COUNTERCLAIMS

For its Counterclaims against Unitherm, Hormel alleges as follows:

### Parties

1.      Hormel Foods Corporation is a Delaware corporation with its principal
place of business in Austin, Minnesota.

2.      Hormel Foods Corporate Services, LLC is a Delaware limited liability
company with its principal place of business in Austin, Minnesota.  Hormel Foods
Corporation is the sole member of Hormel Foods Corporate Services, LLC (hereinafter
collectively referred to as "Hormel").

3.      Hormel is a multinational manufacturer and marketer of high-quality,
brand-name food and meat products for consumers throughout the world.

4.      Unitherm Food Systems, Inc. ("Unitherm") is an Oklahoma corporation
with its principal place of business in Bristow, Oklahoma.  Unitherm sells equipment,
including large, commercial ovens for cooking meat and other products for sale both
domestically and internationally.

### Jurisdiction and Venue

5.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

- 12 -

6.      The parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this Court under 28 U.S.C. §§ 1391 because a substantial portion of either the events or omissions giving rise to the claim, or the injuries suffered by Hormel, occurred in this judicial district.   Further, the Joint Development Agreement provides that it was formed in Minnesota and that Minnesota law will apply to any dispute regarding that contract.   Unitherm also initiated this lawsuit and transacts business in Minnesota.

### Factual Allegations

8.      Prior to Unitherm's initial meeting with Hormel's pre-cooked bacon team in July 2007, Hormel's R&D and Engineering groups devoted a great deal of time and testing of superheated steam technology.  Hormel identified superheated steam as a way to improve quality in pre-cooked bacon and began developing its own superheated steam process in early 2005.  Hormel R&D also started testing its process with equipment available in Europe later in 2005.

9.      By July 2006, Hormel had constructed its own prototype superheated steam oven and conducted extensive testing of the superheated steam process.  Hormel had independently developed a prototype high steam level oven prior to working with Unitherm.

10.      Continuous process high steam ovens were readily available commercially prior to the start of Hormel's relationship with Unitherm.

- 13 -

11.     The superheated steam process was Hormel's idea, and Hormel was interested in partnering with a commercial oven manufacturer to develop a commercial high steam oven to commercialize its high steam level oven and process to produce a commercially viable pre-cooked bacon product.

12.     By May 2007, Hormel met with FMC FoodTech ("FMC"), a manufacturer of commercial spiral ovens, regarding the commercialization of Hormel's prototype high steam level oven to cook bacon.

13.     In June 2007, Hormel also met with Unitherm regarding the commercialization of Hormel's prototype high steam level oven to cook bacon.  During this meeting, Hormel discussed with Unitherm the idea of using a spiral oven to commercialize Hormel's high steam level oven cooking process.

14.     On July 16, 2007, in advance of Unitherm's expected July 20, 2007 visit to Hormel's R&D facilities in Austin, Minnesota, Hormel sent a copy of its standard nondisclosure agreement to Unitherm.  The purpose of the Unitherm visit was for Hormel to "talk specifics" about a couple of products it was working on, and for Unitherm to give a general presentation of its equipment lines.

15.     On July 20, 2007, Hormel and Unitherm entered into a Mutual Confidential Disclosure Agreement ("MCDA").  Under the MCDA, Hormel and Unitherm "may" disclose to each other "Confidential Information including, but not limited to, information on thermal processing of meat products and other information" that is relevant to the cooking of meat products.

16.     "Confidential Information" is defined by the MCDA as "information not readily available to the public, including but not limited to information regarding research and development; proprietary processes, inventions and prototypes; product specifications; business information; strategic plans; organization charts; costs and price planning data; customer and vendor information; as well as other information that, under the circumstances, would lead a reasonable person to believe that such information may be Confidential Information."

17.     The restrictions and obligations of the MCDA did not apply to information received by a party (the "Recipient") that:

(i)      "is in the prior possession of the Recipient, independent of its relationship with Discloser hereunder; or

(ii)     is lawfully disclosed to Recipient by a third party; or

(iii)    is or becomes public knowledge through no breach of this Agreement; or

(iv)     is independently developed by Recipient without reference to any Confidential Information received hereunder."

18.     The MCDA required, if requested by the Discloser, that the Recipient "promptly return to Discloser all of Discloser's Confidential Information."

19.     The MCDA "does not obligate either Party to disclose Confidential Information." Indeed, both Hormel and Unitherm had the right "at any time" to "cease disclosing Confidential Information to the other Party without any liability." Furthermore, either party had the right, "in its sole discretion" to terminate the MCDA.

20.     On September 25, 2007, Hormel and Unitherm entered into a Joint Development Agreement ("JDA") to work on the "Project." The Project was defined as

- 15 -

"develop[ing] an oven that uses very high (approaching 100%) steam levels for cooking" and "would initially be focused on producing bacon."

21.     The JDA expressly states that "Hormel has developed a prototype high steam level oven" for cooking bacon, and it was the purpose of the JDA to continue that development into commercial ovens for Hormel.

22.     Unitherm agreed "to commit adequate resources to develop the Project to produce a commercially viable end product with all due haste."

23.     The JDA provides that "HORMEL will own all Inventions, Joint Inventions, and Project Inventions" so long as a purchase agreement for a test oven is executed.

24.     Furthermore, either party had the right to terminate the JDA, "if, after reasonably adequate development work and testing has been done," a commercially viable product was not developed.

25.     Unitherm claims it developed a unique process and system for preparing pre-cooked sliced bacon (the "Unitherm Process").   (Dkt. No. 1 (Compl.) at ¶ 5.) According to Unitherm, the Unitherm Process involves the use of continuously fed spiral ovens and super-heated vapor derived from steam such that the fully cooked bacon resembles a pan-fried product.  (*Id.*)  Unitherm contends that the Unitherm Process "*was* a closely held, confidential *trade secret*, was not generally known in the industry, and was not readily ascertainable by proper means by other persons."

- 16 -

26.     According to Unitherm, "[t]here has never been a timeframe when Unitherm's sharing of its confidential trade secret to Hormel was outside the confines of a confidentiality agreement, verbal or written."  (Dkt. No. 19 at p. 6.)

27.     On January 11, 2008, Unitherm filed a patent application for the Unitherm Process via U.S. Patent Application No. 12/013,337 (the "'337 Application"), thereby disclosing its purported trade secret.

28.     The '337 Application "was filed with the full knowledge and consent of Hormel, inside the protections of the MCDA and in furtherance of the JDA."  (Dkt. No. 1 (Compl.) at ¶ 26.)

29.     Unitherm did not name any Hormel employee as a co-inventor on the '337 Application that was filed in furtherance of the parties' JDA.  Nor did Unitherm identity or record Hormel as the owner or joint-owner of the '337 Application that was filed in furtherance of the JDA.

30.     Unitherm did not assign, or cause the named inventor to assign, the invention or '337 Application to Hormel pursuant to the terms of the JDA.

31.      On July 16, 2009, the '337 Application was published by the U.S. Patent Office, which disclosed Unitherm's alleged trade secrets regarding its process for pre-cooked sliced bacon to the public.  This Court has already ruled that "[t]he publication of the patent means that Unitherm no longer had a trade secret in the [Unitherm] Process." (Dkt. No. 24 at p. 7.)

32.     During the Project, Hormel's R&D team determined through numerous tests that bacon cooked using Unitherm's commercial spiral oven developed an off

flavor, and the flavor intensity of the cure solution was noticeably reduced.  Despite the work under the JDA, Unitherm's oven did not work or meet Hormel's needs as required by the JDA.  After more than two years of development effort under the JDA, these issues could not be resolved and no commercially viable results had been achieved. Consequently, Hormel decided in good faith to discontinue its development work with Unitherm to develop a commercial oven.

33.     On April 1, 2010, Hormel notified Unitherm that it was terminating the JDA pursuant to paragraph 6(b) and the MCDA.  Hormel exercised its ownership rights under paragraph 5(a)(iv) of the JDA to all "Inventions, Joint Inventions, and Project Inventions as they are defined in the Agreement."  (*Id*.)  Pursuant to paragraph 5(a)(iv) of the JDA, Hormel agreed to purchase the Unitherm test oven, which required Unitherm to execute the necessary documents to perfect Hormel's ownership in "all Inventions, Joint Inventions, and Project Inventions, as defined herein."

34.     Unitherm never assigned any of the Inventions, Joint Inventions, Project Inventions, or the '337 Application to Hormel.

35.     On November 3, 2008, Unitherm filed International Application Number PCT/US2008/082181, claiming priority to the '337 Application, and resulting in the issuance of European Patent No. EP 2230922 December 26, 2012.  On February 21, 2012, Unitherm filed U.S. Application Number 13/401,167 as a continuation of the '337 Application.  (These applications, along with the '337 Application, are collectively referred to as the "Unitherm Applications".)  Unitherm failed to advise Hormel of these

filings, failed to allow Hormel to control the prosecution of these applications, and failed to assign any of these applications or patents to Hormel.

36.    Hormel requested that within 60 days of its termination notice dated April 1, 2010, that Unitherm return "all notes, laboratory notebooks, plans, drawings, specifications, patent applications, plans, data, and all other information (whether in hard copy or electronic form) that reflects any work related to the Project" as required by the JDA.   Hormel also asked Unitherm to return "all Hormel Foods Confidential Information" that was provided "under the Mutual Confidential Disclosure Agreement" and reminded Unitherm that it should not retain any copies of any information related to the Project as required by MCDA.  Unitherm never complied with these obligations.

37.    On April 8, 2010, Unitherm accepted Hormel's termination of the MCDA and JDA.

38.    Following the termination, Hormel continued to independently pursue other options utilizing the super-heated steam process that Hormel initially developed to improve bacon quality.

39.    Hormel eventually discovered that when a microwave oven is paired with a spiral oven using super-heated steam with modified temperature constraints, the finished product delivers the product superiority its customers sought.  This process is unique to Hormel and does not incorporate any Unitherm confidential or trade secret information.

40.    Hormel sought patent protection for this hybrid process.  In August 2010, Hormel filed U.S. Provisional Patent Application No. 61/372,560, which was published in February of 2012.  Hormel also filed U.S. Patent Application No. 13/207,065 and

International Patent Application No. PCT/US2011/047374 (collectively, the "Hormel Patent Applications").  Thereafter, Hormel continued to test its hybrid process.

41.     Hormel explained in its 2012 published patent application that the use of conventional spiral ovens according to the Unitherm Process produced unsatisfactory pre-cooked bacon.  Indeed, Hormel's current technology uses a microwave to preheat the bacon, not steam.  Unitherm had nothing to do with this development.

## COUNT 1 – DECLARATORY JUDGMENT

42.     Hormel incorporates the foregoing paragraphs by reference.

43.     In a case of actual controversy within its jurisdiction, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

44.     Unitherm claims that the process now being used by Hormel to make pre-cooked bacon is in whole or in large part owned by Unitherm pursuant to the MCDA and JDA.  Unitherm also claims that the subject matter of the Hormel patent applications is based in part on the Unitherm Process and is therefore a "Project Invention" and a "Joint Invention" under the JDA, making Unitherm a joint owner of the Hormel Applications. Hormel denies Unitherm's claims.

45.     Hormel contends that it owns the intellectual property associated with the JDA.  The '337 Application for the Unitherm Process was filed in furtherance of the JDA.  The Unitherm Applications are part of the same patent family, and disclose the

same invention.  The JDA provides that "[a]ll Inventions relating to the Project will be owned by Hormel."  Unitherm never assigned the Unitherm Applications to Hormel.

46.     In August 2010, Hormel sought patent protection for its hybrid process for pre-cooked bacon.  This process is unique to Hormel and does not incorporate any Unitherm confidential or trade secret information.

47.     In light of the foregoing, the parties have adverse legal interests and there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in favor of Hormel.  This Court should resolve the dispute between the parties and declare that (i) Hormel owns all Inventions, Joint Inventions, and Project Inventions under the JDA; (ii) Hormel owns all the inventions disclosed in the Unitherm Applications; and (iii) that Hormel owns all the inventions disclosed in the Hormel Patent Applications.

### COUNT 2 – BREACH OF CONTRACT

48.     Hormel incorporates the foregoing paragraphs by reference.

49.     The MCDA required, if requested by the Hormel, that Unitherm promptly return to Hormel all of Hormel's Confidential Information.

50.     On April 1, 2010 Hormel requested that Unitherm return "all notes, laboratory notebooks, plans, drawings, specifications, patent applications, plans, data, and all other information (whether in hard copy or electronic form) that reflects any work related to the Project."  Unitherm did not return any Confidential Information to Hormel.

51.     Hormel also exercised its ownership rights under paragraph 5(a)(iv) of the JDA to all "Inventions, Joint Inventions, and Project Inventions as they are defined in the

Agreement." (*Id.*)  The '337 Application was filed in furtherance of the JDA, and the Unitherm Applications all disclose the same invention.  Pursuant to paragraph 5(a)(iv) of the JDA, Hormel agreed to purchase the Unitherm test oven, which required Unitherm to execute the necessary documents to perfect Hormel's ownership in "all Inventions, Joint Inventions, and Project Inventions, as defined herein."  Unitherm never assigned the Unitherm Applications or the EP 2230922 Patent to Hormel.

52.     Unitherm filed this action claiming that Hormel misappropriated trade secret information in violation of the MCDA, and is liable for Hormel's attorneys' fees, costs and expenses in defending this action pursuant to Paragraph 7 of the MCDA.

53.     Unitherm's conduct constitutes a breach of contract and has caused Hormel damages in an amount in excess of $75,000 to be proven at trial.

## JURY TRIAL DEMAND

54.     Hormel demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Hormel prays for an order entering judgment as follows:

A.     Dismissing Unitherm's Amended Complaint in its entirety, with prejudice;

B.     Declaring that Hormel is the owner of the Unitherm Applications and the inventions disclosed therein;

C.     Declaring that Hormel owns the Hormel Patent Applications and the inventions disclosed therein;

D.     Declaring that Hormel owns all Inventions, Joint Inventions, and Project Inventions under the JDA;

E.     Ordering that Unitherm execute all documents necessary to perfect Hormel's sole ownership in items B-D;

F.     Awarding Hormel damages against Unitherm in excess of $75,000, plus interest thereon;

G.     Awarding Hormel its attorneys' fees, costs and expenses in this action pursuant to the terms of the MCDA and Minn. Stat. § 325C.04;

H.     Awarding Hormel its costs of this action; and

I.     Awarding such other and further relief as the Court deems proper and just.

Dated: February 20, 2015

s/ Kurt J. Niederluecke

Kurt J. Niederluecke (#271597)
Timothy M. O'Shea (#386437)
Chelsea L. Sommers (#0393414)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN   55402
Phone:  (612) 492-7000
Fax:  (612) 492-7077

**ATTORNEYS FOR DEFENDANTS
HORMEL FOODS CORPORATION
AND HORMEL FOODS CORPORATE
SERVICES, LLC**

52550662_3.doc

# EXHIBIT E

**Jerry R. Selinger**

| | |
|---|---|
| **From:** | Kelly Whitehart <kelly.whitehart@nelsonmullins.com> |
| **Sent:** | Friday, February 28, 2020 1:51 PM |
| **To:** | O'Shea, Timothy; Jerry R. Selinger |
| **Cc:** | Marchevsky, Barbara; Niederluecke, Kurt; Susan E. Powley; Sarah Arnold |
| **Subject:** | RE: Privilege Log Assets |
| **Attachments:** | Marlen On-Site Review Privilege Log.pdf |

All-
Attached please find Marlen's privilege log to accompany the On-Site review production you should have received yesterday.  As we have previously discussed, Marlen is affirmatively asserting privilege over the acquired assets.  ==While Marlen certainly has an interest in the retained assets as a licensee, and is preserving the privilege, the dispute as to the retained assets is between Hormel and HIP.==  In addition to the list previously provided, below are additional assets that were acquired by Marlen that appear on the attached log.

Foreign Patents/Applications for Method, Continuous Apparatus and Burner for Producing a Surface Roasted Product
US and Foreign Patents/Applications for Pasteurization System for Root Vegetables
Foreign Patents/Applications for Onion Peeling
US and Foreign Patents/Applications for Airflow Pattern for Spiral Ovens, including Reversing Fan
US 9,345,252 – Method, Continuous Apparatus and Burner for Producing a Surface Roasted Product
US 6,622,513 – Freeze-Crusting Process and Apparatus
US 6,675,589 – Freeze-Crusting Process
US 8,646,383 B1- Spiral Oven Apparatus
US App 14/176,613 - Spiral Oven Method of Cooking

Best-
Kelly

 NELSON MULLINS

KELLY WHITEHART PARTNER
kelly.whitehart@nelsonmullins.com
ATLANTIC STATION | SUITE 1700
201 17TH STREET NW | ATLANTA, GA 30363
t 404.322.6107   f 404.322.6050
NELSONMULLINS.COM   VCARD   **VIEW BIO**

**From:** Kelly Whitehart
**Sent:** Tuesday, February 11, 2020 4:53 PM
**To:** O'Shea, Timothy <toshea@fredlaw.com>; Jerry R. Selinger <JSelinger@pattersonsheridan.com>; Jacobs, Karen <KJacobs@MNAT.com>; 'mflynn@mnat.com' <mflynn@mnat.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>; Niederluecke, Kurt <kniederluecke@fredlaw.com>; OByrne, Stephanie E. <sobyrne@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Privilege Log Assets

1

Tim-

I confirm that the list below captures the acquired assets over which Marlen is asserting privilege.  I also confirm that there are no acquired assets over which Marlen is asserting privilege on Marlen's privilege log dated August 27, 2019.  Marlen agrees to comply with the final non-appealable order stemming from the privilege dispute between Hormel and HIP.

The full application and patent numbers are below.

| Appl. No. Filing Date | Patent No. Issue Date |
|---|---|
| 12559793 09/15/2009 | 8646383 02/11/2014 |
| 12631497 12/04/2009 | 8728555 05/20/2014 |
| 12728678 03/22/2010 | |
| 13044270 | 9220376 |
| 13708393 12/07/2012 | 9107422 08/18/2015 |
| 14828037 08/17/2015 | 9504258 11/29/2016 |
| 12716517 03/03/2010 | |

Best-
Kelly

 NELSON MULLINS

KELLY WHITEHART PARTNER
kelly.whitehart@nelsonmullins.com
ATLANTIC STATION | SUITE 1700
201 17TH STREET NW | ATLANTA, GA 30363
T 404.322.6107   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

**From:** O'Shea, Timothy <toshea@fredlaw.com>
**Sent:** Sunday, February 9, 2020 6:21 PM
**To:** Kelly Whitehart <kelly.whitehart@nelsonmullins.com>; Jerry R. Selinger <JSelinger@pattersonsheridan.com>; Jacobs, Karen <KJacobs@MNAT.com>; 'mflynn@mnat.com' <mflynn@mnat.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>; Niederluecke, Kurt <kniederluecke@fredlaw.com>; OByrne, Stephanie E. <sobyrne@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>
**Subject:** RE: Privilege Log Assets

Kelly,

I am following up on our call from last Wednesday regarding the assets Marlen maintains it acquired in the asset purchase agreement that relate to Marlen's privilege log.   As a threshold matter, please provide the full application and patent numbers referenced in your email below.  Based on the information you provided, it is our understanding that the following entries on Marlen's Electronic Production and Clawback Privilege Logs are the ones relating to those acquired assets: PRIVID_00000012-PRIVID_00000013, PRIVID_00000018-PRIVID_00000023, PRIVID_00000026-PRIVID_00000027, PRIVID_00000030-PRIVID_00000031, PRIVID_00000034-PRIVID_00000036, PRIVID_00000039, PRIVID_00000053, PRIVID_00000056-PRIVID_00000061, PRIVID_000000090, PRIVID_00000105-PRIVID_00000106, PRIVID_00000114-PRIVID_00000116, PRIVID_00000118-PRIVID_00000122, PRIVID_00000131, PRIVID_00000135-PRIVID_00000136, PRIVID_00000140-PRIVID_00000141, PRIVID_00000146-PRIVID_00000147, PRIVID_00000151-PRIVID_00000159, PRIVID_00000163-PRIVID_00000164, PRIVID_00000167, PRIVID_00000184-PRIVID_00000185.  Please confirm that we've accurately and completely identified the entries in Marlen's Electronic Production and Clawback Privilege Logs that relate to Marlen's acquired assets and over which Marlen is asserting privilege.  Further, please confirm that Marlen is not claiming privilege with respect to any of the documents on Marlen's privilege log dated August 27, 2019.

As discussed on Wednesday's call, Marlen agrees that for entries on its privilege log relating to assets retained by HIP in the asset purchase agreement, the privilege dispute is between Hormel and HIP.  The parties agree that the Delaware federal court can decide the privilege waiver issue with respect to the retained assets.  If the Delaware court finds that HIP waived privilege, then Marlen agrees to comply with the decision from that court and produce the applicable documents that were withheld, or, if the decision is appealed, from the final non-appealable order stemming from the same.

Jerry, please let us know when your side is available this week for a meet and confer, including Delaware counsel from both sides.

Thank you.

Tim

**Timothy M. O'Shea**
**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Direct: 612.492.7373 | toshea@fredlaw.com
*Licensed in Minnesota & Washington*

**From:** Kelly Whitehart <kelly.whitehart@nelsonmullins.com>
**Sent:** Thursday, February 6, 2020 9:47 AM
**To:** O'Shea, Timothy <toshea@fredlaw.com>; Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Subject:** Privilege Log Assets

[EXTERNAL E-MAIL]

All-
Per our conversation yesterday I have confirmed this morning that the following assets on the privilege log are assets acquired by Marlen:
'793 Application and '383 Patent;
'370 Application and '276 Patent;
'393 Application and '422 Patent;
'678 Application;

'497 Application and '555 Patent;
'517 Application;
'946 Application; and
'037 Application and '258 Patent.

Best-
Kelly

 **NELSON MULLINS**

KELLY WHITEHART PARTNER
kelly.whitehart@nelsonmullins.com
ATLANTIC STATION | SUITE 1700
201 17TH STREET NW | ATLANTA, GA 30363
T 404.322.6107   F 404.322.6050
NELSONMULLINS.COM   VCARD   VIEW BIO

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## HORMEL'S OPPOSITION TO HIP'S MOTION IN LIMINE NO. 3

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel
Foods Corporation*

HIP's third motion *in limine*, seeking to prevent Hormel from challenging HIP's standing in this litigation based on waiver, should be denied because Article III standing cannot be waived.  The Court must determine whether HIP has standing to bring the correction of inventorship claims, and will see upon review of the undisputed facts that HIP does not because it sold its assets—and any arguable inventorship rights in the '498 Patent—well before it brought this lawsuit.

Federal jurisdiction rests on the constitutional minimum of standing.  HIP has the burden to establish that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  To do so, HIP must show that it owns the purported inventorship rights.  *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326-27 (Fed. Cir. 2009).

First, Hormel cannot waive HIP's required demonstration of standing.  A defect in standing may be raised at any time, and neither waiver, estoppel, nor the parties' consent may overcome it.  *United States v. Hays*, 515 U.S. 737, 742 (1995); *American Auto. Ins. Co. v. Murray*, 658 F.3d 311, 319 n.5 (3d. Cir. 2011); *Diggs v. Dep't Hous. & Urb. Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011).

Second, even if it could, Hormel did not waive HIP's lack of standing.  HIP alleged that it obtained standing via an assignment dated contemporaneously with

1

the Complaint from its sole employee and purported inventor David Howard.  D.I. 21, ¶ 1.  Hormel denied HIP had any interest or rights in the '498 Patent.  D.I. 33, ¶ 1.  When discovery revealed that Howard's purported 2018 assignment was illusory, and that HIP previously sold any '498 Patent inventorship rights to Marlen International, HIP devised its current argument.  Now, contradicting its own Complaint and as evidenced by its motion, HIP argues that although it sold its assets to Marlen in August 2017, HIP retained inventorship rights to the '498 Patent because it retained claims and rights of a 2014 "Contract Lawsuit" against Hormel.  (*See* HIP Ex. A, p. 42 ("[HIP] is currently engaged in a lawsuit (the 'Contract Lawsuit') with Hormel").)  Thus, the question of standing turns on whether in August 2017 there existed in the Minnesota Contract Lawsuit a claim for correction of inventorship of the '498 Patent.[1]  It is undisputed that HIP could not and did not assert such a claim.

HIP's (fka Unitherm) claims in the Minnesota Contract Lawsuit included (i) breach of contract, (ii) unjust enrichment, and (iii) declaratory relief.  (Ex. 1 (Amended Complaint), pp. 14-17.)  The declaratory relief sought was for a **declaration of contractual ownership** of the Hormel patent applications pursuant to the Joint Development Agreement ("JDA"), not for inventorship rights in a

---

[1] HIP's reliance on privilege log communications is irrelevant to whether a correction of inventorship claim for the '498 Patent existed in the Minnesota Contract Lawsuit.

patent that was not even in existence.  (*See id.*, ¶ 61 (the process is "owned by Unitherm pursuant to the MCDA and JDA"), ¶¶ 63-64 ("under the JDA . . . Unitherm [was] a joint owner of the Hormel patent applications").)  On September 14, 2016, the District Court entered final judgment dismissing Unitherm's breach of contract and unjust enrichment claims with prejudice, and pursuant to the parties' agreement, dismissed their "remaining declaratory judgment claims ***regarding the ownership*** of the Hormel 'Hybrid' process" without prejudice.[2]  (Ex. 2 (emphasis added).)

The Minnesota Contract Lawsuit, finally adjudicated in 2016, could not have included a claim for correction of inventorship of the '498 Patent because the '498 Patent did not even exist until May 29, 2018.  *See Future Fibre Techs., Pty. Ltd. v. Optellios, Inc.*, C.A. No. 09-346, 2011 WL 3563341, at \*5 (D. Del. Aug. 15, 2011) ("[A] claim seeking correction of inventorship under 35 U.S.C. § 256 cannot exist until the issuance of the patent." (citing *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1353-54 (Fed. Cir. 2010))).

HIP's motion to preclude the Court's determination of standing lacks merit and should be denied.  The parties should, in the interest of judicial economy, fully brief this dispositive issue before trial.

---

[2] The judgment was affirmed.  *HIP, Inc. v. Hormel Foods Corp.*, 888 F.3d 334 (8th Cir. 2018).

By: */s/ Timothy M. O'Shea*

OF COUNSEL:

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Tel: (612) 492-7000

POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

Dated: December 11, 2020

*Attorneys for Defendant Hormel Foods Corporation*

71647267 v5

4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 731 words, excluding the case caption, tables and signature block.  The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

By: */s/ Timothy M. O'Shea*

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 11, 2020

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods
Corporation*

# EXHIBIT 1

*HIP, Inc. v. Hormel Foods Corporation*
D. Del. Case No. 1:18-cv-00802-CFC-SRF

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITHERM FOOD SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 14-4034 (JNE/BRT) |
| | ) | |
| HORMEL FOODS CORPORATION; | ) | |
| AND HORMEL FOOD CORPORATE | ) | Jury Trial Demanded |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Pursuant to the Court's January 30, 2015 Order (Dkt. No. 28) Plaintiff Unitherm Food Systems, Inc., submits this Amended Complaint against Defendants Hormel Foods Corporation and Hormel Food Corporate Services, LLC. In order to conform this Amended Complaint to the rulings in the Court's Order dated January 27, 2015 (Dkt. No. 24) dismissing certain of Unitherm's original causes of action, Unitherm has removed references to its misappropriation of trade secrets claim and claim for accounting. This has been done solely to conform to the Order, and is not intended in any way to waive any of Unitherm's rights on appeal, all of which are expressly reserved.

## PARTIES

1. Unitherm Food Systems, Inc. ("Unitherm") is an Oklahoma corporation with its principal place of business in Bristow, Oklahoma. Unitherm is in the business of developing processes and equipment, including large, commercial ovens, for cooking meat and other products for sale both domestically and internationally.

2.      Hormel Foods Corporation is a Delaware corporation with its principal place of business in Austin, Minnesota. Hormel Food Corporate Services, LLC is a Delaware limited liability company with its principal place of business in Austin, Minnesota. Hormel Food Corporate Services, LLC is a wholly-owned subsidiary of Hormel Foods Corporation. (Dkt. No. 13) There are no other members of the LLC. Therefore, for diversity purposes, the citizenship of Hormel Food Corporate Services, LLC is the State of Delaware (where the LLC is registered and its only member is incorporated) and Minnesota (where the LLC and its only member maintain their principal place of business).  For purposes of this Amended Complaint, the two Hormel entities will be collectively referred to as "Hormel." Hormel is a multi-national manufacturer of brand-name food and meat products.

### JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1332. The parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in Minnesota under 28 U.S.C. §1391. A substantial portion of either the events or omissions giving rise to the claim, or the injuries suffered by Unitherm, occurred and are presently occurring in this judicial district. Further, the parties' contract provides that it was formed in Minnesota and that Minnesota law would apply to disputes arising out of that contract.

Case 1:18-cv-09802-CFC-SRF Document 134 Filed 01/05/21 Page 302 of 433 PageID #:
CASE 0:14-cv-04034-JNE-BRT Document 80 Filed 02/06/15 Page 14 of 19
4245

goal of depriving Unitherm of the fruits of its invention and of its rights under the JDA, to the detriment of Unitherm.

## COUNT I
### (Breach of Contract)

43.    Unitherm hereby incorporates all of the allegations in the preceding paragraphs.

44.    Hormel solicited a contractual relationship with Unitherm for the express purpose of obtaining Unitherm's expertise and trade secret knowledge of how to successfully pre-cook bacon.  Hormel had attempted to achieve a commercially viable pre-cooked bacon product on its own, and was unsuccessful. The market for a good pre-cooked bacon was attractive and highly lucrative. The referenced MCDA integrated into the JDA formed a contract between the parties.

45.    Hormel's actions on April 1, 2010, as well as prior thereto and thereafter, of terminating the contractual relationship without notice, concealing from Unitherm its activities and developments arising from the work, falsely claiming the Unitherm Process to not be commercially viable, and then taking the Unitherm Process for its own commercial purposes constitutes a breach of contract.

46.    The process developed by Unitherm was commercially viable, and Hormel very well understood it to be commercially viable. Hormel was so eager to capitalize on the Unitherm Process that it scarcely waited 16 weeks after its sudden and unexpected termination of the JDA to file its own patent application incorporating and using the Unitherm Process.

Case 1:18-cv-09802-CFC-SRF Document 134 Filed 01/05/21 Page 303 of 433 PageID #:
CASE 0:14-cv-04034-JNE-BRT Document 50 Filed 02/06/15 Page 15 of 19
4246

47.     Hormel used the JDA and MCDA as both a shield and a sword. It caused Unitherm to forego other business opportunities to market and sell the Unitherm Process to Hormel's competitors. It kept the process inside the relationship of these two parties. Meanwhile, Hormel was making plans to terminate the contract, take the Unitherm Process, and commercialize it for its own benefit.

48.     On April 1, 2010, Hormel suddenly and unexpectedly terminated the contract without notice and without cause, and based on its own meritless reason that "no commercially viable" result had been achieved. Hormel then proceeded and still to this day continues to proceed to claim ownership of the Unitherm Process, using it for its own monetary gain.

49.     At no time did Hormel ever "promptly communicate" the status of the work, testing, or any other issue in the JDA which revealed that Hormel believed no commercially viable product was being reached, despite the clear contractual terms otherwise.

50.     At all times relevant, Unitherm honored the MCDA and the JDA and was never in breach and never failed to fulfill its obligations per these agreements.

51.     Hormel's actions constitute breach of contract and damaged Unitherm, including but limited to, depriving Unitherm of the benefit of its bargain with Hormel, which was a 5 year exclusive contract to supply goods and services to Hormel, and a longer term renewal period based on good faith efforts to negotiate. Unitherm's damages substantially exceed $75,000.

Case 1:18-cv-09802-CFG-SRF   Document 134   Filed 01/05/21   Page 304 of 433 PageID #:
CASE 0:14-cv-04034-JNE-BRT   Document 80   Filed 02/06/15   Page 16 of 19
4247

## COUNT II
### (Unjust Enrichment)

52.     Unitherm hereby incorporates all of the allegations in the preceding paragraphs.

53.     Hormel has unlawfully and purposely benefited and profited from its unlawful use and exploitation of Unitherm's disclosures, assistance, know how, and demonstrations, Unitherm's forbearance regarding Hormel's wrongful disclosures, Unitherm's full compliance with its obligations under the JDA, Unitherm's inability to market to others under the JDA, and Unitherm's confidential and proprietary trade information, including the Unitherm Process for pre-cooked sliced bacon.

54.     Hormel knowingly and purposefully accepted the benefits of its wrongful acts.

55.     Hormel has been unjustly enriched, at the expense of Unitherm.

56.     Hormel's retention of the benefits and enrichment obtained as a result of its wrongful and unlawful conduct is unjust and inequitable.

57.     As a direct and proximate result of Hormel's actions, Unitherm has been damaged in excess of $75,000.

## COUNT   III
### (Declaratory Relief)

58.     Unitherm hereby incorporates all of the allegations in the preceding paragraphs.

59.     Based on the foregoing, an actual case or controversy exists as to the ownership of confidential information referenced by the MCDA and provided by

Unitherm to Hormel in the context and furtherance of the JDA regarding the Unitherm Process, under the Federal Declaratory Judgment Relief Act.

60.    Upon information and belief, Hormel is now claiming to be the owner of the Unitherm Process brought to the JDA by Unitherm and developed solely by Unitherm prior to the JDA, as evidenced by the Hormel patent application and the launch of Bacon 1 as a national commercial venture by Hormel.

61.    Equitable relief in the form of a judicial declaration is required to determine that the process now being used by Hormel to make pre-cooked bacon is in whole or in large part owned by Unitherm pursuant to the MCDA and JDA.

62.    Equitable relief in the form of a judicial declaration is required to determine that the subject matter of the Hormel patent applications, including but not limited to the preferred embodiments disclosed therein, is based at least in part on the Unitherm Process.

63.    Equitable relief in the form of a judicial declaration is required to determine that the subject matter of the Hormel patent applications is therefore a "Project Invention" under the JDA, thus making Unitherm a joint owner of the Hormel patent applications.

64.    Equitable relief in the form of a judicial declaration is required to determine that the subject matter of the Hormel patent applications also constitutes a Joint Invention under the JDA, thus also making Unitherm a joint owner of the Hormel patent applications.

Case 1:18-cv-09802-CFC-SRF Document 134 Filed 01/05/21 Page 306 of 433 PageID #:
CASE 0:14-cv-04034-JNE-BRT Document 50 Filed 02/06/15 Page 18 of 19
4249

# REQUEST FOR RELIEF

WHEREFORE, Unitherm Food Systems, Inc. requests judgment against Hormel Foods Corporation and its wholly-owned subsidiary, Hormel Food Corporate Services, LLC, as follows:

1. Awarding Unitherm damages against Hormel in excess of $75,000, plus interest thereon;

2. Awarding Unitherm compensatory damages for all injuries suffered as a result of Hormel's wrongful conduct that are compensable in money damages and for the amount by which Hormel has profited and been unjustly enriched as a result of its actions;

3. Requiring Hormel to account for all compensation, customer solicitations, vendor solicitations, attempted vendor solicitations, referrals, referral efforts, sales, sales efforts and any other activity prohibited by Minnesota law;

4. Awarding Unitherm the costs of this action, including reasonable attorneys' fees pursuant statutory, contractual, or common law bases for fees and cost shifting;

5. Declaring the process used by Hormel to make its pre-cooked bacon, using super-heated steam and a spiral oven, is in whole or in large part owned by Unitherm, and was Unitherm's Confidential Information under the MCDA and JDA;

6. Declaring that Unitherm is the owner or a joint owner of the Hormel patent applications;

7. Any and all other relief as this Court deems just and appropriate under the circumstances.

Case 1:18-cv-00802-CFC-SRF Document 134 Filed 04/05/21 Page 307 of 433 PageID #:
CASE 0:14-cv-04034-JNE-BRT Document 80 Filed 02/06/15 Page 19 of 19
4250

**BASSFORD REMELE**
*A Professional Association*


Dated: February 6, 2015

By  s/ Edward F. Fox
Edward F. Fox (MN #003132X)
Mark R. Bradford (MN #335940)
33 South Sixth Street, Suite 3800
Minneapolis, MN  55402-3707
Telephone:   (612) 333-3000
Facsimile:    (612) 333-8829
efox@bassford.com
mbradford@bassford.com

AND

J. Christopher Davis, Esq. *(pro hac vice)*
Paul D. Kingsolver, Esq. *(pro hac vice)*
JOHNSON & JONES, P.C.
2200 Bank of America Center
15 West Sixth Street
Tulsa, OK 74119-5416
Telephone: (918) 584-6644
Facsimile:  (888) 789-0940

**ATTORNEYS FOR PLAINTIFF
UNITHERM FOOD SYSTEMS, INC.**


1414970.docx

# EXHIBIT 2

*HIP, Inc. v. Hormel Foods Corporation*
D. Del. Case No. 1:18-cv-00802-CFC-SRF

# UNITED STATES DISTRICT COURT

## District of Minnesota

Unitherm Food Systems, Inc.,

### JUDGMENT IN A CIVIL CASE

Plaintiff(s),

v.

Civil No. 14-4034 (JNE/BRT)

Hormel Foods Corporation, Hormel
Foods Corporate Services, LLC,

Defendant(s),

Hormel Foods Corporation,
Hormel Foods Corporate Services, LLC,

Counter Claimant,

v.

Unitherm Food Systems, Inc.,

Counter Defendant.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

1. Unitherm's breach of contract and unjust enrichment claims are DISMISSED WITH PREJUDICE.

2. Hormel's breach of contract counterclaim is DISMISSED WITH PREJUDICE.

3. Hormel's declaratory judgment counterclaim is DISMISSED WITH PREJUDICE to the extent it claims ownership of the Unitherm Process.

4. The parties' remaining declaratory judgment claims regarding the ownership of the Hormel "Hybrid" process are DISMISSED WITHOUT PREJUDICE.

5. The parties shall file any motion for attorneys' fees and costs within 60 days after the final appeal rights have expired.

Date: 9/14/2016

RICHARD D. SLETTEN, CLERK

s/Leah E. Gilgenbach

(By)   Leah E. Gilgenbach, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HIP, INC.,                          )
                                    )
          Plaintiff,                )
                                    )
v.                                  )   C.A. No. 18-802-CFC-SRF
                                    )
HORMEL FOODS CORPORATION,           )
                                    )
          Defendant.                )

**EXHIBIT 15**

**HIP'S REPLY IN SUPPORT OF MOTION IN LIMINE #3
TO PRECLUDE HORMEL FROM CHALLENGING STANDING**

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | Karen Jacobs (#2881) |
| | Michael J. Flynn (#5333) |
| OF COUNSEL: | 1201 North Market Street |
| | P.O. Box 1347 |
| Jerry R. Selinger | Wilmington, DE 19899 |
| Susan E. Powley | (302) 658-9200 |
| PATTERSON + SHERIDAN LLP | kjacobs@mnat.com |
| 1700 Pacific Avenue, Suite 2650 | mflynn@mnat.com |
| Dallas, TX 75201 | |
| (214) 272-0958 | *Attorneys for HIP, Inc.* |
| | |
| B. Todd Patterson | |
| PATTERSON + SHERIDAN LLP | |
| 24 Greenway Plaza, Suite 1600 | |
| Houston, TX 77046 | |
| (713) 623-4844 | |
| | |
| Dennis Brown | |
| BROWN PATENT LAW, P.L.L.C. | |
| 2700 N. Hemlock Ct., Suite 111 E | |
| Broken Arrow, OK 74012 | |

Hormel's response ignores that the prior competing claims in the Minnesota Litigation were over ownership of intellectual property. Ex. C, at 18 (¶6) (Unitherm Request for Relief); Ex. D, at 23 (¶C) (Hormel Prayer for Relief).  Hormel also ignores that the "Retained Assets" HIP did not convey in its Unit Purchase Agreement ("Agreement") included HIP's ownership claims here.  Op. Br. at 1-2, citing Ex. A., at HIP0002896.  Hormel's claim that "discovery revealed that Howard's purported 2018 assignment was illusory, and that HIP previously sold any '498 Patent inventorship rights to Marlen" is contradicted by the Agreement.  Indeed, as Hormel represented to the Court in this case, under the Agreement "HIP retained two assets," one of which was "[a]ll claims and rights of the Hormel lawsuit in the District of Minnesota." D.I. 75 at 1. Those "claims and rights" included disputes over ownership of patent applications that became the '610 and '498 Patents.  The claims in both lawsuits were and are about ownership.  That all of the evidence supporting ownership in the two cases may not be exactly the same is not relevant.

As HIP explained in its Opening Brief, Hormel waived any right to assert lack of standing, based on Hormel's failure to deny HIP had standing.  HIP, however, has also shown that under the Agreement, claims to the subject matter of the instant lawsuit were never transferred to Marlen. Ex. A.  The Court may independently assess standing, but the Assignment and relevant Agreement language leave no question that HIP has standing.  Further, there is no evidence that Mr. Howard assigned his inventorship rights to the '498 Patent, and his resulting ownership claim, to HIP prior to execution of the Assignment on May 29, 2019.[1]  In all events, HIP did not transfer any such rights to Marlen in 2017.

---

[1] If Mr. Howard never transferred his rights prior to August 17, 2017, Unitherm could not have transferred those rights in the Agreement, although the Agreement is clear Unitherm did not transfer those rights to Marlen.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

December 15, 2020

EXHIBIT 16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

HIP, INC.,                                  )
                                            )
            Plaintiff,                      )
    v.                                      )          C.A. No. 18-802-CFC-SRF
                                            )
HORMEL FOODS CORPORATION,                   )
                                            )
                                            )
            Defendant.                      )

## EXHIBIT 16

## HORMEL'S MOTION IN LIMINE NO. 1 TO PRECLUDE HIP FROM USING DEPOSITION TESTIMONY IN ITS CASE-IN-CHIEF FOR HORMEL WITNESSES WHO WILL TESTIFY LIVE AT TRIAL

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel
Foods Corporation*

## INTRODUCTION

Hormel owns the '498 Patent by assignment from the four named inventors, all of whom are or were Hormel employees: Brian Srsen, Richard Herreid, James Mino, and Brian Hendrickson.  In this litigation, HIP contends that David Howard is the sole inventor of all the claims in Hormel's '498 Patent.  HIP intends to offer in its case-in-chief the personal deposition testimony of Mr. Srsen, Mr. Mino, and Mr. Hendrickson in the form of selective video-taped deposition excerpts.  However, these important Hormel fact witnesses will be available to testify live at trial.  Therefore, the Court should preclude HIP from introducing the deposition testimony for these witnesses who will be giving live testimony at trial.

## ARGUMENT

The use of depositions at trial is governed by Federal Rule of Civil Procedure 32.  HIP must show that the use of deposition testimony is allowed under Rule 32.  The deposition testimony HIP seeks to use were not Rule 30(b)(6) depositions, the witnesses were not Hormel's officers, directors or managing agents, and HIP cannot meet the condition of unavailability required under Rule 32(a)(4) because Hormel has voluntarily agreed to produce Mr. Srsen, Mr. Mino, and Mr. Hendrickson live at trial.

Federal courts have long operated under the tenet "that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a

1

substitute only if the witness is unavailable to testify in person." *Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir. 1972) (citing Wright & Miller, *Federal Practice and Procedure, Civil* § 2142). "The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939); *Niver v. Travelers Indemnity Co. of Ill.*, 430 F. Supp. 2d 852, 866 (N.D. Iowa 2006) (holding that a party cannot introduce the deposition testimony of a witness (other than for impeachment purposes) who will be present and giving live testimony at trial).

Under the Federal Rules, at trial, the preference is for live testimony. Deposition testimony may be used in lieu of live testimony only in "exceptional circumstances," where the party seeking to use the deposition testimony can show cause to disregard the "importance of live testimony in open court." Fed. R. Civ. P. 32(a)(4)(E). HIP cannot demonstrate the "exceptional circumstances" necessary to overcome the preference for live testimony. Federal courts strictly enforce the rule that the testimony of witnesses must be put on through a live witness, unless the witness is unavailable to testify. *See Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 963-64 (10th Cir. 1993) (holding trial court properly refused attempt of party to present the testimony of a witness by deposition because no showing was made that the witness was unavailable to testify live at trial); *Young & Assocs. Pub. Relations, LLC v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 524 (D. Utah 2003)

(recognizing "the universal preference for live testimony" and refusing to allow the use of deposition testimony for persons that Delta agreed to produce live). Here, Mr. Srsen, Mr. Mino, and Mr. Hendrickson will be available at trial and ready to be examined live.

Finally, it is telling that HIP intends to put on its own primary fact witness live (Mr. Howard), while using disjointed, edited video clips to examine Hormel's primary fact witnesses who are the named inventors on Hormel's '498 Patent. Live testimony is especially important in this case because HIP is asking this Court to replace the Hormel inventors and find that Mr. Howard is the sole inventor on the '498 Patent. Mr. Srsen, Mr. Mino, and Mr. Hendrickson stand ready to testify live before this Court and have their credibility assessed live by the Court, not via HIP's canned and highly selective presentation of deposition designations. *See Kolb v. County of Suffolk*, 109 F.R.D. 125, 125-28 (E.D.N.Y. 1985) ("Live testimony is always preferred" and "when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness.").

## CONCLUSION

For all the foregoing reasons, the Court should grant Hormel's motion in *limine* to preclude HIP from using deposition testimony in its case-in-chief for witnesses that Hormel has agreed to produce live.

3

|                                         | By:  */s/ Timothy M. O'Shea* |
| OF COUNSEL:                             | David E. Moore (#3983) |
|                                         | Bindu A. Palapura (#5370) |
| Kurt J. Niederluecke                    | Stephanie E. O'Byrne (#4446) |
| Timothy M. O'Shea                       | POTTER ANDERSON & |
| Laura L. Myers                          | CORROON LLP |
| Barbara Marchevsky                      | Hercules Plaza, 6th Floor |
| FREDRIKSON & BYRON P.A.                 | 1313 N. Market Street |
| 200 South Sixth Street, Suite 4000      | Wilmington, DE  19801 |
| Minneapolis, MN  55402                  | Tel: (302) 984-6000 |
| Tel: (612) 492-7000                     | dmoore@potteranderson.com |
|                                         | bpalapura@potteranderson.com |
| Dated: December 4, 2020                 | sobyrne@potteranderson.com |

*Attorneys for Defendant Hormel Foods Corporation*

71609983

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 705 words, excluding the case caption, tables and signature block.  The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

1

By: */s/ Timothy M. O'Shea*

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 4, 2020

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

71609983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 16**

**HIP, INC.'S RESPONSE TO HORMEL'S MOTION IN LIMINE NO. 1
TO PRECLUDE HIP FROM USING DEPOSITION TESTIMONY
IN ITS CASE-IN-CHIEF FOR HORMEL WITNESSES
<u>WHO WILL TESTIFY LIVE AT TRIAL</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)

OF COUNSEL:                1201 North Market Street
                           P.O. Box 1347
Jerry R. Selinger          Wilmington, DE 19899
Susan E. Powley            (302) 658-9200
PATTERSON + SHERIDAN LLP   kjacobs@mnat.com
1700 Pacific Avenue, Suite 2650   mflynn@mnat.com
Dallas, TX 75201
(214) 272-0958             *Attorneys for HIP, Inc.*

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX 77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK 74012

HIP should be permitted to introduce deposition testimony of Hormel's three listed inventors during HIP's case in chief because they are "managing agents" under Fed. R. Civ. P. 32(a)(3) and because their testimony is also admissible under Fed. R. Evid. 801(d) and 803(15). HIP would be prejudiced if it could not present direct evidence of Hormel's admissions. In contrast, Hormel does not argue the depositions should be excluded if they are managing agents and there would be no prejudice to Hormel in denying its motion because Hormel will still have the opportunity to call its listed inventors live in its rebuttal case.

Fed. R. Civ. P. 32(a)(3) provides that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6)." Hormel conclusorily asserts, without any authority, that the three individuals are not managing agents. Not so. In *Bianco v. Globus Med., Inc.*, No. 2:12-CV-00147-WCB, 2014 WL 977686, at *2 (E.D. Tex. Mar. 6, 2014), Federal Circuit Judge Bryson, sitting by designation, reviewed the general factors courts have considered in deciding whether a particular employee is a "managing agent" under Rule 32(a)(3), such as the alignment of the individual's interests with the company, and the individual's functions, responsibilities, duties and ability to exercise discretion. The court observed "that in the more recent decisions," courts "have given particular emphasis to the importance of the employee's responsibilities 'with respect to the subject matter of the litigation.'" *Id.* (citations omitted). The court further held that "the term 'managing agent' should 'not be given too literal an interpretation,'" and it should "not [be] read restrictively to be limited to persons in the upper management of the corporation;" instead it is met by employees with "significant independence and/or supervisory responsibility" with respect to the activities at issue in the case. *Id.* One example given was an insurance salesman who was in charge of the negotiations and sale of insurance contracts, including to the

plaintiff. *Id.* at *3, citing *Terry v. Modern Woodmen of Am.*, 57 F.R.D. 141, 143 (W. D. Mo. 1972).

Contrary to Hormel's conclusory statement, Messrs. Hendrickson, Srsen, and Mino are "managing agents" under Rule 32(a)(3). They had "significant independence" with respect to activities at issue in the case – the facts underlying the dispute over inventorship of the '498 Patent. They each travelled to Unitherm, met with Mr. Howard, and watched him run his process on his spiral oven. They met with him at Hormel. Their interests as co-inventors completely align with Hormel's interest in trying to defeat Mr. Howard's inventorship claims.

Mr. Hendrickson is Hormel's "Director of cured and smoked meats" who oversees operations at two Hormel plants and "a group of product and manufacturing managers at [Hormel] corporate office," including responsibility for all of Hormel's sliced bacon production. Ex. A (12/04/19 Tr., 12:3-9, 29:13-22). Mr. Srsen was "Development Leader," serving as "manager of the group of applied research" involved in "[d]evelopment of processes." Ex. B (07/16/15 Tr. 7:12-19; 01/10/20 Tr., 16:1-5). Earlier this year and despite "a lateral move," he also served as Hormel's 30(b)(6) witness in this case. Mr. Mino, who retired from Hormel in April of 2017, was Hormel's "Director of engineering." Ex. C (12/11/19 Tr., 8:13-20). They are "managing agent[s]," *Bianco*, *supra*, and HIP should be allowed to use their depositions during its case-in-chief.

The designated testimony also is admissible under Fed. R. Evid. 801(d)(2)(D) as admissions by a party opponent. *See In re Hayes Lemmerz Int'l Inc.*, 340 B.R. 461, 468-69 (Bankr. D. Del. Mar. 28, 2006) (allowing deposition testimony of employee witnesses who testified live at trial, noting that "Rule 32 is not the exclusive means by which depositions can be admitted and that Rule 801(d)(2)(D) is an independent basis for admissibility"); *see also Long*

2

*Island Sav. Bank, FSB v. U.S.*, 63 Fed. Cl. 157, 163-64 (Fed. Cl. 2004) (criticizing *Kolb v. County of Suffolk*, 109 F.R.D. 125 (E.D.N.Y. 1985) cited by Hormel)). The testimony also is admissible under Fed. R. Evid. 803(15) as statements that affect an interest in property – *i.e.*, the rights to the '498 Patent.  *See* 35 U.S.C. § 261 ("Subject to the provisions of this title, patents shall have the attributes of personal property").

Finally, HIP would be prejudiced if it could not use the narrowly-focused deposition designations with their important admissions against interest.  First, using deposition testimony to show prior inconsistent statements is very different from having direct evidence on critical points. Second, with only three days of trial, HIP edited down hours of deposition testimony to carefully manage its trial time to be as efficient as possible.  It will not have the same absolute control over time with the three live witnesses Hormel plans to bring, especially when repeatedly needing to show prior inconsistent statements.  By contrast, Hormel will have the opportunity to present the individuals live during its rebuttal case, so it will not suffer any prejudice.  Hormel's motion in *limine* should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

December 11, 2020

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Civil Action No. 18-802-CFC

- - - - - - - - - - - - - - - - - - - - - - - - - -

HIP, INC.,
                    Plaintiff,
v.

HORMEL FOODS CORPORATION,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -

Video Deposition of

BRIAN E. HENDRICKSON

Wednesday, December 4, 2019

9:00 a.m.

Court Stenographer:
Myrina A. Kleinschmidt
Registered Merit Reporter
Certified Realtime Reporter



```
 1  A  Correct.

 2  Q  What is your current title?

 3  A  Director of cured and smoked meats.

 4  Q  What are your current responsibilities as director of

 5     cured and smoked meats?

 6  A  Oversee plant operations, two of our plants, Dold Foods,

 7     Wichita, Kansas, and Lloyd's Barbeque in Minneapolis, as

 8     well as a group of product and manufacturing managers at

 9     the corporate office.

10  Q  You understand that you are being deposed in a lawsuit

11     that HIP, Inc., has brought against Hormel's -- Food

12     Corporation?

13  A  Yes.

14  Q  As we go through the day, will you understand if I refer

15     to Hormel that I'm talking about Hormel Foods Corporation?

16  A  Yes.

17  Q  And, likewise, if you refer to Hormel, may I have the same

18     understanding?

19  A  Yes.

20  Q  Are you aware that plaintiff HIP used to be named

21     Unitherm?

22  A  Yes.

23  Q  Can we agree that a reference to Unitherm also includes a

24     reference to HIP, and a reference to HIP also includes a

25     reference to Unitherm?
```



```
 1   A   I believe -- if I did, it was very little.  But yes, there
 2       was some involvement.
 3   Q   What was that involvement?
 4   A   The involvement would have been basically reviewing how
 5       R&D was progressing on -- on a two-stage?  Probably not,
 6       no.  Sorry.
 7   Q   To your knowledge, did Hormel have any two-stage cooking
 8       processes in place between 1995 and 2008?
 9   A   No.
10   Q   Sometime in 2008 your title changed again?
11   A   Correct.
12   Q   To what?
13   A   Director of cured and smoked meats.
14   Q   And that's your current title?
15   A   Correct.
16   Q   How did your responsibilities change?
17   A   I became responsible for all the production of the cured
18       and smoked meats within the company, not just solely bacon
19       and hams -- or bacon and spiral-sliced hams.
20   Q   During -- during the time -- during 1998 to 2008, you were
21       responsible for both raw and cooked bacon, correct?
22   A   Correct.
23   Q   And that was both par bacon and also precooked bacon?
24   A   We didn't do parcooked bacon.
25   Q   Does Hormel now do parcooked bacon?
```



1                        ERRATA SHEET

2    Case Caption:  HIP, Inc. Vs. Hormel Foods Corporation

3         I, BRIAN E. HENDRICKSON, have read the entire
     transcript of my deposition taken in this pending matter,
4    or the same has been read to me.  I request that the
     following changes be entered into the record for the
5    reasons indicated.  I have dated and signed my name to
     this Errata Sheet.

6

     PAGE/LINE     CORRECTION OR CHANGE          REASON
7    _____

8    35/15       RICH TO RILK           MISSPELLING
     _____

9    /32/14      HONEYWELL TO HORMEL     MIS TYPE
     _____

10   151/3       HONEYWELL TO HORMEL      MISTYPE
     _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19

20   1-8-2020                     Bn S Henl
     _____          _____

21   Date                    Signature of Witness

22   Mr. O'Shea:
     1.  Please have the deponent review the transcript and
23   make any changes on this sheet.
     2.  Return the original executed sheet to Mr. Selinger
24   within 30 days.
     3.  Retain a copy for your records and email a copy to our
25   court reporting office:  erratas@myrina.com

# EXHIBIT B

## FULLY REDACTED

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Civil Action No. 18-802-CFC

- - - - - - - - - - - - - - - - - - - - - - - - - - -

HIP, INC.,

             Plaintiff,

v.

HORMEL FOODS CORPORATION,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

COPY

Video Deposition of

JAMES E. MINO

Wednesday, December 11, 2019

9:00 a.m.

Court Stenographer:
Myrina A. Kleinschmidt
Registered Merit Reporter
Certified Realtime Reporter



Twin West Reporting, LLC
myrina@myrina.com

```
 1                    WITNESS RESPONSE:  Yes.

 2                    COURT STENOGRAPHER:  Thank you.

 3                         JAMES E. MINO,

 4          a witness in the above-entitled proceedings,

 5                after having been first duly sworn,

 6                   testified under oath as follows:

 7                         EXAMINATION

 8   BY MR. SELINGER:

 9   Q   Good morning.

10   A   Good morning.

11   Q   Please state your full name for the record.

12   A   James Edward Mino.

13   Q   Are you employed, sir?

14   A   No.  I am retired.

15   Q   When did you retire?

16   A   April of 2017.

17   Q   By who were you employed just prior to your retirement?

18   A   Hormel Foods Corporation.

19   Q   What was your last job title at Hormel?

20   A   Director of engineering.

21   Q   What were your job responsibilities as director of

22       engineering?

23   A   I was responsible for all of the capital projects within

24       the company.

25   Q   Anything else?
```

```
 1   A   It was a broad -- broad responsibility, basically anything
 2       that -- processes and equipment that go into the plant as
 3       well as the buildings.
 4   Q   Do you have a consulting agreement with Hormel Food
 5       Corporation?
 6   A   I do not.
 7   Q   Did you have one just after your retirement?
 8   A   I did not.
 9   Q   You understand you're being deposed in a lawsuit HIP,
10       Inc., has brought against Hormel Foods Corporation?
11   A   Yes.
12   Q   Can we agree that if I refer to "Hormel," talking to
13       Hormel -- I'm talking about Hormel Foods Corporation?
14   A   Yes.
15   Q   And I'll understand you to have the same meaning if you
16       just refer to "Hormel"; is that fair?
17   A   Yes.
18   Q   You understand that HIP used to be named Unitherm?
19   A   That is new knowledge to me.
20   Q   If -- can we agree that if I make a reference to "HIP" or
21       "Unitherm," I'm referring to the common company either
22       way?
23   A   Yes.
24               MR. SELINGER:  Please hand the witness what
25       we've marked as Exhibit 58.
```



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## EXHIBIT 16

## HORMEL'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1 TO PRECLUDE HIP FROM USING DEPOSITION TESTIMONY IN ITS CASE-IN-CHIEF FOR HORMEL WITNESSES WHO WILL TESTIFY LIVE AT TRIAL

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel
Foods Corporation*

The Court should grant Hormel's motion to preclude HIP from using deposition testimony in its case-in-chief for witnesses that Hormel has agreed to produce live.

First, the "managing agent" exception under Fed. R. Evid. 32(a)(3) does not apply because Mino was retired from Hormel at the time of his deposition, and Hendrickson and Srsen were not party officers, directors or managing agents when they were deposed. Other than pointing out job titles for these witnesses, HIP provides no evidence of their job duties and no evidence that they had authority to bind the corporation without any review or approval from superiors at Hormel. *Young & Associates Public Relations, L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 523-24 (D. Utah 2003) ("whether witnesses fall within the category of 'managing agent' under Rule 32(a)(2) requires a determination of what the employee actually did, rather than what title or position she held").

Second, HIP incorrectly argues that the proposed deposition testimony only needs to meet the requirements of Fed. R. Evid. 801(d)(2)(D) or 803(15) rather than Fed. R. Evid. 32(a). *See Kolb v. County of Suffolk*, 109 F.R.D. 125 (E.D.N.Y.1985) (finding that Rule 801(d)(2) does not provide an independent basis from Rule 32(a) for admitting deposition testimony). Even if the hearsay rules operated independently, HIP deposed these witnesses as *fact witnesses* and not as

1

corporate designees authorized to make a statement on Hormel's behalf.  No

hearsay exception applies and the Court should grant Hormel's motion.


OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 15, 2020

By: */s/ Kurt J. Niederluecke*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    POTTER ANDERSON &
    CORROON LLP
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 243 words, excluding the case caption, tables and signature block.  The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 15, 2020

By:  */s/ Kurt J. Niederluecke*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

4

EXHIBIT 17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

HIP, INC.,                              )
                                        )
        Plaintiff,           )
    v.                            )    C.A. No. 18-802-CFC-SRF
                                        )
HORMEL FOODS CORPORATION,               )
                                        )
                                        )
        Defendant.           )

## EXHIBIT 17

## HORMEL'S MOTION IN LIMINE NO. 2 TO PRECLUDE TESTIMONY REGARDING PRIOR LITIGATIONS

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel Foods Corporation*

Hormel respectfully moves to preclude HIP from offering testimony regarding prior litigations between the parties and prior court orders in those litigations. *See Mendenhall v. Cedarrapids, Inc.*, 5 F.3d 1557, 1573 (Fed. Cir. 1993) (evidence of prior litigation "must pass muster, like any other evidence, as relevant and probative of an issue in the second case"); Fed. R. Evid. 402 and 403.

This litigation is not the first between these parties. In 2014, HIP (fka Unitherm Foods Systems, Inc.) sued Hormel for breach of contract and trade secret misappropriation. *Unitherm Food Systems, Inc. v. Hormel Foods Corp., et al.*, Civ. No. 14-cv-04034-JNE-BRT (D. Minn.), Dkt. 30. HIP lost the case, and Hormel was awarded its attorneys' fees and costs. *Id.*, Dkt. 379; *Unitherm Food Systems, Inc. v. Hormel Foods Corp., et al.*, 2016 WL 4005649 (D. Minn. July 25, 2016); *HIP, Inc. v. Hormel Foods Corp.*, 888 F.3d 334 (8th Cir. 2018) (collectively the "Minnesota Litigation"). The court in the Minnesota Litigation did not conduct any inventorship analysis because there were no issued patents or patent claims in that case. In 2018, HIP sued Hormel for patent infringement of U.S. Patent No. 9,510,610 (the "'610 Patent"), and again lost. *HIP, Inc. v. Hormel Foods Corp. et al.*, 18-cv-00615-CFC (D. Del.), D.I. 1, 151; *HIP, Inc. v. Hormel Foods Corp. et al.*, No. 2019-2076, 2020 WL 1081706 (Fed. Cir. Mar. 6, 2020) (collectively the "Delaware Litigation").

1

On May 28, 2018, U.S. Patent No. 9,980,498 (the "'498 Patent") issued to Hormel.  D.I. 1-1.  On the same day, HIP filed this lawsuit for correction of inventorship of Hormel's '498 Patent.  D.I. 1; *see also* D.I. 21 (First Amended Complaint).  HIP's Rule 26(a)(2)(C) Reply Disclosure indicates that HIP intends to offer, in support of its correction of inventorship claims for the '498 Patent, testimony regarding the prior litigations between the parties, including court orders:

> Mr. Howard may offer rebuttal testimony based on the factual decisions of the Minnesota District Court and the Eighth Circuit . . . . Mr. Howard may also offer rebuttal testimony based on the decisions of the Minnesota District Court and the Eighth Circuit that contradict other of Mr. Gunawardena's opinions . . . .

> Mr. Howard may rely on claim construction pleadings, supporting evidence regarding the level of ordinary skill, and the hearing transcript from the Markman hearing of April 9, 2019, to offer rebuttal testimony that the Court correctly adopted HIP's proposed level of ordinary skill with respect to HIP's '610 Patent . . . .

(Ex. A at 5, 7.)

None of the issues in the Minnesota Litigation or Delaware Litigation are relevant to the issue presented in this case, namely, whether Mr. Howard is an inventor or co-inventor of the claims that issued in the '498 Patent on May 28, 2018.  The Minnesota Litigation involved breach of contract claims, including claims regarding the *contractual* ownership of inventions, and terminated before the '498 Patent and its claims even existed.  The

Delaware Litigation involved the unrelated '610 Patent, which was found invalid as indefinite.  Neither of those litigations, or the courts' decisions resolving those matters, have any relevance or impact on the inventorship issue to be tried before this Court.

As the Federal Circuit has recognized, evidence of prior litigation "must pass muster, like any other evidence, as relevant and probative of an issue in the second case." *Mendenhall*, 5 F.3d at 1573.  Court decisions are not evidence of facts proffered in other cases. *Id.* at 1569-70; *Endo Pharm., Inc. v. Amneal Pharm., LLC*, 224 F. Supp. 3d 368, 380 n.14 (D. Del. 2016); *see MacKay v. Easton*, 86 U.S. (19 Wall.) 619, 632 (1873) ("The reports of [decisions] . . . are not evidence of those facts in other cases.").

Further, the Federal Circuit has rejected the practice of using prior judicial decisions to rebut or cross-examine an opposing expert, such as Mr. Gunawardena in this case. *See Mendenhall*, 5. F.3d at 1574 ("Such improper influence is not tolerated[.]").  Here, HIP apparently not only wants to introduce prior court orders, but intends to have Mr. Howard, HIP's sole employee and a non-lawyer, interpret those orders.  A prior court's characterization of evidence cannot replace this Court's role as factfinder. Accordingly, Hormel respectfully asks that this Court preclude HIP from

offering testimony regarding prior litigations between the parties and prior

court orders in those litigations.

|  |  |
|---|---|
| | By: */s/ Timothy M. O'Shea* |
| OF COUNSEL: | David E. Moore (#3983) |
| | Bindu A. Palapura (#5370) |
| Kurt J. Niederluecke | Stephanie E. O'Byrne (#4446) |
| Timothy M. O'Shea | POTTER ANDERSON & |
| Laura L. Myers | CORROON LLP |
| Barbara Marchevsky | Hercules Plaza, 6th Floor |
| FREDRIKSON & BYRON P.A. | 1313 N. Market Street |
| 200 South Sixth Street, Suite 4000 | Wilmington, DE 19801 |
| Minneapolis, MN 55402 | Tel: (302) 984-6000 |
| Tel: (612) 492-7000 | dmoore@potteranderson.com |
| | bpalapura@potteranderson.com |
| Dated: December 4, 2020 | sobyrne@potteranderson.com |

*Attorneys for Defendant Hormel Foods Corporation*

71606636

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 726 words, excluding the case caption, tables and signature block. The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 4, 2020

By: */s/ Timothy M. O'Shea*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

# EXHIBIT A

## FULLY REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

**EXHIBIT 17**

**HIP, INC.'S RESPONSE TO HORMEL'S MOTION IN LIMINE NO. 2
TO PRECLUDE TESTIMONY REGARDING PRIOR LITIGATIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
OF COUNSEL:                                1201 North Market Street
                                           P.O. Box 1347
Jerry R. Selinger                          Wilmington, DE 19899
Susan E. Powley                            (302) 658-9200
PATTERSON + SHERIDAN LLP                   kjacobs@mnat.com
1700 Pacific Avenue, Suite 2650            mflynn@mnat.com
Dallas, TX  75201
(214) 272-0958                             *Attorneys for HIP, Inc.*

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012

Following the terms of the Joint Development Agreement ("JDA"), the Minnesota court ruled against Hormel on its ownership counterclaim by applying Federal Circuit law concerning inventions and joint inventions. *Unitherm Food Sys. v. Hormel Foods Corp.*, 2016 WL 4005649, at *14 n.4 (D. Minn. July 25, 2016).[1]  Contrary to Hormel's argument, those underlying factual findings are highly relevant, and issue preclusion bars Hormel from re-litigating them here. *See* MIL No. 1, PTO Ex. 13; D.I. 118 at 10-13; D.I. 129, at 6-7 (applicable portions of HIP's Gunawardena *Daubert* motion).

Hormel's complaints in this MIL appear to be based solely on HIP's Rule 26(a)(2)(C) Reply Disclosure to three aspects of Mr. Gunawardena's rebuttal expert report: (1) his efforts to contradict Mr. Howard's prior conception and disclosure to Hormel; (2) his efforts to opine that the prior art teaches everything Mr. Howard disclosed to Hormel; and (3) a level of ordinary skill in the art the Court previously rejected from this same witness.  None of Hormel's complaints have any merit.

First, to the extent  Hormel is not barred by issue preclusion from relitigating one or more of these issues here, HIP should be allowed to use factual findings from prior litigation if Hormel seeks to offer opinions or "evidence" that: (1) Mr. Howard did not conceive of his "Unitherm Process" or disclose it to Hormel prior to September 25, 2007, or that Mr. Howard fabricated evidence of his inventive work to predate September 25, 2007; (2) Mr. Howard's disclosure of the Unitherm Process to Hormel did not induce Hormel to enter into the JDA on September 25, 2007; or (3) any Hormel employee made an inventive contribution to U.S. Patent No. 9,510,610 (the "'610 Patent").  Those findings adverse to Hormel remain highly relevant.

_____

[1]      Hormel persists in pointing incorrectly to the prior courts' rulings on HIP's breach of contract claims, which have no bearing on this dispute, while ignoring the courts' rulings on Hormel's counterclaims, which are relevant here.

1

Second, Hormel's expert, Mr. Gunawardena, intends to offer opinions about the so-called teachings of prior art patents, mostly of his employer JBT, a Unitherm competitor.[2]  Mr. Gunawardena was deposed as a fact witness during the Minnesota case about a business trip he made to Hormel in 2012.   The district court explained that trip was made to "observe[] and measure[] the current spiral oven cooking process" of the Unitherm spiral oven so that JBT could "duplicate the oven conditions." *Unitherm Food Sys.*, 2016 WL 4005649, at *1 (quoting a JBT report).   JBT's patented GCO-II spiral oven was not designed, among other things, to achieve a substantially air-free environment.   "For this purpose, JBT modified its GCO-II spiral oven by 'reverse engineering' the Unitherm test oven."  *HIP, Inc. v. Hormel Foods Corp*., 888 F.3d 334, 337-38 (8th Cir. 2018).   If Mr. Gunawardena is allowed to opine that the prior art teaches everything Mr. Howard disclosed to Hormel, HIP should be allowed to confront Mr. Gunawardena about the contradictions between his opinions in this case and the court's findings about his 2012 reverse engineering of the Unitherm oven despite his knowledge of JBT's patents.

Finally, to the extent Mr. Gunawardena seeks to offer an opinion on the level of ordinary skill in the art that contradicts the level adopted by the Court in the related proceeding, to which Hormel consented (C.A. No 18-615 (CFC), D.I. 147, at 7), HIP should be permitted to point out that contradiction.

Hormel cites *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557 (Fed. Cir. 1993), but that case is inapposite.   The dispute in *Mendenhall* was whether the jury should have been given composite Exhibits 307 and 308, which included, among other things, the order and judgment from a prior case **involving a different defendant**, the district court's 130-page opinion, a non-

---

[2]     The exclusion of Mr. Gunawardena's opinions on these issues is the subject of HIP's *Daubert* Motion (D.I. 117) and MIL No. 2 (JPO Ex. 14).

precedential Federal Circuit opinion affirming liability and the entire evidentiary record. Although the district court concluded that evidence was relevant on willfulness, the evidence was excluded under Fed. R. Evid. 403 because of concern over jury confusion and improper influence. *Id*. at 1575-76. On appeal, although the Federal Circuit affirmed, it noted that "it may be appropriate to admit evidence of prior litigation," so long as the evidence is "relevant and probative of an issue in the second case." *Id*. at 1573. Here, the factual findings made by the Minnesota district court and affirmed by the Eighth Circuit are relevant and probative of: (i) Mr. Howard's prior conception and disclosure to Hormel, and (ii) the absence of any inventive contribution from anyone at Hormel to the '610 Patent. If Hormel is allowed to offer expert testimony to the contrary, HIP should be permitted to rely on the prior decisions that were fully adjudicated by the parties.

Unlike in *Mendenhall,* there is no risk of jury confusion or undue prejudice in the bench trial here. Hormel's out-of-context quote about "improper influence" in *Mendenhall* was about how a jury might be guided by a judicial opinion. *Id*. at 1574. Hormel's citation to *Endo Pharmaceuticals* is equally inapt because it involved the proposed use of a decision from a different case, involving different parties, to establish technical facts regarding obviousness. *See Endo Pharm., Inc. v. Amneal Pharm*., *LLC*, 224 F. Supp. 3d 368, 380 n.14 (D. Del. 2016). Hormel ignores the different result that should obtain here even if the Court does not apply issue preclusion.

Thus, to the extent Hormel and Mr. Gunawardena are not barred by issue preclusion from offering these opinions, HIP should be permitted to cross examine or offer factual evidence in rebuttal from these prior litigations to respond.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

December 11, 2020

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for HIP, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## EXHIBIT 17

## HORMEL'S REPLY SUPPORTING MOTION IN LIMINE NO. 2 TO PRECLUDE TESTIMONY REGARDING PRIOR LITIGATIONS

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel Foods Corporation*

Without legal support, HIP suggests it should be allowed to submit court orders to provide "facts" based on those courts' "factual findings." As the case law makes clear, HIP cannot do so. If HIP wants to challenge Mr. Gunawardena's testimony, it can do so with admissible underlying evidence, not inadmissible court orders.

HIP's opposition is founded on a false premise. Contrary to HIP's characterization, the Minnesota court and Eighth Circuit, in granting and affirming summary judgment, did not and could not make disputed "factual findings." Fed. R. Civ. P. 56; *See White v. Cleary*, 513 Fed. Appx. 224, 227 (3d Cir. Feb. 6, 2013) ("district courts generally do not make 'factual findings' at the summary judgment stage").

Moreover, HIP's suggestion that this court should relinquish its fact-finding duties to the Minnesota court was soundly rejected in *Mendenhall v. Cedarrapids, Inc.*, 5 F.3d 1557, 1570-71 (Fed. Cir. 1993) ("Mr. Mendenhall's proposal erroneously equates 'evidence' with 'facts' and omits the critical step of fact finding."). As *Mendenhall* makes clear, this Court is responsible for "fact-finding;" for making credibility decisions and evaluating the evidence presented. *Id.* It cannot absolve its duties by relying on "fact findings" from prior court decisions. If HIP wants to cross-examine Mr. Gunawardena on the points it raises, it can do so using the *evidence* it previously presented to the Minnesota court, and

1

this Court may weigh that evidence.  HIP cannot do so merely by offering what it wrongly characterizes as "factual findings" in prior orders.


By: */s/ Kurt J. Niederluecke*

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 15, 2020

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 247 words, excluding the case caption, tables and signature block. The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

By: */s/ Kurt J. Niederluecke*

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 15, 2020

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods
Corporation*

4

EXHIBIT 18

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## EXHIBIT 18

## HORMEL'S MOTION IN LIMINE NO. 3 TO PRECLUDE TESTIMONY REGARDING MATTERS ON WHICH HIP CLAIMED PRIVILEGE

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel Foods Corporation*

Hormel moves to preclude HIP from offering testimony at trial on the circumstances surrounding David Howard's assignment of his purported inventor rights in U.S. Patent No. 9,980,498 (the "'498 Patent") to HIP over which HIP claimed privilege at its corporate deposition. *See Andover Healthcare, Inc. v. 3M Co.*, C.A. No. 13-843-LPS, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) (excluding testimony on topics for which party asserted privilege during Rule 30(b)(6) deposition).

The '498 Patent issued to Hormel on May 29, 2018. The same day, HIP filed this lawsuit for correction of inventorship of Hormel's '498 Patent. D.I. 1; *see also* D.I. 21 (Amended Compl.). HIP asserts that it has standing to bring this action for correction of inventorship and ownership of the '498 Patent because of an assignment from David Howard that he signed the same day HIP commenced this litigation. D.I. 21, ¶ 1 ("Plaintiff HIP, Inc. has standing to bring this action for correction of inventorship and ownership . . . by virtue of an assignment from David Howard to Plaintiff of all rights in the '498 Patent. (See Exhibit J)."). However, prior to this litigation, HIP sold its assets, with limited exception, to Marlen International. (Ex. A (HIP 30(b)(6) Dep. Tr. Vols. 1 & 2) at 17:10-18:7.) HIP claims that "it retained the rights as part of the Marlen transaction to what became the '498 patent." (*Id.* at 20:8-11.)

Topic 28 for HIP's Rule 30(b)(6) deposition was "HIP's knowledge regarding the assignment to HIP of Mr. Howard's alleged rights in the '498 Patent. (Ex. B, p. 6 (HIP 30(b)(6) Dep. Ex. 1)); *see also* Ex. C (HIP 30(b)(6) Dep. Ex. 2).) During the deposition, HIP's attorney instructed Mr. Howard not to answer questions regarding the assignment to HIP of Mr. Howard's alleged rights in the '498 Patent.  But it is well-established that a party may not use privilege "as both a sword and shield."  *Andover*, 2016 WL 6404111, at *2; *see also Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 222 & n.24 (3d Cir. 2006).  A party cannot "divulge whatever information is favorable to the client's position and assert the privilege to preclude disclosure of the detrimental facts."  *Princeton Digital Image Corp. v. Office Depot Inc*., C.A. No. 13-239-LPS, 2017 WL 3264068, at *2 (D. Del. Aug. 1, 2017) (citation omitted).

Here, HIP's attorney objected to questions on the basis of privilege and instructed Mr. Howard not to answer questions about the circumstances surrounding the assignment:

> Q.   Mr. Howard, are you saying that the assignment that we're looking at in HIP Ex. 2 that was attached to HIP's complaint, you can't answer my question as to why you assigned these rights to HIP, Inc. on May 29th if HIP had already retained them?

> MR. SELINGER: I instruct you not to answer.  Asked and answered.

> Q.   Mr. Howard, are you going to follow your counsel's advice on the basis of privilege, not to answer my question as to why you

> assigned the rights in HIP Exhibit 2 to HIP on May 29th, 2018, if HIP had already had them?
>
> A.   I'm going to follow the advice of my counsel.

(Ex. A at 22:23-23:14.)  The reality is that HIP essentially shielded

all inquiries regarding the facts surrounding the assignment:

> Q.   And in preparing for Topic 28, did Mr. Selinger convey facts to you regarding standing as the corporate representative of HIP?
>
> MR. SELINGER: You can answer this to the extent that what was communicated to you, if anything, was facts independent of attorney-client communications and legal advice.
>
> A.   I don't think any of the advice I got wasn't privileged.  So I'm not sure how to answer your question. Sorry.

(*Id.* at 352:18-353:2; *see also* 354:6-20.)  Indeed, Mr. Howard admitted that

"all the conversations I had on this subject are privileged."  (*Id.* at 354:21-

355:9.)

Allowing HIP to present evidence, testimony, or argument on the

circumstances surrounding the assignment would allow HIP to divulge whatever

information is favorable to its position but use privilege to preclude disclosure of

the detrimental facts.  HIP should be precluded from doing so.  *See Lucent Techs.,*

*Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 262 (D. Del. 2001)

(upholding exclusion of facts subject to privilege); William A. Schwarzer, et al.,

*Federal Civil Procedure Before Trial*, ¶ 11:37, at 11-29 (2000) ("[W]here the party

claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying to matters claimed to be privileged.").

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 4, 2020

By: */s/ Timothy M. O'Shea*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 749 words, excluding the case caption, tables and signature block.  The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

1

By: */s/ Timothy M. O'Shea*

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 4, 2020

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

# EXHIBIT A

*HIP, Inc. v. Hormel Foods Corporation*
D. Del. Case No. 1:18-cv-00802-CFC-SRF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HIP, Inc.,                    §
                             §
         Plaintiff,          §
                             §   Case No.
VS.                          §   1:18-cv-00802 (CFC/SRF)
                             §
Hormel Foods Corporation,§
                             §
         Defendant.          §

# ORIGINAL

VOLUME 1 OF 2

VIDEOTAPED ORAL DEPOSITION OF HIP, INC.

By and Through Its Designated Representative

DAVID P. HOWARD

Dallas, Texas

June 24, 2020

9:26 a.m.

Reported by:

Micheal A. Johnson, RDR, CRR



Twin West Reporting, LLC
myrina@myrina.com

1                VIDEOTAPED ORAL DEPOSITION OF HIP, INC., by

2  and through its designated representative, DAVID P.

3  HOWARD, produced at the instance of the Defendant,

4  in the above-styled and numbered cause on the

5  24th day of June, 2020, at 9:26 a.m., before Micheal

6  A. Johnson, RDR, CRR, Notary Public in and for the

7  State of Texas, reported by realtime stenographic

8  means, at the offices of Patterson + Sheridan LLP,

9  1700 Pacific Avenue, Suite 2650, Dallas, Texas,

10 pursuant to Notice of Oral Deposition, and in

11 accordance with the Federal Rules of Civil

12 Procedure.

13

14

15

16

17

18

19

20

21

22

23

24

25



Twin West Reporting, LLC
myrina@myrina.com

```
 1                      PROCEEDINGS
 2                      THE VIDEOGRAPHER:  This begins media
 3 No. 1 in the videotaped deposition of David Howard
 4 in the matter of HIP, Inc. versus Hormel Foods
 5 Corporation in the United States District Court for
 6 the District of Delaware, court file No. 18-cv-802.
 7                      This deposition is being held at
 8 Patterson + Sheridan at 1700 Pacific Avenue, Suite
 9 2650, Dallas, Texas 75201 on June 24th, 2020, at
10 approximately 9:26 a.m.
11                      My name is Dennis Livingston and I am
12 the legal video specialist.  The court reporter is
13 Micheal Johnson.
14                      Will counsel please introduce
15 themselves for the record.
16                      MR. SELINGER:  I'm Jerry Selinger of
17 Patterson + Sheridan, and I'm representing plaintiff
18 HIP and Mr. Howard in this deposition --
19 depositions.
20                      MR. O'SHEA:  I'm Tim O'Shea.  I'm
21 with the law firm Fredrikson & Byron.  I represent
22 the defendant Hormel Foods Corporation.
23                      DAVID P. HOWARD,
24 called as a witness, having been duly sworn by a
25 Notary Public, was examined and testified as
```

1 to testify regarding Topics 1 through 28 and then 30

2 through 32?

3      A.    I believe that's correct.

4            MR. SELINGER:  And for the record,

5 Topic 29 is withdrawn by agreement.

6            MR. O'SHEA:  Correct.

7 BY MR. O'SHEA:

8      Q.    Mr. Howard, are you prepared to testify

9 fully on behalf of HIP, as to its knowledge

10 regarding these topics?

11     A.    Yes.

12     Q.    Mr. Howard, what is your role with HIP,

13 Inc.?

14     A.    I'm the president of the company.

15     Q.    And what does HIP, Inc. stand for?

16     A.    Howard Industrial Properties.

17     Q.    HIP was formerly known as Unitherm Food

18 Systems, Inc.; is that correct?

19     A.    That's correct.

20     Q.    How many employees are at HIP?

21     A.    One.

22     Q.    One, being yourself?

23     A.    Yes.

24     Q.    When did you start HIP?

25     A.    Well, HIP really was a continuation after



1 the 2017 sale of Unitherm Food Systems.

2     Q.    When you say it was after the 2017 sale

3 of Unitherm Food Systems, what are you referring to?

4     A.    Well, Unitherm Food Systems, Inc., was

5 not part of the sale.  And so the company, Unitherm

6 Food Systems, Inc., was changed to HIP.

7     Q.    What do you currently do for HIP?

8     A.    We invest in industrial properties,

9 commercial properties and lease those properties.

10     Q.    Did Unitherm Food Systems, Inc., sell its

11 assets to a company called Marlen International?

12               MR. SELINGER:  Objection, vague.

13     A.    It was sold.  Marlen was an entity

14 involved in the sale.  I'm off -- I cannot tell you

15 if it was bought under the Duravant banner or under

16 the Marlen banner.

17 BY MR. O'SHEA:

18     Q.    But in any event, Unitherm sold its

19 assets to an entity named Marlen; is that fair?

20     A.    Or its proprietor.

21     Q.    And then Unitherm Food Systems, Inc.,

22 turned into HIP, Inc.; is that correct?

23     A.    Correct.

24     Q.    Did Unitherm transfer all of its assets

25 to Marlen?



```
 1      A.    No.

 2      Q.    So Unitherm transferred some of its

 3 assets to Marlen.  Fair?

 4      A.    Correct.

 5      Q.    As part of the transaction with Marlen,

 6 did HIP retain any assets?

 7      A.    Yes.

 8      Q.    What assets did HIP, Inc., retain?

 9            MR. SELINGER:  Objection, calls for a

10 legal conclusion.

11      A.    I may not be able to recall all of those

12 today.  It retained the properties that it owned.

13 It retained certain intellectual property in regard

14 to the bacon patent.  And it retained the legal

15 action against Hormel.

16 BY MR. O'SHEA:

17      Q.    When you're referring to the legal action

18 against Hormel, what are you referring to?

19      A.    The lawsuit and any claims that came from

20 the lawsuit or from the intellectual property that

21 was retained in regard to the bacon cooking process.

22      Q.    And when you're referring to the lawsuit,

23 are you referring to the lawsuit that Unitherm Food

24 Systems, Inc. brought against Hormel in the District

25 of Minnesota?
```



1      A.     In part, yes.

2      Q.     And then what's the -- when you say "in

3  part," what's the other lawsuit, then, that you're

4  referring to?

5      A.     Well, the lawsuit -- that lawsuit wasn't

6  limited just to what occurred in the Minnesota

7  courts.  So it retained the rights to sue Hormel for

8  other cases that would come from that.  I'm not an

9  attorney, so I can't give you a legal definition,

10  but that was the principle of the agreement.

11     Q.     So in terms of the intellectual property

12  that HIP retained as an asset as part of the Marlen

13  transaction, it's the bacon cooking process,

14  correct?

15     A.     Well, I can't answer if that's

16  definitively everything, but it was the rights to

17  all of the patents that I had invented for bacon

18  cooking.

19     Q.     And then the rights and claims in the

20  Minnesota litigation, as well as any future

21  litigation with Hormel?

22     A.     Including the claim against Hormel's

23  pending patent at that time.

24     Q.     You're familiar with the -- when I refer

25  to the '610 patent, correct?



1        A.      Yes.

2        Q.      And then you're also familiar when I

3 refer to the Hormel '498 patent?

4        A.      Correct.

5        Q.      Did HIP retain the rights to the

6 '610 patent?

7        A.      Yes.

8        Q.      And is it HIP's position that it retained

9 the rights as part of the Marlen transaction to what

10 became the '498 patent?

11        A.      To what became the '498 patent, yes.

12        Q.      Let's look at Exhibit 2 in your binder.

13                (Deposition Exhibit 2 marked for

14 identification.)

15                MR. SELINGER:  Counsel, is that

16 Exhibit J to the complaint?

17                MR. O'SHEA:  Yes, it is.

18                MR. SELINGER:  Okay.

19 BY MR. O'SHEA:

20        Q.      You have in front of you, Mr. Howard,

21 what's been marked HIP Exhibit 2.  Do you see that?

22        A.      Yes.

23        Q.      And HIP Exhibit 2 also has a sticker

24 Exhibit J, which is the exhibit that was attached to

25 the complaint that was filed in this case, correct?

1      A.    Correct.

2      Q.    And the title of HIP Exhibit 2 is

3 Assignment, right?

4      A.    Yes.

5      Q.    And on the second page of Exhibit 2, it

6 shows that you are the assigner, correct?

7      A.    Correct.

8      Q.    And the assignee is HIP, Inc., correct?

9      A.    Correct.

10      Q.    And it's dated May 29, 2018, correct?

11      A.    Correct.

12      Q.    And this is an assignment from you to

13 HIP, Inc. of your inventorship rights in the

14 '498 patent, right?

15      A.    Correct.

16      Q.    And the date May 29, 2018, is the same

17 date you filed this lawsuit against Hormel, correct?

18            MR. SELINGER:  Objection, vague.

19      A.    I don't know that for sure, but if you

20 say that is and it is, then I would accept it.

21 BY MR. O'SHEA:

22      Q.    And just for the record, we see that at

23 the top of Exhibit 2, it has a file date of May 29,

24 '18.  Do you see that?

25      A.    Yes, I do see that.



1       Q.    Does that refresh your recollection that

2 the lawsuit that HIP filed against Hormel was

3 May 29, 2018?

4       A.    No.

5       Q.    But nonetheless, you don't dispute that

6 the lawsuit in this case was filed on May 29, 2018,

7 correct?

8       A.    I don't.

9             MR. SELINGER:  Let him finish.

10 BY MR. O'SHEA:

11      Q.    Mr. Howard, why did you assign the rights

12 in Exhibit 2 to HIP, Inc. on May 29th, if HIP had

13 already retained them?

14            MR. SELINGER:  Mr. Howard, I'm going

15 to instruct you that you can answer that question

16 only to the extent that it does not require you to

17 divulge attorney-client communications.  To the

18 extent your answer would be predicated on

19 attorney-client communications, I instruct you not

20 to answer.

21      A.    Mr. O'Shea, I can't answer your question.

22 BY MR. O'SHEA:

23      Q.    Mr. Howard, are you saying that the

24 assignment that we're looking at in HIP Exhibit 2

25 that was attached to HIP's complaint, you can't



1 answer my question as to why you assigned these

2 rights to HIP, Inc. on May 29th, if HIP had already

3 retained them?

4                   MR. SELINGER:  I instruct you not to

5 answer.

6                   Asked and answered.

7 BY MR. O'SHEA:

8     Q.   Mr. Howard, are you going to follow your

9 counsel's advice on the basis of privilege, not to

10 answer my question as to why you assigned the rights

11 in HIP Exhibit 2 to HIP on May 29th, 2018, if HIP

12 had already had them?

13     A.   I'm going to follow the advice of my

14 counsel.

15     Q.   Now, do you have an understanding,

16 Mr. Howard, as to why you signed this assignment

17 that we see here in HIP Exhibit 2?

18                   MR. SELINGER:  I'm going to instruct

19 you that you may answer the question yes or no, but

20 nothing beyond that.

21     A.   I can't fully recall what I was thinking

22 at the time.

23 BY MR. O'SHEA:

24     Q.   Are there documents that would help you

25 recall as to what you were thinking at that time, as



1 to why you signed the assignment that we're looking

2 at in HIP Exhibit 2?

3             MR. SELINGER:  You may answer yes, no

4 or I don't recall.

5      A.    I don't recall.

6 BY MR. O'SHEA:

7      Q.    Before you signed the assignment in HIP

8 Exhibit 2, did you read it?

9      A.    I believe I did.

10     Q.    All right.  Mr. Howard, let's go to

11 Exhibit 3.

12             (Deposition Exhibit 3 marked for

13 identification.)

14 BY MR. O'SHEA:

15     Q.    You have in front of you what has been

16 marked as HIP Exhibit 3.  Do you see that?

17     A.    I do, yes.

18     Q.    And it's been previously marked in this

19 case as Exhibit 29.  Do you see that?

20     A.    Yes, I do.

21     Q.    And HIP Exhibit 3 is Hormel's '498 patent

22 for a hybrid bacon cooking system, correct?

23     A.    Correct.

24     Q.    And the '498 patent lists four inventors,

25 Brian Srsen, Rick Herreid, James Mino and Brian



1                    REPORTER'S CERTIFICATION

2              I, Micheal A. Johnson, Registered Diplomate

3  Reporter, Certified Realtime Reporter and Notary

4  Public in and for the State of Texas, certify that

5  on the 24th day of June, 2020, I reported the

6  Videotaped Oral Deposition of DAVID P. HOWARD, after

7  the witness had first been duly cautioned and sworn

8  to testify under oath; said deposition was

9  subsequently transcribed by me and under my

10 supervision and contains a full, true and complete

11 transcription of the proceedings had at said time

12 and place; and that reading and signing was

13 requested.

14             I further certify that I am neither counsel

15 for nor related to any party in this cause and am

16 not financially interested in its outcome.

17             GIVEN UNDER MY HAND AND SEAL of office on

18 this 1st day of July, 2020.

19

20

21        _____

22        MICHEAL A. JOHNSON, RDR, CRR
          NCRA Registered Diplomate Reporter
23        NCRA Certified Realtime Reporter

24        Notary Public in and for the
          State of Texas
25        My Commission Expires:  8/8/2020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HIP, Inc.,                          §
                                    §
          Plaintiff,                §
                                    §    Case No.
VS.                                 §    1:18-cv-00802 (CFC/SRF)
                                    §
Hormel Foods Corporation,           §
                                    §
          Defendant.                §

# ORIGINAL

VOLUME 2 OF 2

VIDEOTAPED ORAL DEPOSITION OF HIP, INC.

By and Through Its Designated Representative

DAVID P. HOWARD

Dallas, Texas

June 25, 2020

8:30 a.m.

Reported by:

Micheal A. Johnson, RDR, CRR



1              VIDEOTAPED ORAL DEPOSITION OF HIP, INC., by

2 and through its designated representative, DAVID P.

3 HOWARD, produced at the instance of the Defendant,

4 in the above-styled and numbered cause on the

5 25th day of June, 2020, at 8:30 a.m., before Micheal

6 A. Johnson, RDR, CRR, Notary Public in and for the

7 State of Texas, reported by realtime stenographic

8 means, at the offices of Patterson + Sheridan LLP,

9 1700 Pacific Avenue, Suite 2650, Dallas, Texas,

10 pursuant to Notice of Oral Deposition, and in

11 accordance with the Federal Rules of Civil

12 Procedure.

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1                         PROCEEDINGS

 2                    THE VIDEOGRAPHER:  This begins media

 3 No. 1 of the volume 2 deposition of David Howard.

 4 Today's date is June 25, 2020.  We are on the record

 5 at 8:30 a.m.

 6                    Counsel.

 7                    DAVID P. HOWARD,

 8 called as a witness, having been previously sworn by

 9 a Notary Public, was examined and testified as

10 follows:

11                         EXAMINATION

12 BY MR. O'SHEA:

13      Q.    Good morning, Mr. Howard.

14      A.    Good morning, Mr. O'Shea.

15      Q.    You understand that you're still under

16 oath?

17      A.    Yes, I do.

18      Q.    Please turn to what's been marked as HIP

19 Exhibit 35 in your binder.

20                    MR. O'SHEA:  And that was also

21 previously marked as Deposition Exhibit 36 from

22 Mr. Howard's personal deposition in the first

23 Delaware case.

24 BY MR. O'SHEA:

25      Q.    Do you have HIP Exhibit 35 in front of
```

1 deposition as the corporate representative of HIP?

2                MR. SELINGER:  Objection, asked and

3 answered.

4      A.    I don't believe so.

5 BY MR. O'SHEA:

6      Q.    Did Jerry Selinger convey any facts to

7 you regarding standing in preparation for your

8 deposition as the corporate representative of HIP?

9                MR. SELINGER:  Objection, asked and

10 answered.

11      A.    I had a conversation with him.  To the

12 extent there were facts, I can't really determine

13 what you mean by facts at that -- you know, you'd

14 need to give me an example.

15 BY MR. O'SHEA:

16      Q.    You understand that Topic 2 covers the

17 assignment of your purported rights -- or excuse me,

18 strike that.  I should probably get the right topic.

19                Topic 28 is the -- regarding HIP's

20 knowledge regarding the assignment to HIP of

21 Mr. Howard's alleged rights in the '498 patent.

22 What did you do to prepare for Topic 28, Mr. Howard?

23      A.    I looked at a document that I believe was

24 from -- I can't remember if it was from the Delaware

25 court or from the Minnesota court, that recognized



1 my rights in all of the claims regarding legal

2 action over the bacon process that I invented.

3      Q.    And do you have -- why don't we turn to

4 Exhibit 1, Topic 28, in your binder.  Do you have

5 Topic 28 in front of you?

6      A.    Yes, I do.

7      Q.    Okay.  And as I stated before, Topic 28

8 is, "HIP's knowledge regarding the assignment to HIP

9 of Mr. Howard's alleged rights in the '498 Patent."

10           Correct?

11      A.    That's what it says, yes.

12      Q.    And in preparing for Topic 28, when you

13 are referring to standing, is that what you mean by

14 your preparation for Topic 28?

15           MR. SELINGER:  You can say yes or no.

16      A.    Yes.

17 BY MR. O'SHEA:

18      Q.    And in preparing for Topic 28, did

19 Mr. Selinger convey facts to you regarding standing

20 as the corporate representative of HIP?

21           MR. SELINGER:  You can answer this to

22 the extent that what was communicated to you, if

23 anything, was facts independent of attorney-client

24 communications and legal advice.

25      A.    I don't think any of the advice I got



 1 wasn't privileged.  So I'm not sure how to answer

 2 your question.  Sorry.

 3 BY MR. O'SHEA:

 4      Q.    What documents did you look at in

 5 preparation for Topic 28?

 6                MR. SELINGER:  Objection, asked and

 7 answered several times.

 8      A.    I told you there was a legal document

 9 from one of the courts that recognized my standing.

10 I reviewed that document.  I just don't recall the

11 title of it.

12 BY MR. O'SHEA:

13      Q.    And did you review your assignment of

14 your purported rights in the '498 patent that is in

15 HIP Exhibit 2?

16      A.    I had read that before.

17      Q.    Did you read it in preparation for

18 Topic 28?

19      A.    Yes, I did.

20      Q.    So other than looking at those two

21 documents and talking to your lawyers, that was the

22 extent of your preparation for Topic 28?

23      A.    I believe so, yes.

24      Q.    So beyond the two documents, did you

25 learn facts from your attorneys in preparation for

1 Topic 28?

2                    MR. SELINGER:  Objection, asked and

3 answered.

4      A.    I think I've answered your question.

5 BY MR. O'SHEA:

6      Q.    What information did you learn indirectly

7 that helped you prepare for Topic 28 when you spoke

8 with your attorneys?

9                    MR. SELINGER:  I'm going to -- first,

10 objection, asked and answered.

11                    And I'm going to instruct you, to the

12 extent you indirectly learned facts independent of

13 attorney thought processes or legal advice, you can

14 answer.  Otherwise, you can't.

15      A.    I cannot answer your question.

16 BY MR. O'SHEA:

17      Q.    And are you going to follow your

18 counsel's instruction not to answer the question

19 based on privilege?

20      A.    Yes.

21      Q.    Mr. Howard, are you relying on

22 information that you learned from your attorneys in

23 preparation for your deposition as the corporate rep

24 for HIP?

25                    MR. SELINGER:  Hold on.



 1 Argumentative and vague.

 2                     And you can answer -- I instruct you,

 3 you can answer only to the -- you can answer yes or

 4 no, but only to the extent it relates to facts

 5 independent of legal discussions, thought processes,

 6 attorney-client communications, in the course of

 7 your preparation.

 8      A.    I believe all the conversations I had on

 9 this subject are privileged.

10 BY MR. O'SHEA:

11      Q.    And so you're unable -- or you're not

12 going to answer my question based on counsel's

13 advice not to answer the question for privilege?

14      A.    Correct.

15      Q.    Let's go to HIP Exhibit 3 in your binder,

16 which is the Hormel '498 patent.  Do you have that

17 in front of you?

18      A.    I do, yes.

19      Q.    Now, HIP has alleged in this lawsuit that

20 you are the sole inventor of the '498 patent,

21 correct?

22      A.    Correct.

23      Q.    And based on your understanding, what in

24 the '498 patent is novel over the '610 patent?

25                     MR. SELINGER:  Okay.  Time out.



```
 1                 REPORTER'S CERTIFICATION

 2           I, Micheal A. Johnson, Registered Diplomate

 3  Reporter, Certified Realtime Reporter and Notary

 4  Public in and for the State of Texas, certify that

 5  on the 25th day of June, 2020, I reported the

 6  Videotaped Oral Deposition of DAVID P. HOWARD, after

 7  the witness had first been duly cautioned and sworn

 8  to testify under oath; said deposition was

 9  subsequently transcribed by me and under my

10  supervision and contains a full, true and complete

11  transcription of the proceedings had at said time

12  and place; and that reading and signing was

13  requested.

14           I further certify that I am neither counsel

15  for nor related to any party in this cause and am

16  not financially interested in its outcome.

17           GIVEN UNDER MY HAND AND SEAL of office on

18  this 2nd day of July, 2020.

19

20

21           _____
             MICHEAL A. JOHNSON, RDR, CRR
22           NCRA Registered Diplomate Reporter
             NCRA Certified Realtime Reporter
23
             Notary Public in and for the
24           State of Texas
             My Commission Expires:  8/8/2020
25
```

# EXHIBIT B

*HIP, Inc. v. Hormel Foods Corporation*
D. Del. Case No. 1:18-cv-00802-CFC-SRF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HIP, Inc.,

      Plaintiff,

v.

C.A. No. 18-802-CFC-SRF

Hormel Foods Corporation,

      Defendant.

## DEFENDANT'S SECOND AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION OF PLAINTIFF HIP, INC.

To: Plaintiff HIP, Inc. and its attorneys, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Patterson + Sheridan LLP, 1700 Pacific Ave. Suite 2650, Dallas, TX, 75201, and Brown Patent Law, P.L.L.C., 2700 N. Hemlock Ct., Suite 111 E, Broken Arrow, OK 74012.

**PLEASE TAKE NOTICE** that Defendant Hormel Foods Corporation will take the deposition of Plaintiff HIP, Inc. pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. By agreement, the deposition will commence at 9:00 a.m. on Wednesday June 24, 2020 at the offices of Patterson + Sheridan LLP, 1700 Pacific Ave. Suite 2650, Dallas, TX, 75201. The deposition will be taken by oral examination, with written and video records made before a Notary Public or officer authorized by law to administer such oaths, and continue until completed, including into June 25, 2020.



EXHIBIT   l
WIT: HIP
DATE: 6-24-20
Micheal A. Johnson, RDR, CRR

Pursuant to Rule 30(b)(6), HIP shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf, to testify on each of the topics set forth on the attached Exhibit A.  Hormel requests at least ten days written notice of the names and positions of the persons who will testify on HIP's behalf for each individual topic.

Dated: June 9, 2020

POTTER ANDERSON & CORROON LLP

By:   */s/ Timothy M. O'Shea*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel:  (612) 492-7000

*Attorneys for Defendant Hormel Foods Corporation*

70124939

- 2 -

## EXHIBIT A

### DEFINITIONS

A.     "HIP, Inc.," "you," and "your" means Plaintiff HIP, Inc., its predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any of these capacities during any relevant time period.

B.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) in any form.

C.     The term "concerning" means relating to, referring to, describing, evidencing, supporting, refuting, or constituting.

D.     The term "document" as used herein is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34, any "writings and recording" and "photographs," as defined by Fed. R. Evid. 1001, and any other tangible thing subject to production under Fed. R. Civ. P. 34. A draft of a nonidentical copy is a separate document within the meaning of this term. In accordance with Fed. R. Civ. P. 34, the term "document" includes electronically stored information including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

E.      The term "person" means any natural person or business, legal or governmental entity or association.

F.      The "'498 Patent" refers to U.S. Patent No. 9,980,498 entitled "Hybrid Bacon Cooking System."

G.      The "'610 Patent" refers to U.S. Patent No. 9,510,610, entitled "Process for Producing Precooked Bacon Slices."

## RULE 30(b)(6) DEPOSITION TOPICS

Topic 1

David Howard's work on a process that preheats the bacon slices using a microwave oven prior to cooking the bacon in a superheated steam environment in a spiral oven on or before July 20, 2007, including the documentary evidence regarding the precise nature of his work.

Topic 2

David Howard's work on a process that preheats the bacon slices using a microwave oven prior to cooking the bacon in a superheated steam environment in a spiral oven between July 20, 2007 and August 10, 2010, including the documentary evidence regarding the precise nature of his work.

Topic 3

David Howard's use of a microwave oven to preheat the bacon slices to a temperature of 140° F to 210° F prior to cooking the bacon in a spiral oven using superheated steam on or before August 10, 2010, including the documentary evidence regarding the precise nature of his work.

Topic 20

    The disclosure of the "Unitherm Process" by David Howard to Hormel, including the documentary evidence and the date of the disclosure.

Topic 21

    The cooking processes of the '610 Patent.

Topic 22

    The undated handwritten Invention Disclosure form that HIP contends is from 1994.

Topic 23

    The undated handwritten sketch that HIP contends is from 2004.

Topic 24

    The handwritten Bacon Memo that HIP claims is from May 4, 2006.

Topic 25

    The typed Bacon Memo that HIP claims is from May 4, 2006.

Topic 26

    The photographs of bacon that have a date-stamp of 5/4/2006.

Topic 27

    The videos referenced in HIP's answers to Hormel's Interrogatories.

Topic 28

    HIP's knowledge regarding the assignment to HIP of Mr. Howard's alleged rights in the '498 Patent.

# EXHIBIT C

*HIP, Inc. v. Hormel Foods Corporation*
D. Del. Case No. 1:18-cv-00802-CFC-SRF

Case 1:18-cv-00802-CFC-SRF   Document 134   Filed 01/05/21   Page 398 of 433 PageID #:
4341
Case 1:18-cv-00802-CFC-SRF   Document 5   Filed 05/29/18   Page 10 of 11 PageID #: 103

PATENT
ASSIGNMENT

## ASSIGNMENT

WHEREAS, DAVID HOWARD, residing at 1322 Kessler Parkway, Dallas, TX 75208 (hereinafter referred to as "ASSIGNOR") believes he is the sole inventor of the subject matter disclosed and claimed in United States Patent Application Nos. 13/207,065 and/or 61/372,560 (the "APPLICATIONS"), and from which the United States Patent and Trademark Office issued U.S. Patent No. 9,980,498 entitled "Hybrid Bacon Cooking System" (hereinafter referred to as the "'498 PATENT") on earlier in the day on Tuesday May 29, 2018; and

WHEREAS, HIP, Inc., an Oklahoma corporation, located at 1322 Kessler Parkway, Dallas, TX 75208 (hereinafter referred to as the "ASSIGNEE"), is desirous of acquiring the entire right, title and interest in and to the aforementioned APPLICATIONS and the '498 PATENT, fully aware that the '498 PATENT does not currently name Mr. Howard as the sole inventor, let alone as a co-inventor, that the '498 PATENT issued initially without naming Mr. Howard as an applicant or the assignee of record;

NOW, THEREFORE, this Assignment witnesseth that for good and valuable consideration, including, but not limited to $10 (ten dollars), the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR hereby sells, assigns, transfers and sets over to ASSIGNEE all of ASSIGNOR'S right, title, and interest in and to the APPLICATIONS, the '498 PATENT, and to any and all patent applications and patents in  the United States or any other countries which claim priority from the '498 PATENT or from either of both of the APPLICATIONS, namely U.S. Application No. 13/207,065 and/or U.S. Application No. 61/372,560 from which the PATENT was granted and/or claims priority, the same to be held and enjoyed by ASSIGNEE for its own use and benefit, and for the use and benefit of its successors, assigns or other legal representatives, to the end of the respective terms for which the '498 PATENT and any and all of said patents in other countries have been granted, as fully and entirely as the same would have been held and enjoyed by ASSIGNOR if this assignment had not been made.  This Assignment also includes the right to any past or future damages under United States or foreign laws relating to infringement of any patent claiming priority to the APPLICATIONS or the '498 Patent.

IN WITNESS WHEREOF, ASSIGNOR and ASSIGNEE have duly executed this ASSIGNMENT effective as of May 29, 2018.

Page 1 of 2


EXHIBIT   2
WIT: ___H I P___
DATE: 6-24-20
Micheal A. Johnson, RDR, CRR


EXHIBIT
J

PATENT
ASSIGNMENT

ASSIGNOR:

David Howard

29 May 2018
Date

ASSIGNEE:

HIP, Inc.:

David Howard
President of HIP, Inc.

29 May 2018
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HIP, INC.,                                  )
                                            )
       Plaintiff,                       )
                                            )
v.                                          )   C.A. No. 18-802-CFC-SRF
                                            )
HORMEL FOODS CORPORATION,                   )
                                            )
       Defendant.                       )

**EXHIBIT 18**

**HIP, INC.'S RESPONSE TO HORMEL'S MOTION IN LIMINE NO. 3
TO PRECLUDE TESTIMONY REGARDING MATTERS
ON WHICH HIP CLAIMED PRIVILEGE**

|                                          | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|                                          | Karen Jacobs (#2881) |
|                                          | Michael J. Flynn (#5333) |
| OF COUNSEL:                              | 1201 North Market Street |
|                                          | P.O. Box 1347 |
| Jerry R. Selinger                        | Wilmington, DE 19899 |
| Susan E. Powley                          | (302) 658-9200 |
| PATTERSON + SHERIDAN LLP                 | kjacobs@mnat.com |
| 1700 Pacific Avenue, Suite 2650          | mflynn@mnat.com |
| Dallas, TX  75201                        | |
| (214) 272-0958                           | *Attorneys for HIP, Inc.* |

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012

Hormel's motion should be denied because HIP is not using privilege as a sword and shield.  Nor can Hormel show that its improper deposition questions are relevant to standing.

As an initial matter, Hormel's argument ignores its admission (through failure to deny) that HIP has standing and that Exhibit J to the Complaint (the "Assignment" from Mr. Howard to HIP) appears to be genuine.[1]  *See* HIP's MIL No. 3 (PTO Ex. 15).  Hormel also seeks to avoid the plain language of the Assignment by arguing that HIP (then Unitherm) already had assigned the inventorship/ownership rights HIP asserts in this case to Marlen International ("Marlen") in a Unit Purchase Agreement (the "Agreement").  *Id.*, Ex. A.  To the contrary, the Agreement unambiguously confirms that Mr. Howard's rights to the '498 Patent were never assigned to Marlen. Hormel also acknowledged that to be the case in subsequent emails with Marlen and HIP.  *Id*., Ex. E, at 1, 2.  Indeed, Hormel represented to the Court **in this case** that under the Agreement "HIP retained two assets," one of which was "[a]ll claims and rights of the Hormel lawsuit in the District of Minnesota."  D.I. 75 at 1.  Those claims/rights are the subject of the instant lawsuit.  PTO Ex. 15 at 1-2.

To the extent Hormel is permitted to challenge standing, however, Hormel's improper questioning of Mr. Howard, HIP's 30(b)(6) representative, as to privileged communications has no bearing on standing.  Mr. Howard executed the Assignment.  *See* PTO Ex. 18 at 1 & Hormel Ex. A at 20:20-21: 15 (Howard testimony); Hormel Ex C (Assignment).  Unitherm and Marlen executed the Agreement.  The reasons **why** Mr. Howard executed the Assignment (which were based on privileged communications) has no bearing on the legal effect of those contractual documents.

---

[1] Hormel confirmed the Assignment, Exhibit C to its motion, was genuine during Mr. Howard's deposition as HIP's corporate representative.  Mr. Howard executed the Assignment and HIP filed this lawsuit on the same day the '498 Patent issued.  In pertinent part, the Assignment transfers to HIP all of Mr. Howard's rights to the '498 Patent.

Hormel relies on its Deposition Topic 28, but fails to note that the topic was extensively negotiated and twice narrowed based on HIP's relevance and privilege objections, as well as its objection that the topic improperly sought legal contentions by deposition.  *See* Exhibits 1-3 hereto (HIP's respective responses to the three iterations of Hormel Topic 28); Exhibit 4 hereto, at 5 ("HIP stands on its objections to topic 28 ….") (May 27, 2020 email from HIP to Hormel in an email string regarding Topic 28).  HIP's formal response to Hormel's final revision of Topic 28 was clear that HIP continued to maintain the topic was not relevant despite Hormel's standing argument, and involved attorney-client privilege.  Ex. 3 at 12.  Nevertheless, Mr. Howard testified about HIP's limited "knowledge regarding the assignment," independent of attorney-client communications.  Hormel Ex. A at 20:12-21:17, 19-20.

Hormel fails to quote its first question, the one triggering a conditional instruction not to answer: "Mr. Howard, **why** did you assign the rights in Exhibit 2 to HIP, Inc. on May 29th if HIP had already retained them?"  Hormel Ex. A at 22 (emphasis added).  The reasons **why** Mr. Howard executed the assignment clearly calls for privileged communications as well as legal contentions and have no relevance to the legal effect of the document he signed.  There is no sword and shield here because HIP is not relying on any such privileged communications, but rather on the documents themselves.

Hormel relies on cases where state of mind was relevant where privilege was, or might be, invoked.  *Andover Healthcare, Inc. v. 3M Co.*, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) (allowing testimony about product development for performance reasons but not in an effort to avoid infringement); *Berckeley Inv. Group. v. Colkitt*, 455 F.3d 195, 222 & n.24 (3d Cir. 2006) (cautioning party could not rely on legal advice to negate scienter in securities dispute without waiving privilege); *Princeton Digital Image Corp. v. Office Depot Inc.*, 2017 WL

3264068 (D. Del. Aug. 1, 2017) (involving good faith belief when filing infringement suits); *Lucent Techs., Inc. v. Newbridge Networks Corp*., 168 F. Supp. 2d 181, 262 (D. Del. 2001) (evidence relevant to "state of mind").  Even if, *arguendo*, Hormel had not admitted HIP has standing, HIP's state of mind is not relevant here.

The proper construction of the unambiguous documents is purely a question of law.  *See Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).  Hormel has neither pleaded nor identified any alleged ambiguity in the relevant language of either the Agreement or Mr. Howard's assignment to HIP.  *See Cohen v. Formula Plus, Inc.*, 750 F. Supp. 2d 495, 502-503 (D. Del. 2010) (extrinsic evidence not permitted where contracts are unambiguous).  But even if extrinsic evidence were relevant to some unasserted (and unpled) ambiguity, that in and of itself would not form a basis for piercing the attorney-client privilege where HIP is not relying on any such communication.

Hormel's MIL No. 3 to "Preclude Testimony Regarding Matters on Which HIP Claimed Privilege" thus should be denied.

3

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

December 11, 2020

*Attorneys for HIP, Inc.*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802 -CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S
NOTICE OF RULE 30(b)(6) DEPOSITION OF PLAINTIFF HIP, INC.**

Pursuant to the Federal Rules of Civil Procedure, HIP, Inc. ("HIP") objects to Defendant

Hormel Foods Corp. ("Defendant" or "Hormel") Notice of Rule 30(b)(6) Deposition of Plaintiff

HIP, Inc. in the above-captioned case (the "Notice"), as follows:

**GENERAL OBJECTIONS**

1.       HIP objects to each definition and/or instruction set forth in the Notice because, as

written, the deposition topics (individually and/or taken together) seek information outside its

knowledge.

2.       HIP objects to each definition and/or instruction set forth in the Notice because, as

written, the deposition topics (individually and/or taken together) seek information that is not

relevant to the claims or defenses and not proportionate to the needs of the case, and accordingly,

impose unwarranted and undue burden, inconvenience, and expense on HIP.

3.       HIP objects to each definition and/or deposition topic set forth in the Notice to the

extent they seek to invade attorney-client privilege and/or work-product immunity.

4.       In objecting and/or responding to the Notice, HIP does not waive or intend to

waive, but rather intends to preserve and is preserving, any and all privileges and rights

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness on this topic.

**TOPIC NO. 25:**

The typed Bacon Memo that HIP claims is from May 4, 2006.

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness on this topic.

**TOPIC NO. 26:**

The photographs of bacon that have a date-stamp of 5/4/2006.

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness on this topic.

**TOPIC NO. 27:**

The videos referenced in HIP's answers to Hormel's Interrogatories.

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness on this topic.

**TOPIC NO. 28:**

HIP's sale of assets to Marlen, including the assets and liabilities HIP retained.

**RESPONSE:**

HIP objects to this topic and declines to produce a witness on the grounds of lack of relevance to any of the claims or defenses in this litigation, and because it seeks to invade

attorney-client privilege, and thought processes of counsel. In addition, the transaction documents speak for themselves. Subject to and without waiving the foregoing objections, HIP will meet and confer with Hormel in an attempt to resolve these objections.

**TOPIC NO. 29:**

HIP's compliance efforts with respect to the Protective Order, D.I. 43.

**RESPONSE:**

HIP objects to this topic and declines to produce a witness on the grounds of lack of relevance to any of the claims or defenses in this litigation, and because it seeks to invade attorney-client privilege and thought processes of counsel.

**TOPIC NO. 30:**

HIP's discovery responses.

**RESPONSE:**

HIP objects and declines to produce a witness on this topic on the grounds of overbreadth and undue burden and to the extent it seeks to invade attorney-client privilege, thought processes of counsel or any other privilege or immunity. HIP further objects on the grounds that the discovery responses speak for themselves.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
  *Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

March 11, 2020

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802 (CFC) |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S**
**<u>AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION OF PLAINTIFF HIP, INC.</u>**

Pursuant to the Federal Rules of Civil Procedure, HIP, Inc. ("HIP") objects to Defendant Hormel Foods Corp. ("Defendant" or "Hormel") Amended Notice of Rule 30(b)(6) Deposition of Plaintiff HIP, Inc. in the above-captioned case (the "Notice"), as follows:

**I.    <u>GENERAL OBJECTIONS</u>**

1.    HIP objects to each definition and/or instruction set forth in the Notice because, as written, the deposition topics (individually and/or taken together) seek information outside its knowledge.

2.    HIP objects to each definition and/or instruction set forth in the Notice because, as written, the deposition topics (individually and/or taken together) seek information that is not relevant to the claims or defenses and not proportionate to the needs of the case, and accordingly, impose unwarranted and undue burden, inconvenience, and expense on HIP.

3.    HIP objects to each definition and/or deposition topic set forth in the Notice to the extent they seek to invade attorney-client privilege and/or work-product immunity.

4.    In objecting and/or responding to the Notice, HIP does not waive or intend to waive, but rather intends to preserve and is preserving, any and all privileges and rights

**TOPIC NO. 26:**

The photographs of bacon that have a date-stamp of 5/4/2006.

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness who will be reasonably prepared to testify in response to questions from Hormel about the subject matter of this topic.

**TOPIC NO. 27:**

The videos referenced in HIP's answers to Hormel's Interrogatories.

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness who will be reasonably prepared to testify in response to questions from Hormel about the subject matter of this topic.

**TOPIC NO. 28:**

The transfer of intellectual property from HIP to Marlen and the intellectual property retained by HIP stemming from the asset sale transaction in August 2017.

**RESPONSE:**

HIP objects to this topic as not relevant to any claim or defense in view of Hormel's admission in its answer to the Amended Complaint, its Letter Brief to the Magistrate Judge and for the other grounds identified by HIP during ongoing meet-and-confer efforts.  HIP further objects on the basis that the relevant agreements speak for themselves, and any testimony would call for legal conclusions.  HIP remains willing to continue discussions with Hormel about this topic, but will not produce a witness on this topic as written.

**TOPIC NO. 29:**

Withdrawn by email agreement with HIP.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
  *Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

April 30, 2020

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-802 (CFC) |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S
SECOND AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION OF PLAINTIFF HIP, INC.**

Pursuant to the Federal Rules of Civil Procedure, and consistent with agreements between the Parties, Plaintiff HIP, Inc. ("HIP"), objects to Defendant Hormel Foods Corp. ("Defendant" or "Hormel") Second Amended Notice of Rule 30(b)(6) Deposition of Plaintiff HIP, Inc. in the above-captioned case (the "Notice"), as follows:

I.     **GENERAL OBJECTIONS**

1.     HIP objects to each definition and/or instruction set forth in the Notice because, as written, the deposition topics (individually and/or taken together) seek information outside its knowledge.

2.     HIP objects to each definition and/or instruction set forth in the Notice because, as written, the deposition topics (individually and/or taken together) seek information that is not relevant to the claims or defenses and not proportionate to the needs of the case, and accordingly, impose unwarranted and undue burden, inconvenience, and expense on HIP.

3.     HIP objects to each definition and/or deposition topic set forth in the Notice to the extent they seek to invade attorney-client privilege and/or work-product immunity.

4.     In objecting and/or responding to the Notice, HIP does not waive or intend to waive, but rather intends to preserve and is preserving, any and all privileges and rights

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness who will be reasonably prepared to testify in response to questions from Hormel about the subject matter of this topic.

**TOPIC NO. 27:**

The videos referenced in HIP's answers to Hormel's Interrogatories.

**RESPONSE:**

Subject to and without waiving the foregoing general objections, HIP will produce a witness who will be reasonably prepared to testify in response to questions from Hormel about the subject matter of this topic.

**TOPIC NO. 28:**

HIP's knowledge regarding the assignment to HIP of Mr. Howard's alleged rights in the '498 Patent.

**RESPONSE:**

HIP objects to this topic as not relevant to any claim or defense in view of Hormel's admission in its answer to the Amended Complaint, its Letter Brief to the Magistrate Judge and for the other grounds identified by HIP during ongoing meet-and-confer efforts. HIP further objects on the basis that the relevant agreements speak for themselves, and any testimony would call for legal conclusions or attorney-client communications. As agreed between the Parties, subject to and without waiving the foregoing general and specific objections, HIP will produce a witness who will be reasonably prepared to testify in response to questions from Hormel about the subject matter of this topic.

produce a witness who will be reasonably prepared to testify in response to questions from Hormel about the subject matter of this topic.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
  *Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

June 11, 2020

# EXHIBIT 4

| From: | Jerry R. Selinger |
|---|---|
| To: | "O"Shea, Timothy" |
| Cc: | Marchevsky, Barbara; Jacobs, Karen; mflynn@mnat.com |
| Bcc: | Susan E. Powley; Gloria A. Parker; David Howard (david@howardip.com); Dennis Brown (dennis@dennisbrownpatents.com) |
| Subject: | RE: follow up on deposition dates |
| Date: | Tuesday, June 2, 2020 12:59:12 PM |

Tim,

Thank you for your email and, hopefully, we can reach agreement without a call.  If a call is necessary, we are fairly open Thursday and Friday.

Beginning with Hormel's 30(b)(6) topics to HIP, we have resolved topic 21.  While I believe topic 32 is no longer appropriate, since Hormel insists, Mr. Howard will be reasonably prepared to testify about the topic.
Turning to topic 28, while HIP believes we are about there with Hormel's re-write, I want to be clear now, for avoidance of surprise.  HIP believes the topic as phrased avoids Delaware's prohibition against contention 30b6 deposition topics, so long as questions are focused on HIP's knowledge and not contentions.  Also, not surprisingly, this topic is interleaved with attorney-client communications. HIP reserves the right to object and/or instruct not to answer to the extent the questioning either seeks legal contentions or attorney-client communications.

Turning to HIP's 30(b)(6) topics to Hormel, we appreciate Hormel's agreement as to 1-8, 14, 16, 17, 22, 24, 29 and 34. With respect to topics 32, 33 and 35, we appreciate Hormel's litigation position, but that is not a valid basis to limit HIP's discovery, especially in light of the claims of the '498 patent.

In particular, claim 5 of the '498 patent recites a preheating method from a *Markush* group including an infrared oven and hot air.  That alone is sufficient reason for HIP not to limit topics 32, 33 and 35 to microwave ovens.  As to topic 36, your attention is again directed to claim 5, which recites "meat pieces" and "a second cooking compartment" which is not specified to be a spiral oven.  In 1998, Hormel's subsidiary purchased from Unitherm and, after installation and instruction by Unitherm, used and continues to use a RapidFlow oven for producing meat pieces, namely turkey breasts. With that context, HIP would be willing to limit the process conditions in topic 36 to the process conditions in independent claim 5 and corresponding dependent claims.  And HIP is willing to limit the timeframe to prior to August 11, 2010.

We look forward to hearing from you, hopefully to put these disputes to rest by agreement.

Jerry

**Jerry R. Selinger** • Partner
**PATTERSON + SHERIDAN LLP**
**1700 Pacific Ave. Suite 2650, Dallas, TX 75201**
**Main:**   214.720.2200
**Direct:**   214.272.0957
**Fax:**   713.623.4846

1

**Email:** JSelinger@pattersonsheridan.com
http://www.pattersonsheridan.com

CONFIDENTIAL INFORMATION
This transmission contains information from the law firm of Patterson & Sheridan, L.L.P. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you. Alternatively, notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

**From:** O'Shea, Timothy <toshea@fredlaw.com>
**Sent:** Monday, June 1, 2020 12:38 PM
**To:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>; Jacobs, Karen <KJacobs@MNAT.com>; mflynn@mnat.com
**Subject:** RE: follow up on deposition dates

Hi Jerry,

I hope all is well.  As for the deposition on June 19, that is not a problem if you need to take a break for your call.   With respect to the 30(b)(6) topics, we've reviewed your proposal and respond as follows.  We're hopeful we can reach an agreement on the remaining topics in dispute, but please let us know if a call would be useful.

**Hormel's 30(b)(6) Topics to HIP**
- <u>Topic 21</u>:  Although we maintain our position on this topic, for the sake of narrowing the parties' disputes we agree to your proposal below for HIP to produce a witness as modified.
- <u>Topic 28</u>:  In the interest of resolving this dispute and addressing your concerns, we want to make clear that we are seeking to understand the factual bases relating to the assignment of rights to HIP that HIP is asserting in this lawsuit.  Hormel is entitled to discovery of this information.  To resolve the dispute, we are willing to rewrite the topic as follows:  HIP's knowledge regarding the assignment to HIP of Mr. Howard's alleged rights in the '498 Patent.
- <u>Topic 32</u>: Thank you for confirming HIP's position that this topic is not relevant. We will make a determination as to whether to address this topic at the deposition, but intend to keep it on the list.

**HIP's 30(b)(6) Topics to Hormel**
- <u>Topics 1-8, 14, 16, 17, 22, 24, 29, and 34</u>: Resolved as noted below.
- <u>Topics 32, 33 and 35</u>:
  - As an initial matter, we're struggling to understand why topics 32 and 33 are appropriate topics.  Our position has been clear throughout the litigation that Hormel did not disclose the process claimed in the '498 patent to HIP, nor did Hormel work with HIP to develop that process.  Please explain why these

topics are warranted.

  o  In addition, you noted below that HIP uses the term "preheats" in these topics as Hormel used it in Hormel's topic 5.  Hormel's topic 5 uses the term "preheats" as limited to "preheat[ing] the bacon slices using a microwave oven."  Please revise these topics to include the same microwave oven limitation.

- Topic 36:  Your proposal for a modified topic here is not workable.  The rewritten topic is objectionable as lacking any time frame and it is unclear who the actor is (the topic is phrased passively as "process conditions which… were used").  We're also still not clear on the relevance of this topic, including why HIP believes it is appropriate or relevant to seek information about Jennie-O, a Hormel subsidiary that again is not party to this action.  Further, the topic is overbroad and beyond what is relevant in this case in its use of the term "meat products" and referring to equipment that is not relevant to this case.  Although we remain willing to meet and confer on this topic, the topic currently creates an undue burden on Hormel to try to prepare a witness.

As a proposed resolution of the remaining disputes, we would be willing to provide a witness to testify on HIP's topics 32, 33, 35, and 36 (if appropriately rewritten) if HIP agrees to produce a witness on Hormel's revised topic 28.

Thanks,

Tim

**Timothy M. O'Shea**
**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Direct: 612.492.7373 |  toshea@fredlaw.com
*Licensed in Minnesota & Washington*

**From:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Sent:** Friday, May 29, 2020 11:34 AM
**To:** O'Shea, Timothy <toshea@fredlaw.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>; Jacobs, Karen <KJacobs@MNAT.com>; mflynn@mnat.com
**Subject:** RE: follow up on deposition dates

[EXTERNAL E-MAIL]

Thanks Tim,

We look forward to hearing from you on Monday.

Just FYI, on June 19, I will need to take a break from about 1:50-2:15 for a telephone court conference that was just set.

Jerry

**Jerry R. Selinger** • Partner
**PATTERSON + SHERIDAN LLP**
**1700 Pacific Ave. Suite 2650, Dallas, TX 75201**
**Main:**  214.720.2200
**Direct:**  214.272.0957
**Fax:**  713.623.4846
**Email:** JSelinger@pattersonsheridan.com
http://www.pattersonsheridan.com

CONFIDENTIAL INFORMATION
This transmission contains information from the law firm of Patterson & Sheridan, L.L.P. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you. Alternatively, notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

---

**From:** O'Shea, Timothy <toshea@fredlaw.com>
**Sent:** Friday, May 29, 2020 11:32 AM
**To:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>; Jacobs, Karen <KJacobs@MNAT.com>; mflynn@mnat.com
**Subject:** RE: follow up on deposition dates

Thanks Jerry.  We will review the proposal below and get back to you on Monday. Have a nice weekend.

Tim

**Timothy M. O'Shea**
**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Direct: 612.492.7373  |  toshea@fredlaw.com
*Licensed in Minnesota & Washington*

---

**From:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Sent:** Wednesday, May 27, 2020 4:36 PM
**To:** O'Shea, Timothy <toshea@fredlaw.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>; Jacobs, Karen <KJacobs@MNAT.com>; mflynn@mnat.com
**Subject:** RE: follow up on deposition dates

[EXTERNAL E-MAIL]

Tim,

Thanks for getting back to me about Hormel's positions on the respective 30b6 notices.

By way of compromise, HIP is willing to accept the following as a total resolution of the outstanding issues:

<u>As to HIP's 30(b)(6) Notice</u>

- HIP is willing to accept Hormel's proposed compromises on Topics 1-8, 14, 16, 17, 22, 24, 29 and 34 of HIP's 30b6 topics.

- With respect to Topic 36, and at your request, HIP offers the following alternative language for the topic:  Process conditions under which the Unitherm RapidFlow oven and IR preheater bought by Jennie-O from Unitherm were used for production of meat products.

- With respect to Topics 32,, 33 and 35, HIP uses the term "preheats" the same way as HIP understands Hormel uses the term "preheats" in counterpart Hormel 30b6 topic 5.

<u>As to Hormel's 30(b)(6) Notice</u>

- With respect to Hormel topic 32, Henri van de bilt was relevant to claims and defenses that were in the case before the Court carved out HIP's infringement allegations.  HIP does not believe those facts remain relevant to the claims and defenses that remain.  However, if Hormel continues to want to pursue that topic, HIP will have its witness reasonably prepared to answer questions.

- With respect to topic 21, HIP is willing to have its witness testify about the cooking processes of the '610 patent, and previously agreed to related Hormel topics 19 and 20.   HIP is willing to provide a witness as so modified.

- HIP stands on its objections to topic 28 as standing, and the underlying facts, have already been admitted, and the topic calls for legal contentions and expert testimony.  Furthermore, because the scope of rights conveyed is based on the four corners of the documents, witness testimony about the interpretation of those agreements is not relevant.

Please let us know if we have an agreement.  otherwise, please let us know what time tomorrow or Friday you are available to meet and confer.

**Jerry R. Selinger** • Partner
**PATTERSON + SHERIDAN LLP**
**1700 Pacific Ave. Suite 2650, Dallas, TX 75201**

**Main:**   214.720.2200
**Direct:**   214.272.0957
**Fax:**   713.623.4846
**Email:** JSelinger@pattersonsheridan.com
http://www.pattersonsheridan.com

CONFIDENTIAL INFORMATION

This transmission contains information from the law firm of Patterson & Sheridan, L.L.P. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you. Alternatively, notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

**From:** O'Shea, Timothy <toshea@fredlaw.com>
**Sent:** Thursday, May 21, 2020 11:12 AM
**To:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>
**Subject:** RE: follow up on deposition dates

Jerry,

Below is our understanding on where we stand on the 30(b)(6) topics.  Please let us know your position on these remaining topics.

**Hormel's 30(b)(6) Topics to HIP**
The following topics remain in dispute:
- Topic 21: Hormel maintains that this topic is relevant and properly seeks facts about HIP's positions in this case.
- Topic 28: As Hormel previously mentioned, this topic is relevant to the issue of standing.  At no point has Hormel made an "admission" that standing is not at issue, either in the Amended Complaint or its Letter Brief to the Magistrate Judge.  Hormel is entitled to ask questions about this transaction as it relates to the standing issue.
- Topic 32: HIP put the Henri van de Bilt point at issue.  The First Amended Complaint has not one paragraph as you said in your email last week, but a section and three paragraphs about "Henri van de Bilt."  HIP also discusses Henri van de Bilt in its response to Interrogatory 2. Given HIP's reliance on this information, we're entitled to ask about it in a Rule 30(b)(6) deposition.  That said, if HIP is now taking the position that these facts have no relevance to the claims or defenses in this case, Hormel is willing to consider withdrawing this topic.

**HIPs 30(b)(6) Topics to Hormel**
- Topics 1-8, 14, 16, 17, 22, and 24: Hormel maintains that these topics are not relevant, but will agree to produce a witness as we previously indicated as long as Hormel's corporate designee (Brian Srsen) will be able to refer to Hormel's interrogatory answers and the specific documents referenced in HIP's topics during the deposition.
- Hormel has also objected to and declined to produce a witness for HIP's new topics 29, 32-36.
  - Subject to its objections, Hormel is willing to produce a witness as to Topics 29, 34

6

based on the same understanding as the earlier set of topics.

- Hormel maintains its objections to <u>Topics 32-33 and 35</u> as being misleading and vague and ambiguous, particularly in HIP's use of the term "preheats."  Hormel is willing to meet and confer on these topics.  However, before doing so it would be helpful if HIP proposed revised language for these topics by at least clarifying/defining what HIP means by "preheats."
- Hormel also maintains its objections to <u>Topic 36</u>.  As a threshold matter, Jennie-O is a subsidiary of Hormel and is not a party to this litigation.  Leaving aside that this topic is irrelevant, Hormel is willing to meet and confer on this topic.  However, before doing so it would be helpful if HIP proposed revised language for this topic to address the fact that this topic is overboard in scope and time and vague it is use of the phrases "meat processing" and "did in an oven."

Thanks,

Tim

**Timothy M. O'Shea**
**Fredri**k**son & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Direct: 612.492.7373  |  toshea@fredlaw.com
*Licensed in Minnesota & Washington*

---

**From:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Sent:** Monday, May 18, 2020 11:33 AM
**To:** O'Shea, Timothy <toshea@fredlaw.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>
**Subject:** RE: follow up on deposition dates

**[EXTERNAL E-MAIL]**

Tim,

Where are we on working through our differences on the notices?

Stay safe,
Jerry

**Jerry R. Selinger** • Partner
**PATTERSON + SHERIDAN LLP**
**1700 Pacific Ave. Suite 2650, Dallas, TX 75201**
**Main:**   214.720.2200

**Direct:**   214.272.0957
**Fax:**       713.623.4846
**Email:** JSelinger@pattersonsheridan.com
http://www.pattersonsheridan.com

CONFIDENTIAL INFORMATION
This transmission contains information from the law firm of Patterson & Sheridan, L.L.P. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you. Alternatively, notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

---

**From:** O'Shea, Timothy <toshea@fredlaw.com>
**Sent:** Friday, May 15, 2020 10:56 AM
**To:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>
**Subject:** RE: follow up on deposition dates

Hi Jerry,

That works.  We will send out an amended notice.  Thanks.

Tim

Timothy M. O'Shea
Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Direct: 612.492.7373 |  toshea@fredlaw.com
*Licensed in Minnesota & Washington*

---

**From:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Sent:** Friday, May 15, 2020 10:05 AM
**To:** O'Shea, Timothy <toshea@fredlaw.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>
**Subject:** RE: follow up on deposition dates

**[EXTERNAL E-MAIL]**

---

Tim,

June 19 works for Srsen.

Any chance we can move the Howard/HIP dates to Wednesday (June 24) with spillover to Thursday (June 25)?

It's about something non-law related I want to do on that Friday if the change works for you.

8

Thanks,
Jerry


**Jerry R. Selinger** • Partner
**PATTERSON + SHERIDAN LLP**
**1700 Pacific Ave. Suite 2650, Dallas, TX 75201**
**Main:**   214.720.2200
**Direct:**   214.272.0957
**Fax:**   713.623.4846
**Email:** JSelinger@pattersonsheridan.com
http://www.pattersonsheridan.com

CONFIDENTIAL INFORMATION
This transmission contains information from the law firm of Patterson & Sheridan, L.L.P. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you. Alternatively, notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

---

**From:** O'Shea, Timothy <toshea@fredlaw.com>
**Sent:** Monday, May 11, 2020 10:28 AM
**To:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Cc:** Marchevsky, Barbara <BMarchevsky@fredlaw.com>
**Subject:** RE: follow up on deposition dates

Hi Jerry,

Your proposed date of June 25 with spill-over time to June 26 for Mr. Howard/HIP's deposition works for us.  We propose June 19 for Hormel's deposition with Brian Srsen as the designee.  Thanks.

Tim

**Timothy M. O'Shea**
**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Direct: 612.492.7373 |  toshea@fredlaw.com
*Licensed in Minnesota & Washington*

---

**From:** Jerry R. Selinger <JSelinger@pattersonsheridan.com>
**Sent:** Tuesday, May 5, 2020 4:21 PM
**To:** O'Shea, Timothy <toshea@fredlaw.com>
**Subject:** follow up on deposition dates

**[EXTERNAL E-MAIL]**

---

Tim,

I checked with David Howard.  We propose June 25, with (as you requested) spill-over time to June 26.

My schedule is clear the week before if Srsen is available.

Jerry

**Jerry R. Selinger** • Partner
**PATTERSON + SHERIDAN LLP**
**1700 Pacific Ave. Suite 2650, Dallas, TX 75201**
**Main:**    214.720.2200
**Direct:**   214.272.0957
**Fax:**      713.623.4846
**Email:** JSelinger@pattersonsheridan.com
http://www.pattersonsheridan.com

CONFIDENTIAL INFORMATION
This transmission contains information from the law firm of Patterson & Sheridan, L.L.P. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you. Alternatively, notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

HIP, INC.,     )
         )
  Plaintiff,    )
 v.       )  C.A. No. 18-802-CFC-SRF
         )
HORMEL FOODS CORPORATION, )
         )
         )
  Defendant.   )

## EXHIBIT 18

## HORMEL'S REPLY IN SUPPORT OF MOTION IN LIMINE NO. 3 TO PRECLUDE TESTIMONY REGARDING MATTERS ON WHICH HIP CLAIMED PRIVILEGE

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@pottersanderson.com

*Attorneys for Defendant Hormel Foods Corporation*

The Court should grant Hormel's motion and preclude HIP from offering testimony on the circumstances surrounding David's Howard's assignment of his purported rights in Hormel's '498 Patent due to HIP's privilege objections and instructions not to answer during its corporate deposition. *See Andover Healthcare, Inc. v. 3M Co.*, C.A. No. 13-843-LPS, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) (excluding testimony on topics for which party asserted privilege during Rule 30(b)(6) deposition).

HIP does not dispute that the relevant law prevents a party from using privilege as a sword and a shield.  Likewise, HIP concedes that it instructed Mr. Howard not to answer questions regarding the alleged assignment based on privilege.  Instead, HIP represents to the Court that it "is not relying on any such privileged communications, but rather on the documents themselves," and asserts that "[t]he proper construction of the unambiguous documents is purely a question of law."

Hormel agrees—HIP's standing in this case is based solely on whether it explicitly retained in the asset purchase agreement with Marlen International any alleged rights in Hormel's '498 Patent by retaining "[a]ll claims and rights" of the Minnesota lawsuit.  It did not; therefore, HIP lacks standing and this case should be dismissed.  Nevertheless, for purposes of this motion, the parties appear to agree that HIP cannot offer testimony on topics that it claimed were privileged, namely

1

the circumstances surrounding Mr. Howard's alleged assignment to HIP.  Thus, the

Court should grant Hormel's motion.


|  | By: */s/ Kurt J. Niederluecke* |
|---|---|
| OF COUNSEL: | David E. Moore (#3983) |
|  | Bindu A. Palapura (#5370) |
| Kurt J. Niederluecke | Stephanie E. O'Byrne (#4446) |
| Timothy M. O'Shea | POTTER ANDERSON & |
| Laura L. Myers | CORROON LLP |
| Barbara Marchevsky | Hercules Plaza, 6th Floor |
| FREDRIKSON & BYRON P.A. | 1313 N. Market Street |
| 200 South Sixth Street, Suite 4000 | Wilmington, DE  19801 |
| Minneapolis, MN  55402 | Tel: (302) 984-6000 |
| Tel: (612) 492-7000 | dmoore@potteranderson.com |
|  | bpalapura@potteranderson.com |
| Dated: December 15, 2020 | sobyrne@potteranderson.com |

*Attorneys for Defendant Hormel Foods Corporation*

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-802-CFC-SRF |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The undersigned counsel certifies that this filing complies with the type-volume limitation in Paragraph (14) of the Scheduling Order [D.I. 36], and the Court's November 6, 2019 Standing Order Regarding Briefing In All Cases. According to the word processing system used to prepare it, the forgoing document contains 244 words, excluding the case caption, tables and signature block. The text of this document, including footnotes, was prepared in Times New Roman, 14 point.

|  | By:  /s/ Kurt J. Niederluecke |
|---|---|

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
Tel: (612) 492-7000

Dated: December 15, 2020

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON &
CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Hormel Foods Corporation*

4